Stephen McArthur (State Bar No. 277712)
stephen@smcarthurlaw.com
Thomas Dietrich (State Bar No. 254282)
tom@smcarthurlaw.com
THE MCARTHUR LAW FIRM, P.C.
9465 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90212
Telephone: (323) 639-4455

*Attorneys for Plaintiff Thrive Natural Care, Inc.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRIVE NATURAL CARE, INC., | Case No. 2:21-cv-2022 |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **1. FEDERAL TRADEMARK INFRINGEMENT** |
| LE-VEL BRANDS, LLC, | **2. FEDERAL UNFAIR COMPETITION** |
| Defendant. | **3. COMMON LAW TRADEMARK INFRINGEMENT** |
| | **4. COMMON LAW UNFAIR COMPETITION** |
| | **5. VIOLATION OF CAL. BUS. & PROF. CODE § 17200** |
| | **Demand for Jury Trial** |

COMPLAINT

Plaintiff Thrive Natural Care, Inc. ("Thrive"), for its Complaint against Le-Vel Brands, LLC ("LBL"), states as follows:

**Introduction**

1.     This case arises from both federal and state claims, including trademark infringement and unfair competition, all willfully and intentionally committed by LBL against Thrive.

2.     Thrive was founded in 2013 with the mission of making the best natural skincare products on the market using regenerative agriculture methods to produce unique botanical oil "hero ingredients" for its products, while also restoring degraded landscapes and improving livelihoods of rural farming communities. Thrive teams with American and Costa Rican skincare experts, ethnobotanists, entrepreneurs, and rural farmers to create and sell native plant-based skincare products utilizing premium organic resources, without any synthetic colors, fragrances, or ingredients.

3.     Every product Thrive sells bears its THRIVE trademarks. Thrive is built on the THRIVE brand. Thrive made sure, early in its existence, to protect that valuable intellectual property with federal trademark registrations.

4.     LBL is a multi-level marketing company selling a "premium lifestyle product line."  According to LBL, the "premium lifestyle" is achieved by ingesting and/or selling "premium lifestyle capsules" (multivitamins), "ultra micronized shake mix" (weight-loss shakes), and "lifestyle DFT with Fusion 2.0 technology" (topical patches containing caffeine). LBL's primary business is encouraging its "Brand Promoters" to sell its supplements, which—though not approved by the Food & Drug Administration ("FDA")—purportedly help with a bevy of health-related issues such as weight management, cognitive performance, joint function, calming "general discomfort," antioxidant support, lean muscle support, and digestive and immune support.

5.     LBL markets its supplements as "The THRIVE Experience". For

COMPLAINT

example: "The THRIVE Experience is a premium lifestyle system, to help you experience peak physical and mental levels." LBL sells its supplements, shake powders, and topical patches under the "THRIVE" name. Despite the Better Business Bureau finding LBL has made inappropriate claims about the health benefits of its products and misstated the income made by its Brand Promoters, the company has grown quickly. According to LBL, it has earned over $2 billion in sales from 2012 to mid-2019.

6.    In April 2019—six years after Thrive registered its first trademark for the THRIVE mark for skincare products—LBL moved into the skincare market in direct competition with Thrive. LBL had never previously sold skincare products. LBL chose to call its new skincare line THRIVE SKIN, in direct conflict with Thrive's well-established THRIVE brand.

7.    The day after LBL launched its THRIVE SKIN products, it announced that "[w]ithin the first few hours of sales, THRIVE SKIN amassed over $2 million in sales." Since April 2019, LBL has continued to market and advertise its THRIVE SKIN products, including lotions and cleansers that are exactly the type of products covered by Thrive's trademark registrations for the THRIVE mark. In addition to using the THRIVE mark to compete against Thrive, LBL has purchased Google adwords such that LBL's website appears as the first result in searches for terms such as "thrive skin care" and "thrive skin".

8.    In October 2020, shortly after Thrive learned about LBL's foray into the skincare market, Thrive sent a cease-and-desist letter to LBL demanding that LBL cease all use of the THRIVE mark on LBL's skincare products. LBL at first claimed it had superior use rights to the mark, but when Thrive requested evidence of such use, LBL stopped responding to Thrive's inquiries and refused to provide any such evidence.

