KENDALL BRILL & KELLY LLP
Alan Jay Weil (63153)
  *ajweil@kbkfirm.com*
Shauna E. Woods (300339)
  *swoods@kbkfirm.com*
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile:  310.556.2705

FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
Mark Sommers (*pro hac vice* forthcoming)
  mark.sommers@finnegan.com
Patrick Rodgers (*pro hac vice* forthcoming)
patrick.rodgers@finnegan.com
901 New York Avenue, NW,
Washington, DC 20001-4413
Telephone:  (202) 408-4064
Facsimile:  (202) 408-4400
Morgan E. Smith (SBN 293503)
  morgan.smith@finnegan.com
3300 Hillview Avenue
Palo Alto, CA 94304
Telephone:  (650) 849-6600
Facsimile:  (650) 849-6666

Attorneys for Specially Appearing
Defendant Le-Vel Brands, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| THRIVE NATURAL CARE, INC., | Case No. 2:21-CV-02022-DOC-KES |
| Plaintiff, | **LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| LE-VEL BRANDS, LLC, | **[REDACTED VERSION]** |
| Defendant. | Judge:   Hon. David O. Carter<br>Hearing Date: April 12, 2021<br>Time: 8:30 a.m.<br>Crtrm.:   9D |

## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558

Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# **TABLE OF CONTENTS**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ..................................... 1

II.  STATEMENT OF FACTS ............................................................................ 3

   A.   Le-Vel, Its History, and the Evolution of THRIVE ...................................... 3

      1.   Le-Vel's Mission and Business Model ................................................. 3

      2.   Le-Vel's Prior Use and Introduction of the THRIVE ............................ 3

      3.   The Natural Expansion of the THRIVE Product Line ........................... 4

      4.   Le-Vel's THRIVE and THRIVE SKIN Success ................................... 6

      5.   Le-Vel's Favorable Reputation in the Industry ................................... 6

   B.   Plaintiff's Junior Use of THRIVE for Men's Grooming ............................. 7

III. ARGUMENT ............................................................................................... 9

   A.   The High Standard for Granting a Preliminary Injunction ........................... 9

   B.   Plaintiff Is Not Likely to Succeed on the Merits ......................................... 10

      1.   Le-Vel, Not Plaintiff, Has Prior Rights ............................................... 11

   C.   Plaintiff Cannot Show Irreparable Harm ................................................... 13

      1.   Le-Vel Overcomes Any Presumed Irreparable Harm .......................... 13

         a. Plaintiff's Delay Belies Irreparable Harm .................................. 15

      2.   No Actual Confusion Despite Two Years of Coexistence ...................... 18

      3.   Plaintiff's Alleged Harm Is Unfounded and Speculative ....................... 19

   D.   A Preliminary Injunction Will Irreparably Harm Le-Vel, Decidedly Tipping
        the Balance of Hardship in Le-Vel's Favor ................................................ 21

   E.   A Preliminary Injunction Is Not in the Public's Interest ............................... 23

   F.   Le-Vel Is Entitled to a Bond of $1,000,000 .............................................. 24

   G.   The Court Lacks Personal Jurisdiction and Venue ..................................... 24

IV.  CONCLUSION ........................................................................................... 25

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AK Metals, LLC v. Norman Industrial Materials, Inc.*,
    No. 12-cv-2595-IEG (WVG), 2013 WL 417323 (S.D. Cal. Jan. 31,
    2013) ................................................................................................... 16, 17, 18

*Apple, Inc. v. Samsung Electronics Co.*,
    877 F. Supp. 2d 838 (N.D. Cal. 2012) ................................................... 24

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*,
    174 F.3d 1036 (9th Cir. 1999) ................................................... 10, 11, 12

*Caribbean Marine Services Co. v. Baldrige*,
    844 F.2d 668 (9th Cir. 1988) ................................................................ 20

*Century Time Ltd. v. Interchron Ltd.*,
    729 F. Supp. 366 (S.D.N.Y. 1990) ........................................................ 17

*Coffee Dan's Inc. v. Coffee Don's Charcoal Broiler*,
    305 F. Supp. 1210 (N.D. Cal. 1969) ..................................................... 15

*Dahl v. Swith Distribution, Inc.*,
    No. 10-cv-00551-SJO, 2010 WL 1458957 (C.D. Cal. Apr. 1, 2010) ........... 15, 21

*Department of Parks & Recreation v. Bazaar Del Mundo Inc.*,
    448 F.3d 1118 (9th Cir. 2006) .............................................................. 11

*Edge v. City of Everett*,
    929 F.3d 657 (9th Cir. 2019) ................................................................ 13

*Goto.com, Inc. v. Walt Disney Co.*,
    202 F. 3d 1199 (9th Cir. 2000) ............................................................. 10

*GUI Corp. v. Salazar*,
    No. 09-cv-0920-AG, 2009 WL 10672514 (C.D. Cal. Aug. 11, 2009)
    (Carter, J. for Guilford, J.) ................................................................... 22

*Hendricks v. Bank of America, N.A.*,
    408 F.3d 1127 (9th Cir. 2005) ........................................................ 24, 25

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

*Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*,
   736 F.3d 1239 (9th Cir. 2013) ........................................................... 10, 14, 20, 21

*iFreedom Direct Corp. v. McCormick*,
   No. 16-cv-470-JLS, 2016 WL 9049647 (C.D. Cal. June 15, 2016) .................... 20

*Insurance Corporation of Ireland v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982) ........................................................................ 25

*International Jensen, Inc. v. Metrosound U.S.A., Inc.*,
   4 F.3d 819 (9th Cir. 1993) ................................................................ 10

*Isle of Capri Casinos, Inc. v. Flynt*,
   No. 2:16-cv-06148-CAS, 2016 WL 6495380 (C.D. Cal. Nov. 1, 2016) ........................................................................................ 19

*Kerr Corp. v. N.A. Dental Wholesalers, Inc.*,
   No. 11-cv-0313-DOC, 2011 WL 2269991 (C.D. Cal. June 9, 2011) ...... 14, 16, 17

*King v. Saddleback Junior College District*,
   425 F.2d 426 (9th Cir. 1970) ............................................................. 10

*Li v. Home Depot USA Inc.*,
   No. 12-cv-2151-AG, 2013 WL 12120065 (C.D. Cal. Jan. 7, 2013) ............. 16, 17

*Lindeboom v. Plaster City Digital Post, LLC*,
   No. 08-cv-8077-SVW, 2009 WL 10670660 (C.D. Cal. Apr. 29, 2009) ........................................................................................ 19, 23

*Lydo Enterprises, Inc. v. City of Las Vegas*,
   745 F.2d 1211 (9th Cir. 1984) ........................................................... 15

*Mars, Inc. v. H.P. Mayer Corp.*,
   No. 88-2252, 1988 WL 86314 (D.N.J. Aug. 17, 1988) ............................ 19

*McFly Inc. v. Universal City Studios, Inc.*,
   No. 85-cv-5440, 1985 WL 72058 (C.D. Cal. Oct. 9, 1985) ....................... 22

*Newmark Realty Capital, Inc. v. BGC Partners, Inc.*,
   No. 16-CV-01702-BLF, 2018 WL 2573183 (N.D. Cal. Mar. 30, 2018) ........................................................................................ 12

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558

iii

LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

*Oakland Tribune, Inc. v. Chronicle Publishing Co.*,
762 F.2d 1374 (9th Cir. 1985) ....................................................................... 15, 23

*Playboy Enterprises v. Netscape Communications Corp.*,
55 F. Supp. 2d 1070 (C.D. Cal. 1999).......................................................... 16, 17

*Pollution Denim & Co. v. Pollution Clothing Co.*,
547 F. Supp. 2d 1132 (C.D. Cal. 2007)........................................................ 10, 25

*Pom Wonderful LLC v. Hubbard*,
775 F.3d 1118 (9th Cir. 2014) ............................................................................ 9

*Pom Wonderful LLC v. Pur Beverages LLC*,
No. 13-cv-06917 MMM, 2015 WL 10433693 (C.D. Cal. Aug. 6,
2015) ................................................................................................................. 21

*Protech Diamond Tools, Inc., v. Liao*,
No. 08-cv-3684-SBA, 2009 WL 1626587 (N.D. Cal. June 8, 2009)............. 15, 22

