Stephen McArthur (State Bar No. 277712)
stephen@smcarthurlaw.com
Thomas Dietrich (State Bar No. 254282)
tom@smcarthurlaw.com
THE MCARTHUR LAW FIRM, P.C.
9465 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90212
Telephone: (323) 639-4455

*Attorneys for Plaintiff Thrive Natural Care, Inc.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| THRIVE NATURAL CARE, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LE-VEL BRANDS, LLC,<br><br>　　　　Defendant. | Case No. 2:21-cv-02022-DOC-KES<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION FOR LEAVE TO FILE A SURREPLY**<br><br>Hon. David O. Carter.<br>United States District Court Judge<br>**Hearing Date:** None requested<br>**Courtroom:** 9D |

## Introduction

In its second *ex parte* application in as many weeks, Defendant Le-Vel Brands, LLC ("Le-Vel") is trying to add argument via a surreply that it has no excuse for failing to include in its opposition to Plaintiff Thrive Natural Care, Inc.'s ("Thrive") preliminary injunction motion (the "Motion"). The Court should reject Le-Vel's belated attempt at supplemental briefing because: (1) Thrive did not raise any new arguments on its own but rather simply responded to arguments Le-Vel raised in its opposition; (2) Le-Vel could have raised a market penetration argument in its opposition but inexplicably chose not to; and (3) Thrive did not misstate applicable Ninth Circuit law on the issue of market penetration.

Le-Vel knew and has always known what Thrive's priority date is the date its trademark registration was filed, and Le-Vel cannot establish prior market penetration as necessary to establish any common law rights. That Le-Vel chose not to make any argument regarding market penetration in its response brief is a problem that does not warrant allowing it to submit a late reply now. Finally, the Court should not forget that Le-Vel did not start selling skincare products until April 2019—almost seven years after Thrive's trademark application and five years after Thrive's trademark registration. Le-Vel never had prior use rights to any THRIVE mark on skincare products. It is relying on a twisted interpretation of the zone of expansion—which requires prior market penetration—to stretch its free giveaway of vitamins to its own brand promoters into common law rights over lotions.

**I.   The Facts**

Thrive sent Le-Vel a cease-and-desist letter on October 27, 2020, which explained that Le-Vel was infringing on Thrive's registered '942 Mark. [Doc. 8-3, Att. 21 at ECF pp. 167-67] Le-Vel responded that it had allegedly released its THRIVE-branded vitamins in July 2012, and claimed senior use rights over skincare products under the zone of expansion. [*Id.* at ECF p. 168] We now know Le-Vel's assertion it had released any products by July 2012 was not true. With regard to Le-Vel's claim of

1  senior use rights, Thrive followed up several times seeking documentary evidence
2  supporting Le-Vel's allegation of prior use. [*Id*., Att. 22 at ECF pp. 176-78 (follow-up
3  emails on November 30, 2020, December 31, 2020, January 13, 2021, and January 22,
4  2021)] As Thrive noted in its email to Le-Vel, Le-Vel "asserted that Le-Vel is a
5  'senior trademark user' and that it 'introduced its THRIVE-branded products in July
6  2012', prior to Thrive Natural Care's priority date." [*Id*. at ECF p. 176] Despite
7  Thrive's four separate requests for evidence of Le-Vel's purported senior use, Le-Vel
8  provided nothing and never substantively responded. [*Id*. ¶ 27]

       In its opening Motion brief, Thrive fully briefed the issue that it held valid, protectable marks, including the '942 Mark, which Thrive alleged in its Complaint and its Motion that Le-Vel was infringing. [Doc. 8-1 at 10-11] Thrive cited Ninth Circuit case law showing that its ownership of registrations, including the '942 Mark which has been deemed incontestable, establishes that Thrive has an exclusive right to use the THRIVE mark on skincare products. [*Id*.] Thrive had nothing more to argue and no more facts to raise to meet its burden of proving the first element of infringement—that Thrive held valid, protectable rights in the THRIVE marks for skincare products. [*See id*. (citing cases)] Thrive did, however, also point out that Le-Vel had claimed in letters that it had senior use rights but had never provided any evidence to support that claim. [*Id*. at 11] On those facts, Thrive had no obligation to make any further argument regarding Le-Vel's unsupported attorney statement that Le-Vel held senior use rights.

