KENDALL BRILL & KELLY LLP
Alan Jay Weil (63153)
  *ajweil@kbkfirm.com*
Shauna E. Woods (300339)
  *swoods@kbkfirm.com*
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile:  310.556.2705

FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
Mark Sommers (*pro hac vice* pending)
  mark.sommers@finnegan.com
Patrick Rodgers (*pro hac vice* forthcoming)
patrick.rodgers@finnegan.com
901 New York Avenue, NW,
Washington, DC 20001-4413
Telephone:   (202) 408-4064
Facsimile:    (202) 408-4400
Morgan E. Smith (SBN 293503)
  morgan.smith@finnegan.com
3300 Hillview Avenue
Palo Alto, CA 94304
Telephone:   (650) 849-6600
Facsimile:    (650) 849-6666

Attorneys for Specially Appearing
Defendant Le-Vel Brands, LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| THRIVE NATURAL CARE, INC.,<br><br>Plaintiff,<br>v.<br><br>LE-VEL BRANDS, LLC,<br><br>Defendant. | Case No, 2:21-CV-02022-DOC-KES<br><br>**DECLARATION OF DREW S. HOFFMAN IN SUPPORT OF MOTION TO TRANSFER VENUE**<br><br>Judge:  Hon. David O. Carter<br>Hearing Date:  May 3, 2021<br>Time:  8:30 a.m.<br>Crtrm:  9D |

## REDACTED VERSION OF DOCUMENT
## PROPOSED TO BE FILED UNDER SEAL

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603290849

Case No. 2:21-CV-02022-DOC-KES

DECLARATION OF DREW S. HOFFMAN

# DECLARATION OF DREW S. HOFFMAN

DECLARATION OF DREW S. HOFFMAN

I, Drew S. Hoffman, declare as follows:

1.      I am the President and Chief Legal Officer at Le-Vel Brands, LLC ("Le-Vel"), where I have been employed since 2015.  The facts in this declaration are based on my personal knowledge and/or documents regularly and contemporaneously maintained in the ordinary course of business by Le-Vel.  If called upon to do so, I would testify competently to the facts contained in this declaration.

2.      Le-Vel is a Texas limited liability corporation with a principle place of business in Frisco, Texas. Le-Vel has no employees, offices, or warehouses in the Central District of California.

3.      Le-Vel is a health and wellness lifestyle company founded in July 2012 that offers a wide array of goods and services under the THRIVE trademark, including dietary and nutritional supplements (including capsules, powders, and gels, among others), vitamin skin patches, vitamins for the skin, snacks, skincare products, and related coaching/lifestyle/wellness programs, conventions, and educational materials.

4.      Le-Vel's THRIVE skincare products are not designed or formulated in California. These products are also not manufactured in or distributed from California.

5.      I understand that the Eastern District of Texas includes the following Texas counties:  Anderson, Angelina, Bowie, Camp, Cass, Cherokee, Collin, Cook, Delta, Denton, Fannin, Franklin, Grayson, Gregg, Hardin, Harrison, Henderson, Hopkins, Houston, Jasper, Jefferson, Lamar, Liberty, Marion, Morris, Nacogdoches, Newton, Orange, Panola, Polk, Rains, Red River, Rusk, Sabine, San Augustine, Shelby, Smith, Titus, Trinity, Tyler, Upshur, Van Zandt, and Wood.

6.      I also understand that the Northern District of Texas includes the following Texas counties:  Armstrong,  Bailey, Baylor, Borden, Brisco, Brown, Callahan, Carson, Castro, Childress, Clay, Cochran, Coke, Coleman, Collingsworth, Comanche, Concho, Cottle, Crockett, Crosby, Dallam, Dallas, Dawson, Deaf Smith,

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603290849                              1                         Case No. 2:21-CV-02022-DOC-KES
                              DECLARATION OF DREW S. HOFFMAN

1   Dickens, Donley, Eastland, Ellis, Erath, Fisher, Floyd, Foard, Gaines, Garza,

2   Glasscock, Gray, Hale, Hall, Hansford, Hardeman, Hartley, Haskell, Hemphill,

3   Hockley, Hood, Howard, Hunt, Hutchinson, Irion, Jack, Johnson, Jones, Kaufman,

4   Kent, King, Knox, Lamb, Lipscomb, Lubbock, Lynn, Menard, Mills, Mitchell,

5   Montague, Moore, Motley, Navarro, Nolan, Ochiltree, Oldham, Palo Pinto, Parker,

6   Parmer, Potter, Randall, Reagan, Roberts, Rockwall, Runnels, Schleicher, Scurry,

7   Shackleford, Sherman, Stephens, Sterling, Stonewall, Sutton, Swisher, Tarrant,

8   Taylor, Terry, Throckmorton, Tom Green, Wheeler, Wichita, Wilbarger, Wise,

9   Yoakum and Young.

10      7.      I understand that the Central District of California includes the following

11   California counties:  Los Angeles; Orange County; Riverside; San Bernardino;

12   Ventura; Santa Barbara; and San Luis Obispo.

13      8.      Le-Vel has sixteen employees located in the Eastern District of Texas,

14   which makes up 24% of our total employees and is the highest concentration of Le-

15   Vel employees in any state or district. Several key executives and employees that

16   work in the finance, compliance, supply chain and distribution, operations, customer

17   support/loss prevention, and information technology departments are in the Eastern

18   District of Texas. Le-Vel also has eight employees in the Northern District of Texas,

19   which makes it the second highest concentration of Le-Vel employees in any state or

20   district.

21      9.      Many of Le-Vel's employees knowledgeable about Le-Vel's THRIVE

22   SKIN skincare products are based in the Eastern and Northern Districts of Texas. This

23   includes Le-Vel's chief financial officer, who has extensive knowledge of the sales

24   resulting from Le-Vel's THRIVE skincare products, and Le-Vel's first in-house

25   counsel. Both the chief financial officer and the in-house counsel are in the Eastern

26   District of Texas.

27      10.     During Le-Vel's initial growth, all executive employees and operations

28   were based out of Dallas and Irving, Texas. These locations are approximately 30

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603290849                                2                    Case No. 2:21-CV-02022-DOC-KES
                            DECLARATION OF DREW S. HOFFMAN

miles from Le-Vel's current headquarters. This included the individuals involved in the development, selection, adoption, and first use of the THRIVE trademark. Le-Vel's founders were primarily responsible for the development, selection, adoption and initial use of Le-Vel's THRIVE mark and product expansion plans. Decisions regarding the development, selection, adoption and initial use of Le-Vel's THRIVE mark and product expansion plans were made in Dallas and Irving, Texas. One of the founders is located in Nashville, Tennessee. The other founder divides his time between Colorado and Arizona. As Le-Vel's customer base grew over the years, Le-Vel expanded its product line from vitamins to skin vitamin patches to skin vitamins to skincare products.  From its early days, Le-Vel has always marketed, promoted, and sold products with a strong connection to a person's "skin."

11.    As of January 14, 2014, Le-Vel had sold over ▮▮▮▮▮▮ in sales of products under the trademark THRIVE, including our THRIVE vitamin skin patches.

12.    I am Le-Vel's president and chief legal officer, and reside in Florida and currently oversees general operations, including intellectual property issues. Le-Vel's executive director of digital marketing, who is knowledgeable of Le-Vel's marketing and advertising operations, resides in Florida. Le-Vel's director of finance is located in Dallas, Texas. The director and team responsible for graphic design and branding are located in Michigan.

13.    Le-Vel sells its products nationwide and does not specifically target consumers in any particular state or locality. It sells and distributes its products through a website accessible to consumers nationwide. The website does not target consumers in this District but merely provides them with access to Le-Vel's products and company.  The website also provides access to Le-Vel's product to any individual located anywhere in the United States. Le-Vel's sales in this District only amount to ▮▮▮ of its total sales of skincare products. Texas ▮▮▮▮▮▮▮▮▮▮▮

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603290849

Case No. 2:21-CV-02022-DOC-KES

DECLARATION OF DREW S. HOFFMAN

14. Le-Vel has a nationwide marketing and advertising campaign that does not target consumers in specific states. Le-Vel does not track its marketing and advertising expenditures on a state-by-state basis. Le-Vel has other country-wide marketing channels to promote its products, but none of them are aimed at consumers in specific states or localities. Le-Vel has gained a strong, national social media presence that is projected at U.S. customers, generally. Le-Vel has contracted with celebrities, but has never done so for the purpose of targeting or attracting the residents of this District or California. Le-Vel has hosted twenty-nine national events. Five have occurred in Texas, two in California, and none in this District.

15. Le-Vel offers a program on its website for individuals and other businesses, to become Independent Brand Promoters ( "third-party promoters") to share their experience with Le-Vel's THRIVE products and promote them in exchange for commission based on the purchases referred customers directly make with Le-Vel. Le-Vel does not target or direct any activities at increasing the numbers of third-party promoters in any location, including California or elsewhere.

16. To register to become a third-party promoter, people must enter into Le-Vel's Independent Brand Promoter contract. Attached as **Exhibit 1** is a true and correct copy of the current Independent Brand Promoter contract. This contract expressly provides that "[a]ll Promoters are independent contractors engaged in their own separate business pursuits." Exhibit 1 at 3.

17. Once registered, the third-party promoters determine how they want to promote Le-Vel products with no specific "how-to-promote" business outlines from Le-Vel.  Le-Vel does not supervise or oversee the third-party promoters on a day-to-day basis.  The third-party promoters do not have any geographical restrictions and can promote Le-Vel's products nationally or globally to increase the amount of potential referral fees.

18. As of March 14, Le-Vel had approximately ▮▮▮ contracted third-party promoters in the United States and ▮ of the third-party promoters resided in this

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603290849

4

Case No. 2:21-CV-02022-DOC-KES

DECLARATION OF DREW S. HOFFMAN

1  District. Looking at the Eastern District of Texas today, it has ███ of total promoters,

2  and the Norther District of Texas has ███ of total promoters. The Northern District

3  of Texas has the most third-party promoters. Of the ████████████ third-party

4  promoters, ███ are in this District, while ███ is in the Eastern District of Texas, and

5  ████ are in the Northern District of Texas, ████████████████

6  ████████████████

7  //

8  //

9  //

10 //

11 //

12 //

13 //

14 //

15 //

16 //

17 //

18 //

19 //

20 //

21 //

22 //

23 //

24 //

25 //

26 //

27 //

28 //

DECLARATION OF DREW S. HOFFMAN

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1    I declare under penalty of perjury of the laws of the United States that the

2  foregoing is true and correct pursuant to 28 U.S.C. § 1746.  This declaration was

3  executed on April 2, 2021 in Miami, Florida.

4

5

6                                                  Drew S. Hoffman

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603288558                                 6                          Case No. 2:21-CV-02022-DOC-KES

DECLARATION OF DREW S. HOFFMAN

# Exhibit 1

to the Declaration of Drew S. Hoffman

**LE-VEL BRANDS**
PROMOTER AGREEMENT



---

## POLICIES AND PROCEDURES

### 1. INTRODUCTION

Le-Vel Brands, LLC is a direct selling company that markets its products exclusively through its authorized Independent Brand Promoters.  It is important to understand that your success and the success of your fellow Promoters depend on the integrity of the men and women who market our products and services.  This Agreement (as defined below) is made to clearly define the relationship between you and us, between you and your Customers and between you and other Brand Promoters.  For purposes of this Agreement, Le-Vel will sometimes be referred to as "Le-Vel," "LV," "Company," "we," "us," and "our" and you, as our authorized Independent Brand Promoter will sometimes referred to as "Promoter(s)," "you," and "your."

This Agreement will sometimes be referred to as the "Promoter Agreement," "Agreement," "Policies and Procedures," or "Policies."  All of the provisions herein and as amended from time to time, along with the Le-Vel Rewards Plan (also referred to as the "Compensation Plan"), are incorporated into and form an integral part of this Agreement.  You have the responsibility to read, understand and adhere to the current version of this Agreement that will be updated from time to time and posted in the resources section of your cloud office.  When sponsoring a new Promoter, you must ensure that he/she/it is provided with the opportunity to (1) read and understand the terms and conditions of the Agreement and (2) review and understand the Compensation Plan prior to enrolling as a Promoter.