9.    LBL's actions have created consumer and retailer confusion between Thrive's and LBL's skincare products, damaged Thrive's brand, and caused LBL

to accrue profits attributable to its infringement on Thrive's registered marks.

## Nature of the Action

10.     This is an action at law and in equity for trademark infringement and unfair competition under the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq*. ("Lanham Act"), common law trademark infringement and unfair competition, and violation of California Business and Professions Code § and 17200, *et seq*.

11.     Thrive brings this action to obtain injunctive relief to stop LBL's ongoing illegal trademark use, infringement, and unfair competition and to seek damages sustained by Thrive as a result of LBL's unlawful actions, plus attorneys' fees, costs, and other relief.

## The Parties

12.     Plaintiff Thrive Natural Care, Inc. is a Delaware corporation with its principal place of business at 42 Darrell Place, San Francisco, CA 94133.

13.     Defendant Le-Vel Brands, LLC is a Texas limited liability company with its principal place of business at 9201 Warren Parkway #200, Frisco, TX 75035.

## Jurisdiction and Venue

14.     This Court has subject matter jurisdiction under section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. Subject matter jurisdiction over Thrive's related California statutory and common law claims is proper pursuant to 28 U.S.C. §§ 1338 and 1367.

15.     This Court has personal jurisdiction over LBL, because LBL: (a) regularly conducts and solicits business within this State and this District; (b) directly, and through intermediaries, ships, distributes, offers for sale, sells, and advertises its products and services to consumers and retailers in the State of California and this District; and (c) has committed acts of infringement and unfair competition in this State and this District.

16.     LBL operates the website, www.le-vel.com, which sells products— including infringing products—directly to consumers, many of whom are located

COMPLAINT

in California and in this District. LBL advertises directly to customers located in California and this District. Further, LBL works with numerous Brand Promoters located in this District, and its representatives have physically attended events in this District to advertise, promote, and sell LBL's products.

17.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events giving rise to the claims occurred in this District, and LBL is subject to personal jurisdiction in this District.

### Facts Underlying the Causes of Action

*Thrive Was Founded in 2013 to Create Premium Skincare Products Through Regenerative Agricultural Practices*

18.     Thrive began selling skincare products to the public in late 2013. Today, Thrive sells a range of skincare and grooming products, including face washes and scrubs, lotions, moisturizers, sunscreens, face balms, shaving lotions, and grooming oils. Made especially for people with sensitive or active-lifestyle skin, the new-to-market plant oils found in Thrive products contain skin-protecting antioxidants and raw ingredients that reduce inflammation and irritation better than conventional synthetic ingredients.

19.     Key to Thrive's appeal with customers is an understanding of and affinity for the company's mission and positive impact. Thrive sources natural ingredients for its line of skincare products from native plants grown by communities on the coasts of Costa Rica. Since 2014, Thrive has conducted extensive research and development in Costa Rican ecosystems to regeneratively cultivate and source premium botanical ingredients to provide its unique skincare benefits. Importantly, the company partners with women-led co-ops and smallholder farmers to cultivate native plants that improve soil and biodiversity on degraded lands, boost farmers' incomes and provide a high-quality supply of plant oils. Ultimately, Thrive hopes to serve as a commercially viable inspiration for regenerative practices in the agriculture, fisheries, and forestry sectors. This unique regenerative business model

COMPLAINT

has positioned Thrive on the leading edge of healthy, natural, and sustainable.

20.     Thrive skincare products are sold online at www.thrivecare.co and through retail partnerships with Amazon and Walmart.com, as well as at Whole Foods Markets on the West Coast.

21.     Thrive's business is built on the THRIVE marks, which appear on all of Thrive's products. Thrive has used THRIVE marks on its products continuously since 2013. Examples of Thrive's use of the THRIVE marks is below.



22.     Thrive has devoted substantial money, time, and resources to developing the THRIVE brand. Thrive advertises its skincare products extensively on the Amazon and Walmart marketplaces. The company conducts branding and promotional partnerships with existing retailers such as Amazon (including an Amazon-produced video about Thrive which Amazon shared with its 600,000-plus employees and over 100 million customers), Whole Foods, and others. Thrive has also built a robust network of partners in its regenerative business model operating in Costa Rica. Thrive has communicated its unique brand via marketing agencies, public relations firms, social media such as Instagram and Facebook, and through the company's website blog and online articles published on sites such as Medium.