*R. Joseph Licensing, Inc. v. J.L.J., Inc.*,
No. 10-cv-1581 PSQ, 2010 WL 11595789 (C.D. Cal. Aug. 5, 2010) ........... 14, 17

*Ruhrgas AG v. Marathon OilCo.*,
526 U.S. 574 (1999) ......................................................................................... 24

*Scat Enterprises, Inc. v. Chrysler Grp. LLC*,
No. 14-cv-7995-GHK, 2014 WL 12770296 (C.D. Cal. Nov. 3,
2014)................................................................................................................. 23

*Sengoku Works Ltd. v. RMC Internationall, Ltd.*,
96 F.3d 1217, *as modified*, 97 F.3d 1460 (9th Cir. 1996) ................................. 10

*Sid Berk, Inc. v. Uniroyal, Inc.*,
425 F. Supp. 22 (C.D. Cal. 1977) .................................................................. 9, 10

*Sin Kwang Thé v. Rydberg*,
No. 11-cv-6471-GHK, 2012 WL 13009128 (C.D. Cal. Jan. 18,
2012)............................................................................................................ 14, 16

*Suzie's Brewery Co. v. Anheuser-Busch Cos.*,
No. 3:21-CV-178-SI, 2021 WL 472915 (D. Or. Feb. 9, 2021)......................... 14

*Titaness Light Shop, LLC v. Sunlight Supply, Inc.*,
585 F. App'x 390 (9th Cir. 2014)................................................................... 9, 20

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558                                        iv                    Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

*Versa Prods. Co. v. Bifold Co.*,
  50 F.3d 189 (3d Cir. 1995) ................................................................. 19

*Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*,
  No. 4:19-CV-01424-YGR, 2021 WL 254448 (N.D. Cal. Jan. 26,
  2021) ..................................................................................................... 13

*Vital Pharm., Inc. v. PhD Mktg., Inc.*,
  No. 2:20-cv-06745-RSWL, 2020 WL 6545995 (C.D. Cal. Nov. 6,
  2020) ............................................................................................... 16, 17

*Winter v. National Resources Defense Council, Inc.*,
  555 U.S. 7 (2008) ................................................................................. 10

*Zobmondo Entertainment, LLC v. Falls Media, LLC*,
  602 F.3d 1108 (9th Cir. 2010) ............................................................. 11

**Statutes**

15 U.S.C. § 1065 ........................................................................................ 11

15 U.S.C. § 1114 .................................................................................. 10, 11

15 U.S.C. § 1116(a) ................................................................................... 13

15 U.S.C. § 1125(a) ............................................................................. 10, 11

Trademark Modernization Act of 2020 .............................................. 13, 14

**Other Authorities**

Federal Rule of Civil Procedure 12(a)(1)(A)(i) ........................................ 25

Federal Rule of Civil Procedure 65(c) ...................................................... 24

Federal Ruel of Evidence 301 ................................................................... 14

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558                                    v                    Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

This case concerns the very fact-intensive and complex analysis of two companies' uses and rights to the trademark THRIVE.  For purposes of this motion, the operative facts and dates can be simplified as follows:



Le-Vel is the senior user of the trademark THRIVE, which it began using for vitamins on August 24, 2012.  Plaintiff does not challenge Le-Vel's use of THRIVE for vitamins, nor can it, as Le-Vel's use predates Plaintiff's alleged first use (September 5, 2013) of THRIVE for three men's grooming products and the "constructive" first-use date (September 11, 2012) of Plaintiff's trademark application (the validity of which is presently before the U.S. Patent and Trademark Office ("USPTO") Trademark Trial and Appeal Board).  Le-Vel thus has superior common law rights and prior rights over Plaintiff's constructive use.

Le-Vel's priority over Plaintiff is a complete bar to Plaintiff's infringement claims against Le-Vel for its THRIVE SKIN mark for skincare products, as those products fall within the zone of natural product expansion from Le-Vel's vitamins, skin vitamin patches (with nutritional and skin benefits), and supplements.  Having followed the well-worn path of natural expansion into skincare products by its main competitors (e.g., Herbalife, Amway, Shaklee) and other well-known vitamin companies (e.g., GNC, Vitamin Shoppe), Le-Vel's customers and promoters anticipated Le-Vel's expansion into skincare products, especially given that

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558                                    1                        Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Le-Vel's founder previously ran two supplement companies and drove their decisions to expand into skincare products.  Among Le-Vel's very first customers and promoters were numerous customers and/or promoters from such founder's prior supplement and skincare businesses.  The natural path of Le-Vel into skincare is fully addressed by marketing expert Dr. Michael Barone.

Next, the irreparable harm allegedly caused by Le-Vel to Plaintiff cannot be reconciled with Le-Vel's launch of its THRIVE SKIN products with tremendous fanfare (generating sales over ███ million in the first 24 hours) and very open and extensive marketing and sale of such products for *nearly two years* (with sales toppling ██ million) *before* Plaintiff filed this motion.  Plaintiff cannot have been blind to Le-Vel's skincare products until October 2020, as it questionably claims.  Further, Plaintiff conspicuously fails to parse any irreparable harm caused by Le-Vel from the ongoing irreparable harm Plaintiff allegedly suffers from its trademark infringement claims against Thrive Causemetics (currently pending in this court against that LA-based entity) and the many other third parties Plaintiff admits it is attempting to "clear up."  Plaintiff's only "support" for its alleged harm is a biased, pairs-matching survey purporting to show actual confusion, which, as explained by Le-Vel's survey expert, is so utterly flawed and divorced from marketplace reality that it deserves no weight.  Finally, Plaintiff's depiction of Le-Vel as unethical is a cheap-shot.  Le-Vel enjoys a longstanding A+ rating from the BBB (since May 25, 2016), is a respected industry leader on regulatory and legal compliance, and is heavily invested in many worthy causes, such as the Marine Corps Toys for Tots, the National Breast Cancer Foundation, the Hoyt Foundation, and the fight against heartbreaking malnutrition from the world's most desperate regions.

For its part, Le-Vel stands to suffer staggering irreparable reputational and monetary damages, estimated by Le-Vel's damages expert John Plumpe to be ███ million.  Such damages far exceed any harm Plaintiff alleges in its moving papers, which is comprised of presumptive harm and speculative lost goodwill.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

## II.   STATEMENT OF FACTS

### A.   Le-Vel, Its History, and the Evolution of THRIVE

#### 1.   Le-Vel's Mission and Business Model

Le-Vel is a health and wellness lifestyle company founded in the summer of 2012 that offers a wide array of goods, including vitamins (such as capsules, powders, and gels), vitamin skin patches, vitamins for the skin, snacks, and skincare products under the trademark THRIVE.  (Declaration of Drew S. Hoffman, executed March 22, 2021 ("Hoffman Decl.") at ¶ 2.)  Le-Vel formulates all of its THRIVE products with the highest quality and premium ingredients with a single goal in mind:  provide its customers with premium products that help them live a happier and healthier life and look and feel better.  (*Id.* at ¶ 3.)

Le-Vel operates as a direct sales company that sells its THRIVE products directly to consumers through its website and promotes its products primarily through a network of Independent Brand Promoters.  (*Id.* at ¶ 4.)  Unlike the traditional multi-level marketing companies (into which Plaintiff attempts to lump Le-Vel), Le-Vel's promoters do not distribute or re-sell Le-Vel's products, nor do they pay to become Le-Vel promoters.  (*Id.* at ¶ 5.)  Instead, Le-Vel's promoters promote Le-Vel's products by sharing their experience with potential customers.  (*Id.*)  Le-Vel refers to this as "social sharing," which is central to Le-Vel's marketing for all of its products and guides Le-Vel's decisions on new products (i.e., releasing products capable of being "socially shared").  (*Id.*)  Once introduced to Le-Vel (by a promoter or otherwise), customers purchase products directly from Le-Vel after creating an account with Le-Vel.  (*Id.* at ¶ 6.)  Contrary to Plaintiff's description of Le-Vel's business, Le-Vel's promoters receive commissions only if a referred customer purchases Le-Vel's products.  (*Id.* at ¶ 7.)