       In its opposition brief, Le-Vel raised as a defense to infringement that it allegedly held senior use rights to THRIVE on vitamins which it tried to stretch to cover skincare products via the zone of expansion test. [Doc. 22 at 1] On page 1 of its Opposition brief, Le-Vel explicitly agreed that Thrive's constructive first use date is September 11, 2012, and alleged that Le-Vel's use of the THRIVE name on vitamins before that date "established Le-Vel thus has superior common law rights and ***prior rights over Plaintiff's constructive use***." [*Id*. (emphasis added)] In its argument, Le-

Vel cited to cases that it re-cites to in its proposed surreply and makes its argument that Thrive could establish constructive first use as of its application filing date but, in Le-Vel's view, that is not appropriate. [*Id*. at 11] Le-Vel then argues: "**Whatever date is used** and regardless of whether Plaintiff can establish likelihood of confusion between the parties' marks, Le-Vel has priority." [*Id*. (emphasis added)] Le-Vel goes on to argue its "priority of rights based on its use of THRIVE for vitamins since August 2012 is a complete defense to all of Plaintiff's claims." [*Id*. at 12] Despite Le-Vel plainly knowing that Thrive's constructive first use date was an issue and relying heavily on the zone of expansion test, Le-Vel never mentioned the words "market penetration" once in its opposition brief. [*See id*.] Le-Vel never offered any of the zip code by zip code market penetration analysis that is required by courts in this District. Le-Vel just missed the issue.

## II.   Le-Vel's Error is Not a Basis to Permit a Surreply

"[D]istrict courts have the discretion to either permit or preclude a surreply." *Hammler v. Dir. of CDCR*, No. 2:17-cv-1949 MCE DB P, at *4 (E.D. Cal. Feb. 10, 2020) (citing *JG v. Douglas County School Dist*., 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse its discretion in denying leave to file a surreply where it did not consider new evidence in reply); U.*S. ex rel. Meyer v. Horizon Health Corp*., 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse its discretion in refusing to permit "inequitable surreply")). "Surreplies are disfavored and the Court routinely rejects them." *Buffin v. City and County of San Francisco*, No. 15-cv-04959-YGR, 2016 WL 2606865 (N.D. Cal. May 6, 2016). Surreplies are particularly inappropriate when the "reply does not raise new legal arguments, but, rather responds to legal arguments made in [the] opposition." *Heil Co. v. Curotto Can Co*., 2004 WL 2600134, at *1 n.1 (N.D. Cal. Nov. 16, 2004); *see also Anderson v. Schwan Food Co*., 2013 WL 3989562, at *6 (N.D. Cal. Aug. 2, 2013). Further, this Court and others have found a surreply should not be permitted where the movant could have raised the issues in its opposition brief but neglected to do so. *See California Pharmacy*

*Management v. Zenith Ins. Co.*, 669 F. Supp. 2d 1152, 1170 (C.D. Cal. 2009) (J. Carter).