### 1.1.  Code of Ethics.

We are a value-based company and pride ourselves on the quality and character of our Promoters. The following Code of Ethics helps ensure a uniform standard of excellence throughout our organization. You agree to practice the following ethical behavior when operating your Promotership.  Each part of the Code of Ethics is material to the Agreement.

a) I will be honest and fair in my dealings as a Le-Vel Brand Promoter.

b) I will perform my business in a manner that will enhance my reputation and the positive reputation of Le-Vel, its staff and administrative personnel, and other Promoters.

c) I will be courteous and respectful of every person I contact in the course of my Le-Vel Independent Promoter activities.

d) I will fulfill my leadership responsibilities as a sponsor including training, supporting and communicating with the Promoters in my organization in a courteous and timely fashion.

e) I will not misrepresent Le-Vel, its products or the Compensation Plan.

f) I will correctly represent the Compensation Plan and the income potential represented therein. I understand that I shall not use my own income or lifestyle as an indication of others' potential success or use the compensation earnings for promotional purposes.

g) I will not sponsor or attempt to sponsor any Le-Vel Promoter directly or indirectly into any other network marketing program or engage in deceptive or illegal practices.

h) I understand that my personal experience and the benefits received from Le-Vel products or Le-Vel's Rewards Plan may be interpreted as making drug claims (medical claims), income claims or lifestyle claims. As such, I will share my personal experience in accordance with the Policies and Procedures herein.

i) I understand and agree that I am solely responsible for all financial and/or legal obligations I incur in the course of my business as a Promoter and will discharge all debts and duties as required of a Promoter.

j) I will actively work to establish and maintain a Customer base and engage in retail sales.

k) I will not engage in activities that may bring disrepute to Le-Vel, any Le-Vel corporate officer or employee, me or other Promoters.

l) I will not make negative or defamatory claims, statements or remarks about or towards other Promoters, Le-Vel, or Le-Vel employees.  I will ensure that in all Le-Vel business dealings to refrain from engaging in making negative or defamatory claims, statements or remarks towards any other person or entity.

m) I will not make comparisons of Le-Vel's products or compensation plan with any other company's products or compensation plan.

n) I understand that all promotional material must be approved through Le-Vel's Compliance Department prior to publishing and must include the Company name, my contact information and an approval code with the designation "Independent Brand Promoter" after my name, contact information or promoter link.

### 1.2.  Business Conduct.

Promoters will perform all of their business activities in a professional and ethical manner, which will enhance the Promoter's reputation, the reputation of other Promoters and the positive reputation of Le-Vel.  Promoters will not engage in any conduct that would negatively reflect on Le-Vel or any other Promoter's image.  Promoters will be courteous and respectful of every person contacted including employees and administrative personnel of Le-Vel and will conduct their Promoter status in a way as to respect the products and professionalism of Le-Vel and its other Promoters.  Promoters will under no circumstance disparage or infringe upon the Le-Vel name, image or reputation in connection with the promotion of Le-Vel products.  Promoters will not misappropriate any confidential or proprietary information or trade secrets (including Customer and Promoter names and address lists) or otherwise use such information except as expressly permitted by this Agreement.

**2. INDEPENDENT PROMOTER**

### 2.1.   Independent Contractor Status.

The Promoter will not be treated as an employee for federal and/or state tax purposes.  All Promoters are independent contractors engaged in their own separate business pursuits. Promoters are not to be considered purchasers of a franchise, nor does the Agreement between Le-Vel and its Promoters create an employer/employee relationship, agency, partnership or joint venture.  Promoters are strictly prohibited from stating or implying, whether orally or in writing, that their relationship is any other than as outlined above.  Each Promoter shall hold Le-Vel harmless from any claims, damages or liabilities arising out of or relating to the Promoter's business practices.  Promoters have no authority to bind Le-Vel to any obligation.  Each Promoter is encouraged to set up his/her/its own hours and to determine his/her/its own methods of sales, as long as he/she/it complies with the terms of the Agreement.

### 2.2.   Liability Insurance.

As an independent contractor, Promoters shall be solely responsible for obtaining applicable business insurance relevant to his/her/its business activities, such as holding live events.

### 2.3.   No Purchase Required.

No Promoter is required to purchase any Le-Vel products, services or programs.

### 2.4.   Promoter Enrollment.

Le-Vel provides its Promoters with a free Promoter Link that forwards to the Le-Vel corporate website. Le-Vel also provides a free cloud-based back office support system that enables the Promoter to manage his/her/its business, view online tools, review the calculation and payment of commissions, and access previous records of Promoter purchases. When the Promoter elects to enroll with Le-Vel they are granted a temporary license to access and utilize LV Software System (LVSS) at no cost to the Promoter.

Promoters will have unlimited access to his/her/its back office for the purpose of conducting Le-Vel related business as a Promoter in accordance with the policies and procedures herein.

### 2.5.   Promoter Rights.

All Promoters are authorized to sell Le-Vel products and to participate in the Le-Vel Compensation Plan so long as they are not in violation of this Agreement and in good standing.  All Le-Vel Promoters may sponsor/enroll new Promoters and enroll Customers in accordance with the terms herein.

### 2.6.   Legal Age/Domicile/Eligibility.

Promoters must be 18 years old or older to operate a Le-Vel Promotership. Our products are not intended to be consumed or used by minors. As such, minors shall not be permitted to promote our products and no image or likeness of any minor shall be used in any advertising associated with our company or products. Each person or entity that holds a Promotership with Le-Vel must do so where they are domiciled. For purposes of this Agreement, a domicile is defined as: (1) the country or place where a person or entity has his/her/its fixed or legal address, or in the case of an individual, the permanent residence (home) to which the individual intends to return if currently

residing elsewhere; and (2) the country or state of incorporation or registration of a business entity where it has its legal address or registered office, or the location where it is considered by law as the center of its corporate affairs. It is the responsibility of each Promoter to be able to verify their eligibility to hold a Promotership with Le-Vel.

### 2.7.   Married Couples.

Spouses may each have their own Promotership with Le-Vel. Couples who are married at the time of enrollment must be in the same line of sponsorship with their spouse and may not be associated directly or indirectly with Promoter positions in other downline organizations. This policy does not apply to couples who are married after enrollment.  This policy also applies to Customer accounts held by spouses. If a Promoter cancels his/her/its account, their non-enrolled spouse shall be prohibited from enrolling as a Promoter under any other downline organization until the 6-month waiting period has expired. The action of one spouse will be attributed to both spouses. If a Promoter is terminated or resigns from Le-Vel, the Promoter account of their spouse can be terminated at Le-Vel's sole discretion. This section shall apply to cohabiting couples at the sole discretion of Le-Vel.

### 2.8.   Promotership Limitation.

Each individual, business entity, and trust shall create, operate and maintain only one Promotership account with Le-Vel. Promoters who are enrolled individually are not able to have any financial, equitable or ownership interest in any business entity or trust with a Promoter account. No more than two Promoter accounts are allowed per household.

### 2.9.   Business Entities and Trusts.

Corporations, partnerships and/or trusts may become Promoters by submitting the following documents to our Compliance Department:

a)  Copies of the formation documents, partnership agreement or trust documents in compliance with the state of formation or creation.

b)  If a business entity, the Employer Identification Number (EIN) as required or as elected.

c)  A complete list of all directors, officers and shareholders who have an interest in the entity, partnership or trust. Partnerships must disclose all general and limited partners. Trusts must disclose the trustee(s) and beneficiary/beneficiaries.

d)  If any shareholder, partner, or beneficiary of a Corporation, Partnership or Trust is an entity, then the information required above for the entity shall also be required for such shareholder, partner, member or manager.

Shareholders, members, partners, beneficiaries and trustees, directors and officers as applicable, agree to remain personally liable to Le-Vel and bound by our Policies and Procedures.  In any Promoter position involving the efforts of more than one individual, whether as a corporation, partnership or trust, the actions of one participant shall reflect on the Promotership as a whole.  If one member is found to have violated the terms and conditions of the Policies and Procedures of Le-Vel then the Promotership as a whole will be considered to be in violation.  Shareholders,

members, partners, beneficiaries and trustees, directors and officers of an existing Promotership
shall not hold any ownership, beneficiary, director or officer position of any other existing
Promotership.

### 2.10.   Fictitious and/or Assumed Names.

A person or entity may not apply for a Promotership using any fictitious or false information,
including without limitation, an assumed name or identity of another person or entities that will
not be associated with the Promotership. Promoters are prohibited from entering a Tax ID Number
different from the one assigned to the original account created by the Promoter without
completing an Account Transfer Form and receiving final approval by Le-Vel's Compliance
Department.

### 2.11.   Taxation.

Promoters will be treated as independent contractors for all federal and/or state tax purposes. As
independent contractors, Promoters will not be treated as employees, franchisees, joint ventures,
partners, or agents with respect to the Internal Revenue Code, Social Security Act, Federal
Unemployment Act, State Unemployment Act, or any other federal, state or local statute,
ordinance, rule or regulation.

As independent contractors, Promoters are solely responsible for reporting all income generated
to the applicable federal, state and local taxing authorities as required by law.

For clarity, each Promoter bears full responsibility for any penalties or interest resulting from a
Promoter's failure to properly report income, products sold, or any other requisite information,
and/or a Promoter's failure to properly pay any amount required, to any taxing authority (be it
federal, state and/or local).

Le-Vel does not provide Promoters with any personal tax advice.  Each Promoter should consult
with their own tax professionals for such advice.

### 2.12.   Legal Compliance.

All Promoters shall comply with all federal and state statutes and regulations and local
ordinances and regulations concerning the operation of his/her/its business.  All Promoters are
responsible for their own managerial decisions and expenditures, including all estimated income
and self-employment taxes (insofar as may be applicable).  At the end of each calendar year,
Le-Vel will issue an IRS Form 1099 Misc. for non-employee compensation for Promoters as
required. The current U.S. law requires 1099s only for annual incomes (based on the calendar
year) earned above six hundred dollars ($600). Since Promoters are not Le-Vel employees, Le-Vel
is not responsible for payment or co-payment of any employee benefits, statutory withholdings or
remittances, or any other amounts or contributions required by law for employees.

### 2.13.   Consent to Receive 1099 Statement Electronically.

By agreeing to the terms herein, each Promoter further consents in the affirmative that Le-Vel has
your permission to furnish your 1099 statement to you electronically.  This consent applies to
every year the 1099 statement is furnished for the duration of your Promotership with Le-Vel.

Should Le-Vel terminate the electronic issuance of 1099 statements, we will provide a Notice of Termination to you stating the conditions under which the statements will no longer be furnished to you electronically.  To update your information as it relates to your 1099 statement, please create a back office support ticket with your updated information and our Customer Support Team will update your information accordingly.  Your 1099 statement will be uploaded to your Cloud Office for you to access, print and retain for your records.  Statements will remain in your Cloud Office until the end of the calendar year in which the statement was electronically issued.

### 2.14.   Promoter Personal Identification Number.

Le-Vel will issue each Promoter a unique Promoter Identification Number (Promoter ID) at the time of enrollment.  The Promoter ID must be indicated on all email or other correspondence with Le-Vel that is not sent through a back office support ticket.

### 2.15.   No Exclusive Territories.

There are no exclusive territories for recruiting purposes, nor shall any Promoter imply or state that he/she/it has any exclusive territory rights.  There are no geographic limitations on Promoter sponsoring except in those foreign countries that have not officially been opened by Le-Vel or an affiliated company.

### 2.16.   International Marketing.

Le-Vel or a related company may elect to open certain countries from time to time and will grant Promoters limited rights to sponsor Promoters in those countries ("Opened Countries" or "Opened Country").  Promoters shall not sponsor outside of Opened Countries and any sponsorship inside an Opened Country must comply with the policies and procedures applicable to that country.

Le-Vel or the related company operating the business in the Opened Country reserves the right to establish limitations and cancel such an authorization at any time without advance notice.  To preserve our rights, Promoters may never secure or attempt to secure approval for Le-Vel products or business practices, or internet domain names, or establish any kind of business or governmental contract on behalf of or in the name of Le-Vel or the related company.

To sponsor outside of the U.S., your Promotership must be in good standing and you must request, read, and comply with the Policies and Procedures and such other guides as we may have available for the Opened Country.

Promoter compliance with this section protects Le-Vel, its related companies, and our collective ability to conduct business in selected countries. Violation of these policies may result in governmental regulatory action which may include severe fines, confiscation of property, closure of business operations, or even imprisonment.  Therefore, Promoters may not engage in blind prospecting as defined herein.  Some countries have strict privacy laws that forbid blind solicitations.  Also, local laws may forbid advertising for leads. Promoter shall not distribute Le-Vel sales tools which have not been approved for the country in which it is intended. Promotional statements from one country's literature may not be appropriate or legal in another.

### 2.17.   Other Products and Services.

Direct or indirect promotion of any products or services not offered by Le-Vel to another Le-Vel Promoter or customer is prohibited.  Promoters are not restricted from selling the products and services of other companies to non-Le-Vel Promoters or customers during the term of the Promoter Agreement with the exception of skincare, nutritional supplements, and other health-related products or services.

### 2.18.   Cross-Line Recruiting/Cross-Recruiting.

Recruiting Le-Vel customers or Promoters directly or indirectly, whether through written, spoken or implied means from one Le-Vel Promoter team to another, or from Le-Vel to another direct sales company is strictly prohibited.