23.     Thrive has received significant unsolicited media coverage, with its products, mission, and business model featured in publications such as *Esquire*, *Progressive Grocer*, *Travel + Leisure Magazine*, and *Natural Solutions Magazine*. As the creator of the first regenerative supply chain in the personal care industry, Alex McIntosh, the co-founder and CEO of Thrive, has been featured in numerous podcasts and delivered the opening keynote speech at *The Future of Sustainability 2017* conference, hosted by the New York Society of Cosmetic Chemists. In recognition of Thrive's innovative business model, the company was selected by Conservation International Ventures, the investment arm of one of the world's leading environmental organizations, for a five-year partnership and investment.

24.     Thrive targets a unisex audience, selling items such as beard oil to men but also focusing on a female market for its products like sunscreen, cleansers, and moisturizers. As example of the company's appeal to the female demographic, Thrive published an article on the site Medium in November 2019 titled: I'm a Woman and I Use Thrive Natural Care. Here's Why." As Thrive notes in that article, "an active lifestyle has no gender."

25.     Thrive has long used the term "Thrive Tribe" as part of its brand messaging, beginning not later than December 2013. Since then, Thrive has consistently referred to its followers and customers as the "Thrive Tribe," including sending new customers an email welcoming them to the "Thrive Tribe" upon purchasing Thrive products or signing up to receive Thrive messages. Thrive has also used the term "Thrive Tribe" throughout its website, including prominently on its homepage, and in marketing campaigns. For example, in 2018 Thrive ran an Instagram-based photograph contest and directed followers to use the hash tag #THRIVETRIBE on their photographs to identify that they were related to Thrive.

### Thrive Registered THRIVE Trademarks Starting in January 2014

26.     On September 11, 2012, Plaintiff Thrive applied for a United States

federal trademark application for the word THRIVE in standard characters. In January 2014, Thrive was awarded U.S. Trademark Reg. No. 4,467,942 for THRIVE in International Class 003 for "Non-medicated skin care preparations, namely, facial lotions, cleansers and creams, creams and oils for cosmetic use, skin moisturizers; pre-shaving preparations; after shave lotions and creams" (the "'942 Mark").

27.    Thrive has used the '942 Mark continuously in interstate commerce for more than five years. On March 7, 2020, the U.S. Patent & Trademark Office issued a notice that the '942 Mark is "incontestable".

28.    In May 2016, Thrive applied for a second trademark application, which issued in September 2020 as U.S. Trademark Reg. No. 6,164,303 for THRIVE in International Class 003 for the additional products of "Body and non-medicated soaps and skin cleansing gels; cosmetic sun care preparations and sunscreens; shaving creams and gels; pre-shaving preparations; after shave lotions and creams" (the "'303 Mark") (the '942 and '303 Marks are collectively referred to as the "THRIVE Marks").

29.    On September 22, 2020, Thrive filed for a third trademark application, U.S. Serial No. 90/198,496, to officially register other skincare products that it already sells or which are within the natural zone of expansion of its current registered and common law trademark rights.

### *LBL's Business and Questionable Reputation*

30.    LBL got its start selling car insurance and then, in or about late 2012, began selling vitamin supplements.  LBL bills itself as a "wellness company." In reality, it is a multi-level marketing company that makes money by selling branded supplements to individual "Brand Promoters," who then resell the products or consume them.

31.    LBL's "The THRIVE Experience" involves taking a combination of vitamin capsules, shake mix, and topical patches, which can cost over $200 per

month.

32.     While LBL's website and Brand Promoters post glowing testimonials about the benefits of LBL's supplements, unbiased sources tell a different story.

33.     According to government records published by the website Truthinadvertising.org ("TINA.org"), in less than two years during 2014 and 2015, the FDA received at least 16 adverse health event reports concerning LBL's Thrive products, including reports of abdominal pain, headache, and increased blood pressure. Three of the 16 reports cited the need for hospitalization or a visit to the emergency room.