#### 2.   Le-Vel's Prior Use and Introduction of the THRIVE

Le-Vel's first THRIVE-branded products were introduced in commerce in August 2012.  (*Id.* at ¶¶ 11-13, Exs. 1-3.)  Those products were two THRIVE

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558                                              3                          Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

vitamin capsules, one for men and one for women, and a powdered shake branded as THRIVE for men and women. (*Id.* at ¶ 11.) Since their release in August 2012, these THRIVE vitamins and shakes have been continuously distributed and sold. (*Id.* at ¶¶ 11, 14-15, Exs. 4-8.) Le-Vel's two THRIVE products released in August 2012 had a third component that soon followed, which worked in unity with Le-Vel's other products. (*Id.* at ¶¶ 16-17.) That third product was the THRIVE Derma Fusion Technology ("DFT") skin vitamin patch, a revolutionary concept that combined nutrition with a person's skin. (*Id.* at ¶ 16-18, Exs. 9, 29.)

With the release of Le-Vel's THRIVE DFT, the combination of Le-Vel's THRIVE capsules, shakes, and DFT patches formed Le-Vel's THRIVE EXPERIENCE—a suite of Le-Vel's interconnected core products aimed at providing customers "three easy steps" to reach their fitness goals and live a healthier life and look and feel better. (*Id.* at ¶¶ 19, 21, Ex. 10.) The THRIVE EXPERIENCE has since served as the core of Le-Vel's THRIVE product line and product expansions. (*Id.* at ¶ 20.)

### 3.    The Natural Expansion of the THRIVE Product Line

The THRIVE EXPERIENCE was well-received in the marketplace and achieved rapid commercial success. From the time Le-Vel launched its THRIVE products in August 2012 through September 4, 2013, Le-Vel had already sold ████ million of its THRIVE products nationwide. (*Id.* at ¶ 22.) Product success was based on extremely high product quality, the three-step approach, and novel skin-based nutrition patch. (*Id.*)

Le-Vel's customer base quickly grew based on the THRIVE EXPERIENCE. As Le-Vel's customer base grew, so too did its THRIVE product offerings. (*Id.* at ¶ 23.) After the THRIVE EXPERIENCE product grouping, Le-Vel naturally expanded its THRIVE product line by leveraging its THRIVE umbrella brand, introducing more vitamins, vitamin skin patches, supplements, protein bars, healthy snacks, and skincare products under the THRIVE brand. (*Id.* at ¶¶ 23-31.)

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558                                  4                    Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1      Le-Vel's and its THRIVE brand's tie to skincare dates back to Le-Vel's

2  origins.  One of Le-Vel's founders was the former president of IsXperia and

3  LifeCore Global, two supplement companies that, driven by Le-Vel's founder,

4  naturally expanded into skincare products.  (*Id.* at ¶ 9.)  Not surprisingly, when

5  Le-Vel first introduced its products back in 2012, it did so to numerous former

6  customers and promoters of IsXperia and LifeCore Global, who were familiar with

7  those companies' product offerings, including skincare products.  (*Id.* at ¶ 10.)

8      Le-Vel first intended to add skincare products in the summer of 2017.  (*Id.* at

9  ¶ 44.)  Having previously run supplement companies that expanded into skincare

10  products, Le-Vel's founder was well acquainted with such expansion and the details

11  of introducing skincare products in a supplement company.  (*Id.* at ¶¶ 44, 46.)  And

12  Le-Vel was well aware of its direct vitamin and supplement competitors that had

13  naturally expanded into skincare, as well as other prominent vitamin and supplement

14  retail brands such GNC, Vitamin Shoppe, Isagenix, Herbalife, Amway, and Shaklee.

15  (*Id.*)  When it expanded, Le-Vel was already heavily invested in skin-based and

16  skin-related products, including its THRIVE DFT skin vitamin patches and

17  THRIVE Form skin vitamin.  (*Id.* at ¶¶ 16-18, 26-27, 30, Exs. 9, 11-12, 29.)

18  Le-Vel's consumers (via Le-Vel's marketing materials) were fully aware of the

19  skin-related benefits of those products, with many consumers comparing the

20  benefits of the THRIVE SKIN products with the THRIVE DFT and THRIVE Form

21  products after the THRIVE SKIN launch.  (*Id.* at ¶ 52, Ex. 26.)  Consumers

22  similarly accepted this expansion as natural, as many of Le-Vel's customers and

23  promoters predicted Le-Vel's launch of skincare products *before* it was even

24  announced.  (*Id.* at ¶ 51, Ex. 25.)

25      As with all other new THRIVE products, Le-Vel selected the name THRIVE

26  SKIN to leverage its umbrella THRIVE products mark and the word "SKIN," which

27  was a clever play off Le-Vel's THRIVE DFT patches connecting "skin" to

28  nutritional/skin benefit "care" and the "skincare" products that the name would

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558            5          Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

identify.  (*Id.* at ¶ 48.)  Further still, Le-Vel intentionally tied the launch of its THRIVE SKIN skincare to the enormous success of its THRIVE EXPERIENCE products by introducing a three-step product grouping—THRIVE SKIN Peel exfoliating cream (Step 1), the THRIVE SKIN Reduce facial serum (Step 2), and the THRIVE SKIN Restore skin moisturizer (Step 3).  (*Id.* at ¶ 49, Exs. 21-23.) This mirroring of Le-Vel's immensely successful three-step THRIVE EXPERIENCE was not lost on its consumers, who recognized that very deliberate connection.  (*Id.* at ¶ 50, Ex. 24.)

Le-Vel's brand leverage strategy of introducing skincare under its THRIVE umbrella brand and using SKIN to leverage its skin-based products (e.g., Form and DFT) conformed with expected best marketing practice, as explained in the Expert Report of Dr. Michael J. Barone ("Barone Rprt.").  (Barone Rprt. at ¶¶ 13-32, 40.)

### 4.    Le-Vel's THRIVE and THRIVE SKIN Success

Le-Vel's THRIVE brand is Le-Vel's most important asset.  (Hoffman Decl. at ¶ 24.)  In fact, Le-Vel's consumers and the public commonly know Le-Vel not as Le-Vel, but as THRIVE.  (*Id.* at ¶¶ 24, 48.)  Given the success of its THRIVE EXPERIENCE and THRIVE products, Le-Vel became the fastest direct sales company to reach $1 billion in sales, when it eclipsed that milestone in 2017.  (*Id.* at ¶ 29.)  Le-Vel surpassed $2 billion in sales of its THRIVE products in 2019, and as of March 22, 2021, Le-Vel reached over ▆▆ billion in sales of its THRIVE products.  (*Id.* at ¶ 29.)  As for THRIVE SKIN specifically, Le-Vel sold over ▆▆ million of THRIVE SKIN products in the first 24-hours after release and over ▆▆ million to date.  (*Id.* at 53.)

### 5.    Le-Vel's Favorable Reputation in the Industry

Le-Vel is a leading charitable donor within the health and wellness industry. Since 2015, Le-Vel has donated $1,080,000 to National Breast Cancer Foundation ("NBCF") (one of the largest donors to NBCF in its history); $355,000 to the Hoyt Foundation; $280,000 to the Marine Corps Toys for Tots Foundation; $476,030 to

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558                                      6                    Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Americares for disaster relief; and $100,000 to National Urban League.  (*Id.* at ¶¶ 32-36, 40-41, 42, Exs. 14-17, 19.)  Le-Vel also partnered with Convoy for Hope, Off Their Plate, and Rise Against Hunger, donating hundreds of thousands of THRIVEFIT, THRIVE Activate, and THRIVE Bites products to those struggling during the COVID-19 Pandemic.  (*Id.* at ¶¶ 38-39, Ex. 18.)  With Rise Against Hunger, Le-Vel developed a humanitarian aid product called THRIVE Nourish, sending over 35,000 canisters to developing countries to address severe malnutrition.  (*Id.* at ¶¶ 37-38, Ex. 18.)  Le-Vel has also launched different THRIVE DFT skin patches over the years where proceeds are donated to worthy causes.  (*Id.* at ¶¶ 30-31.)