     **A.**    **Thrive Did Not Raise New Evidence in Its Reply, It Rebutted the Arguments Le-Vel Raised in Its Opposition**

The first reason to deny Le-Vel's ex parte application is, contrary to Le-Vel's assertion, Thrive did not raise new arguments or evidence in its reply brief. "[E]vidence submitted with a reply brief is not new evidence when it is submitted to rebut arguments raised in the opposition brief." *Applied Materials, Inc. v. Demaray LLC*, No. 5:20-cv-05676-EJD, at *2 (N.D. Cal. Dec. 16, 2020) (citing *Synopsys, Inc. v. Mentor Graphics Corp.*, 2013 WL 6577143, at *1 (N.D. Cal. Dec. 13, 2013) ("Synopsys's Administrative Motion for Leave to File Sur-Reply is hereby DENIED. . . Mentor does not '[raise new arguments and evidence] . . . in its reply brief' . . . but, rather, responds to arguments made in Synopsys's opposition")); *see also Juniper Networks v. Andrade*, No. 20-cv-02360-BLF, at *3 (N.D. Cal. June 25, 2020) (holding "leave to file a sur-reply is not warranted" where "[t]he Court agrees with Defendants that the reply does not raise new arguments, but rather responds to matters raised in Plaintiffs' opposition."). Under this rule in *Hampton v. Pac. Inv. Mgmt. Co.*, 146 F. Supp. 3d 1207 (C.D. Cal. 2015), Judge Carney denied an ex parte application to file a surreply where "[t]he Court has reviewed the arguments Plaintiff identified as being new, and concludes that Defendants were merely responding to arguments made in Plaintiff's opposition brief." *Id*. at 1211 n.2 (rev'd on other grounds, 869 F.3d 844 (9th Cir. 2017)).

Here, Le-Vel claims it has senior rights to the THRIVE mark on skincare products via the zone of expansion from Le-Vel's alleged prior use relating to vitamins. [Doc. 22 at 1] Le-Vel's contention that it has prior use rights is an affirmative defense. *See, e.g.*, *Nat'l Grange of the Order of Patrons of Husbandry v. Cal. State Grange*, No. 2:14-676 WBS DAD, at *8 (E.D. Cal. July 30, 2014). As explained above, in its opening Motion brief, Thrive properly argued and established

that it has valid, protectable rights in the THRIVE mark for skincare products. [Doc. 8-1 at 10-11] Thrive explained those rights stemmed from its '942 Mark, for which, as the registration certificate states on its face, the application was filed on September 11, 2012. [*Id*.; *see also* Doc. 8-2, Att. 1 (registration certificate)] Thrive had no obligation make a detailed argument in its opening brief about Le-Vel's purported senior use rights, particularly where Le-Vel had refused to provide a single shred of evidence to back up its allegations. [*Id*. at 11] To that date, Le-Vel's claim was mere attorney argument that it had steadfastly refused to provide documentation for.

It was Le-Vel's burden to argue its affirmative defense of prior use rights, which it did in its opposition. Thrive did not "sandbag" anything; it focused its reply on responding directly to the various prior use arguments raised by Le-Vel. Thrive thus did not improperly raise new evidence or arguments in a reply brief, but rather it rebutted Le-Vel's allegations raised in its opposition by simply analyzing the correct "market penetration" test that applies to Le-Vel's defense. That clearly does not warrant allowing Le-Vel to file a surreply. *See Hampton*, 146 F. Supp. 3d at 1211 n.2; *Applied Materials*, No. 5:20-cv-05676-EJD, at *2; *Synopsys, Inc. v. Mentor Graphics Corp*., No. 12-6467 C MMC, at *1; *Juniper*, No. 20-cv-02360-BLF, at *3.

**B.    Le-Vel Could Have Argued Market Penetration in its Opposition**

The second reason to deny Le-Vel's ex parte application is that it could have raised its argument about the proper priority date for a market penetration analysis in its opposition, but it inexplicably failed to do so. In *California Pharmacy*, this Court denied a motion for leave to file surreply on the same basis. 669 F. Supp. 2d at 1170. The defendants there had moved to dismiss in part on grounds the plaintiff failed to plead the existence of an "enterprise" to support a RICO claim. *Id*. at 1158. The plaintiff's proposed surreply "advance[d] new arguments to rebut Defendants' claim that the SAC failed to allege an 'enterprise.'" *Id*. at 1170. But this Court noted that the plaintiff's opposition to the motion "neglected to advance any arguments on this point, despite the Motion's dedication of an entire section to the topic." *Id*. Because the