### 2.19.   Representation of Government Endorsements.

Unless otherwise authorized by Le-vel and only to the extent of such authorization, Promoters may not represent directly or indirectly that the Le-Vel marketing program or products have been approved/reviewed/endorsed or otherwise backed by any governmental agency.

### 2.20.   Drug/Medical Claims.

Le-Vel's products are not intended to help, treat, cure, mitigate, or diagnose any type of disease or disorder. Promoters understand that they will not say directly or indirectly that any Le-Vel product is FDA approved, or discuss or suggest that any diagnosis, evaluation, prognosis, description, treatment, therapy, or management or remedy of illness, ailment or disease can be improved by consumption or application of Le-Vel products. Promoters understand that Le-Vel products are not offered, intended or considered as medicinal treatment of any disorder or disease, either mental or physical.

## 3. SPONSORSHIP & TRAINING AND TERMS OF TERMINATION

### 3.1.   Sponsoring.

Promoters are entitled to sponsor other Promoters in the U.S. and Other Countries (as specifically authorized).  However, Promoters are compensated only for the generation of sales of products to end consumers, not for sponsoring new Promoters into the program.

### 3.2.   Sale/Transfer of Promotership.

Le-Vel must approve in writing the sale or transfer of a Promotership to another person or entity as part of any sale or other bona fide transaction and reserves the right to approve or deny the sale or transfer of Promoterships in its sole discretion. Promoters wishing to transfer their Promotership must contact Le-Vel's Compliance Department to make such request in writing during the month of December. If, following review of the written request, Le-Vel, in its sole discretion, approves the Promoter's sale or transfer request, Le-Vel's Compliance Department will send the Promoter an Account Transfer form that must be completed, notarized, and returned to the Compliance Department. When the completed Account Transfer form is accepted and final approval is provided by Le-Vel, the transfer will be completed. All transfers will take place within the month of January. Transferors are responsible for contacting Payoneer directly and requesting

that their Payoneer account be disconnected from their transferred account. Transferees are responsible for ensuring that all of the account details (including any personal usernames) are updated to reflect their correct information and that their own Payoneer account is connected with the transferred account. Transferees who fail to update their account details or fail to ensure that the transferor's Payoneer account is disconnected from the transferred account may have their Promoter account suspended without pay until such time that their account details and Payoneer account reflect the correct information.

Le-Vel prohibits the transfer of Promoterships as a subterfuge for transferring Promoter accounts (or interest in Promoter accounts) in order to undermine or circumvent our policies. Le-Vel reserves the right to void any transfer of a Promotership in its sole discretion, even if the transfer has previously been approved, if it is believed that such transfer was made to undermine or circumvent Le-Vel's policies. If a Promoter wishes to sell, transfer, or assign (hereinafter in this section "transfer or transferred") his/her/its whole or partial interests in a Le-Vel Promotership, Le-Vel would only consider the transfer if the following criteria are met (in addition to Le-Vel determining that the transfer or sale is not being used to circumvent Le-Vel's policies):

a)  The Promotership being transferred must be an active Promotership for a minimum of six (6) months immediately prior to the time the request for sale is made;

b)  The transferee may not currently have a legal or beneficial interest in a Promotership or have had a legal or beneficial interest in a Promotership within the preceding six (6) months;

c)  The transferor may not apply to become a Promoter again for a period of not less than six (6) months.

### 3.3.  Multiple Enrollments.

If an applicant submits multiple enrollments to create a customer or Promoter account, only the first completed enrollment will be considered a valid account. All subsequent accounts are subject to suspension without pay and will be processed for cancellation.  Le-Vel reserves the right, at its sole discretion, to make the final decision with respect to all disputes related to enrollments.

### 3.4.  Placement Changes/Corrections.

Waiting Room placement changes/corrections may be requested during the same pay period and month the placement was made. Such adjustments require written permission directed to the Support Department through a back office support ticket by the Promoter controlling the Waiting Room stating the reason why a correction needs to be made. Le-Vel reserves the right to approve or deny placement changes/corrections in its sole discretion.

### 3.5.  Enrollment/Sponsor Correction.

Enrollment change requests based on mistaken enrollments must be made within (3) business days after the initial date of enrollment. Enrollment change requests based on misrepresentations or fraud (including a customer or Promoter's lack of knowledge or permission to be enrolled) must

be made within (10) business days after the initial date of enrollment.

All requests for corrections must be made through a back office support ticket by the customer or Promoter to be moved and in some cases the upline Promoter who has been aggrieved, stating the reason why the correction needs to be made. Le-Vel reserves the right to make Sponsorship changes to ensure fairness and reasonable treatment in accordance with our policies.

### 3.6.  Acquisition of Business.

A Promoter desiring to acquire another Promoter's business must first cancel his/her/its Promoter account and wait a period of six (6) months from the date of cancelation before becoming eligible for such an acquisition.  All such transactions must be fully disclosed through the completion of an Account Transfer form submitted to Le-Vel's Compliance Department and is subject to Le-Vel's sole discretion to approve or deny the transaction in accordance with all policy provisions. Prior to any such transaction becoming official written approval from Le-Vel must be provided.

### 3.7.  Adding of Co-Applicants.

When adding a co-applicant (either an individual or a business entity) to an existing Promotership, Le-Vel requires a fully executed Co-Applicant Form to be submitted. The original applicant must remain a party to the original Application and Agreement. If the original Promoter wants to terminate his/her/its Promoter relationship with Le-Vel, he/she/it must do so in accordance to Le-Vel policy.  If this is not followed, the business shall be terminated upon withdrawal of the original Promoter.  All bonus and commission checks will be sent to the address on record on the Promotership.  A co-applicant may not under any circumstances be a party to any other Promotership.  Note that the modification permitted within the scope of this paragraph does not include change in sponsorship.

### 3.8.  Personal Information.

Personal information such as the Promoter back office password, the Promoter's address, telephone number, etc. will be treated as confidential and will not be shared with any other person(s) outside of Le-Vel, except that we may share this information with service providers who perform business functions on our behalf, to respond to legal process or when necessary to protect us or others, to enforce this agreement and our legal rights, in the event of a corporate transaction, or unless required by law.  In the event of an emergency the inquiring party may contact the Le-Vel Support Department who will advise the Promoter that someone is attempting to contact him/her. It is a direct violation of our policies for a Promoter to share their password with others or allow others to have access to their Promoter account. Promoters are prohibited from accessing any other Promoter or Customer account, with the exception of helping someone initially create their account.

### 3.9.  Training Requirement.

Promoters are required to assure the adequate training of Promoters they sponsor.  "Adequate training" shall include, but is not limited to, education regarding the Policies and Procedures, Compensation Plan, product information, sound business practices, sales strategies, and ethical business behavior.  A sponsor must maintain an ongoing, professional leadership association with

Promoters in his/her/its organization and must fulfill the obligation of performing a bona fide supervisory, sales or distributive function on the sale or delivery of products and services to the ultimate consumer.

### 3.10.   Promoter & Customer Account Cancellation.

A Promoter can only cancel his/her/its Promoter account by sending an account cancellation request to the Le-Vel Support Department through a back office support ticket.  Cancellation becomes effective upon the written notification from Le-Vel that the account has been cancelled. A Promoter who cancels his/her/its account may not re-enroll as a Promoter or have any financial interest in any Promoter entity for a period of six (6) months from the date of resignation.  A Customer who cancels his/her/its account and decides to re-enroll under a different Sponsor must wait six (6) months to re-enroll as a Promoter OR three (3) months to re-enroll as a Customer.  If he/she/it re-enrolls as a Customer, they must wait an additional three (3) months (for a total of six (6) months) before upgrading to a Promoter.  Le-Vel reserves the right to cancel any Promoter or Customer account retroactively if it believes such action is necessary to ensure overall fairness in its sole discretion.

### 3.11.   Suspension.

Le-Vel reserves the right to suspend any Promoter account with or without pay at any time when it is determined that the Promoter has or may have violated any provision of the Agreement as amended, or any applicable laws or standards for fair dealing, in addition to other remedies to which Le-Vel may be entitled.  Le-Vel shall make such involuntary suspension at its sole discretion.  Le-Vel will notify the Promoter either by a back office ticket or email.  In the event of a suspension, a Promoter agrees to immediately cease representing himself/herself/itself as a Promoter for Le-Vel.  For clarity and without limiting the generality of the foregoing, Le-Vel reserves the right in its sole discretion to suspend a Promoter without pay during an account review or investigation period.

### 3.12.   Termination.

a) A Promoter may be terminated without prior warning for violating any of the terms of the Agreement.  Notice of the termination, citing the reason(s) for the action, shall be provided in writing to the Promoter and delivered either through a back office ticket or email from Le-Vel. Termination shall be effective as set forth therein, and shall be final if a timely appeal is not provided by the Promoter and received by the Compliance Department in accordance with the appeal procedure set forth in Section 3.13.  In the event that Le-Vel deems it necessary to terminate an individual's Promoter account, the termination shall render the terms of the Agreement between Le-Vel and such Promoter null and void effective as of the date of such termination except that any provision of this Agreement which by its terms is intended to apply in whole or part after a termination of this Agreement shall survive such termination and continue in full force and effect.

b) Le-Vel reserves the right at any time to terminate the Agreement with respect to any Promoter for convenience in its sole discretion upon a thirty (30) day written notice to such Promoter.  Cancellation shall be effective 30 days following the date on which written

notice is delivered to such Promoter through a back office ticket or email from Le-Vel. Le-Vel shall not be required to have any reason or to prove any cause in order to terminate the Agreement with any Promoter pursuant to this clause (b).  If and when any Promoter Agreement is terminated, the Promoter shall have no claim against Le-Vel, its affiliates or their respective officers, directors, agents, employees, servants and representatives, nor any right to claim or collect any direct, indirect, incidental, consequential, reliance or special damages by virtue of such termination, including damages from harm to business, lost profits, lost revenues or lost opportunities.  Termination will result in the loss of all benefits as a Promoter except those accrued as of immediately prior to such termination unless such benefits were accrued by fraud or in violation of Le-Vel's policies.  The terms hereof are in satisfaction of any and all statutory and common law claims, including without limitation any right to reasonable notice of termination of the Promoter Agreement.

c)  A Promoter may terminate the Promoter Agreement with respect to such Promoter at any time upon written notice to Le-Vel, which shall be sent through a back office support ticket.

### 3.13.  Appeal.

A Promoter who has been suspended or terminated pursuant to Sections 3.11 or 3.12(a) may appeal the action by submitting a written appeal to Le-Vel's Compliance Department stating the grounds of appeal.  No telephone calls or other forms of communication will be accepted under any circumstances. Le-Vel must receive the notice of appeal directly to the Compliance Department within ten (10) business days of the date of such notice of suspension or termination. If Le-Vel has not received the notice of appeal by the deadline date, the suspension or termination shall automatically become final.  No appeal is available to a Promoter with respect to a termination pursuant to Section 3.12(b).

If a Promoter files a timely appeal, Le-Vel will, at its sole discretion, review and notify the Promoter of its decision.  The decision of Le-Vel shall be final and will not be subject to further review.  If the appeal is denied, the suspension or termination shall remain in effect as of the date of Le-Vel's original notice.

### 3.14.  Succession.

Notwithstanding any other provisions of this section, upon the death of a Promoter, the Promoter entity shall pass to his/her/its successor in interest as provided by law.  However, Le-Vel will not recognize such transfers until the successor in interest has submitted a completed Sales/Transfer form to Le-Vel's Compliance Department together with certified copies of the death certificate and will, trust or other instrument and executed Sale and Transfer form.  The successor shall thereafter be entitled to all the rights and subject to all the obligations as any other Promoter.  In addition, the successor-in-interest must be at least 18 years old and be willing and able to comply with all the terms of conditions of the Agreement.

### 3.15.  Divorce or Dissolution.

During the pendency of divorce or entity dissolution, both parties must adopt one of the following methods of operation:

a) One of the parties may, with written consent of the other(s), operate the Le-Vel business whereby the relinquishing spouse, shareholder(s), member(s), partner(s) or trustee(s) shall authorize Le-Vel to deal directly and solely with the other spouse or non-relinquishing shareholder(s), partner(s), or trustee(s).

b) The parties may continue to operate the Le-Vel business jointly on a business-as-usual basis, whereby all compensation paid by Le-Vel will be paid in the name of a Promoter or in the name of the entity as the parties may independently agree to between themselves.

c) Under no circumstance will Le-Vel split commissions and bonus checks between divorcing spouses or members of dissolving entities.  Le-Vel will recognize only one (1) downline organization and will issue only one (1) commission check per Le-Vel business per commission cycle.  Commission checks shall always be issued to the same individual or entity.  In the event that parties of a divorce or dissolution proceedings are unable to resolve a dispute over the disposition of commissions and ownership of the business, the Agreement shall terminate.