34.     In 2020, the Better Business Bureau's Direct Selling Self-Regulatory Council issued a case decision finding that LBL and its Brand Promoters had made inappropriate health claims about the Thrive product line and atypical income claims about the company's business opportunity. This decision was based on a TINA.org investigation that cataloged more than 50 instances from 2016 to 2020 in which LBL or its distributors made or referenced claims that the Thrive product line can treat, cure, alleviate the symptoms of, prevent, or reduce the risk of developing diseases and disorders. This even included one Brand Promoter claiming on social media that LBL's products would " kick covid19's ass."

35.     LBL's products have been panned by dietitians and other reviewers as expensive multivitamins with questionable, if any, positive health effects.

36.     In 2016, LBL even sued an online blogger who had wrote a detailed analysis of LBL's business methods and health-related claims—which contained much content that was negative for LBL, and which linked to numerous other articles criticizing LBL's business and products. The Texas Court of Appeals ruled LBL's lawsuit was a strategic lawsuit against public participation, in violation of the First Amendment, and threw out LBL's claims.

37.     LBL has, at best, a questionable reputation. While many sources online trumpet the amazing benefits of LBL's THRIVE products, those appear to be paid

advertisements. Unbiased reviews are highly critical of LBL's business practices and products and the income claims of LBL's Brand Promoters.

### *LBL Expands Into Skincare Market*

38.    In April 2019, LBL began to directly compete against Plaintiff Thrive in the skincare product market. LBL called its skincare line THRIVE SKIN.

39.    Since April 2019, LBL has continued to market and advertise its THRIVE SKIN products (collectively, the "Infringing Products"), including lotions and cleansers that are exactly the type of products covered by Thrive's trademark registrations for the THRIVE mark.

40.    LBL's infringing products include its entire THRIVE SKIN line of products, including (1) Peel Reduce Restore, (2) Infinite Daily Detox Purifying Bar, (3) Infinite Charcoal Activated Mask, (4) Infinite Hand & Foot Reparative Cream, (5) Infinite Skin & Hair Peptide Gel, and (6) Infinite Detox Body Scrub.

41.    Examples of LBL's Infringing Products are shown below.



42.    Below is a side-by-side of Thrive's skincare product on the left and LBL's skincare product on the right:

/ / /

/ / /

COMPLAINT



43.    In addition to using the THRIVE mark to compete against Thrive, on information and belief, LBL has purchased Google adwords such that LBL's website appears as the first result in searches for terms such as "thrive skincare" and "thrive skin".

44.    LBL has also begun referring to its followers as the "Thrive Tribe"— exactly the same name Thrive had been using for its followers since 2013. Indeed, LBL sends its new customers an email welcoming them to the "Thrive Tribe," which is almost identical to Thrive's introductory email, as shown in the screenshots below.




45.    LBL and its Brand Promoters have also frequently used the hash tag #THRIVETRIBE in Instagram posts promoting LBL's products.

COMPLAINT

46.     Further, as of the date of this filing, LBL's webpage where it advertises its "Thrive Skin" products, https://le-vel.com/Products/THRIVE/Skin, includes a disclaimer at the bottom stating: "*The trademarks appearing throughout this site belong to Le-Vel Brands, LLC and are registered, pending registration, or protected by common law rights or otherwise are used with the permission of others or constitute fair use.*" (the "Disclaimer").

47.     The Disclaimer misrepresents to potential consumers that LBL is the true owner of the THRIVE mark or that LBL is using Plaintiff Thrive's THRIVE mark with permission and under license from Thrive.

### *LBL Refuses to Provide Evidence to Support Allegation of Prior Use*

48.     Promptly after learning that LBL was selling THRIVE SKIN products, on October 27, 2020, Plaintiff Thrive sent LBL a letter demanding that LBL immediately cease and desist from using the THRIVE mark on LBL's skincare products.

49.     LBL responded to Thrive's letter by claiming—without evidence—that LBL itself had senior rights to use the THRIVE mark in relation to skincare products.

50.     In order to complete due diligence and fully investigate LBL's defense to Thrive's allegations, Thrive requested documentary evidence from LBL that showed LBL had prior use rights to the THRIVE mark. LBL was not forthcoming. For the next several months, Thrive followed up on this issue and LBL responded that it would respond substantively in due course. To date, despite numerous requests, LBL has not offered any evidence to support its claim that it has any prior right to use THRIVE in relation to skincare products or any other product.