Ignoring these realities, Plaintiff dedicates much time impugning Le-Vel as having "quickly earned a questionable reputation regarding its products, their effects, and the statements made by its Brand Promoters."  (Dkt. 8-1 at 5-6.)  But Plaintiff's dubious claims that Le-Vel garnered a negative reputation in the industry are false.  First, Plaintiff claims that "numerous" adverse health events were filed against Le-Vel with the FDA.  (Dkt. 8-1 at 5.)  Anybody can file such reports with the FDA irrespective of merit.  Here, one disgruntled individual filed over half of the adverse health reports against Le-Vel.  (*Id.* at ¶ 60.)  Further, Le-Vel has not received an adverse health event in over four and a half years.  (*Id.*)  Second, Plaintiff points to a recent Better Business Bureau ("BBB") case decision against Le-Vel (Dkt 8-1 at 5-5) but omits that Le-Vel has enjoyed an A+ rating with the BBB since May 2016.  (*Id.* at ¶ 61.)  Plaintiff's claim that Le-Vel is non-compliant with any regulations is also categorically false.  In fact, Le-Vel's President was asked by a leading trade magazine to describe the steps Le-Vel takes with respect to regulatory and legal compliance as a "how too" example for industry emulation of Le-Vel's commitment to such compliance.  (*Id.* at ¶ 62.)

**B.     Plaintiff's Junior Use of THRIVE for Men's Grooming**

Despite being purposefully vague about when it first started using its

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558

7

Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1    THRIVE mark (*see* Dkt. 1 at ¶ 18; Dkt. 8-1 at 2; Dkt. 8-2 at ¶¶ 3, 5), Plaintiff

2    allegedly began using its THRIVE mark in commerce on September 5, 2013 at the

3    *earliest* (*see* Declaration of Morgan E. Smith, executed March 22, 2021 ("Smith

4    Decl.") at ¶¶ 13, Ex. 12), *after* Le-Vel had already made over ███ million in sales

5    of its THRIVE vitamins and skin vitamin patches (Hoffman Decl. at ¶ 53).

6    Plaintiff's first use of THRIVE was for a set of three men's grooming products (a

7    pre-shave face wash, a pre-shave shave oil, and a post-shave face balm) all targeted

8    specifically at men.  (*See* Smith Decl. at ¶ 14, Ex. 13.)  Indeed, Plaintiff launched its

9    THRIVE products in connection with the tagline A BETTER WAY TO GROOM

10   and the claim that "[w]e think guys can do better than the stuff that dominates the

11   market for men's grooming."  (*See id.*)

12        While the timeline of Plaintiff's product evolution is murky and necessitates

13   discovery, one thing is clear:  Plaintiff consistently positioned and marketed itself as

14   a *men's* grooming company until *after* Le-Vel naturally expanded into skincare

15   products, including by using its BETTER WAY TO GROOM tagline in marketing

16   and on products through at least 2019 (*see id.* at ¶¶ 14-15, Ex. 13-14), commonly

17   using hashtags like #men, #mensgrooming, and other similar men-related hashtags

18   in its social media through at least September 26, 2019, and more general grooming

19   hashtags like #groomingproducts through June 12, 2020 (only after which Plaintiff

20   transitioned to hashtags related to regenerative skincare) (*see id.* at ¶¶ 17-18, Exs.

21   16-17), and promoting its products as providing "a morning routine for the smoothest

22   shave" at least through December 2, 2018 (*see id.* at ¶ 16, Ex. 15).  While Plaintiff

23   has now re-positioned its business from a men's grooming company targeting men

24   to a skincare company targeting men and women akin to Le-Vel (again, the date of

25   this transition is unknown and requires discovery), such transition was not natural or

26   anticipated given the difficulty of transitioning from a men's to a gender-neutral

27   focus, as explained by marketing expert Dr. Barone.  (Barone Rprt. at ¶¶ 33-39, 41.)

28        Plaintiff also filed a trademark application for the mark THRIVE on

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558                    8                    Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

September 11, 2012, covering "Non-medicated skin care preparations, namely, facial lotions, cleansers and creams, creams and oils for cosmetic use, skin moisturizers; pre-shaving preparations; after shave lotions and creams" in Class 3. (Smith Decl. at ¶ 19, Ex. 18.)  Plaintiff alleges a September 5, 2013, date of first use in commerce in that application.  (*Id.* at ¶ 13, Ex. 12.)  That application matured to Registration No. 4467942 on January 14, 2014 (*id.*), conferring Plaintiff with a September 11, 2012, constructive first use date, which Le-Vel also precedes with its use of THRIVE beginning in August 2012 (Hoffman Decl. at ¶¶ 11-13, Exs. 1-3). Le-Vel has challenged the validity of that application, having petitioned to cancel the resulting registration as void ab initio and for fraud on the USPTO, including because all publicly available material points to a first use date much later than September 2013 (another point that must be examined through discovery) and because Plaintiff was not using THRIVE for general skincare products, as included in Plaintiff's identification of goods when Plaintiff signed its declaration of use. (Smith Decl. at ¶ 20, Ex. 19.)  A copy of Le-Vel's Petition to Cancel is attached to the Smith Declaration as Exhibit 19.  With the validity of Plaintiff's registration at stake, so too are any constructive first use rights it affords.

## III.   ARGUMENT

### A.   The High Standard for Granting a Preliminary Injunction

"A preliminary injunction is an extraordinary and drastic remedy to be granted as an exception rather than as a rule." *Sid Berk, Inc. v. Uniroyal, Inc.*, 425 F. Supp. 22, 28-29 (C.D. Cal. 1977) ("It is the discretionary exercise by the court of a very far-reaching power, 'never to be indulged except in a case clearly demanding it.'") (quotation omitted).  *See also Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) ("'A preliminary injunction is an extraordinary and drastic remedy . . . .'" (quotation omitted).  This drastic remedy "'may only be awarded upon a *clear showing* that the plaintiff is entitled to such relief.'" *Titaness Light Shop, LLC v. Sunlight Supply, Inc.*, 585 F. App'x 390, 391 (9th Cir. 2014)

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558     9     Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

(unpublished) (emphasis added) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "[T]he function of a preliminary injunction [is] to preserve the status quo pending a determination of the action on the merits." *King v. Saddleback Junior Coll. Dist.*, 425 F.2d 426, 427 (9th Cir. 1970) (citation omitted); *Sid Berk*, 425 F. Supp. at 29.

"To obtain a preliminary injunction, [Plaintiff] 'must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest.'" *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013) (quotation omitted).[1]  Given the drastic nature of the remedy, "[t]he existence of any debate or doubts on the record as to the merits of the claim or the power of the court to act will ordinarily bar the granting of a preliminary injunction." *Sid Berk*, 425 F. Supp. at 29 (citations omitted).  In other words, "[t]o doubt is to deny." *Pollution Denim & Co. v. Pollution Clothing Co.*, 547 F. Supp. 2d 1132, 1143 (C.D. Cal. 2007) (citations omitted).

## B.    Plaintiff Is Not Likely to Succeed on the Merits

To prevail on its trademark infringement claims (15 U.S.C. §§ 1114 and 1125(a)), Plaintiff must demonstrate (1) ownership of a valid, protectable trademark; and (2) a likelihood of confusion. *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).  "[I]t is axiomatic in trademark law that the standard test of ownership is *priority of use*." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219, *as modified*, 97 F.3d 1460 (9th Cir. 1996) (emphasis

---

[1] Plaintiff cites to a different standard from the case *Goto.com, Inc. v. Walt Disney Co.*, 202 F. 3d 1199, 1204-05 (9th Cir. 2000). (*See* Dkt. 8-1 at 7.)  It is doubtful this standard still applies after the Supreme Court's decision in *Winter*.  Even if the standard from *GoTo* applies, that should not affect the outcome because it is "'not [a] separate test[] but the outer reaches of a single continuum.'  Essentially the trial court must balance the equities in the exercise of its discretion." *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993) (citation omitted).

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558    10    Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

added).  Plaintiff has not and cannot make this showing.  At the very least, discovery is required before making this highly factual and potentially case-dispositive determination at such an early stage.

### 1.    Le-Vel, Not Plaintiff, Has Prior Rights

The absolute earliest date on which Plaintiff could rely on to establish priority for its claim under 15 U.S.C. § 1114 is September 11, 2012[2]—the filing date of the "intent-to-use" trademark application that issued as Reg. No. 4467942.  (*See* Smith Decl., ¶ 13, 19, Ex. 12, 18.)  *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1111 n.3 (9th Cir. 2010) (plaintiff may establish priority through constructive use back to the intent-to-use application's filing date).  But that date "has no effect on the registrant's rights under the common law, which requires a mark to have been used in commerce before a [protectable] ownership interest in the mark arises." *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006).  Thus, Plaintiff's priority date for purposes of its common-law trademark infringement claim (15 U.S.C. § 1125(a)) is September 5, 2013[3] at the *earliest*.