1  plaintiff's motion for leave to file a surreply "offered no explanation for its earlier
2  failure to fully address the arguments in the Motion," this Court denied the request to
3  file a surreply. *Id*. That holding aligns with others from this Circuit. *See, e.g. United*
4  *States v. Cabrera*, 3:15-CR-00064-LRH-CWH, at *4 n.4 (D. Nev. Nov. 14, 2016)
5  (refusing to consider surreply where the "United States had the opportunity to assert
6  these arguments in its original opposition but failed to do so.").

7        Here, Le-Vel makes it seem like Le-Vel relied on some promise by Thrive that
8  Thrive would only rely on its trademark registration date as the date its trademark
9  rights were first established. But Thrive never made any such promise. Thrive has
10 pled and argued that Le-Vel is infringing the '942 Mark, which states on its face that
11 the application was filed September 11, 2012. [Doc. 8-2, Att. 1] Under case law which
12 Le-Vel itself cites, Thrive has established a constructive first use date—and thus a
13 nationwide priority date—of its application filing date. *See Brookfield Comms., Inc. v.*
14 *West Coast Ent. Corp*., 174 F.3d 1036, 1051 n. 13 (9th Cir. 1999) (holding plaintiff
15 "is entitled to a presumptive first use date equivalent to the filing date of its trademark
16 registration application"); 2 J. Thomas McCarthy on Trademarks and Unfair
17 Competition § 16:17 (5th ed.) ("'constructive use' means that which establishes a
18 nationwide priority date"). Importantly, never once, in any correspondence from
19 Thrive, in its pleadings, or in its Motion at issue, did Plaintiff Thrive ever assert
20 the '942 Mark's registration date as the date it is relying upon.

21       Le-Vel expressly admitted in its opposition that Thrive's constructive first use
22 date of September 11, 2012, was an issue, yet Le-Vel chose to argue it had acquired
23 common law senior rights *before* that date. [Doc. 22 at 1, 12] Le-Vel claimed it had
24 "prior rights over Plaintiff's constructive use" and that it had rights "[w]hatever date is
25 used . . . ." [*Id*.] The fact is that when it filed its opposition, Le-Vel knew of Thrive's
26 constructive first use date and *did not care*. Le-Vel chose to argue it had established
27 senior common law rights no matter what date was at issue. Le-Vel inexplicably failed
28 to mention market penetration at all, despite that being a necessary antecedent to

1  considering the zone of expansion. *See Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d
2  962, 685 (C.D. Cal. 2002). That case law has long been established, and there is no
3  reason Le-Vel could not have cited it and argued market penetration in its opposition,
4  had it chosen to do so.
5       As in *California Pharmacy*, Le-Vel was clearly on notice as to Thrive's
6  constructive date of first use of its THRIVE mark on skincare products and of the
7  need to show market penetration, yet Le-Vel "neglected to advance any arguments on
8  this point . . . ." 669 F. Supp. 2d at 1170. Le-Vel could have, should have, and in fact
9  did know that Thrive was asserting its application date as the priority date of the '942
10 Mark. Le-Vel has zero excuse for its failure to realize this and its failure to argue
11 market penetration in its opposition does not warrant allowing it to file a surreply
12 now. *See id*; *see also Hammler v. Dir. of CDCR*, No. 2:17-cv-1949 MCE DB P, at *4
13 (E.D. Cal. Feb. 10, 2020) ("upon review it appears that plaintiff simply wishes to
14 further address points he made in his opposition that were thereafter addressed by
15 defendant in the reply. Plaintiff's desire to have the final word is not an adequate basis
16 upon which to allow him to file a surreply."). Le-Vel's wish for the final word on an
17 issue it utterly failed to argue in its opposition is not a basis to allow untimely
18 briefing. *Id*.