If a former spouse or former entity affiliate has completely relinquished all rights to his/her/its original Le-Vel business he/she/it is therefore free to enroll under any sponsor of his/her/its choosing, so long as he/she/it meets the six (6) month waiting period set forth by Le-Vel.  In such case, however, the former spouse or party shall have no rights to any Promoter in his/her/its organization or any former Promoter.

### 3.16.   Changes in Form of Business Entity.

A Promoter that is a Business Entity and desires to change to another type of Business Entity may do so through an account transfer, so as long as the equity ownership in the Business Entity does not change.  All Equity holders of the former Legal Entity must confirm with a notarized or other form of authentication signature that they agree to the change.  Also, an Account Transfer Form must be submitted by the new Business Entity. Members of the former Business Entity are jointly and severally liable for any indebtedness or other obligations to Le-Vel.

### 3.17.   Acknowledgement by Promoter.

Promoter recognizes and acknowledges:

a) That Le-Vel and its affiliates have devoted a considerable amount of time, effort, and expense to acquire, assemble, train and maintain Le-Vel's employees, Promoters, Customers, and business relationships, in addition to establishing and maintaining trade secrets, confidential information and proprietary business systems;

b) That such employees, Promoters, Customers, business relationships, trade secrets, confidential information, proprietary business systems and the resulting goodwill comprise valuable assets of Le-Vel and its affiliates;

c) That as a result of a Promoter's business relationship with Le-Vel, Promoter may be provided access to information related to some or all of Le-Vel's Promoters, customers, trade secrets, confidential information, and proprietary business systems;

    d) That during the course of the business relationship between a Promoter and
Le-Vel, Le-Vel will expend funds to develop and maintain Promoters, customers,
trade secrets, confidential information, business systems and goodwill; and

    e) That entering into competition with Le-Vel or its affiliates, or solicitation of
Le-Vel's Promoters, customers, or other business relationships would be a
direct violation of this Agreement and highly damaging to Le-Vel's trade secrets,
goodwill, and business.

### 3.18. Confidentiality Agreement.

a) Promoters may gain access to confidential, proprietary or secret information or data of
Le-Vel (through Le-Vel's website and otherwise), including (a) all information contained in
any genealogical or downline report provided or accessible to a Promoter by Le-Vel; (b)
technical information of Le-Vel; (c) information relative to the current or proposed business,
sales and marketing plans of Le-Vel and financial information related thereto; (d) drawings,
designs, computer programs and software devices; (e) costs and pricing information; or (f)
identification of personnel or other possible resources for possible use in the business of
Le-Vel (the "Confidential Information").

The Promoter agrees that he/she/it will not disclose any Confidential Information to any
third party directly or indirectly, or use the information to compete with Le-Vel.  The
Promoter agrees to use the Confidential Information solely for the promotion of the Le-Vel
program.  The Promoter and Le-Vel agree that without this agreement of confidentiality and
non-disclosure, Le-Vel would not provide the Confidential Information or make it accessible
to the Promoter.  It is agreed that this provision shall survive the termination or expiration
of this Agreement.

b) The Promoter's obligations of confidence described above include, without limiting the
generality of the foregoing:

    I. Taking every reasonable step to prevent third parties from obtaining, examining
and/or making copies of any Confidential Information or other information,
documents or papers (whether in tangible or intangible form) relating to Le-Vel or
its business that come into the Promoter's possession or under the Promoter's
control by reason of the Agreement.

    II. Using the Promoter's best efforts to follow all confidentiality, security and
information technology policies of Le-Vel;

    III. Using the Confidential Information solely as may be required in connection with the
Agreement and strictly in accordance with policies, procedures and instructions
prescribed by Le-Vel; and

    IV. Upon termination of the Agreement, turn over to Le-Vel all documents or papers
(whether in electronic or hardcopy form) and any other property or materials in the
Promoter's possession or under the Promoter's control that contain or constitute
Confidential Information or otherwise relate to the business of Le-Vel or its

customers/clients.

c) The Promoter's obligations of confidence described above do not apply to information which is:

    I.   Widely and generally available to the public other than by breach of obligations of confidence owed by the Promoter;

    II.   Rightfully received by the Promoter, outside of the course of the Agreement, from a third party without confidentiality limitations (as can be demonstrated by the Promoter by reference to the Promoter's records);

    III.   Independently developed by the Promoter without recourse to any Confidential Information (as can be reasonably demonstrated by the Promoter by reference to the Promoter's records);

    IV.   Known to the Promoter prior to first receipt of the same in the course of the Agreement (as can be reasonably demonstrated by the Promoter by reference to the Promoter's records); or

    V.   Required to be disclosed by law or court order (provided that the Promoter used the Promoter's best efforts to immediately advise Le-Vel of the demand to disclose such information so that Le-Vel can seek appropriate protective orders).

The mingling of Confidential Information with information that falls within one or more of the exceptions above shall not impair the status of, or obligations of confidence and non-use respecting, the confidential parts.

### 3.19.  Product Testimonials.

Customers and Promoters are encouraged to share their excitement as the result of product consumption and use through written testimonials. All testimonies and accompanying photographs must be submitted to Le-Vel's designated email address or other designated for receiving such material before they are publicly posted or otherwise published. Le-Vel reserves the right to use testimonials, statements, photographs and other materials voluntarily submitted by Customers and Promoters, which shall be used for any and all advertising, promotion and/or other purposes of trade without having to provide anyone with any further notice or any form of compensation (financial or otherwise).  Customers and Promoters shall secure any necessary third-party rights, permissions, or consents (including without limitation rights of publicity, privacy, and intellectual property) required for Le-Vel to use the testimonials and all content therein for such purposes. Upon submission, each Promoter, in relation to any and all statements Promoter has made or will make concerning Le-Vel and/or its products (including, but not limited to, Promoter's product consumption and use), hereby: (a) represents that any such statements are or will be at the time of being made true, accurate and substantiated; (ii) represents that any such statements reflect or will reflect at the time of being made Promoter's true and honest opinion of and actual experience with Le-Vel and/or its products; and (c) gives his/her/its permission to Le-Vel, irrevocably and in perpetuity throughout the world, to edit, revise, reproduce, copy, publish, broadcast, or otherwise use such statements, photographs, or any material based upon or derived

therefrom, or to refrain from so doing, in whole or in part, in any manner or media whatsoever, including, without limitation, for any and all advertising, promotion and/or other purposes of trade. Notwithstanding the foregoing, a testimonial cannot be used to make a claim that is otherwise not permitted by the Agreement or applicable laws.

### 3.20.   Non-Solicitation.

The Promoter acknowledges that the only way to protect Le-Vel's goodwill, confidential and proprietary information, trade secrets, and the stability of its sales network is to prohibit solicitation as set forth below.  Therefore, during the term hereof and for a period of twenty-four (24) months after the termination or expiration of the relationship between a Promoter and Le-Vel, for any reason whatsoever, the Promoter shall not, directly or indirectly, on his/her/its own behalf or on behalf of any other person, partnership, association, corporation or other entity, directly or indirectly, through oral or written communications or through social media or any other means of communications:

a) Solicit or recruit, or attempt to solicit or recruit, any of Le-Vel's employees, independent contractors, customers or Promoters (or their prospects) to join, promote, buy products from, or represent any other company, organization, business opportunity, or venture, regardless of any previous relationship, business or otherwise, between the Promoter and any employee, independent contractor, customer, or Promoter (or their prospects) of Le-Vel or its affiliates to work for or with another direct sales company;

b) Hire, or attempt to hire, any employee, independent contractor, customer or Promoter of Le-Vel or its affiliates, regardless of any previous relationship, business or otherwise, between the Promoter and any employee, independent contractor, customer or Promoter of Le-Vel or its affiliates;

c) Approach or solicit any business prospect, manufacturer or supplier of Le-Vel or any of its affiliates, in order to attempt to direct any of the same away from Le-Vel or its affiliates or reduce or alter any such association or business with Le-Vel or its affiliates, regardless of any previous relationship, business or otherwise, between the Promoter and any business prospect, manufacturer or supplier of Le-Vel or its affiliates;

d) Solicit or divert any business away from Le-Vel or its affiliates; or

e) Otherwise interfere or attempt to interfere with any of the contractual business or economic relationships of Le-Vel or its affiliates with other parties.

It is agreed that this provision shall survive the termination or expiration of the Agreement for a period of twenty-four (24) months. The Promoter agrees that breaching this provision would cause Le-Vel irreparable harm, which could not be adequately compensated with money damages alone, and which would justify emergency injunctive relief, including a temporary restraining order.

### 3.21.   Targeting Other Direct Sellers.

Promoters agree to refrain from systematically targeting members of another network marketing business to be a Le-Vel Promoter.  If any lawsuit, arbitration, or mediation is brought against any Promoter alleging that he/she/it engaged in such prohibited activity, he/she/it shall indemnify and hold harmless Le-Vel against all claims, actions, suits, and demands arising from or related to the

systematic targeting.

### 3.22.   Non-Competition.

Each Promoter agrees not to compete with the protectable business interests of Le-Vel by selling or promoting other nutritional supplements, cosmetics, or other health-related products or services during the term of the Promoter Agreement.  The Promoter acknowledges and recognizes these restrictions are necessary for Le-Vel to protect its valuable interests and agrees that any actual or anticipated breach of this provision may be difficult or impossible to measure and therefore agrees that in addition to any other remedies available, that the Company shall be entitled to seek temporary or permanent injunctive relief to enforce the terms hereof, all without notice or bond.

Without limiting the generality of the foregoing, during the term of the Promoter Agreement, each Promoter agrees that it will not serve as an executive, officer, director, employee or in any advisory capacity with any competitor, in whole or in part of Le-Vel or its affiliates or either individually or in partnership or jointly or in conjunction with any person or person's firm, trust, partnership, association, syndicate or corporation, as principal, agent, shareholder, trustee or in any other matter whatsoever otherwise carry on or be engaged in or be concerned with a person or persons, firm, trust, partnership, association, syndicate or corporation which is a competitor, in whole or in part, of Le-Vel.

### 3.23.   Vendor Confidentiality.

Le-Vel's business relationships with its vendors, manufacturers and suppliers are confidential.  A Promoter shall not contact, directly or indirectly, speak to, or communicate with any representative or any supplier, manufacturer, or vendor except at a Le-Vel sponsored event at which the representative is present at the request of Le-Vel.

## 4. TRADEMARK, LITERATURE AND ADVERTISING

### 4.1.   Trademark.

The name Le-Vel, and the name of all the Le-Vel products, services and programs are the Trademarks of and owned by Le-Vel Brands, LLC and licensed to Le-Vel.  Only Le-Vel and Le-Vel Brands, LLC are authorized to produce and market products and literature under these Trademarks.  This includes but is not limited to slides, overheads, brochures, videos, domain addresses, email addresses, social media accounts, training and/or marketing materials and all promotional materials such as, but not limited to, t-shirts, caps, pins, magnetic signs, cups, etc. Use of the Le-Vel name or any of the Trademarks on any item not produced or authorized by Le-Vel is prohibited. Violators will be subject to having their Promoter account suspended without pay or the termination of their Promotership at the sole discretion of Le-Vel.

### 4.2.   Yellow and White Page Listings.

Promoters are not permitted to use the Le-Vel name or any of the Trademarks in advertising their telephone and fax numbers in the white or yellow page section of the telephone book or on the Internet telephone directory without identifying themselves as Independent Brand Promoters or

Independent Contractors as follows:

Mary Jones, Le-Vel Independent Brand Promoter. Note: No other variation may be used to describe the Promoter's association with Le-Vel.

### 4.3.   "Toll Free" Telephone Number Listings.

Le-Vel Promoters are not permitted to list their "toll free" telephone numbers under the Le-Vel name or any of the Trademarks without first submitting a request to the Support Department for approval. If approval is obtained for a toll-free listing, it must be stated in the following manner:

Mary Jones, Le-Vel Independent Brand Promoter. Note: No other variation may be used to describe the Promoter's association with Le-Vel.

### 4.4.   Imprinted Checks.

Le-Vel Promoters are not permitted to use the Le-Vel name or any of the Trademarks on their business or personal checking accounts.

### 4.5.   Imprinted Business Cards or Letterheads.

Le-Vel Independent Promoters are not permitted to create their own business cards or graphics using the Le-Vel name or any of Le-Vel's Trademarks.  Only business cards or graphics supplied by Le-Vel are permitted.

### 4.6.   Company Literature.

Only official Le-Vel literature may be used in presenting Le-Vel products and/or the Le-Vel Compensation Plan.  Company literature may not be duplicated or reprinted without prior written permission from Le-Vel which may be obtained through communication directed to the Compliance Department.  Banners, trade show materials, and other related promotional material must be approved in advance and in writing by Le-Vel.  Items on the Corporate website and the replicating Promoter website may be downloaded for promotional purposes only.