51.     Despite receiving Thrive's cease-and-desist letter and having knowledge of Thrive's registered THRIVE Marks, LBL has continued to sell its infringing THRIVE SKIN products.

52.     LBL knew that Thrive would be damaged by LBL's advertising and

COMPLAINT

selling Infringing Products.

53.     Thrive has built an impeccable business reputation through ethical business practices and continuous efforts to build and support regenerative agriculture to develop products that are all natural and good for the earth and customers' skin. LBL's advertising and sale of THRIVE SKIN products is particularly harmful to Thrive, given the reputation of LBL and its Brand Promoters for making specious claims about LBL's business and products.

54.     Thrive has been damaged by LBL's intentional actions described herein.

### Count 1

### Federal Trademark Infringement

55.     Thrive incorporates each paragraph above into this claim.

56.     LBL's use of confusingly similar imitations of Thrive's THRIVE Marks on the Infringing Products is likely to cause confusion, deception, and mistake by creating the false and misleading impression that LBL's Infringing Products are manufactured or distributed by Thrive, are associated or connected with Thrive, or have the sponsorship, endorsement, or approval of Thrive.

57.     LBL's use of confusingly similar imitations of Thrive's THRIVE Marks on the Infringing Products, in conjunction with its larger advertising scope, multi-level marketing practices, and significant social media following, are likely to cause reverse confusion, deception, and mistake by creating the false and misleading impression that Thrive's goods are manufactured or distributed by LBL or are associated, sponsored by, or connected with LBL.

58.     Additionally, LBL's infringement combined with its aggressive digital marketing targeting Thrive's customers with keywords such as "Thrive skin" and Thrive skincare" harms Thrive's business by increasing the company's cost to acquire digital customers, and serves to siphon off Thrive's existing and prospective customers with misleading links that lead not to Thrive but to LBL's website.

59.     LBL's Infringing Products bear marks that are confusingly similar to Thrive's federally registered THRIVE Marks, in violation of 15 U.S.C. § 1114. LBL's activities are causing and, unless preliminarily and permanently enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Thrive's goodwill and reputation, for which Thrive has no adequate remedy at law.

60.     LBL's actions demonstrate it willfully advertised and sold its Infringing Products while knowing of Thrive's registered THRIVE Marks and the long-term use and significant goodwill Thrive had built in its THRIVE brand in relation to skincare products.

61.     LBL has caused and is likely to continue causing substantial injury to the public and to Thrive, and Thrive is entitled to injunctive relief and to recover LBL's profits attributable to sales of Infringing Products, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## Count 2

## **Federal Unfair Competition**

62.     Thrive incorporates each paragraph above into this claim.

63.     LBL's use of a confusingly similar imitations of the THRIVE Marks on the Infringing Products has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that: (a) LBL's Infringing Products are manufactured or distributed by Thrive, or are affiliated, connected, or associated with Thrive, or have the sponsorship, endorsement, or approval of Thrive; or (b) Thrive's goods are manufactured or distributed by LBL or Thrive or its goods are affiliated, connected, or associated with LBL.

64.     Additionally, LBL's infringement combined with its aggressive digital marketing targeting Thrive's customers with keywords such as "Thrive skin" and "Thrive skincare" harms Thrive's business by increasing the company's cost to

COMPLAINT

acquire digital customers, and serves to siphon off Thrive's existing and prospective customers with misleading links that lead not to Thrive but to LBL's website.

65.    LBL has made false representations, false descriptions, and false designations of origin on or in connection with its Infringing Products in violation of 15 U.S.C. § 1125(a). LBL's activities have caused and, unless preliminarily and permanently enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Thrive's goodwill and reputation for which Thrive has no adequate remedy at law.

66.    LBL's actions demonstrate an intentional and willful intent to trade on the goodwill associated with Thrive's THRIVE Marks to the great and irreparable injury of Thrive.

67.    LBL's unauthorized and tortious conduct also has deprived and will continue to deprive Thrive of the ability to control the consumer perception of its goods offered for sale and sold under its THRIVE Marks, placing the valuable reputation and goodwill of Thrive in the hands of LBL.