Whatever date is used and regardless of whether Plaintiff can establish a likelihood of confusion between the parties' marks, Le-Vel has priority.  (*See* timeline attached as Ex. 1 to the Smith Decl.)  Le-Vel's priority of rights based on its use of THRIVE for vitamins since August 2012 is a complete defense to all of Plaintiff's claims.[4]  *Brookfield*, 174 F.3d at 1047 (senior user has the right to enjoin junior users from using confusingly similar marks within the senior user's natural

---

[2] This date assumes that Plaintiff's registration is valid and remains in force.  Le-Vel has challenged the validity of such registration before the USPTO Trademark Trial and Appeal Board, seeking cancellation.  (*See* Smith Decl., ¶ 20, Ex. 19.)

[3] This date is suspect, given that Plaintiff has publicly stated it did not come to market until 2014.  (Smith Decl., ¶ 20, Ex. 19.)

[4] The fact that Plaintiff's registration is incontestable is not a bar to Le-Vel's defense of priority.  15 U.S.C. § 1065.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558          11          Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

zone of expansion).  The zone of natural expansion doctrine means that the senior user of a mark "has rights not only for the [products] it actually provides but also for those into which it *might reasonably expand in the future*."  *Newmark Realty Cap., Inc. v. BGC Partners, Inc.*, No. 16-CV-01702-BLF, 2018 WL 2573183, at *16 (N.D. Cal. Mar. 30, 2018) (emphasis added).  "When a senior user of a mark on product line A expands later into product line B and finds an intervening user, priority in product line B is determined by whether the expansion is 'natural' in that customers would have been confused as to source or affiliation at the time of the intervening user's appearance."  *Brookfield*, 174 F.3d at 1051 (9th Cir. 1999) (citation omitted).

Such is the case here, as Le-Vel (the senior user) has been using THRIVE for vitamins since at least August 2012 and skincare products squarely fall within its zone of natural expansion.  That expansion was evident from the very start, as Le-Vel's founder previously ran supplement companies that he expanded into skincare products, and numerous of Le-Vel's first customers and promoters were acquainted with its founder's past involvement in supplement companies that expanded into skincare.  (Hoffman Decl. at ¶ 9-10, 46.)  Further, many direct supplement competitors and leading supplement brands have long occupied the skincare space.  (*Id.* at ¶ 44; Smith Decl., ¶¶ 3-12, Exs. 2-11; Barone Report at ¶ 32.)  Next, Le-Vel's THRIVE umbrella brand was naturally positioned to expand to skincare, especially given its highly successful skin vitamin patches combining nutrition with a person's skin—an overlap many consumers recognized after THRIVE SKIN launched.  (Hoffman Decl. at ¶ 50, Ex. 24.)  Not surprisingly, Le-Vel's customers and promoters anticipated Le-Vel's skincare launch before it was announced, establishing that consumers expected this natural transition.  (*Id.* at ¶ 51, Ex 25.)  And based on a comprehensive analysis of the relevant marketplace and Le-Vel's brand, products, and customers, marketing expert Dr. Barone concluded that Le-Vel's expansion into skincare was, indeed, a natural and

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558       12       Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1  anticipated transition.  (Barone Rprt. at ¶¶ 13-32, 40.)

2       Without priority, Plaintiff cannot show that it is likely to succeed on the merits

3  of its trademark infringement claims.  At a minimum, Le-Vel's natural product

4  expansion from supplements to skincare raises material questions over whether

5  Plaintiff is likely to succeed on the merits, especially given questions surrounding

6  Plaintiff's migration from niche men's grooming products into unisex skincare that

7  Plaintiff conspicuously omits to mention in its moving papers.  (*Id.* at ¶¶ 33-39, 41.)

8  Plaintiff's failure to show this factor alone warrants denial of its motion.  *Edge v. City*

9  *of Everett*, 929 F.3d 657, 663 (9th Cir. 2019) ("Likelihood of success on the merits

10  is the most important factor; if a movant fails to meet this threshold inquiry, we need

11  not consider the other factors.") (citation omitted).

12       **C.     Plaintiff Cannot Show Irreparable Harm**

13            **1.     Le-Vel Overcomes Any Presumed Irreparable Harm**

14       Plaintiff asserts that it is entitled to a presumption of irreparable harm upon a

15  finding of likelihood of success on the merits based on the recently passed

16  Trademark Modernization Act of 2020 (the "TMA").  (Dkt. 8-1 at 9.)  But it is less

17  than clear whether the particular amendment applicable here (15 U.S.C. § 1116(a))

18  went into effect on December 27, 2020, or goes into effect on *December 27, 2021.*

19  (*See*, *e.g.*, Smith Decl., ¶ 21, Ex. 20 ("Some parts of the TMA, such as the

20  provisions for ex parte reexamination, become effective a year from signing, on

21  December 27, 2021.  Other provisions, such as the statutory amendment concerning

22  the presumption of irreparable harm . . . do not specify an effective date and may be

23  left to the courts to decide.").)  No courts in this District have weighed in on this

24  issue.  In fact, only two courts have even discussed the issue since the TMA was

25  passed.  In one case, the Northern District of California mentioned in a footnote that

26  the TMA "only reinforce[d] the appropriateness of a permanent injunction" after a

27  full trial on the merits.  *Vineyard House, LLC v. Constellation Brands U.S.*

28  *Operations, Inc.*, No. 4:19-CV-01424-YGR, 2021 WL 254448, at *14 n.16 (N.D.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558                         13                  Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1  Cal. Jan. 26, 2021).  In the other case, the District of Oregon applied the

2  presumption (which the defendant could not overcome) to preliminarily enjoin

3  Anheuser Busch from advertising that its hard seltzer was the "first" or "only"

4  USDA organic seltzer when another company had in fact obtained USDA organic

5  certification first.  *Suzie's Brewery Co. v. Anheuser-Busch Cos.*, No. 3:21-CV-178-

6  SI, 2021 WL 472915, at *1 (D. Or. Feb. 9, 2021).

7          Given that the TMA may not be the operative law for another nine months,

8  prudence counsels for applying current Ninth Circuit standards requiring irreparable

9  harm to be established for purposes of this motion for drastic interim relief.  In the

10  Ninth Circuit, "[g]one are the days when '[o]nce the plaintiff in an infringement

11  action has established a likelihood of confusion, it is ordinarily presumed that the

12  plaintiff will suffer irreparable harm if injunction relied does not issue.'"  *Herb*

13  *Reed*, 736 F.3d at 1250 (citations omitted).  Rather, "[t]hose seeking injunctive relief

14  must proffer evidence sufficient to establish a likelihood of irreparable harm."  *Id.* at

15  1251.  *See also Kerr Corp. v. N.A. Dental Wholesalers, Inc.*, No. 11-cv-0313-DOC

16  (CWx), 2011 WL 2269991, at *2 (C.D. Cal. June 9, 2011) (the plaintiff "cannot

17  evade its burden to demonstrate a likelihood of irreparable injury even if it

18  established a likelihood of success on the merits"); *Sin Kwang Thé v. Rydberg*, No.

19  11-cv-6471-GHK (JCGx), 2012 WL 13009128, at *2 (C.D. Cal. Jan. 18, 2012)

20  ("[I]rreparable harm can no longer be presumed in copyright or trademark

21  infringement cases.") (citations omitted).

22          Even assuming *arguendo* that Plaintiff is entitled to a presumption of

23  irreparable harm (it is not), Le-Vel can rebut that presumption, *see* Fed. R. Evid.

24  301, including by showing that Plaintiff long-delayed in seeking a preliminary

25  injunction.  *See R. Joseph Licensing, Inc. v. J.L.J., Inc.*, No. 10-cv-1581 PSQ

26  (CWx), 2010 WL 11595789, at *2 (C.D. Cal. Aug. 5, 2010) ("Even where that

27  presumption applies, however, a defendant may rebut it by demonstrating that the

28  plaintiff unduly delayed in bringing its motion for a preliminary injunction.");

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558                                   14                    Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1   *Protech Diamond Tools, Inc., v. Liao*, No. 08-cv-3684-SBA, 2009 WL 1626587, at

2   *6 (N.D. Cal. June 8, 2009) ("Plaintiff's undue delay in filing its preliminary

3   injunction motion rebuts its assertion of irreparable injury.").

4        As detailed below, Plaintiff fails to offer and cannot offer sufficient evidence

5   to establish a likelihood of irreparable harm, and Plaintiff's motion must be denied.