19      **C.**    **Thrive Did Not Misstate Applicable Law in Its Reply**

20      Le-Vel contends Thrive failed to "accurately describe the law in the Ninth
21 Circuit" which warrants Le-Vel filing a surreply. [Doc. 36 at 6] In doing so, and
22 attaching its proposed surreply as an exhibit, Le-Vel improperly forces Thrive to
23 argue the merits of the surreply before the Court has granted Le-Vel permission to file
24 it. Regardless, Le-Vel's argument is meritless for at least the reasons set forth below.
25      *First*, it is striking how many times Le-Vel mentions the term "market
26 penetration" in its proposed surreply (five), after not once referring to that term or
27 doctrine in its opposition. This in itself demonstrates that Le-Vel is attempting to use
28 the surreply to make up for omitting that argument from its opposition, which should

1 not be permitted. *See Cal. Pharmacy*, 669 F. Supp. 2d at 1170.

2     *Second*, Le-Vel cites to cases from the Eleventh Circuit, Sixth Circuit, and Western District of New York, which have no precedential value here and should be ignored in light of Ninth Circuit law supporting Thrive's position.

5     *Third*, and most importantly, Le-Vel fails to mention that it is not trying to establish prior common law use rights with regard to *vitamins* but instead is trying to stretch its common law rights to cover *lotion* and other skincare products through application of the zone of expansion test. All of the case law and the legislative history cited by Le-Vel in its proposed surreply pertain to situations where the parties are disputing who had the earliest use in commerce for the same goods or services, not applying the zone expansion to different goods or services. *See, e.g.*, *Parks Rec. Cal. v. Bazaar Del Mundo*, 448 F.3d 1118, 1125-26 (9th Cir. 2006) (no discussion of zone of expansion test); *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 654 (9th Cir. 2005) (discussing senior use in relation to digital cameras and containing no discussion of zone of expansion test). Thrive does not dispute that, for Le-Vel to show first use in relation to *vitamins*, Le-Vel must show (a) prior use in commerce, and (b) such use was continuous and not interrupted. *See id*. But that is not the issue.

18     What Le-Vel has not shown—and what the case law and legislative history Le-Vel cites in its surreply does not support—is that Le-Vel's giving away 91 free samples of vitamins to its own brand promoters over a few weeks establishes full common law rights with regard to vitamins *and*, through the zone of expansion doctrine, to lotions and skin creams. Unlike the cases Le-Vel has cited, here Le-Vel is trying to stretch its rights to cover different products for which Thrive filed its trademark application several weeks after Le-Vel started giving away vitamins. In that context, as Thrive noted in its reply, the "zone of natural expansion is generally defined narrowly." *Credit One Corporation v. Credit One Financial, Inc.*, 661 F. Supp. 2d 1134, 1138 (C.D. Cal. 2009) (quoting *Glow*, 252 F. Supp. 2d at 984). Le-Vel is trying to turn the zone of expansion doctrine on its head to seize a different category

of goods from Thrive, the federal rights holder. *See Kerzner Int'l Limited v. Monarch Casino Resort*, 675 F. Supp. 2d 1029, 1049 (D. Nev. 2009). There is no "authority for so applying the natural zone of expansion doctrine . . . ." *Id*. Rather, as Thrive argued in rebuttal to Le-Vel's assertion, Thrive is entitled to a nationwide priority date for the use of THRIVE on *skincare* products of September 12, 2011. *See CreAgri, Inc. v. USANA Health Sciences, Inc.*, 474 F.3d 626, 629 n.7 (9th Cir. 2007); *Brookfield*, 174 F.3d at 1051 n. 13. With different products at issue and the narrow application of the zone of expansion, it is proper to find that Le-Vel's market status for market penetration analysis is frozen as of Thrive's application date. In its reply brief, Thrive cited cases supporting the propriety of freezing a prior user's claim as of the application, not registration, date. *See Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 762 (9th Cir. 2006) ("When Quiksilver filed its trademark applications, Kymsta's trade area for 'ROXYWEAR' was frozen"); *Wine Grp., LLC v. L. & R. Wine Co.*, No. 2:10-cv-02204-MCE-KJN, at *39 (E.D. Cal. Sep. 7, 2012) ("Upon the filing of the application, a prior user's claim to the right to use the design subject to the trademark is limited 'to those areas where [it] then enjoyed recognition based on its reputation, advertising, and sales.'").