### 4.7.   Advertising.

Only Company approved materials may be used in the placement of any advertising in any print, radio, television, Internet, social media, electronic or other media. No person shall use the Le-Vel name, logos, Trademarks or copyrighted material in any advertising not produced by Le-Vel, Le-Vel Brands, LLC or without express written permission from the Le-Vel's Compliance Department.  For approval, email a copy of the proposed advertising material to the Compliance Department. Include a description of the placement (publication name, month, year, etc.). Le-Vel will email, edits/revisions and will provide a unique approval code upon final approval.  Approval codes must be visible on the lower right-hand side of any approved material.  Once approval is obtained, no text may be amended or changed.  If any change is made whatsoever, the new material must be submitted for approval. Allow approximately forty-eight (48) hours from receipt for processing. Le-Vel reserves the right to revoke any and all approvals at any time in its sole discretion for any reason.

### 4.8.   False or Misleading Representations/Enrollments.

Promoters shall not make any false or misleading representations.  The terms that a Promoter uses when discussing the Le-Vel program are critical.  The use of improper terms can create a situation that is in violation of regulatory standards when in fact the proper discussion of the programs reflects the full and complete compliance with all standards.  It is the responsibility of all Promoters to fully understand these differences to avoid suspension or termination for false representation or operation of their Promotership. This shall include without limitation making a false or misleading statement regarding a Promoter's paid rank with Le-Vel. Promoters are prohibited from collecting personal information from others online through automated email signup forms or campaigns that capture an individual's personal information for the purpose of enrolling them as a Customer or sponsoring them as a Promoter without their prior knowledge or consent as to the nature of their enrollment with Le-Vel, and without gaining the individual's permission to be enrolled as a Customer or Promoter under them.  Such marketing techniques are considered "blind prospecting" and are strictly prohibited. Should Le-Vel determine, in its sole discretion, that a Customer or Promoter was enrolled without their prior knowledge or consent, they may be allowed to enroll under a different Promoter or Sponsor of their choice.

### 4.9.   Business Opportunity Specific Claims.

The word "fee(s)" or "investment(s) should never be used to describe Le-Vel products – regardless of how they are obtained.  There are no "fees" or "investments" associated with Le-Vel's fully replicable website and business management back office software.  There are also no "fees" or "investments" related to Le-Vel products, but rather a purchase price has been set to reflect the true wholesale and retail value of all Le-Vel products.

### 4.10.   Internet and Website/Blog Policy.

A Le-Vel Promoter may promote his/her/its Promotership through Le-Vel's replicating website only and through their personal Facebook Profile/Timeline and other personal social media accounts. Promoters are not permitted to use the Le-Vel name or any of the Trademarks in the page, profile, or other name for their personal social media accounts.  Each Promoter will be issued a unique Promoter Link that links seamlessly to the official Le-Vel website giving the Promoter a professional and Le-Vel approved presence on the Internet.  No Promoter may design a website or blog that uses the names, logos, or product descriptions related to Le-Vel or that otherwise promotes Le-Vel, Le-Vel's products or the Rewards Plan directly or indirectly.  Promoters may not advertise or promote their Promotership or Le-Vel's business, products or marketing plan, or use Le-Vel's name in any electronic media or transmission, including on the Internet via websites, blogs, splash pages, landing pages, email opt-in pages or otherwise, unless specifically authorized to do so herein. Promoters must abide by the guidelines set forth by Le-Vel when engaging in online marketing:

a)   Promoters shall not make offers, contests, sweepstakes, promotions, or solicitations in the guise of research, surveys or informal communication, when the real intent is to sell our products or solicit prospects;

b)   Promoters shall not operate any type of automated online website, email campaign, email

opt-in page or other electronic system to collect personal information from consumers;

c) Promoters sharing personal information collected online or through other means shall provide consumers prior notice, obtain prior consent, and provide an opportunity to prohibit the dissemination of such information.

If any consumer requests that his or her personal information not be shared, Promoters shall refrain from sharing such information;

d) Promoters shall provide individual consumers the option to terminate any further communication between the Promoter and the consumer, and if any consumer requests that a Promoter cease communication, the Promoter shall immediately stop communicating upon such request;

e) Promoters must abide by all laws and regulations regarding privacy and electronic or other communications;

f) In compliance with section "E-Mail and Newsgroup Marketing" below, Promoters may not distribute content by use of distribution lists or to any person who has not given specific permission to be included in such process; spamming or distribution of chain letters or junk mail is not allowed;

g) Promoters may not distribute content that is unlawful, harassing, libelous, slanderous, abusive, threatening, harmful, vulgar, obscene or otherwise objectionable material or which could give rise to civil liability or otherwise violate any applicable local, state, federal or international law or regulation; and

h) Promoters shall not directly or indirectly, send emails or any other form of message to persons except in compliance with federal and state law, including anti-spam Legislation. Without limiting the generality of the foregoing, Promoters must provide any required notices and obtain all necessary consents or permissions, including without limitation scrubbing such messages against any applicable opt-out lists or state, federal, or other "do-not-call" lists.

i) Promoters shall not create search engine advertisements to directly or indirectly promote Le-Vel or our products unless specifically approved to do so in writing by Le-Vel.

### 4.11.   Prohibited Use of Company & Product Names.

Promoters may not use or attempt to register or use any Le-Vel trade names, trademarks, service marks, product names, company name, or any derivatives thereof, for their display name, Promotership username (promoter link), any Internet domain name, business name, or any social media page or profile name. Promoters are also prohibited from using any vulgar or inappropriate names in the same manner.

### 4.12.   Blogs, Chat Rooms, Social Networks, and other Online Forums.

Promoters who wish to employ the use of chat rooms, personal social networks and online forums to promote their Le-Vel Promotership may do so under certain conditions only. Promoters may post their Promoter Link on personal social media accounts and in emails for prospects to click on in order to visit the Promoter's replicated website. No other product or service may be

promoted or discussed in conjunction with, nor may any comparisons be made concerning other products, their ingredients, effectiveness, etc. in connection with Le-Vel.

Promoters may not make claims of any nature whatsoever concerning Le-Vel products or Promotership.  Only statements made in official Company Material may be used to promote products or the Promoter opportunity.  Promoters may list local Promoter meetings and any corporate events to which visitors would be welcome. Any native advertising posted in chat rooms, personal social networks, online forums, or elsewhere must include advertising disclaimers consistent with law and regulatory guidance.

### 4.13.   Electronic Advertising.
Promoters may not sell, market or promote the Company's business, marketing plan, products or services on eBay, Amazon, Facebook, Craigslist or any other business Internet site except as detailed under the preceding paragraph. Promoters shall not make offers, contests, sweepstakes, promotions, or solicitations in the guise of research, surveys or informal communication, when the real intent is to sell products or services or sponsor Promoters.  Promoter is responsible for complying with any third-party terms or conditions. If personal information is collected on-line, the Promoter must provide consumers prior notice, obtain prior consent, and provide an opportunity to prohibit the dissemination of such information.  If any consumer requests that his or her personal information not be shared, Promoters shall refrain from sharing such information. Promoters shall provide individual consumers the option to terminate any further communication between them and the consumer, and if any consumer requests that he or she wishes to cease communication, the Promoter shall immediately stop communicating with the consumer upon such request.  It is important that all Promoters abide by all laws and regulations regarding electronic communications.

### 4.14.   Other Sales Media.
Le-Vel products may not be sold or promoted through catalogs or other mass sales mediums such as magazines, infomercials, television, radio, or other related sales media, unless approved by Le-Vel's Compliance Department in writing.

### 4.15.   E-Mail and Newsgroup Marketing.
Other than what is provided by the Company, Le-Vel must approve, in writing, any and all information representing Le-Vel and/or its products. Promoters shall not defame, abuse, harass, stalk, threaten or otherwise violate the legal rights (such as rights of privacy and publicity) of others.  Promoters shall not publish, post, upload, distribute, or communicate any inappropriate, profane, defamatory, infringing, obscene, indecent or unlawful topic, name, material or information.  Promoters shall not advertise or offer to sell any goods or services for any commercial purpose or conduct or forward surveys, contests, pyramid schemes or chain letters. Users of the Le-Vel website or Facebook Fan Page will not participate in any activity that will restrict or inhibit any other user from using and enjoying the website or Fan Page.  Any email sent by a Promoter that promotes the Promoter or Le-Vel products and services must comply with the

applicable law and the following requirements:

a) Message Content

- There must be a functioning return email address to the sender.

- There must be a notice in the email that advises the recipient that he or she may reply to the email, via the functioning return email address, to request that future email solicitations or correspondence not be sent to him or her (a functioning "opt-out" notice).

- The email must include the Promoter's physical mailing address.

- The email must indicate the name under which the Promoter carries on business.

- The email must clearly and conspicuously disclose that the message is an advertisement or solicitation.

- The use of misleading or deceptive subject lines and/or false or misleading header information is prohibited.

- All opt-out requests, whether received by email or regular mail, must be honored within ten (10) business days.

- An e-mail address may not be sold, rented, or otherwise disclosed or transferred once the person has opted out, unless necessary to honor the person's opt out request.

**4.16.   Personal Information and Privacy.**

a) Handling Personal Information

As a Promoter, you will receive Personal Information from and about prospective recruits, customers and other individuals.  Keeping Personal Information secure not only helps to ensure your compliance with the law, but it also helps you to maintain current customers' and potential customers' trust, which is an important factor in your success.  Personal Information is information that identifies, may identify, or permits you to contact, an individual or device ("Personal Information"). It includes, without limitation, a customer's individual name, address, email address, phone number, credit card information, online usernames, device identifiers, and other information associated with these details, such as purchases and preferences. All Promoters are required to comply with the applicable state and federal laws.

b) Give the Customer Notice

Customers want to know why you are collecting their Personal Information and what you plan to do with it, so tell them what you are collecting, how you will use it and with whom you are going to share it. Tell them this before or at the time that you collect their Personal Information, and then be sure that you use and share Personal Information only in the ways you promised. You must make available to customers written information on the types of Personal Information you collect from them, how you will use that information, to whom you will disclose that information, and how you can be contacted with inquiries and

complaints about the personal information that you hold about an individual. Your
customers have the right to access the personal information that you hold about them, ask
that it be corrected and to make complaints about how you have treated the information.

c) Collect Only What You Need
Collect only the Personal Information that you really need.  For example, don't collect a
credit or debit card number unless your customer actually makes a purchase. Social
Security Numbers should never be collected unless legally required.

d) Give the Customer Control
Give customers a choice about how you communicate with them. For instance, find out if a
customer wants to receive promotions and other marketing messages from you and, if so,
whether he or she would prefer to receive them by email, mail, phone, text or another
method of communication. Respect the customer's wishes: if, for example, a customer tells
you that he or she doesn't want to receive emails, for example, by using the unsubscribe
mechanism described in the previous section, then find another way to communicate with
him or her consistent with applicable law. Note that local law may require specific language
to be included in your notices, specify how you must obtain consent, and impose other
requirements.  Local law also might require that you check and suppress numbers
registered on a state or national "do-not-call" or similar opt-out registry.  You are
responsible for complying with all applicable laws.

e) Stay up-to-date
Keep the customers' Personal Information up-to-date. Remind them to let you know if their
Personal Information changes. Keeping your contacts current helps you to stay in touch
with them.

f) Share Only if Necessary
Don't share a customer's Personal Information unless you have a real business reason to
do so and you have   disclosed this purpose and the potential for sharing to the customer.
Then share only what is necessary, and no other information, and make sure that the other
person agrees to use the Personal Information only in the ways you have agreed.

Personal Information cannot be shared for purposes other than those for which you have
given the customer notice.  If the customer does not consent to your sharing the
information, you must respect this choice.  You are responsible for complying with all
applicable laws restricting the disclosure of Personal Information.

g) Protect Personal Information
A customer's information is a valuable asset.  Don't communicate it to the general public or
to anyone who doesn't have a legitimate need for it.  Protect it from unauthorized access or
disclosure using physical, organizational, and technological protection methods.  You are

responsible if the customer's information is lost, misused, stolen, or accessed or acquired without authorization.  The law might require you to notify the customer and, in some cases, regulators in the event of a data breach.

h) Dispose of Personal Information Responsibly
When you no longer need a customer's Personal Information, stop using it.  Dispose of it in a way that makes it unreadable, such as by shredding paper documents. Be Very Careful with Sensitive Personal Information

If sensitive Personal Information such as credit or debit card numbers fall into the wrong hands, customers could become a victim of fraud or identity theft.  Comply with industry standards, such as PCI-DSS.  Consider these steps to help reduce that risk:

- Pay attention to your surroundings and use good judgment whenever you need to discuss or transmit sensitive Personal Information;

- Do not share (or ask a customer to share) sensitive Personal Information, including payment information, in an unsecure way, such as by email;

- Keep sensitive Personal Information in a secure place, such as a locked safe. Do not leave it lying around where someone could see or take it, and do not store it on unencrypted computers or devices;

- Use safeguards if you keep sensitive Personal Information on your computer. For example, use passwords that are not easy to guess, install and keep up-to-date virus protection and malware detection tools, do not install peer-to-peer or other software that could make Personal Information publicly available, and password protect documents that contain sensitive Personal Information;

- Avoid storing Personal Information on your laptop or other portable device that could be lost or stolen, unless the device is encrypted;

- Do not store any personal information on unencrypted USB or data keys; and

- Unless you have a legitimate business need, do not keep sensitive Personal Information.