68.    By engage in the referenced acts, LBL is unfairly competing with Thrive.

69.    LBL's conduct has caused, and is likely to continue causing, substantial injury to the public and to Thrive. Thrive is entitled to injunctive relief and to recover LBL's profits attributable to sales of Infringing Products, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count 3**

**<u>Common Law Trademark Infringement</u>**

70.    Thrive incorporates each paragraph above into this claim.

71.    As a result of Thrive's continuous use and promotion of the THRIVE Marks, as well as the distinctiveness of the marks, consumers associate and

COMPLAINT

recognize the mark as representing a single source or sponsor of goods, and therefore the trademarks are protectable at common law.

72.     Thrive owns and enjoys trademark rights in the THRIVE Marks, which rights are superior to any rights that LBL may claim in and to its marks with respect to LBL's skincare products. Thrive's marks are strong and inherently distinctive.

73.     LBL's actions described herein constitute common law trademark infringement and have created and will continue to create, unless restrained by this Court, a likelihood of confusion to the irreparable injury of Thrive. Thrive has no adequate remedy at law for this injury.

74.     LBL acted with full knowledge of Thrive's use of, and statutory and common law rights to, the THRIVE Marks and without regard to the likelihood of confusion of the public created by LBL's activities.

75.     LBL's actions demonstrate an intentional and willful intent to trade on the goodwill associated with Thrive's THRIVE Marks to the great and irreparable injury of Thrive.

76.     As a result of LBL's acts, Thrive has been damaged in an amount not yet determined or ascertainable. At a minimum, however, Thrive is entitled to injunctive relief and an accounting of LBL's profits, damages, and costs.

## Count 4

## Common Law Unfair Competition

77.     Thrive incorporates each paragraph above into this claim.

78.     LBL's wrongful conduct, as described herein, is likely to create confusion, misrepresentation, mistake, or to deceive the public as to the affiliation, approval, sponsorship, or connection between LBL and Thrive, and constitute unfair competition at common law.

79.     As a result of the described wrongful conduct by LBL in connection with its advertising, offering to sell, and selling goods, Thrive has suffered, and will

COMPLAINT

continue to suffer, irreparable injury to its rights, and has suffered, and will
continue to suffer, substantial loss of goodwill and loss in value of its trademarks,
unless and until LBL is enjoined from continuing its wrongful acts.

80.    LBL's actions have caused and, unless preliminarily and permanently
enjoined by the Court under the common law of unfair competition, will continue
to cause irreparable harm to Thrive and to its goods, including those offered for
sale under the THRIVE Marks. Thrive has no adequate remedy at law. LBL's
wrongful conduct, and the resulting damage to Thrive, is continuing and ongoing,
since LBL is currently advertising, selling, and offering to sell Infringing Products.

81.    As a result of LBL's acts, Thrive has been damaged in an amount not yet
determined or ascertainable. At a minimum, however, Thrive is entitled to
injunctive relief and an accounting of LBL's profits, damages, and costs.

## Count 5

## Cal. Bus. & Prof. Code § 17200, *et seq.*

82.    Thrive incorporates each paragraph above into this claim.

83.    As described herein, LBL has engaged in unlawful or fraudulent business
acts or practices, constituting unfair competition in violation of California Business
and Professions Code § 17200, *et seq*.

84.    By reason of the foregoing wrongful conduct, LBL has engaged in
unlawful acts relating to its unauthorized adoption and use in U.S. commerce of
marks that are confusingly to Thrive's THRIVE Marks in connection with the
distribution, marketing, promotion, offering for sale and sale of LBL's skincare
products, which have caused, and which will continue to cause, a likelihood of
confusion or misunderstanding as to (a) the source and sponsorship of LBL's or
Thrive's goods, or (b) the affiliation, connection or association, or certification by
or between LBL and Thrive, in violation of California Business and Professions
Code § 17200, *et seq*.