6   And even if irreparable harm is presumed, Plaintiff's near two-year delay in seeking

7   a preliminary injunction from the time Le-Vel first introduced its THRIVE SKIN

8   products rebuts the presumption and warrants denial of Plaintiff's motion.

9            **a.**      **Plaintiff's Delay Belies Irreparable Harm**

10       "Irreparable injury has been defined as that injury which is certain and great."

11  *Coffee Dan's Inc. v. Coffee Don's Charcoal Broiler*, 305 F. Supp. 1210, 1216 (N.D.

12  Cal. 1969) (citation omitted).  Plaintiff's delay of nearly two years in seeking a

13  preliminary injunction undercuts any claim that Plaintiff will suffer irreparable

14  harm.  "A preliminary injunction is sought upon the theory that there is an urgent

15  need for speedy action to protect the plaintiff's rights.  By sleeping on its rights a

16  plaintiff demonstrates the lack of need for speedy action . . . ."  *Lydo Enters., Inc. v.*

17  *City of Las Vegas*, 745 F.2d 1211, 1213-14 (9th Cir. 1984) (citations omitted).   In

18  other words, an "unexplained delay in seeking 'emergency' injunctive relief

19  undercuts a claim that an injunction is necessary to prevent immediate and

20  irreparable injury."  *Dahl v. Swith Distrib., Inc.*, No. 10-cv-00551-SJO (RZx), 2010

21  WL 1458957, at *3 (C.D. Cal. Apr. 1, 2010) (citation omitted).  Indeed, "delay

22  alone [may be] sufficient to undermine [a] [p]laintiff's claim of immediate,

23  irreparable harm."  *Protech Diamond Tools*, 2009 WL 1626587, at *6.  *See also*

24  *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985)

25  (affirming denial of preliminary injunction based on delay alone, without assessing

26  the likelihood of success on the merits).

27       For example, courts in this and other districts have found delays as short as

28  *two to three months* in seeking preliminary injunctive relief sufficient to show that a

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  plaintiff is not entitled to such drastic relief.  *See Vital Pharm., Inc. v. PhD Mktg.,*

2  *Inc.*, No. 2:20-cv-06745-RSWL (JCx), 2020 WL 6545995, at *8 (C.D. Cal. Nov. 6,

3  2020) (two-month delay weighed against irreparable harm, preliminary injunction

4  denied); *Li v. Home Depot USA Inc.*, No. 12-cv-2151-AG (RNBx), 2013 WL

5  12120065, at *3 (C.D. Cal. Jan. 7, 2013) (three-month delay weighed against

6  irreparable harm, preliminary injunction denied ); *AK Metals, LLC v. Norman Indus.*

7  *Materials, Inc.*, No. 12-cv-2595-IEG (WVG), 2013 WL 417323, at *10 (S.D. Cal.

8  Jan. 31, 2013) (two-month delay weighed against irreparable harm, preliminary

9  injunction denied).[5]

10       Here, Plaintiff's delay in seeking a preliminary injunction against Le-Vel's

11  THRIVE SKIN skincare name far exceeds delays previously found sufficient to

12  deny motions for preliminary injunction.  Specifically, Le-Vel openly and

13  notoriously introduced its THRIVE SKIN products *nearly two years* before Plaintiff

14  filed its preliminary injunction on *March 5, 2021.*

15       Notably, Plaintiff does not state when it first learned of Le-Vel—only that it

16  sent a cease-and-desist letter to Le-Vel on October 27, 2020 "[s]hortly after"

17  learning of Le-Vel's THRIVE SKIN products.  (Dkt. 8-1 at 8.)  Given that a party's

18  delay in seeking a preliminary injunction can dispositively rule out such relief,

19  Plaintiff's failure to provide this crucial fact is reason enough to deny Plaintiff's

20  request.  It is highly unlikely that Plaintiff was unaware of Le-Vel's THRIVE SKIN

21  products shortly after launch, as Le-Vel heavily and publicly promoted that a new

22  product would be released in April 2019.  (Hoffman Decl. at ¶ 47.)  In April 2019,

---

[5] *See also Playboy Enters. v. Netscape Commuc'ns Corp.*, 55 F. Supp. 2d 1070, 1080, 1090 (C.D. Cal. 1999) (five-month delay demonstrated lack of irreparable harm, preliminary injunction denied); *Sin Kwang*, 2012 WL 13009128, at *8 ("A delay in bringing an action of even a few months weighs against injunction relief"; denying preliminary injunction); *Kerr*, 2011 WL 2269991, at *3 ("Kerr cannot plausibly assert that it faces irreparable injury because of NAD when it demonstrated little urgency in its seeking a preliminary injunction.").

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558                                    16                        Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

the THRIVE SKIN product was released at Le-Vel's annual THRIVEPALOOZA event attended by thousands of Le-Vel promoters and customers and was heavily advertised on Le-Vel's social media.  (*Id.*)  Le-Vel spent over ■ million advertising its April 2019 THRIVEPALOOZA event, with over ■ dedicated specifically to the launch and branding of THRIVE SKIN.  (*Id.*)  What's more, Le-Vel sold over ■ million worth of its THRIVE SKIN within 24 hours of launch.  (*Id.* at ¶ 53.) Since its launch, Le-Vel has sold over ■ million worth of its THRIVE SKIN products.  (*Id.*)  It strains credulity for Plaintiff to claim that it took nearly a year and half for it to learn of THRIVE SKIN, given Le-Vel's significant promotion and the instant success of such products.  This is especially true considering Plaintiff now claims that Le-Vel's THRIVE SKIN products have caused and will continue to cause it irreparable harm.  *See R. Joseph Licensing*, 2010 WL 11595789, at *3 (finding plaintiff's excuse that it was unaware of defendants' allegedly infringing mark earlier when "[d]efendants had already spent at least $5 million promoting their [allegedly infringing] brand in a manner readily observable to anyone interested in monitoring the extent of [d]efendants' business activity" insufficient to justify delay; denying preliminary injunction).  Plaintiff's belated claims of devastating and imminent injury are little more than "tactical maneuvering," unworthy of credible merit.  *See Century Time Ltd. v. Interchron Ltd.*, 729 F. Supp. 366, 368 (S.D.N.Y. 1990) (denying preliminary injunction after four-month delay).

Even assuming Plaintiff learned of Le-Vel in October 2020, it still delayed *five months* before seeking a preliminary injunction, which is still sufficient to deny Plaintiff's motion.  *See Playboy*, 55 F. Supp. 2d at 1080, 1090 (five-month delay); *Vital Pharm.*, 2020 WL 6545995, at *8 (two-month delay); *Li*, 2013 WL 12120065, at *3 (three-month delay); *AK Metals*, 2013 WL 417323, at * 10 (two-month delay).

To the extent Plaintiff excuses its delay because it sought to resolve the matter without court intervention, that too fails.  *See Kerr*, 2011 WL 2269991, at *3 ("[Plaintiff] defends its delay, insisting that it was 'diligently' working to resolve the

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558                    17                    Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1  matter through conversations with NAD and through its own investigations . . . .

2  [Plaintiff] must be prepared to deal with the consequences of its own litigation

3  strategies.  [Plaintiff] has not convinced the Court that the extraordinary remedy of

4  an injunction is warranted to protect it from any irreparable harm following its long

5  delay in seeking an injunction."); *AK Metals*, 2013 WL 417323, at *10 ("[C]ounsel

6  does not explain how the settlement negotiations affected any potential harm

7  suffered by his client.  Certainly, Plaintiff would have continued to suffer the harm

8  that it alleges it now suffers in the weeks that the negotiations were ongoing.

9  Plaintiff also could not have assumed that settlement negotiations would be

10  successful, thereby negating the need for a TRO and preliminary injunction.").

11      Perhaps most telling is that Plaintiff has sued another entity—Thrive

12  Causemetics—over its use of THRIVE for skincare products and *never sought a*

13  *preliminary injunction*.  (Smith Decl. at ¶ 22, Ex. 21.)  Nor does Plaintiff even seek

14  *any injunction* stopping Thrive Causemetics from using THRIVE; rather, if Plaintiff

15  succeeds in that case, Thrive Causemetics would be "permitted to continue to use

16  the complete term THRIVE CAUSEMETICS—with CAUSEMETICS in equally-

17  sized and equally visible font to THRIVE—solely on color cosmetic products."