This is not the situation contemplated in the Lanham Act legislative history Le-Vel cites, where a senior user had no notice of a junior user's trademark application and thus continues to expand geographically selling the same goods for several years. Rather, Le-Vel did not actually expand into skincare until April 2019, five years after Thrive secured its federal trademark registration. Le-Vel is attempting here to leverage several weeks of giving away vitamins into ownership of rights to skincare products and negation of Thrive's federal trademark rights. That is not supported by anything Le-Vel cites in its proposed surreply. The correct date for assessing Le-Vel's market penetration here is the date Thrive made constructive use of its THRIVE mark on skincare products and gave nationwide notice of its intent to register that mark—September 11, 2012. Even if Le-Vel has prior use for vitamins, it has offered no

support for its position such use stretches to skincare products. And Le-Vel has not come close to showing the sufficient market penetration that is necessary to be proven *before* the Court should even review the zone of expansion. *See Glow*, 252 F. Supp. 2d at 985; *Credit One*, 661 F. Supp. 2d at 1138. For these reasons, Le-Vel's proposed surreply does not show that Thrive misstated applicable law with regard to market penetration in the context of applying the zone of expansion test to different goods. The Court should therefore deny Le-Vel's application and hear the matter on the briefing that has been submitted.

## Conclusion

For the foregoing reasons, Thrive respectfully requests that the Court deny Le-Vel's ex parte application for leave to file a surreply. Thrive did not improperly offer new facts or arguments in its reply, it simply responded to the arguments raised by Le-Vel. There is no reason Le-Vel could not have argued market penetration in its opposition; it chose not to and it is too late to do so now. And Thrive did not misstate the law applicable to the facts of this case. Any or all of these are reasons, the Court should deny Le-Vel's application.

Dated: April 2, 2021

Respectfully submitted

**THE MCARTHUR LAW FIRM, PC**

By */s/ Stephen C. McArthur*

Stephen C. McArthur
Thomas E. Dietrich

*Attorneys for Plaintiff Thrive Natural Care, Inc.*

# CERTIFICATE OF SERVICE

Case Name: *Thrive Natural Care, Inc. v. Le-Vel Brands, LLC*, Case No. 2:21-CV-02022-DOC-KES

IT IS HEREBY CERTIFIED THAT:

    I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 9465 Wilshire Blvd., Ste. 300, Beverly Hills, CA 90212. I am not a party to the above-entitled action.

    I have caused service of the following documents, described as:

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION FOR LEAVE TO FILE SURREPLY**

on the following parties by electronically filing the foregoing on April 2, 2021, with the Clerk of the District Court using its ECF System, which electronically notifies them.

KENDALL BRILL & KELLY LLP         *Attorneys for Defendant*
Alan Jay Weil (63153)
ajweil@kbkfirm.com
Shauna E. Woods (300339)
swoods@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
Mark Sommers (pro hac vice forthcoming)
mark.sommers@finnegan.com
Patrick Rodgers (pro hac vice forthcoming)
patrick.rodgers@finnegan.com
901 New York Avenue, NW,
Washington, DC 20001-4413
Telephone: (202) 408-4064
Morgan E. Smith (SBN 293503)
morgan.smith@finnegan.com
3300 Hillview Avenue
Palo Alto, CA 94304
Telephone: (650) 849-6600

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 4/2/2021         By: */s/ Stephen McArthur*
                                                  Stephen McArthur