## 4.17.   eBay/Amazon Sales.

Promoters are strictly prohibited from selling Le-Vel products on eBay, Amazon or any similar third-party auction site or any third-party website.  This prohibition applies regardless of the price at which the Le-Vel products are being offered. Le-Vel products via direct-to-consumer sales shall not be sold online through non-direct sales channels. Such sales dilute our valuable trademarks and diminish the opportunities of Le-Vel Promoters by competing in a non-direct sales channel with our Promoters. This activity also goes beyond the license we have given to our Promoters,

therefore such use constitutes an unauthorized use of our trademarks.

### 4.18.   Trade Shows.

With prior written authorization from Le-Vel, which authorization shall be in Le-Vel's sole
discretion, Promoters may display Company products and opportunity at trade shows. Request for
participation in trade shows must be received in writing by Le-Vel's Compliance Department at
least two (2) weeks prior to the show.  Written authorization from Le-Vel, which shall be in Le-Vel's
sole discretion, must be received before participating in such events. Company products and
opportunity are the only products and opportunity that may be offered in the trade show booth.
Only Company approved marketing materials may be displayed or distributed.

### 4.19.   Generic Business Advertisements.

Promoters may not imply that a job, position, salary, or any type of employment is being offered in
order to generate business.  No advertisement may promote, represent, or imply salaried
positions, management positions, hourly wages, full or part time employment, or guaranteed
incomes.  The Le-Vel opportunity is not employment and may not be presented as such.  Terms
such as "manager trainee," "management position available," "travel provided," "call for interview,"
"position available," "now hiring" and other misleading statements are not allowed.  No specific
income may be promised or implied and any reference to compensation must use the word
"bonuses" to indicate the independent contractor status of Promoters.

### 4.20.   Media Interviews.

Promoters are prohibited from granting radio, television, newspaper, tabloid or magazine
interviews or using public appearances, public engagements, or making any type of statement to
the public media to publicize Le-Vel, its products or their individual Le-Vel business without
express, prior written approval from Le-Vel's Compliance Department, which can be granted or
withheld at Le-Vel's sole discretion.  All media contacts and inquiries must be coordinated through
Le-Vel and must contain a complete description of the interview format and venue.

### 4.21.   Endorsements.

No endorsements by any Le-Vel officers, administrators or third parties (including celebrity, sports
figure, or public figure endorsements) may be alleged, except as expressly communicated in
official Le-Vel literature and communications.

### 4.22.   Independent Communications.

Promoters as independent contractors are encouraged to distribute information and direction to
their respective downline organizations.  Le-Vel encourages the prudent distribution of
newsletters, training manuals and workshops, and other organizational programs.  However,
Promoters must identify and distinguish between personal communication and the official
communication of Le-Vel and must comply with these policies.

### 4.23.   Promoter Training.

Promoters are responsible for participation in the training of the Promoters they sponsor. Training
assistance is provided in Le-Vel literature and in additional training tools as well as on the

Internet.  Further, Promoters may attend local and regional training events for Promoters.

### 4.24.   Promoter Services.

Le-Vel provides every Promoter who generates any income as a Le-Vel Promoter with management and training communications, timely delivery of products and sales materials, and access on the Internet to reports of sales made by their sales organization for the calendar period in which commissions and overrides are earned and paid.

### 4.25.   Re-Packaging Prohibited.

The repackaging of Le-Vel products for resale is strictly prohibited under any circumstances.

### 4.26.   Promotional Items.

Promoters are prohibited from creating promotional items such as t-shirts, hats, bags, cups, etc. All such items must be purchased through Le-Vel's back office.

### 4.27.   Recordings.

Promoters shall not produce or reproduce Le-Vel produced audio or videotaped materials detailing the Le-Vel opportunity or products.  Promoters shall not record any Le-Vel function via video or audio.

### 4.28.   Telephone Answering.

Promoters may not answer the telephone or create recordings saying "Le-Vel" or in any manner that could lead the caller to believe that he or she has reached the Corporate Offices of Le-Vel.

### 4.29.   Limitation of Product Warranties.

Promoters may make no claim, representation or warranty concerning any product or service of the Company, except those expressly approved in writing by the Company or contained in official Le-Vel materials.  Except as expressly stated herein, the Company makes no warranty or representation, express or implied, as to the merchantability or fitness for a particular purpose, workmanship or any other warranty arising by law, statute, usage of trade or course of dealing concerning any product or service purchased from or through the Company.  To the maximum extent permitted by applicable law, all such products and services are provided 'as is,' 'with all faults' and 'as available'.

### 4.30.   Liability.

In addition to suspension under Section 3.11 or termination under Section 3.12 of this Agreement, violations of the Policies, Procedures, a violator may be subject to civil or criminal liability resulting from violation of this Agreement, the Code of Professional Ethics, the Policies and Procedures of Le-Vel, or federal, state, or local laws.  Le-Vel may withhold payment, including without limitation bonuses and commissions, to any Promoter in an effort to offset any damages suffered by Le-Vel as a result of such Promoter's violation of this Agreement, the Code of Professional Ethics, or federal, state, or local laws.  Any disputes regarding such withheld payment will be resolved through arbitration pursuant to the procedures provided below in Section 8.6.  Promoter acknowledges that damages for any actual or anticipated breach of this Agreement may be difficult or impossible to measure and therefore agree that in addition to any other

remedies or relief available, that the Company shall be entitled to seek temporary or permanent injunctive relief to enforce the terms hereof, all without notice or bond.

### 4.31.   Opportunity and Income Representations.

No Promoter shall engage in any deceptive, false, misleading, unethical, or unlawful consumer or recruiting practices. Promoters shall ensure that no statements, advertisements, promises, testimonials, or other representations are likely to mislead consumers or prospective Promoters. Information provided by Promoters concerning the opportunity and/or participation of the Promoter in the Le-Vel opportunity shall be accurate, complete, and not likely to mislead potential recruits.  Promoters shall not make any factual representations to prospective Promoters that cannot be verified or substantiated.

In particular, Promoters shall not misrepresent the rank of position they have achieved as an Independent Promoter in the Le-Vel opportunity, examples of which include, but are not limited to: inclusion of a rank to which you have not achieved in advertising material, either written, verbal, or digital; use of titles that have not been bestowed pursuant to the Le-Vel compensation plan; or use of titles to denote corporate affiliation of some kind.  Promoters may not display, in any manner for recruiting purposes or any other reason, their own or anyone else's commission checks or make specific income claims or representations.

### 4.32.   Personal Promotions by Promoters.

Promoters who choose to run their own personal promotions are solely responsible for fulfilling any and all obligations created or implied by their promotion, including compliance with any applicable state promotions laws.

## 5. PAYMENT OF COMMISSIONS, BONUSES, OVERRIDES AND CREDITS

### 5.1.   Promoter Agreement.

Commissions, bonuses and overrides cannot be paid until the Promoter Agreement has been read and affirmatively agreed to by the Promoter and are paid ONLY on the sale of Le-Vel products.  No commissions, bonuses or overrides are paid on the purchase or sale of any sales materials, sales aids or for the recruitment of Promoters.

### 5.2.   Payments and Unclaimed Commissions.

In order to be eligible for commissions, bonus or promotional payouts, a Promoter must be both qualified and active in accordance with Le-Vel's current Rewards Plan.  The minimum amount of payment of commissions, overrides and bonuses is twenty-five dollars ($25.00 USD) or as mandated by law in the jurisdiction where the Promoter resides.  If the earned amount is less than that amount, it will be accumulated until such time that the amount exceeds twenty-five dollars ($25.00 USD).  As a fraud prevention measure, commissions that remain unclaimed in any Promoter account for twelve (12) months will be purged from the account. Purged commissions can only be reinstated upon a Promoter's written request via a back office support ticket and verification of the Promoter's identity.

### 5.3.   Credits.

Le-Vel/Thrive Credits earned through the Le-Vel Refer 2 Program or through Le-Vel Corporate promotional offers will expire and be cleared from all accounts that have not been logged into for 120 days. Credits have no cash value and shall not be exchanged for cash or any other form of currency.

## 6. PURCHASE AND SALE OF PRODUCTS

### 6.1.   No Purchase Required to Become a Le-Vel Promoter.

No product purchase is required to become a Le-Vel Promoter. Le-Vel Promoters are entitled to purchase products from Le-Vel at a discounted price.

### 6.2.   Stockpiling Prohibited.

The success of Le-Vel depends upon retail sales to the ultimate consumer; therefore, all forms of stockpiling are prohibited.  Le-Vel strictly prohibits the purchase of products solely in an attempt to qualify for advancement in the Compensation Plan. Such purchases are considered "Bonus Buying."

### 6.3.   Inactive Promoter/Customer Accounts.

Promoter or Customer accounts showing no purchases or other back office activity for ninety (90) days following enrollment are subject to being administratively canceled by Le-Vel in its sole discretion. Le-Vel reserves the right to cancel any Promoter or Customer account retroactively if it believes such action is necessary to ensure overall fairness in its sole discretion.

### 6.4.   Back Order.

Should any product or sales material be unavailable for any period of time, Le-Vel Promoters will be given the option of placing the order and waiting for availability or cancelling the order with full reimbursement without penalties until those items are ready for shipping.

### 6.5.   Seventy Percent Rule.

In order to qualify for commissions and overrides, the Promoter certifies with the purchase of product that he/she/it has sold to retail customers seventy percent (70%) of all products previously purchased.  This is known in the industry as the "Seventy Percent Rule."

Note:  Promoters are subject to being asked by Le-Vel's Support Department to verify such retail sales or may be required to substantiate their retail sales through the Compliance Department.

### 6.6.   Shipping Address.

Le-Vel will only accept street addresses for shipping purposes.  Missing orders that are shipped and tracked will be replaced in a timely manner at the sole discretion of Le-Vel.

### 6.7.   Direct Purchase.

Le-Vel Promoters may purchase product needs directly from Le-Vel.  In the event that a Promoter obtains product from his/her/its sponsor or upline Promoter's personal inventory, and a replacement product is not placed through Le-Vel, the commissions associated with the purchase

will be attributed to the sponsor or upline.

Note:  Le-Vel Promoters in good standing may personally place orders through the Le-Vel website purchased at Promoter cost using their own Promoter ID.

### 6.8.   Credit Card Purchases.

Credit card purchases may only be made by the individual whose name and address is on the credit card. Le-Vel will report fraudulent transactions to the proper authorities.

Under no circumstances will any customer or Promoter chargeback any credit card purchases. Any customer or Promoter who does so will immediately lose all credit card ordering privileges until the charges are replaced with certified funds and all fees associated with the chargeback are refunded to Le-Vel.  Any amounts owed to Le-Vel for chargebacks or non-returned products will remain outstanding until Le-Vel or its third-party collection agency is able to collect such outstanding amounts plus fees.  If an erroneous charge is applied to a customer or Promoter's credit card, the customer or Promoter should immediately contact Le-Vel's Support Department so that they can initiate an investigation and resolution.

### 6.9.   Commission Adjustments.

Any upline Promoter affected by returned products to Le-Vel will accordingly be subject to adjustments in his/her/its commissions, overrides and bonus accounts, personal volume, etc. based upon all commissions and bonuses paid on chargebacks or returned product. Commissions and bonuses will not be paid on any recouped bad debt for chargebacks or payments for returned products.

### 6.10.   Bonus Buying.

Bonus buying includes (1) the enrollment of an individual or entity as a Brand Promoter without their knowledge and acceptance of the Promoter Agreement; (2) the fraudulent enrollment of an individual or entity as a Customer; (3) the enrollment or attempted enrollment of non-existent individuals or entities as Customers or Promoters (phantom accounts); (4) the use of a credit card on behalf of a Promoter or Customer when the Promoter or Customer is not the account holder of such credit card; or (5) making multiple purchases in different accounts for the express purpose of earning additional commissions or benefiting from a promotion.  Bonus buying constitutes a material breach of these Policies and Procedures and is strictly prohibited. Violators of this policy are subject to account suspension without pay, loss of bonuses or commissions, and possible termination of their Promotership.