85.    LBL's actions have caused and, unless preliminarily and permanently

- 16 -

enjoined by the Court under California Business and Professions Code § 17200, *et seq.*, will continue to cause irreparable harm to Thrive and to its goods, including those offered for sale under the THRIVE Marks. Thrive has no adequate remedy at law. LBL's wrongful conduct, and the resulting damage to Thrive, is continuing and ongoing, since LBL is currently advertising, selling, and offering to sell Infringing Products.

86.     Upon information and belief, LBL intentionally, willfully, and knowingly undertook these actions and adopted marks which are confusingly similar to the THRIVE Marks and did so with blatant disregard for Thrive's trademark rights.

87.     Thrive is entitled to injunctive relief, restitution of LBL's ill-gotten gains stemming from its violations of law in an amount to be determined at trial, and to recover Thrive's attorneys' fees and costs incurred in connection with LBL's unlawful or fraudulent business acts or practices pursuant to California Business and Professions Code § 17200, *et seq.*

### **Prayer for Relief**

WHEREFORE, Thrive prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award Thrive relief including but not limited to an Order:

1. Preliminarily and permanently enjoining LBL and its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from LBL, or in concert or participation with LBL, and each of them, from:

a.     advertising, marketing, promoting, offering for sale, distributing, or selling the Infringing Products and any other products that are protected by Thrive's registered and common law trademark rights or in their natural zone of expansion, including any skincare products that use the term "THRIVE" as a trademark;

b.      using the THRIVE Marks or any other copy, reproduction, colorable imitation, or simulation of the THRIVE Marks on or in connection with LBL's skincare products and LBL's advertising, promotion, and marketing thereof;

c.      using any trademark, name, logo, design, or source designation of any kind on or in connection with LBL's skincare products that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any of Thrive's trademarks, names, or logos;

d.      using any trademark, name, logo, design, or source designation of any kind on or in connection with LBL's skincare products that is likely to cause consumers to be confused, mistaken, or deceived into believing that goods or services originating from LBL are produced or provided by Thrive, or are sponsored or authorized by Thrive, or are in any way connected or related to Thrive, or in Thrive's natural zone of expansion;

e.      using any trademark, name, logo, design, or source designation of any kind on or in connection with LBL's skincare products that is likely to cause consumers to be confused, mistaken, or deceived into believing that the goods or services produced or provided by Thrive, or in Thrive's natural zone of expansion, are produced or provided by, connected with, or related to LBL;

f.      passing off, palming off, or assisting in passing off or palming off LBL's skincare products as those of Thrive, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint.

2.  Directing LBL to file with this Court and serve on Thrive within 30 days after service of an injunction, a report in writing under oath, setting forth in detail the manner and form in which LBL has complied with the injunction.

3.  Compelling LBL to account to Thrive for any and all profits derived by LBL from the sale or distribution of the Infringing Products, and any other products that are protected by Thrive's registered and common law trademark

COMPLAINT

rights or in their natural zone of expansion.

4. Awarding Thrive damages caused by the acts forming the basis of this Complaint in an amount to be ascertained at trial, including but not limited to actual damages and a reasonable royalty.

5. Awarding Thrive damages for corrective advertising in an amount to be ascertained at trial.

6. Awarding, based on LBL's knowing and intentional use of confusingly similar imitations of Thrive's THRIVE Marks, treble damages and enhancing the award of LBL's profits as provided for by 15 U.S.C. § 1117(a).

7. Requiring LBL to pay to Thrive the costs of suit and reasonable attorneys' fees incurred by Thrive in this action pursuant to any applicable statutes or caselaw, including 15 U.S.C. § 1117(a) and Cal. Bus. & Prof. Code § 17200, *et seq*.

8. Awarding Thrive prejudgment and post-judgment interest on all monetary awards.

9. Granting such other and further relief as the Court may deem just.

## <u>JURY DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38 and Central District of California L.R. 38-1, Thrive demands a trial by jury on all issues so triable.

DATED:  March 4, 2021          THE MCARTHUR LAW FIRM, PC

By: */s/ Stephen C. McArthur*
STEPHEN C. MCARTHUR

Stephen McArthur
stephen@smcarthurlaw.com
Thomas Dietrich
tom@smcarthurlaw.com
9465 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90212
Telephone: (323) 639-4455

COMPLAINT

- 19 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Attorneys for Plaintiff Thrive Natural Care, Inc.*

COMPLAINT