18  (*Id.*)  Plaintiff is apparently content to allow Thrive Causemetics to continue its use

19  of THRIVE for cosmetic products during the pendency of that case, and it cannot

20  now claim that Le-Vel's use of THRIVE SKIN is so injurious as to warrant a

21  preliminary injunction here.

22              **2.      No Actual Confusion Despite Two Years of Coexistence**

23      Plaintiff's sole evidence of actual confusion is a survey purportedly showing a

24  55.6% rate of confusion between Plaintiff's THRIVE mark and Le-Vel's THRIVE

25  SKIN mark.  (Dkt. 8-1 at 17.)  But, as fully detailed in the Expert Rebuttal Report of

26  Sarah Butler, Plaintiff's survey was a biased matching exercise and is therefore

27  unreliable evidence of any alleged likelihood of confusion, particularly because

28  Le-Vel's product was shown void of the real-world context in which consumers

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558

18

Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1    would encounter Le-Vel's mark as tested.  (Expert Report of Sarah Butler ("Butler

2    Rprt.") at ¶¶ 10, 48.)  As such, Plaintiff's sole "support" of actual confusion is

3    fatally flawed and should be given little to no weight.  *Isle of Capri Casinos, Inc. v.*

4    *Flynt*, No. 2:16-cv-06148-CAS (MRWx), 2016 WL 6495380, at *6-7 (C.D. Cal.

5    Nov. 1, 2016) (survey showing 31.5% net confusion was "entitled to little weight

6    because it did not replicate marketplace conditions"; denying preliminary

7    injunction).

8         Plaintiff offers no additional evidence of actual confusion outside of its

9    flawed survey.  Given that Le-Vel's allegedly infringing THRIVE SKIN products

10   have been on the market for *nearly two years*, Plaintiff's failure to identify *any*

11   alleged instances of actual confusion further weighs against finding irreparable

12   harm.  *See Lindeboom v. Plaster City Digit. Post, LLC*, No. 08-cv-8077-SVW

13   (JTLx), 2009 WL 10670660, at *8, 12 (C.D. Cal. Apr. 29, 2009) (finding lack of

14   actual confusion despite four years of coexistence weighed against likelihood of

15   confusion and denying preliminary injunction).[6]

16              **3.    Plaintiff's Alleged Harm Is Unfounded and Speculative**

17        Plaintiff offers no *evidence* of harm as a result of Le-Vel's use of THRIVE

18   SKIN, only conjecture that Le-Vel "is impairing [Plaintiff's] control over its

19   reputation" and its "goodwill[] and customer base" will "suffer a significant degree"

20   "if a preliminary injunction is not granted."  (Dkt. 8-1 at 22-23.)  But Plaintiff's

21   speculative musings cannot and do not establish irreparable harm.  *Caribbean*

22   _____

23   [6] *Versa Prods. Co. v. Bifold Co.*, 50 F.3d 189, 205 (3d Cir. 1995) (holding that "[i]f

24   a defendant's product has been sold for an appreciable period of time without

     evidence of actual confusion, one can infer that continued marketing will not lead to

25   consumer confusion in the future."); *Mars, Inc. v. H.P. Mayer Corp.*, No. 88-2252,

26   1988 WL 86314, at *2 (D.N.J. Aug. 17, 1988) (that "defendants have been

     distributing [the product in question] for approximately six months without any

27   evidence of actual confusion occurring" weighed against a likelihood of success on

28   the merits; court denied preliminary injunction).

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558          19          Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1   *Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("[s]peculative

2   injury does not constitute irreparable injury sufficient to warrant granting a

3   preliminary injunction").  *See also iFreedom Direct Corp. v. McCormick*, No. 16-

4   cv-470-JLS (KESx), 2016 WL 9049647, at *5 (C.D. Cal. June 15, 2016) ("Although

5   'evidence of loss of control over business reputation and damage to goodwill could

6   constitute irreparable harm,' the moving party may not 'rely[] on unsupported and

7   conclusory statements regarding harm [the party] *might* suffer.'") (quoting *Herb*

8   *Reed*, 736 F.3d at 1250).  Indeed, in the seminal Ninth Circuit case *Herb Reed*, the

9   court explicitly rejected speculative arguments about loss of control over business

10  reputation or damage to goodwill as simply "pronouncements . . . grounded in

11  platitudes rather than evidence." 736 F.3d at 1250.

12      In *iFreedom Direct*, the court denied the plaintiff's motion for preliminary

13  injunction because it offered only "unsupported and conclusory statements

14  regarding harm [it] *might* suffer."  2016 WL 9049647, at *5.  Specifically, like

15  Plaintiff here, the *iFreedom* plaintiff "produce[d] no *evidence* that (1) its customers

16  know of or are confused by Defendants' services or advertising, [and]

17  (2) [d]efendants' alleged infringement has negatively impacted its business

18  reputation or goodwill." *Id.*  Similarly, the Ninth Circuit affirmed the denial of a

19  preliminary injunction because "[t]he allegations of harm in the record [were]

20  conclusory and speculative" where the plaintiff "simply asserted to the district court

21  that its goodwill and reputation would be irreparably harmed because [defendant's]

22  products were being sold by a website that supposedly catered to marijuana growers,

23  while Sunlight had worked hard to ensure that its products were not marketed to

24  marijuana growers." *Titaness Light Shop*, 585 F. App'x at 391.

25      So too here.  Plaintiff offers no *evidence* that Le-Vel's use of THRIVE SKIN

26  is actually causing Plaintiff any harm, a hole that is particularly significant here

27  because Le-Vel's THRIVE SKIN products have been on the market for *nearly two*

28  *years* with substantial publicity, marketing, and sales.  Were there a true conflict,

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558

20

Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

one would expect some harm to have already manifested.  But as noted above, there has been no evidence of actual confusion, and Plaintiff's survey purportedly showing confusion did not properly replicate the actual marketplace realities of purchase and thus deserves no weight.  Nor has there been any *actual* harm to Plaintiff's business or reputation.  Rather, Plaintiff points solely to its own speculation that such harm *might* occur based on misleading platitudes about Le-Vel's allegedly poor reputation and use of synthetic ingredients (as opposed to Plaintiff's allegedly natural ingredients).  (Dkt. 8-1 at 22-23.)  Without *evidence* that Plaintiff has actually suffered harm to its goodwill or reputation, Plaintiff's mere speculation is wholly insufficient to demonstrate irreparable harm.  *See, e.g.*, *Pom Wonderful LLC v. Pur Beverages LLC*, No. 13-cv-06917 MMM (CWx), 2015 WL 10433693, at *3 (C.D. Cal. Aug. 6, 2015) ("[H]arm that is 'merely speculative' will not support injunctive relief.").

Finally, to the extent there has been any harm, it can be measured by damages, making a preliminary injunction inappropriate.  *Dahl*, 2010 WL 1458957, at *11 (denying preliminary injunction because "Plaintiff [] failed to provide any evidence of the irreparable harm he will suffer [and] any harm to his sales volume that Plaintiff may suffer can be remedied with monetary damages in the event Plaintiff is successful at trial").  *See also Herb Reed*, 736 F.3d at 1249-50 ("[Plaintiff] must 'establish that remedies available at law, such as monetary damages, are inadequate to compensate' for the injury arising from [defendant's] continuing allegedly infringing use of the mark.") (citation omitted).  Here, Plaintiff has not established that monetary remedies are inadequate to compensate it ultimately succeed at trial, and Le-Vel can fully pay any monetary award should Plaintiff succeed.  (Declaration of John G. Plumpe ("Plumpe Rprt.") at ¶¶ 8, 47-56.)

## D.   A Preliminary Injunction Will Irreparably Harm Le-Vel, Decidedly Tipping the Balance of Hardship in Le-Vel's Favor

"If granting a preliminary injunction would cause a defendant financial loss

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558                                    21                        Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1   and damage to business reputation which would significantly outweigh any likely

2   damage to plaintiff, the hardships balance in favor of defendants." *McFly Inc. v.*

3   *Universal City Studios, Inc.*, No. 85-cv-5440, 1985 WL 72058, at *13 (C.D. Cal.