### 6.11.   Payment Options.

Purchases may be paid by credit card or debit card only.

### 6.12.   Shipping Costs.

It is the ordering Promoter's sole responsibility to indicate; (a) a method and means of shipping; and (b) a destination address.  The methods available are stated on the Le-Vel website order form along with prepaid costs. Shipping costs will be automatically calculated.

The available methods and cost of shipping orders will be determined by Le-Vel based upon various factors such as weight and destination unless there are specific shipping instructions made by the Promoter.

 Note:  Should the receiving party of an order shipped from Le-Vel refuse delivery and the shipment is then returned to Le-Vel, the ordering Promoter's status will be suspended without pay pending the resolution of the delivery refusal.  Return delivery charges will be deducted from the Promoter's account. The Promoter's account will not be reactivated until any outstanding charges are paid by the Promoter to Le-Vel.

### 6.13.  Returned Packages.

In the event that a package is returned due to a Promoter's error or if the package was not picked up in a timely manner and therefore returned, Le-Vel will charge the Promoter a reshipping fee.

### 6.14.  Timely Product and Material Delivery.

Upon clearance of payment, Le-Vel processes for shipment the product(s) and material(s) selected. If an item is temporarily unavailable due to high demand the consignee will be notified by way of the packing slip included with the shipment. You are responsible for delivery of any shipping delay notifications required under applicable law.  Should a backorder occur, the item(s) will be shipped as soon as available, usually within ten (10) days of the date the original order and payment were received unless otherwise notified.

### 6.15.  Special Orders.

Le-Vel will not 'hold' orders or delay shipments of products that have been processed. Once payment has been received, all orders must be released for shipping.

### 6.16.  Damaged Goods.

The shipping company is responsible for damage, which occurs after it takes physical custody of the goods.  Unless informed otherwise, a Promoter who receives damaged goods should follow this procedure:

a) Accept delivery

b) Before the driver leaves, document on the delivery receipt the number of boxes, which appear to be damaged.

c) Save the damaged product, packaging and shipping container for inspection by the shipping agent.

d) Make an appointment with the shipping company to have the damaged goods inspected.

e) File a claim with the shipping company.

f) Notify the Le-Vel's Support Department via a back office ticket.

### 6.17.  Short Shipments or Lost/Stolen Shipments.

Le-Vel takes pride in fulfilling orders in an accurate and timely manner.  However, in those rare instances where errors may occur, a correction will be handled quickly to avoid further delay to the recipient.  Promoters are provided with a period of five (5) business days following receipt of

shipment to report any shortages.  Once notified and verified, Le-Vel will ship missing items to the address on the original order. Promoters must notify Le-Vel's Support Department immediately if a shipment is lost or stolen. Le-Vel will provide Promoters with instructions to either file a claim with the shipping company or Le-Vel will provide a replacement shipment. The decision of whether or not to provide a replacement shipment shall be at the sole discretion of Le-Vel.

### 6.18.   Price Changes.

All Le-Vel products and literature prices are subject to change without prior notice.

### 6.19.   Suggested Retail Pricing.

Le-Vel provides a suggested retail price (SRP) as a guideline.  Le-Vel Independent Promoters may sell Le-Vel products at whatever price they and their customers agree upon, however, a Promoter is not permitted to advertise any price below Le-Vel's suggested retail price.  This includes but is not limited to 'free' products or any other special pricing that would fall below the SRP. Le-Vel products may not be offered along with the products of any other company.

### 6.20.   Sales Tax.

For purchases made from Le-Vel, Le-Vel may be required to collect and remit applicable state and/or local taxes, which may be due on the suggested retail price of those products and/or materials, which are subject to tax.  The applicable rate of tax due is based upon the address to which the product and/or sales material is to be delivered.

If Promoters submit to Le-Vel a current Sales Tax Exemption Certificate (STEC) from his/her/its residing state, the Company will not charge or collect sales tax on orders shipped to that state unless prohibited by law. Promoters will be responsible for tracking and reporting all sales and sales taxes due for retail sales.  Sales tax on orders placed before Le-Vel receives the STEC will not be reimbursed.  If Promoters provide a STEC, they agree to indemnify and hold Le-Vel harmless from any liability that Le-Vel incurs as a result of the Promoter's failure to collect or remit sales taxes.  If a Le-Vel Promotership is tax exempt, the Employer Identification Number (EIN) must be provided to Le-Vel.

### 6.21.   Retail Stores.

Le-Vel is a direct sales company.  Our success is based upon our Promoters selling directly (one-on-one) to the consumer, in a personal and caring manner.  In order to maintain this personal contact with our customers and to provide equal opportunity to all Promoters to sell Le-Vel products to consumers, Le-Vel places certain restrictions on the sales of its products to or through commercial establishments.

Distribution of products is not permitted through chain stores.  Le-Vel determines chain stores to be any retail establishment with more than five (5) separate locations.

Le-Vel products offered in retail establishments must be sold at the Promoter SRP (Suggested Retail Price).

Le-Vel products cannot be offered for retail in health clinics, chiropractic offices, or any medical

related clinic or facility.

Le-Vel will be the sole judge of whether a commercial enterprise violates the policies, spirit or intent of its guidelines and reserves the right to modify, amend or rescind its approval as current business conditions may dictate.

### 6.22.   Consignment.

In order to protect the Le-Vel business and the integrity of the Company, Le-Vel products may not be delivered to another party on consignment. Only authorized Le-Vel Promoters may sell Le-Vel products to an outside party.

Le-Vel will not ship products on consignment to any Le-Vel Promoter.

## 7. REFUND POLICY

### 7.1.   Returns.

Le-Vel offers a 30 (thirty) day return policy on products to all Retail Customers. Refunds for unopened and undamaged products will be issued at the original purchase less a 10% restocking fee.  Refunds for open, partially used or otherwise damaged products will be issued at 50% of the original purchase price. Any costs associated with shipping & handling will not be refunded or reimbursed.

### 7.2.   Return Process for Online Orders.

a)  Notify the Le-Vel Support Department of the pending return by creating a back office support ticket.

b)  Package the products you wish to return using proper shipping carton(s) and packing material based on the product(s) being returned. Include the original packing slip or a printed copy of your receipt.

c)  Ship the package to the following address using your choice of shipping method as long as a tracking number is available to:

> Le-Vel Returns
> 1545 S 4800 W
> Salt Lake City, UT 84104

d)  Provide the tracking number for your package to the Le-Vel Support Department. Once your return is received and processed, an appropriate refund will be issued within 10 business days.

### 7.3.   Resignation Returns.

If the Promoter has purchased products for inventory purposes or sales aids while the Agreement was in effect, all product in CURRENTLY MARKETABLE, REUSABLE, UNOPENED AND RESALABLE condition which have been purchased within sixty (60) days shall be repurchased subject to compliance with the Seventy Percent Rule (see Section 6.  Purchase and Sale of Products).

The repurchase shall be at a price of not less than 90% (ninety percent) of the original net cost to the participant minus any freight charges and commissions paid to the Promoter.

Note:  Commissions earned will be offset as a result of the product return.  Any such requests to return products will be considered a resignation of the Promotership.

In order to ensure that a refund is issued in a timely manner, the following steps should be followed:

a) A written request must be submitted in the Promoter's back office by creating a back office support ticket, clearly citing the reason for the return of product and/or sales materials.

b) Upon receipt of the return request, Le-Vel will instruct the Promoter where to ship the products along with an RMA (Return Merchandise Authorization), which must be clearly visible on the exterior of the package. (Any return without this information visible on the outside of the package will be refused without exception).  Le-Vel will issue a refund within approximately thirty (30) days from the date of receipt of the authorized merchandise.

c) The Promoter assumes the cost of shipping any products or sales materials to Le-Vel.

d) The Promoter assumes responsibility for packing and shipping products back in a manner that will ensure that it is received in a timely fashion and with minimal damage.

e) Refunds will be issued in the same manner that payment was received.  This means that if a credit card was used initially, the reimbursement will be issued back to that same credit card.

### 7.4.   Unauthorized Returns.

Should a Promoter refuse delivery of any Le-Vel shipment or request to return any previously purchased product for a refund, such request will be deemed a voluntary resignation.

### 7.5.   Returns and Commissions.

If any compensation or benefit was paid or provided to a Promoter and/or his/her/its upline on volume represented by returned Products, compensation and benefits related to such volume will be "claw-backed" and debited from all upline accounts.

### 7.6.   Buyer's Right to Cancel.

Each province and territory provides for cancellation rights.  Promoters must comply with the buyer's right to cancel applicable in each province and territory.  Should a retail customer contact the Le-Vel Support Department concerning the refusal of a Promoter to issue the appropriate refund in the time period indicated, such Promoter will have their account suspended without pay pending resolution of the complaint.

### 7.7.   Exchanges.

Le-Vel will not accept product exchanges from Promoters.

### 7.8.   Promotional Products.

Returned orders containing promotional products will be refunded in accordance with our return policy less the retail price of the products should the buyer choose to keep them. Promotional products must be returned with the order to avoid the deduction of the retail price of the products from the eligible refund amount.

## 8. GENERAL PROVISIONS

### 8.1.   Record Keeping.

Le-Vel encourages all of its Promoters to maintain complete and accurate records of their business transactions. Le-Vel may request records at its discretion relating to retail sales or other matters as described herein or as required by applicable law and each Promoter shall provide such requested records to Le-Vel promptly following any such request.

### 8.2.   Amendments.

In order to maintain a viable Marketing Program in changing economic conditions and/or to comply with changes to federal, state or local laws, Le-Vel at its discretion reserves the right to amend the Agreement, including without limitation, the Policies and Procedures as set forth therein, its Promoter prices or suggested retail prices, product availability and formulations, and Compensation Plan, as it deems appropriate. Amendments will be communicated by posting the amended Agreement(s) in the official Le-Vel cloud office. Amendments become binding on every Promoter effective thirty (30) days after publishing to the cloud office or immediately upon the Promoter's affirmative acceptance to any updated or amended Agreement, whichever is sooner. By continuing your Promotership, you accept the amendments. Any amendments will apply only prospectively, not retroactively. It is the Promoter's responsibility to stay abreast of current and updated information and Le-Vel is in no way liable for any Promoter's ignorance of the correct and current information if he/she/it fails to do so. In the event of any conflict between the Agreement and any such amendment, the amendment shall control.  If Company brochures, product catalogs, price lists, literature, website, fax on demand information, etc. are revised, only the most current version is authorized for use by Le-Vel Promoters.

### 8.3.   Non-Waiver Provisions.

No failure of Le-Vel to exercise any power under these Policies and Procedures or to insist on strict compliance by a Promoter with any obligation or provision herein, and no custom or practice of the parties at variance with these Policies and Procedures, shall constitute a waiver of Le-Vel's right to demand exact compliance with these Policies and Procedures. Waiver by Le-Vel can be affected only in writing by an authorized officer of Le-Vel.

Le-Vel's waiver of any particular default by a Promoter shall not affect or impair Le-Vel's right with respect to any subsequent default, nor shall it affect in any way the right or obligation of any other Promoter, nor shall any delay or omission by Le-Vel to exercise any right arising from default affect or impair Le-Vel's rights as to that or any subsequent default.

### 8.4.   Certain Residents Only.

The following only applies to Promoters who are residents of Georgia, Louisiana, Massachusetts,

Wyoming, Montana, and other states that may specifically require the following: A Promoter in this
multilevel marketing plan has the right to cancel at any time regardless of reason. Cancellation
must be submitted in writing to Le-Vel either by postal delivery, fax or through email.

If the Promoter has purchased product or paid for administrative services while this Agreement
was in effect, taking into consideration any sales made by or through such Promoter prior to the
notification to Le-Vel of the election to cancel, Le-Vel shall repurchase all unencumbered product
in a reasonable resalable, unopened or reusable condition which was acquired by the Promoter
from Le-Vel. Such repurchase shall be at a price of no less than ninety percent (90%) of the
original cost minus any freight charges and commissions paid to that Promoter

The repayment of all administrative fees and services shall be at not less than ninety percent
(90%) of the cost to the Promoter of such fees and services and shall reflect all administrative
services that have not, at the time of resignation, been provided to the Promoter. Le-Vel shall
further refund not less than ninety percent (90%) of the cost to the Promoter of any other
consideration paid by the Promoter in order to participate in the program. The Promoter will be
held responsible for all shipping expenses incurred in returning sales aids or products to Le-Vel.

### 8.5.  Reporting Policy Violations.

Promoters observing a policy violation by another Promoter should submit a written report of the
violation to Le-Vel's Compliance Department.  Such report must include the Promoter's full name
and Promoter ID or the report will not be accepted.  No telephone calls will be accepted with such
matters as documentation must be presented in writing, both from the complaining parties and
ultimately from the individual(s) cited for policy violation.  Details of the incident such as dates,
number of occurrences, persons involved, witnesses and any other supporting documentation
should be included in the report.

### 8.6.  Mandatory Arbitration and Dispute Resolution.

All disputes and claims between or among Le-Vel (including its employees, officers, directors,
executives, and affiliates) and a Promoter, which include but are not limited to, disputes and
claims arising out of the Agreement, Le-Vel's products,  the rights and obligations of a Promoter
of Le-Vel, the performance of either a Promoter or Le-Vel under the Agreement, a Promoter's
purchase or consumption of Le-Vel's products, and all other claims against Le-Vel, shall be
resolved by binding arbitration in Dallas County, Texas (unless the parties to the arbitration
mutually agree to an alternative location) in accordance with the Federal Arbitration Act. Any such
dispute(s) shall be settled by arbitration administered by the American Arbitration Association
under its Commercial Arbitration Rules and the AAA Commercial Fee Schedule, and judgment on
the award rendered by the arbitrator shall be final and binding and may be entered in any court
having jurisdiction thereof. The parties understand and agree that all parties are waiving the right
to a jury trial or a trial by a judge in a public court for such disputes and claims. For such
arbitrations, there shall be one (1) arbitrator, an attorney at law, who shall have expertise in
business law transactions or commercial / business disputes, preferably with knowledge about
the direct selling industry, selected from a panel, which the American Arbitration Association
provides. The arbitrator shall have the power to rule on his or her own jurisdiction, including any

objections with respect to the existence, scope, validity, or enforceability of the arbitration agreement or to the arbitrability of any dispute, claim, or counterclaim.

Notwithstanding the foregoing, the arbitration shall have no jurisdiction over disputes relating to the ownership, validity, or registration of any mark or other intellectual property or proprietary confidential information of Le-Vel without Le-Vel's written consent. Le-Vel may seek any applicable remedy in any applicable forum with respect to these disputes and with respect to money owing to Le-Vel. In addition to monetary damages, Le-Vel may obtain injunctive relief against a Promoter in violation of the Agreement, and for any violation of misuses of Le-Vel trademark, copyright or confidential information policies.

Each party to the arbitration shall be responsible for its own costs and expenses of arbitration, including legal and filing fees, except to the extent that such costs and expenses are independently available as a matter of law. Unless ordered otherwise by the arbitrator, the arbitrator's compensation will be split equally among the parties. Neither Le-Vel nor a Promoter shall be entitled to join or consolidate disputes by or against others in any arbitration, or to include in any arbitration any dispute as a representative member of a class, or to act in any arbitration in the interest of the general public or in a private attorney general capacity. All claims and/or counterclaims brought in arbitration must be brought on an individual basis. The arbitration shall not be conducted on a class-wide, class action, collective action, or multiple complaining-party basis.

Nothing in these Policies and Procedures shall prevent Le-Vel from terminating the Promoter Agreement or applying to and obtaining from any court having jurisdiction a writ of attachment, a temporary restraining order, preliminary or temporary injunction, permanent injunction, or other relief available to safeguard and protect our interest prior to, during or following the filing of any arbitration or other proceedings or pending the rendition of a decision or award in connection with any arbitration or other legal proceedings. As set forth in section 8.13, you consent to the personal jurisdiction of the courts in Dallas, Texas.

The existence of any claim or cause of action of a Promoter against Le-Vel, whether predicated on the Agreement or otherwise, shall not constitute a defense to Le-Vel enforcement of the covenants and agreements contained herein.

The arbitration and all proceedings associated therein are private and confidential proceedings and not subject to any public right of access. The arbitrator shall have the authority to enter appropriate protective orders to preserve the confidentiality of the proceedings and information exchanged in discovery.  The arbitrator shall have the authority, power, and jurisdiction to grant both legal and equitable relief, including temporary, preliminary, and permanent injunctive relief. At the request of any party, the arbitrator shall make and provide the parties written findings of fact and conclusion or law.  This agreement to arbitration shall survive any termination or expiration of the Agreement.

If a party files an action to enforce any term of this agreement and prevails, the prevailing party

will be entitled to recover its attorney's fees and its arbitration costs and fees.

Nothing contained herein shall be deemed to give the arbitrator any authority, power or right to alter, change, amend, modify, add to, or subtract from any of the provisions of the Policies and Procedures, Compensation Plan or the Promoter Agreement.

### 8.7.   No Liability.

The Company is not responsible for interrupted, inaccessible or unavailable networks, servers, satellites, Internet service providers, web sites, or other connections; or for miscommunications, failed, jumbled, scrambled, delayed, or misdirected computer, telephone or cable transmissions; or for any technician malfunctions, failures or difficulties.  To the extent permitted by law, the Company shall not be liable for and each Promoter releases the Company from, and waives all claims for direct, indirect, incidental, consequential, reliance or special damages, including damages from harm to business, lost profits, lost revenues or lost opportunities or any other loss incurred or suffered by a Promoter as a result of (a) the breach by a Promoter of the Promoter Agreement and/or the Terms and Conditions of the Policies and Procedures; (b) the operation of the Promoter's business; (c) any incorrect or wrong data or information provided by the Promoter; or (d) the failure to provide any information or data necessary for the Company to operate its business, including, without limitation, the enrollment and acceptance of a Promoter into the Compensation Plan or the payment of commissions and bonuses.

### 8.8.   Entire Agreement.

This Promoter Agreement (comprised of these Policies and Procedures and the Rewards Plan) as may exist or hereafter be amended, constitutes the entire agreement of the parties regarding their relationship, the subject matter hereof and related hereto.

### 8.9.   Severability.

In the event that any provision of this Agreement is for any reason, including by reason of any applicable statute or rule of law, held to be invalid, illegal, or unenforceable, such provision shall be severed from the Agreement, with the remaining terms of the Agreement surviving in full force and effect.

### 8.10.   Limitation of Damages.

To the extent allowed by law, Le-Vel and its affiliates, officers, directors, employees and other Promoters shall not be liable for and each Promoter hereby releases the foregoing from, and waives any claim for indirect, incidental, consequential, reliance or special damages, including damages from harm to business, lost profits, lost revenues or lost opportunities, which may arise out of any claim whatsoever relating to Le-Vel's performance, non-performance, act or omission with respect to the business relationship or other matter between the Promoter and Le-Vel whether in contract, tort or strict liability.  Furthermore, it is agreed that any damage to the Promoter shall not exceed and is hereby expressly limited to the amount of unsold Le-Vel product owned by the Promoter, which was directly purchased from Le-Vel.

The terms "Claim" or "Claims" refer to any disputes, controversies, claims, counterclaims, allegations of liability, theories of damage, or defenses between Le-Vel, its

subsidiaries, affiliates, employees, management, and leadership, on the one hand, and the other parties to this Agreement, on the other hand (all of the foregoing each being referred to as a "Party" and collectively as the "Parties"). The Parties agree that all aspects of litigation and trial of any Claim will take place without resort to any form of class or representative action. Thus, the Parties may only bring Claims against each other in an individual capacity and waive any right they may have to do so as a class representative or a class member in a class or representative action. THIS CLASS ACTION WAIVER PRECLUDES ANY PARTY FROM PARTICIPATING IN OR BEING REPRESENTED IN ANY CLASS OR REPRESENTATIVE ACTION REGARDING A CLAIM.

### 8.11.  Indemnity Agreement.

Each and every Promoter agrees to indemnify and hold harmless Le-Vel, its shareholders, officers, directors, employees, agents and successors in interest from and against any claim, demand, liability, loss, cost or expense including, but not limited to, arbitration or court costs and attorney's fees, asserted against or suffered or incurred by any of them, directly or indirectly, arising out of or in any way related to or connected with allegedly or otherwise, the Promoter's (a) activities as a Promoter; (b) breach of the terms of the Promoter Agreement or these Policies and Procedures; and/or (c) violation of or failure to comply with any applicable federal, state or local law or regulation.

### 8.12.  Force Majeure.

Le-Vel shall not be responsible for delays or failure in performance caused by circumstances beyond a party's control, such as strikes, labor difficulties, fire, war, government decrees or orders or curtailment of a party's usual source of supply.

### 8.13.  Governing Law, Jurisdiction and Venue.

The Promoter Agreement and these Policies and Procedures as well as any interpretation and enforcement issues, and all claims arising out of or relating to the Agreement, whether asserted in law or equity, contract-based, tort-based, or otherwise, and including substantive claims or defenses asserted within any arbitration proceeding, shall be governed by the laws of Texas without regard to choice of law or conflicts of law principles.  Procedural matters in any arbitration proceeding shall be governed by the Commercial Arbitration Rules of the American Arbitration Association rules ("the Rules"), except as such requirements may be specifically varied and modified by the terms set forth herein. You submit to the arbitral jurisdiction set forth therein and, with respect to any matters not determined by or subject to arbitration to the personal jurisdiction of the state and federal courts within Dallas, Texas. The institution of an action or proceeding by a Promoter against Le-Vel in another venue or forum in violation of this provision shall be a material breach of the Agreement causing Le-Vel irreparable harm, and the Promoter agrees and stipulates that Le-Vel shall be entitled to temporary, preliminary, and permanent anti-suit injunctive relief to enforce this provision.

### 8.14.  Notices.

Unless otherwise provided in the Agreement, any notice or other communication required or permitted to be given under the Agreement shall be in writing and shall be delivered personally or delivered by certified (or registered) express mail, postage prepaid.  Unless otherwise provided in

the Agreement, notices shall be deemed given when delivered personally, or if mailed, five days after the date of mailing to the address of Le-Vel's headquarters or to the Promoter's address as provided by the Promoter, unless notice of an address change has been received by Le-Vel.  Le-Vel shall have the right, as an alternative method of notice under this Section, to send notices to Promoters through back office tickets or via email using the email address in the Promoter's account details.

### 8.15.   Non-Disparagement.

During the term of this Agreement and for a period of twenty-four (24) months following the date of termination, Promoter agrees not to make any statements, written or verbal, or cause or encourage others to make any statements, written or verbal, that defame, disparage or in any way criticize the Company, its reputation, products, practices, or conduct or its customers, Promoters, employees, directors and officers (Persons). Promoter acknowledges and agrees that this prohibition extends to statements, written or verbal, made to anyone publicly or in private.

Promoter further agrees to take no action which is intended to materially harm the Company or its Persons, or that would reasonably be expected to materially harm the reputation of the Company or its Persons, or which would reasonably be expected to lead to unwanted or unfavorable publicity for the Company or its Persons. The Promoter agrees and acknowledges that this is a knowing, voluntary, and intelligent waiver of certain speech rights. The Promoter understands and agrees that this Paragraph is a material provision of this Agreement and that any breach of this Paragraph shall be a material breach of this Agreement, and that the Company and/or its Persons would be irreparably harmed by a violation of this provision.

### 8.16.   Assignment.

Company may assign any or all of its rights or delegate any or all of its obligations herein to any successor, affiliate, related party, or any 3rd party that agrees to be bound by the terms of the Agreement. Promoter may not assign any of her/his rights or delegate any obligations herein without the prior written consent of the Company.

### 8.17.   Collection Authorization.

Each Promoter agrees that, in order for Le-Vel to service his/her/its account or to collect any amount you may owe Le-Vel, unless otherwise prohibited by applicable law, Le-Vel or its designated third party collection agency are authorized to (i) contact you by telephone at the telephone number(s) in the contact account information you provided in your account details, including wireless telephone numbers, which could result in charges to you, (ii) contact you by sending text messages (message and data rates may apply) or emails, using any email address you provide and/or (iii) use methods of contact which may include using pre-recorded/voice message and/or use of an automatic dialing device, as applicable. Each Promoter also agrees that if product he/she/it purchases is eligible to be returned to Le-Vel and is returned he/she/it may still be liable for service fees or chargeback fees assessed by Le-Vel or its third-party collection agency. You fully understand and agree that Le-Vel or its third-party collection agency may contact you as described above to collect amounts owed to Le-Vel.

### 8.18.   Privacy Policy.

Le-Vel is committed to ensuring that your privacy is protected. Le-Vel's Privacy Policy governs the

manner in which we collect, use, maintain and disclose information collected from users (each, a "User") of the www.Le-Vel.com corporate website ("Site").  Should we ask you to provide certain information by which you can be identified when using the Site, you can be assured that it will only be used in accordance with our published privacy policy found at www.Le-Vel.com/Terms.  Our privacy policy applies to the Site and all products and services offered by Le-Vel Brands LLC. We may change our Privacy Policy from time to time by updating the Privacy Policy page on our Site. Please visit the page periodically to review any updates or changes.