4   Oct. 9, 1985) (citation omitted).  For its part, Plaintiff offers little substantive

5   argument concerning the balance of hardships, merely reiterating that the public is

6   likely to be confused over Le-Vel's use of THRIVE SKIN.  (Dkt. 8-1 at 23-24.)  As

7   explained above, Plaintiff's claims of irreparable harm are unfounded, speculative,

8   and belied by its extensive delay in seeking a preliminary injunction.  Moreover,

9   Plaintiff's claim that it is irreparably harmed by alleged confusion "cuts both ways

10  [in the balance of hardship inquiry], since such confusion also inures to the

11  detriment of [Le-Vel] to the extent that it is determined that [Le-Vel] ha[s the]

12  exclusive right to use [THRIVE]" as a result of Le-Vel's priority of use and natural

13  zone of product expansion. *See Protech Diamond Tools*, 2009 WL 1626587, at *7.

14       Le-Vel, on the other hand, will suffer severe and immediate hardship if a

15  preliminary injunction issues.  Le-Vel's damages expert John Plumpe estimates

16  Le-Vel's monetary damages, should an injunction issue, to be ██████ million

17  (Plumpe Rprt. at ¶¶ 8, 22-46, 56), which greatly exceed any harm alleged by

18  Plaintiff.  In addition to the pecuniary harm Le-Vel would suffer if forced to stop

19  sales of its THRIVE SKIN products, an injunction would also inflict a series of

20  extensive reputational harms, most of which can neither be quantified nor undone,

21  e.g., loss of goodwill and damage to its reputation, loss of Brand Promoters, and

22  delay in international expansion opportunities.  (*Id.* at ¶¶ 38-44.)  This is more than

23  sufficient to tip the balance of hardships sharply in Le-Vel's favor. *See GUI Corp.*

24  *v. Salazar*, No. 09-cv-0920-AG (RNBx), 2009 WL 10672514, at *2 (C.D. Cal. Aug.

25  11, 2009) (Carter, J. for Guilford, J.) (finding balance of hardships weighed against

26  plaintiff seeking preliminary injunction where interim injunction would "force

27  [d]efendants to cancel the planned Caged Ink Tattoo Expo mere days before it is

28  scheduled," which would "surely [cause] significant financial losses and injuries to

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558                    22                    Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1  [defendants'] professional reputation."); *Scat Enters., Inc. v. Chrysler Grp. LLC*,

2  No. 14-cv-7995-GHK (MANx), 2014 WL 12770296, at *6 (C.D. Cal. Nov. 3, 2014)

3  (balance of hardships favored defendant where plaintiff "failed to demonstrate any

4  concrete harm" and defendant "ha[d] already invested a substantial amount of time

5  and money into re-launching its Scat Pack brand and into its SEMA presentation").

6       Plaintiff suggests that any harm to Le-Vel from an injunction should be

7  discounted because it brought the injury upon itself through its "knowing

8  infringement." (Dkt 8-1 at 23-24.) But as explained above, Le-Vel cannot

9  "knowingly infringe" Plaintiff's alleged rights because *Le-Vel*, not Plaintiff, has

10  *prior rights* in the mark THRIVE as a result of Le-Vel's natural zone of expansion.

11       Plaintiff further contends that any harm to Le-Vel will be minimal because

12  Le-Vel's THRIVE SKIN products are "relatively new." (Dkt. 8-1 at 24.)

13  Considering the extensive monetary and reputational damages Le-Vel will suffer if

14  this injunction issues, Plaintiff's unsupported claim plainly lacks merit. Regardless,

15  far from "relatively new," Le-Vel's THRIVE SKIN products have been on the

16  market for *nearly two years* and have amassed ▮▮▮▮ *million* in sales.

17      **E.**    **A Preliminary Injunction Is Not in the Public's Interest**

18       "The basic function of a preliminary injunction is to preserve the *status quo*

19  *ante litem* pending a determination of the action on the merits." *Oakland Tribune*,

20  762 F.2d at 1377. "In trademark cases, the public's interest is in the right 'not to be

21  deceived or confused.'" *Lindeboom*, 2009 WL 10670660, at *12 (citation omitted).

22  Here, enjoining Le-Vel to prevent confusion serves no purpose because there has

23  been none (despite *nearly two years* for such confusion to occur). Because Plaintiff

24  has not demonstrated any cognizable risk of confusion—the primary public

25  interest—and because Le-Vel is the prior user of THRIVE based on its natural zone

26  of expansion, the public interest will be served, and the status quo maintained, by

27  denial of Plaintiff's motion for a preliminary injunction.

28

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558     23     Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### F.     Le-Vel Is Entitled to a Bond of $1,000,000

Pursuant to Fed. R. Civ. P. 65(c), the Court may issue a preliminary injunction "only if [Plaintiff] gives security in an amount that the court considers proper to pay the costs and damages sustained" by Le-Vel if it is wrongfully enjoined.  Fed. R. Civ. P. 65(c).  The purpose of the bond requirement is "to protect the enjoined party's interest in the event that future proceedings show the injunction issued wrongfully."  *Apple, Inc. v. Samsung Elecs. Co.*, 877 F. Supp. 2d 838, 918 (N.D. Cal. 2012) *rev'd on other grounds* 678 F.3d 1314 (Fed. Cir. 2012) (citation and internal quotations omitted.) As discussed above, Le-Vel risks losing millions of dollars in revenue if an injunction is granted and will be forced to spend significant sums if it is forced to repackage and rebrand its THRIVE SKIN products.  Plaintiff urges this court to set a nominal bond solely because of its own financial hardship (Dkt. 8-2 at ¶ 28), ignoring the substantial harm Le-Vel would suffer should a preliminary injunction issue after Plaintiff's nearly two-year delay in seeking such relief.  But "[b]ecause the amount of the bond is an upper limit on an injured party's redress for a wrongful injunction, . . . 'district courts should err on the high side.'"  *Apple, Inc*., 877 F. Supp. 2d at 918 (quoting *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir. 2000)).

Given the massive volume of sales at stake here, and because Le-Vel is fully capable of paying any monetary damages later found to have been caused by its alleged infringement, the Court should require a bond of $1,000,000.

### G.     The Court Lacks Personal Jurisdiction and Venue

Plaintiff must prove that this Court has both personal jurisdiction and venue over Le-Vel before the Court can consider the merits of its motion.  *Hendricks v. Bank of America, N.A.*, 408 F.3d 1127, 1135 (9th Cir. 2005) (holding that where defendant timely raised jurisdiction and venue defenses, "the district court *had to consider the defenses as a logical predicate to its preliminary injunction order"*) (internal cites and quotation marks omitted; emphasis added); *Ruhrgas AG v.*

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558                                24                     Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

*Marathon OilCo.,* 526 U.S. 574, 584 (1999) (without personal jurisdiction "the court is powerless to proceed to an adjudication." (internal quotation marks and ellipsis omitted)). Le-Vel will be denied due process if the Court adjudicates the merits of Plaintiff's motion without first determining whether it has personal jurisdiction over Le-Vel. *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("The requirement that a court have personal jurisdiction flows . . . from the Due Process Clause.")

Plaintiff served its complaint and preliminary injunction motion on March 9, meaning Le-Vel's motions to dismiss for lack of personal jurisdiction and improper venue are due on March 30. (Dkt. 18; Fed. R. Civ. P. 12(a)(1)(A)(i).) Plaintiff has refused to continue the hearing on its motion so that Le-Vel's motions could first be prepared, filed, and decided. Le-Vel respectfully requests that this Court first decide Le-Vel's forthcoming motion to dismiss (which Le-Vel will file on March 30) in accord with *Hendricks* and due process.[7]

## IV.  CONCLUSION

"To doubt is to deny." *Pollution*, 547 F. Supp. 2d at 1143. For the foregoing reasons, Plaintiff's motion for preliminary injunction should be denied.

DATED:  March 22, 2021                KENDALL BRILL & KELLY LLP

By:    /s/ Alan Jay Weil
        Alan Jay Weil
        Attorney for Specially Appearing
        Defendant Le-Vel Brands, LLC

---

[7] Le-Vel has timely raised its personal jurisdiction and venue defenses at the earliest opportunity – even before its earliest deadline for filing its Rule 12(b) motion. *Hendricks*, *supra*, 408 F.3d at 1135 (holding no waiver of those defenses where "raised in a timely manner in its first responsive pleading"). Le-Vel discussed these issues in its Ex Parte Application for an extension of time (Dkt. 12) and will fully brief these defenses in its Rule 12(b)(2) and (3) motions filed on March 30.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558                    25                Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION