1   KENDALL BRILL & KELLY LLP
    Alan Jay Weil (63153)
2    *ajweil@kbkfirm.com*
    Shauna E. Woods (300339)
3    *swoods@kbkfirm.com*
    10100 Santa Monica Blvd., Suite 1725
4   Los Angeles, California 90067
    Telephone: 310.556.2700
5   Facsimile: 310.556.2705

6   FINNEGAN, HENDERSON, FARABOW,
     GARRETT & DUNNER, LLP
7   Mark Sommers (admitted *pro hac vice*)
     *mark.sommers@finnegan.com*
8   Patrick Rodgers (*pro hac vice* forthcoming)
     *patrick.rodgers@finnegan.com*
9   901 New York Avenue, NW,
    Washington, DC 20001-4413
10  Telephone:  (202) 408-4064
    Facsimile:  (202) 408-4400
11  Morgan E. Smith (SBN 293503)
     *morgan.smith@finnegan.com*
12  3300 Hillview Avenue
    Palo Alto, CA 94304
13  Telephone:  (650) 849-6600
    Facsimile:  (650) 849-6666
14
    *Attorneys for Defendant*
15  *Le-Vel Brands, LLC*

16                 UNITED STATES DISTRICT COURT
17                 CENTRAL DISTRICT OF CALIFORNIA

18
19  THRIVE NATURAL CARE, INC.,          Case No. 2:21-CV-02022-DOC-KES

20              Plaintiff,               **DEFENDANT LE-VEL'S
                                         REPLY IN SUPPORT OF
         v.                              MOTION TO TRANSFER
21                                       VENUE PURSUANT TO 28 U.S.C.
    LE-VEL BRANDS, LLC,                  § 1404**
22
                Defendant.
23                                       Judge:   Hon. David O. Carter
                                         Date:    May 3, 2021
24                                       Time:    8:30a.m.
                                         Courtroom:  9D
25

26
27              **REDACTED VERSION OF DOCUMENT**
28              **PROPOSED TO BE FILED UNDER SEAL**

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1

## **<u>TABLE OF CONTENTS</u>**

2   I.     The Court Has Great Discretion to Transfer this Case ....................................2

3   II.    TNC Concedes Its Claims Could Have Been Brought in Texas.....................2

4   III.   Le-Vel Has No Significant Contacts to this District ......................................3

5   IV.    TNC Likewise Lacks "Significant Contacts" With This District ..................6

6   V.     The Center of Gravity of This Dispute Is in the Eastern District of Texas,
         and the Nearby Northern District of Texas ....................................................7
7
    VI.    Witness Convenience Favors Transfer...........................................................11
8
    VII.   TNC's Choice of Forum Has Little Weight in the Transfer Analysis ..........15
9
    VIII.  Local Interests Favor Texas...........................................................................16
10
    IX.    The Parties' Relative Size Does Not Outweigh the Other Factors ...............16
11
    X.     Conclusion .....................................................................................................17

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603293271                                          i                    Case No. 2:21-CV-02022-DOC-KES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Allstar Marketing Grp., LLC v. Your Store Online, LLC,*
   666 F. Supp. 2d 1109 (C.D. Cal. 2009) ............................................................ 6, 15

*Armor All/STP Prod. Co. v. TSI Prod., Inc.,*
   No. 3:17-CV-1131 (MPS), 2018 WL 9812123 (D. Conn. Aug. 30,
   2018) .................................................................................................................... 8

*Callidus Software, Inc. v. Xactly Corp.,*
   No. SA-CV12-01432 JAK, 2013 WL 12136523 (C.D. Cal. Mar. 11,
   2013) .................................................................................................................. 16

*Cascades Projection LLC v. NEC Display Sols. of Am., Inc.,*
   No. CV 15-00273 SJO (RZX), 2015 WL 12698454 (C.D. Cal. June 5,
   2015) .................................................................................................................... 2

*Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.,*
   448 F.3d 118 (9th Cir. 2006) ............................................................................... 9

*E. & J. Gallo Winery v. F. & P.S.p.A.,*
   899 F. Supp. 465 (E.D. Cal. 1994) ...................................................................... 2

*Estrella v. Freedom Financial Network, LLC,*
   No. SACV 09-0189 DOC (ANx), 2009 WL 10678991 (C.D. Cal. July
   9, 2009) .............................................................................................................. 11

*Fed. Deposit Ins. Corp. for BankUnited, FSB v. First Priority Fin., Inc.,*
   No. CV 15-03776 MMM, 2015 WL 13357439 (C.D. Cal. Nov. 10,
   2015) .................................................................................................................... 2

*Fontaine v. Washington Mut. Bank, Inc.,*
   No. CV 08-5659 PSG (Ex), 2009 WL 1202886 (C.D. Cal. Apr. 30,
   2009) .................................................................................................................. 12

*Gates Learjet Corp. v. Jensen,*
   743 F.2d 1325 (9th Cir. 1984) ........................................................................... 12

*Hackwith v. Apple Inc.,*
   No. CV 09-3482-VBF, 2009 WL 10674053 (C.D. Cal. Aug. 12, 2009) ......... 16, 17

*Jones v. GNC Franchising, Inc.,*
   211 F.3d 495 (9th Cir. 2000) ............................................................................... 2

*Kabushiki Kaisha Megahouse v. Anjar Co. LLC,*
   No. 2:14-cv-00598 CAS, 2014 WL 5456523 (C.D. Cal. Oct. 20, 2014) ............... 9

*Kiewet Infrastructure W. Co. v. Samson Rope Techs.,*
   Case No. SA CV 19-02501-DOC-ADS, 2020 WL 5092914 (C.D. Cal.
   Mar. 6, 2020) .......................................................................................... 12, 15, 16

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

*Knoll, Inc. v. Modway, Inc.*,
   No. 5:19-cv-2238-DDP, 2020 WL 6784346 (C.D. Cal. Nov. 17, 2020) .................. 4

*Le-Vel Brands, LLC v. Thrive Market, Inc.*,
   No. 2:17-cv-08951-AFM, Dkt. 1 (C.D. Cal. Dec. 13, 2017) .................................... 6

*Mad Dogg Athletics Inc. v. Hart Wood Inc.*,
   No. CV 09-7027-GAF-FMO, 2009 WL 10673203 (C.D. Cal. Dec. 30,
   2009) ...................................................................................................................... 17

*Mirza v. Cent. Asia Inst.*,
   No. CV 14-1542 MMP, 2014 WL 12663437 (C.D. Cal. May 27,
   2014) ...................................................................................................................... 17

*Mitchell v. Deutsche Bank Nat'l Tr. Co.*,
   No. SACV 15-01307-CJC, 2015 WL 12867746 (C.D. Cal. Oct. 29,
   2015) ...................................................................................................................... 15

*Motorola Mobility, Inc. v. Microsoft Corp.*,
   No. 11-3136, 2011 WL 5834923 (N.D. Cal. Nov. 21, 2011) ................................... 7

*Newthink LC v. Lenovo (U.S.) Inc.*,
   No. 2:12-cv-5443-ODW(JCx), 2012 WL 6062084 (C.D. Cal. Dec. 4,
   2012) ...................................................................................................................... 11

*Pyrocap Int'l Corp. v. Ford Motor Corp.*,
   259 F. Supp 2d 92 (D.D.C. 2003) .......................................................................... 15

*Secured Mail Solutions, LLC v. Advanced Image Direct, LLC*,
   No. SACV 12-01090-DOC, 2013 WL 8596579 (C.D. Cal. Jan. 30,
   2013) ................................................................................................................. 2, 7, 9

*Skee Ball, Inc. v. Full Circle United*,
   No. C-11-04930 EDL, 2011 WL 6749013 (N.D. Cal. Dec. 22, 2011) .................... 2

*Sparling v. Hoffman Constr. Co.*,
   864 F.2d 635 (9th Cir. 1988) ................................................................................... 2

*Teleconference Sys. v. Procter & Gamble Pharm., Inc.*,
   676 F. Supp. 2d 321 (D. Del. 2009) ........................................................................ 9

*Thermolife Int'l, LLC v. Vital Pharms., Inc.*,
   No. CV 14-2449 RSWL (AGRx), 2014 WL 12235190 (C.D. Cal.
   Aug. 14, 2014) ....................................................................................................... 11

*Thrive Natural Care, Inc. v. Thrive Causemetics*,
   Case No. 2:20-cv-09091(C.D. Cal.) ....................................................................... 15

*TraceWilco, Inc. v. Symantec Corp.*,
   No. 08-80877-CIV, 2009 WL 455432 (S.D. Fla. Feb. 23, 2009) ........................... 7

*Vehimax Int'l, LLC v. Jui Li Enterpirse Co., Ltd.*,
   No. CV 09-6437 SVW, 2010 WL 11527371 (C.D. Cal. Mar. 16,
   2010) ........................................................................................................................ 4

**Kendall Brill**
**& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

iii

LE-VEL'S MEMORANDUM ISO MOTION TO TRANSFER

*Yeti Data, Inc. v. Snowflake, Inc.*,
  No. CV 20-6595 PA, 2020 WL 8174630 (C.D. Cal. Nov. 9, 2020) ..................... 7, 8

*Zimpleman v. Progressive Northern Ins. Co.*,
  No. C-09-03306 RMW, 2010 WL 135325 (N.D. Cal. Jan. 8, 2010) ............... 13, 15

**Federal Statutes**

15 U.S.C. § 1057(c) ................................................................................................. 10

28 U.S.C. § 1404(a) .................................................................................................. 2

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

TNC does not dispute that its claims could have been properly brought in the Eastern District of Texas. This case belongs there, and nothing in TNC's opposition compels a different outcome. Nothing about TNC's or Le-Vel's connections to this District are substantial, sizeable, or significant—contrary to what TNC contends. *E.g.*, Dkt. 58-1 at 1-2, 6. And nothing establishes this venue is a more convenient forum than the Eastern District of Texas.

TNC's opposition is notable for what it lacks, including:

- TNC does not identify any offices or employees located in this District or that otherwise reside in this District.

- TNC does not identify any sales numbers from the *physical stores* that it alleges sell its products in this District, let alone any sales data related to how these physical store sales compare to TNC's highest sales districts and overall national sales, making a comparative assessment impossible.

- As for TNC's disclosure of its recent year of *online sales* in this District and in the Eastern and Northern Districts of Texas, TNC conspicuously fails to provide any information on its annual sales for these districts leading up to 2020, let alone any information showing how these sales compare to its highest sales districts and overall national online sales, again making a comparative assessment impossible.

- TNC does not identify any specific harm that it has experienced in this District (in its complaint, TNC alleges a nationwide harm not tied to a specific forum) (*see, e.g.*, Dkt. 1 ¶¶ 58, 64).

- TNC fails to address various key operative issues at the center of gravity of this case, including fact-intensive issues over the parties' respective priority of rights, the validity of those rights, and the exercise of those rights through the zone of natural product expansion, all of which are based on facts found in Texas for Le-Vel, and *none* of which are based on facts found in this District for TNC or otherwise.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603293271

1

Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S MEMORANDUM ISO MOTION TO TRANSFER

TNC's failure to establish sufficient connections to this District warrants this case's transfer to the Eastern District of Texas, as it is a far more convenient forum. As it is within the Court's broad discretion, Le-Vel respectfully requests transferring this case to the Eastern District of Texas or, alternatively, to the Northern District of Texas.

## I.   The Court Has Great Discretion to Transfer this Case

This "court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000); *see also, e.g.*, *Fed. Deposit Ins. Corp. for BankUnited, FSB v. First Priority Fin., Inc.*, No. CV 15-03776 MMM (AGRx), 2015 WL 13357439, at *2 (C.D. Cal. Nov. 10, 2015) (stating the district court has broad discretion to transfer a case to another district where venue is proper) (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 639 (9th Cir. 1988)); *E. & J. Gallo Winery v. F. & P.S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994) (finding the decision to transfer venue is within "the inherently broad discretion of the Court"). For the reasons below, Le-Vel respectfully requests this Court exercise its broad discretion and transfer this case.

## II.   TNC Concedes Its Claims Could Have Been Brought in Texas

TNC does not dispute that (1) the Eastern District of Texas would have subject matter jurisdiction over TNC's federal trademark infringement and unfair competition claims; (2) pendent jurisdiction over TNC's state law claims would be appropriate in Texas; and (3) venue and personal jurisdiction over Le-Vel would be proper in Texas because Texas is where Le-Vel's principal place of business is located and where key Le-Vel employees with knowledge of the core issues in this case reside. The threshold inquiry under 28 U.S.C. § 1404(a) is therefore met. *E.g.*, *Skee Ball, Inc. v. Full Circle United*, No. C-11-04930 EDL, 2011 WL 6749013, at *5 (N.D. Cal. Dec. 22, 2011); *see also Cascades Projection LLC v. NEC Display Sols. of Am., Inc.*, No. CV 15-00273 SJO (RZx), 2015 WL 12698454, at *1-2 (C.D. Cal. June 5, 2015); *Secured*

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  *Mail Sols.*, *LLC v. Advanced Image Direct, LLC*, No. SACV 12-01090-DOC (MLGx),
2  2013 WL 8596579, at *4 (C.D. Cal. Jan. 30, 2013).

3  **III.   Le-Vel Has No Significant Contacts to this District**

4      TNC's claim that Le-Vel has "many" contacts in this District is unfounded. *See*
5  Dkt. 58-1 at 5-7.

6      Le-Vel is a Texas limited liability corporation with a principal place of business
7  in Frisco, Texas. Dkt. 46-2 at 2; Dkt. 46-3 ¶ 2. The highest concentration of Le-Vel
8  employees is in the Eastern District of Texas and its nearby vicinity, including the key
9  executives and like employees that work in finance, compliance, supply chain and
10  distribution, operations, customer support, and information technology. *E.g.*, Dkt. 46-
11  3 ¶¶ 8-9. Le-Vel employees knowledgeable about THRIVE SKIN products are also
12  located in Texas. *Id.* In stark contrast, Le-Vel has no employees, offices, warehouses,
13  or servers in this District. Dkt. 46-2 at 2; Dkt. 46-3 ¶¶ 2, 4. THRIVE SKIN skincare
14  products were not designed or formulated in California; nor are they manufactured in
15  or distributed from California. Dkt. 46-3 ¶ 4. Le-Vel has no meaningful relationship to
16  this forum.

17      Rather than acknowledge the great weight of this evidence, TNC defaults to
18  contending: (1) Le-Vel's online sales to this District are substantial enough to show
19  Le-Vel targets this District; (2) Le-Vel has employees in the form of its Independent
20  Brand Promoters ("third-party promoters") in this District; (3) Le-Vel has employee
21  supervisors in this District; and (4) Le-Vel brought a lawsuit in this District and has
22  thus acknowledged the convenience of this forum. Dkt. 58-1 at 5-7. TNC's attempt to
23  manufacture a relationship between Le-Vel and this District based on such specious
24  grounds should be rejected.

25      First, TNC contends that Le-Vel's sales of over ███████ in THRIVE SKIN
26  products in this District are "sizable sales," which imply Le-Vel targeted this District.
27  Dkt. 58-1 at 1, 5 (citing Dkt. 15-2 ¶ 5). Not true. Le-Vel offers its products nationwide
28  through its website without specifically targeting this District. Dkt. 46-2 at 4-6; Dkt.

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603293271                                    3                      Case No. 2:21-CV-02022-DOC-KES
                        LE-VEL'S MEMORANDUM ISO MOTION TO TRANSFER

1   46-3 ¶ 13. That some products may be sold in this District does not make this District

2   convenient as a matter of course. *See, e.g.*, *Knoll, Inc. v. Modway, Inc.*, No. 5:19-cv-

3   2238-DDP (SPx), 2020 WL 6784346, at *3-4 (C.D. Cal. Nov. 17, 2020) (transferring

4   case even though the parties "appear[ed] to market, sell, and distribute their respective

5   products nationwide"); *cf. Vehimax Int'l, LLC v. Jui Li Enter. Co., Ltd.*, No. CV 09-

6   6437 SVW (JEMx), 2010 WL 11527371, at *4-6 (C.D. Cal. Mar. 16, 2010) (finding

7   plaintiff's selected forum was not convenient notwithstanding defendants transacting

8   business nationwide, including in California, and explaining that "the fallacy of this

9   argument is apparent on its face—that is, as Plaintiff alleges that Defendants

10  transacted business nationwide, Plaintiff's argument is equally applicable to any

11  district. Such facts clearly do not favor California over any other forum."). TNC also

12  omits that Le-Vel's sales in this District are ▮▮▮▮▮▮▮ of Le-Vel's nationwide sales

13  for THRIVE SKIN skincare products. Dkt. 24-2 at 2, 6, 23; Dkt. 24-3 ¶¶ 53-55; Dkt.

14  46-2 at 4; Dkt. 46-3 ¶ 13.[1] Yet in the same breath, TNC repeatedly contends that its

15  own sales of ▮▮▮▮▮▮ are ▮▮▮▮▮▮▮ and cannot tie a party to a specific district.

16  Dkt. 58-1 at 2 (asserting TNC's online sales to cities in the relevant districts of Texas

17  are ▮▮▮▮ and ▮▮▮▮▮). Thus, by TNC own admissions, Le-Vel's sales do not

18  establish that Le-Vel has "many" contacts with this District. *Compare* Dkt. 58-1 at 5.

19      Second, TNC contends Le-Vel's third-party promoters are Le-Vel employees,

20  and there are at least ▮▮▮▮▮ third-party promoters in this District. *Id.* Not true. The

21  third-party promoters are "independent contractors engaged in their own separate

22  business pursuits." Dkt. 46-3 ¶ 16, Ex. 1 at 3; *see also* Dkt. 44-2, Ex. 1 at 3. TNC

23  further inaccurately asserts that the third-party promoters *sell* Le-Vel products. Dkt.

24  58-1 at 5. They do not and, instead, earn commissions based on the purchases that

25  their referred customers (whatever district they may come from) directly make from

26

27

28  [1] TNC also ignores that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" for Le-Vel, "▮▮▮▮▮▮" Dkt. 46-2 at 4 Dkt.
    46-3 ▮ 13.

LE-VEL'S MEMORANDUM ISO MOTION TO TRANSFER

Le-Vel via its website. Dkt. 46-2 at 5; Dkt. 46-3 ¶ 13, 15-17. Further, the third-party promoters determine when, where, and how they want to promote Le-Vel's products, without specific "how-to-promote" guidance from Le-Vel. *Id.* ¶ 17. As such, Le-Vel does not target, control, or direct third-party promoters' activities (whether they be in California or elsewhere). *Id.*; Dkt. 46-2 at 5. These independent third-party promoters do not establish that Le-Vel targeted this District, much less establish "many" contacts in this District.

Moreover, as of March 14, 2021, Le-Vel had approximately ▮▮▮▮ third-party promoters nationwide, and only a ▮▮▮▮▮▮▮▮▮▮ of those reside in this District. Dkt. 46-3 ¶ 18; Dkt. 46-2 at 5. The *more relevant consideration*, which TNC ignores, is that ▮▮▮▮ of Le-Vel's ▮▮▮▮▮▮ third-party promoters are located in Texas, including its ▮▮▮ third-party promoters nationwide, while ▮▮▮ ▮▮▮▮▮▮▮▮ third-party promoters are located in this District. *Id.* at 5-6. To the extent that these third-party promoters have relevant information, it would be the Texas-located top third-party promoters who would have that information. Texas is, therefore, the more convenient forum.

Third, TNC falsely contends that "online sources show that Le-Vel has several *employee-supervisors* located in this District" based on information from LinkedIn. Dkt. 58-1 at 5-6 (citing Dkt. 15-2, Ex. B). Not true. As noted above, Le-Vel's third-party promoters are independent third-parties, *not employees* of Le-Vel. Any alleged *supervisory role* these third-party promoters may have simply cannot be with respect to Le-Vel employees. Dkt. 15-2, Ex. B. Additionally, Le-Vel has no control over how these third-party promoters identify or associate themselves on LinkedIn. Hoffman Decl. at ¶ 2. Any numbers LinkedIn may report are merely a result of third-party promoters independently selecting Le-Vel through the "Experience" section of their

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603293271                                    5                    Case No. 2:21-CV-02022-DOC-KES
                           LE-VEL'S MEMORANDUM ISO MOTION TO TRANSFER

profiles. *Id.* This does not accurately reflect Le-Vel's actual employees or the positions (and roles) they self-report.[2]

Last, Le-Vel's earlier lawsuit against Thrive Market, Inc. does not establish Le-Vel acquiesced to this District as a convenient forum. Dkt. 58-1 at 6. Le-Vel filed in this District, which was where the defendant Thrive Market resided. *E.g.*, Compl. at ¶ 3, *Le-Vel Brands, LLC v. Thrive Market, Inc.*, No. 2:17-cv-08951-AFM, ECF. No. 1 (C.D. Cal. Dec. 13, 2017) (noting the defendant had an address of 4509 Glencoe Ave., Marina Del Rey, CA, in this District). This is proper, and it does not establish that this District is convenient for Le-Vel on an ongoing basis. *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1132-33 (C.D. Cal. 2009) (acknowledging the inconvenience for the defendant *even when* involved in other ongoing litigations in same District). Nonetheless, that lawsuit terminated in 2019. *E.g.*, Min. Order, *Le-Vel*, No. 2:17-cv-08951-AFM, ECF No.. 52 (May 3, 2019) (dismissing the case). TNC's cases discussing the purported relevance of *ongoing litigation(s)* in the same district are clearly inapposite. *Allstar*, 666 F. Supp. 2d at 1132-33. Le-Vel is not "currently involved" in other litigations in this District. This District is not a convenient forum.

## IV.   TNC Likewise Lacks "Significant Contacts" With This District

TNC contends it has "significant contacts" in this District. *See, e.g.*, Dkt. 58-1 at 2-3, 6. But TNC does not reside in this District. It has no offices in this District, and it appears that TNC has no employees located in this District.[3] TNC argues that it has "significant contacts" because it has sold THRIVE skincare products in a handful of physical stores in this District since 2015. Dkt. 58-2 ¶ 7. Rather than disclose exactly how many stores sell its products in this District, TNC identifies "six to eight" stores it considers exemplary but neglects to provide *any sales information* associated with

---

[2] Le-Vel cited a LinkedIn page associated with "Thrive Natural Company" to show that TNC *might* have an employee located in Van Alstyne, Texas. *See* Dkt. 46-2 at 6; Dkt. 44-3 ¶ 10, Exhibit 9. TNC argued that this company page on LinkedIn did not accurately capture its employees. Dkt. 58-1 at 6. TNC cannot have it both ways.
[3] TNC does not argue otherwise in its opposition.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

those stores. *See id.* As the record currently stands, Le-Vel (as well as this Court) is left unable to evaluate precisely how "significant" this connection compares to TNC's established presence on a national level or otherwise.

TNC also summarily contends that its online sales in this District "have been ████████." Dkt. 58-1 at 2; Dkt. 58-2 ¶ 10. The record, however, categorically fails to support such a contention. TNC provides snapshot sales information for the limited time-period between March 2020 and February 2021, notwithstanding its alleged sales claims of THRIVE products in this District since 2015. Dkt. 58-2 ¶ 7. Nor does TNC disclose which products it has sold, i.e., men's grooming products or more traditional unisex skincare products like lotions and sunscreens that it launched in late 2019 into early 2020. *Id.* at ¶¶ 7-8, 10-11. Such purposeful vagaries indicate TNC's THRIVE product sales before March 2020 were marginal, at best.

Nor does TNC contend that this District is the location with its highest sales, let alone indicate where such sales rank overall. The sum of such piecemeal contentions falls far short of "significant contacts" in this District. As for TNC's attendance at an Expo over six years ago, and the location of its outside counsel in this District, those contacts cannot remedy the void of truly significant contacts with this District. *See* Dkt. 58-2 ¶ 12; *Yeti Data, Inc. v. Snowflake, Inc.*, No. CV 20-6595 PA (AFMx), 2020 WL 8174630, at *4 (C.D. Cal. Nov. 9, 2020) ("that Plaintiff has retained counsel in this District deserves no deference").

## V.   The Center of Gravity of This Dispute Is in the Eastern District of Texas, and the Nearby Northern District of Texas

As this Court held in *Secured Mail*, "even if litigating in the transferee district would cause inconvenience to the plaintiff's witnesses, the 'center of gravity' of the infringing activity ultimately tips the scales" in favor of transfer. 2013 WL 8596579, at *3 (citing both *Motorola Mobility, Inc. v. Microsoft Corp.*, No. 11-3136, 2011 WL 5834923, at *7 (N.D. Cal. Nov. 21, 2011), and *TraceWilco, Inc. v. Symantec Corp.*, No. 08-80877-CIV, 2009 WL 455432, at *3-4 (S.D. Fla. Feb. 23, 2009), inter alia).

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603293271                                7                    Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S MEMORANDUM ISO MOTION TO TRANSFER

1    That is the case here, irrespective of TNC's allegations regarding its purported witness

2    convenience.

3            TNC alleges that this District has more contacts related to TNC's claim of

4    trademark infringement than Texas, and its case should remain here as a result. Dkt.

5    58-1 at 7-9. Rather than focus on the numerous issues presented by this case in its

6    entirety—e.g., issues concerning the priority of trademark rights (Eastern District of

7    Texas), issues concerning the underlying validity of TNC's asserted registrations

8    (Northern District of California), issues of the parties' products and their respective

9    zones of expansion (Eastern District of Texas and Northern District of California)—

10   TNC focuses only on a geocentric comparison of the likelihood of confusion between

11   this District and Texas. TNC contends that, because it never sold products in *physical*

12   stores in Texas, because it has "minimal" sales in Texas compared to California, and

13   because it sold THRIVE products in a *few physical* stores in this District, a likelihood

14   of confusion can be more readily assessed in this District than in Texas. *Id.* This is a

15   pure strawman. Further, if TNC's contorted logic is applied to Le-Vel's comparative

16   district-centric product sales, it strongly supports transfer to Texas.

17           First, Le-Vel has never sold products in *physical stores* in this District (it only

18   sells products online). Hoffman Decl. at ¶ 3. Second, Le-Vel has ███████ sales in

19   California compared to Texas. Dkt. 46-2 at 15. Third, Le-Vel initially developed,

20   distributed, and sold its THRIVE products from the Eastern and Northern Districts of

21   Texas. Those facts favor transfer or are neutral. *See Yeti*, 2020 WL 8174630, at *3[4]

22   (emphasizing that "whether defendants' website is accessible to those who reside in

23   this District is not sufficient to establish that venue is proper"); *see Armor All/STP*

24   *Prods. Co. v. TSI Prods., Inc.*, No. 3:17-cv-1131 (MPS), 2018 WL 9812123, at *4 (D.

25   Conn. Aug. 30, 2018) (finding this factor "largely neutral" when considering location

26

27           [4] TNC's attempts to distinguish this case are unavailing, as TNC presumes the
     conclusion it seeks. *See* Dkt. 58-1 at 9. Like the parties in *Yeti*, neither party here is a
28   resident of this District, and Le-Vel lacks significant ties to this District (as discussed
     below) beyond the mere "operating [of] an interacting website." *Id.*

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

of the alleged confusion as well as where alleged infringing products were designed and developed); *Secured Mail*, 2013 WL 8596579, at \*3-4 (citing *Teleconference Sys. v. Procter & Gamble Pharm., Inc.*, 676 F. Supp. 2d 321, 331 (D. Del. 2009) and then noting in that case, "location of allegedly infringing conduct was neutral factor where it occurred in both [the] chosen forum and transferee district"). And, of course, TNC's allegations of infringement are not geocentric, as TNC seeks relief on a national scale. TNC cannot show that this District is the epicenter of marketplace convergence of the parties' products, and it cannot specifically show that this District is the epicenter over Texas, where the alleged acts of trademark infringement originate and where Le-Vel's ██████████ .

TNC also ignores critical parts of this case—namely, Le-Vel has a priority of rights claim to the THRIVE trademark based on its prior common law rights and its zone of natural product expansion from vitamins and skin-based nutritional patches into skincare products. The question of priority over the THRIVE mark is central to the underlying dispute, which TNC completely failed to address. Dkt. 46-2 at 1, 12-13. As Le-Vel explained in its opening motion, TNC claims rights in THRIVE from September 11, 2012, which was the filing date of its application that later matured into registration on January 14, 2014. That application's filing date (September 11, 2012) and registration date (January 14, 2014) fall *after* Le-Vel's first use of its THRIVE mark on August 24, 2012. *Id.* at 1. And Le-Vel's continuing use of its THRIVE mark since August 24, 2012 resulted in a staggering ████████ in nationwide sales for Le-Vel by TNC's January 14, 2014 registration date. *See* Dkt. 46-3 ¶ 11; *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1121-26 (9th Cir. 2006) ("To demonstrate priority of use, the [plaintiff] must prove [] it actually adopted and used the marks in commerce prior to [the defendant's] registration . . . ."); *Kabushiki Kaisha Megahouse v. Anjar Co. LLC*, No. 2:14-cv-00598 CAS(CWx), 2014 WL 5456523, at \*1-5 (C.D. Cal. Oct. 20, 2014) (finding mark not incontestable "to the extent that it infringes on another's valid rights in the mark acquired under state law

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

by a use continuing from a date prior to federal registration of the mark" (citation and quotation marks omitted)).

The relevance of this crucial Eastern-District-of-Texas-based fact is acute in this case, as TNC's claim of "constructive use" for purposes of "conferring a right of priority" has an unambiguous and plain statutory language *exception* under Lanham Act Section 7(c) for a person who "*prior to such filing—has used the mark*" (namely, Le-Vel). 15 U.S.C. § 1057(c). Given that statutory exception, the parties' rights in this case default to their respective common law rights for purposes of priority, and those operative facts are located in the Eastern District of Texas for Le-Vel and the Northern District of California for TNC. The issues concerning which party has priority in the THRIVE mark will be a key center of gravity in the case. And of course, another key center of gravity will be Le-Vel's exercise of its rights to naturally expand its products (i.e., from vitamins and skin-based nutritional supplements to skincare products), which, again, happened in Texas. Hoffman Decl. at ¶ 5.

In sum, a considerable portion of this case will focus on facts surrounding Le-Vel's first use of the THRIVE mark and its natural product expansion from vitamins and skin-based vitamin patches to skin vitamins and skincare products. *See* Dkt. 46-2 at 12-13. Before TNC was formed, Le-Vel selected and invested in its THRIVE mark in the summer of 2012 in Dallas and Irving, Texas. Dkt. 46-2 at 12; Dkt. 46-3 ¶ 10. It was at this location that Le-Vel, including its founders (discussed below), made key decisions about the brand and trademark, marketing campaign, and design of product offerings, including its vision of connecting one's skin to nutrition through its vitamin skin patches. *Id.* As Le-Vel's THRIVE brand grew, so too did its product offerings, naturally expanding from vitamins and skin-based vitamin patches to skin vitamins and skincare products. *Id.* Thus, key "centers of gravity" for this case are located in Texas, not in this District, as the operative facts related to priority and natural product expansion strongly favor transfer to Texas.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603293271

10

Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S MEMORANDUM ISO MOTION TO TRANSFER

## VI.    Witness Convenience Favors Transfer

TNC attempts to trivialize the inconvenience that Le-Vel's witnesses would experience traveling to this District. Dkt. 58-1 at 9-11. Although various Le-Vel's witnesses may be employees,[5] this Court has held "when the allegations in a case focus on *Defendants'* conduct, the convenience of witnesses favors transfer." *See, e.g., Estrella v. Freedom Fin'l Network, LLC*, No. SACV09-0189 DOC(ANx), 2009 WL 10678991, at \*3 (C.D. Cal. July 9, 2009) (emphasis added); *see also Thermolife Int'l, LLC v. Vital Pharms., Inc.*, No. CV 14-2449 RSWL (AGRx), 2014 WL 12235190, at \*5 (C.D. Cal. Aug. 15, 2014) (explaining "[e]ven if Defendants' employees inconvenience may be accorded less weight, that does not mean that their convenience is given no weight," and finding this factor weighed in favor of transfer).

Further, Le-Vel would face considerable hardships if its employees were forced to travel to this District. Although Le-Vel runs a successful nationwide business, its operations are run by only ▮ employees. Hoffman Decl. at ¶ 2. Requiring certain executives to travel to a district where Le-Vel has no headquarters or presence at all will undeniably disrupt Le-Vel's business. It would be far more convenient for those witnesses to travel to Le-Vel's central hub in the Eastern District of Texas, where they can attend to their regular corporate duties, rather than operating out of a local hotel in Santa Ana. *E.g., Newthink LLC v. Lenovo (U.S.) Inc.*, No. 2:12-cv-5443-ODW(JCx), 2012 WL 6062084, at \*1 (C.D. Cal. Dec. 4, 2012) (stating it is more convenient for witnesses traveling to the U.S. for discovery or trial to go to Lenovo's headquarters than elsewhere).

---

[5] TNC further contends that Le-Vel did not identify witnesses or the testimony they will likely provide. *See* Dkt. 58-1 at 9-10. Not so. For example, Le-Vel explained in its opening motion that, among other things, Le-Vel's CFO resides in Carrollton, Texas and is knowledgeable about THRIVE SKIN skincare sales. Dkt. 46-2 at 10; Dkt. 46-3 ¶ 9. And its president and chief legal officer resides in Florida and is knowledgeable about general operations, legal matters, and compliance issues. Dkt. 46-2 at 10; Dkt. 46-3 ¶ 12.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603293271

Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S MEMORANDUM ISO MOTION TO TRANSFER

Further, TNC fails to identify non-party witnesses who could provide testimony relevant to the core issues, or testimony that is not duplicative of testimony otherwise attainable by employee witnesses. Dkt. 58-1 at 2-3, 11. This District has recognized it is not just the quantity of witnesses that matters, but also the relative "importance of the witnesses," and why their testimony is relevant and/or necessary. *E.g.*, *Fontaine v. Washington Mut. Bank, Inc.*, No. CV 08-5659 PSG (Ex), 2009 WL 1202886, at *3-4 (C.D. Cal. Apr. 30, 2009); *see Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984) (concluding that "the district court improperly focused on the number of witnesses in each location" and should have instead "examined the materiality and importance of the anticipated witnesses' testimony"); *Kiewet Infrastructure W. Co. v. Samson Rope Techs.*, Case No. SA CV 19-02501-DOC-ADS, 2020 WL 5092914, at *4 (C.D. Cal. Mar. 6, 2020) (explaining that "[t]he Court consider[s] not simply how many witnesses each side has and the location of each, but also the importance of the witnesses" (internal quotation marks and citations omitted)).

As Le-Vel addressed in its opening motion, its anticipated witnesses include Texas-based employees with particular knowledge about important issues in this case, including, for example sales information, compliance with marketing claims, and supply chain and distribution logistics. *See, e.g.*, Dkt. 46-2 at 10-11; Dkt. 46-3 ¶¶ 8-12; Hoffman Decl. at ¶¶ 4, 6. Those topics are highly relevant to this case. For example, Le-Vel has four executive employees in the Eastern District of Texas—its in-house counsel, CFO, director of supply chain, and senior director of operations—who have particular knowledge of THRIVE SKIN sales and product distribution. Dkt. 46-2 at 10; Dkt. 46-3 ¶ 9; Hoffman Decl. at ¶ 4. Le-Vel's director of finance also resides nearby in the Northern District of Texas. Dkt. 46-2 at 10; Dkt. 46-3 ¶ 12; Hoffman Decl. at ¶ 6.

Le-Vel further identified various witnesses who do not live in Texas, but for whom Texas is the more "convenient" forum. For example, those witnesses are Le-Vel's co-founder, who is knowledgeable about the development, adoption, and initial

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

use of Le-Vel's THRIVE mark, as well as Le-Vel's long-standing plans to exercise its rights to naturally expand into skincare, all of which occurred in Texas. Dkt. 46-2 at 11; Hoffman Decl. at ¶ 5. Testimony on this important issue will carry significant weight. Le-Vel also identified its president and chief legal officer, who has knowledge about Le-Vel's general operations, legal matters, and compliance issues. Dkt. 46-2 at 10; Dkt. 46-3 ¶ 12; Hoffman Decl. at ¶ 6. Each of the anticipated Le-Vel witnesses could provide testimony going to any number of core issues in this case. *See, e.g.*, *Zimpleman v. Progressive Northern Ins. Co.*, No. C-09-03306 RMW, 2010 WL 135325, at *7 (N.D. Cal. Jan. 8, 2010) (explaining "[m]ore importantly, while the testimony of [plaintiff's] witnesses to the accident is relevant, the testimony of [defendant's] medical providers who treated plaintiff for her alleged injuries is *more likely to be probative regarding the central issue in this case*—the nature and extent of injuries suffered by plaintiff as a result of the accident" and finding witness convenience weighed in favor of transfer (emphasis added)).

In stark contrast, TNC identifies no meaningful anticipated witnesses located in this District. TNC's CEO, who is located outside of this District, already provided testimony on TNC's brand identity, packaging, online and product branding, market presence, and distribution into brick-and-mortar stores. *See* Dkt. 8-2, 28-4, 56-1. Thus, each of the additional witnesses TNC identifies as residing in this District would only provide *cumulative* testimony for these topics, again, including TNC's brand identity and harm caused by alleged consumer confusion.[6]

For example, TNC identified two public relations/marketing contractors both of whom would allegedly provide the same information—namely, testimony on TNC's "brand identity and [] the harm caused to that identity by consumer confusion." *E.g.*,

_____

[6] TNC has not alleged the occurrence of any instance of actual consumer confusion caused by Le-Vel's use of its THRIVE SKIN name for its skincare products over the past *two years*, which is not surprising given that consumers purchasing such products are already familiar with Le-Vel's use of the THRIVE mark for its numerous other products.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Dkt. 58-1 at 11; Dkt. 58-2 ¶¶ 13-15. Further, one named contractor only worked for TNC from 2014-*2017* and therefore has no personal knowledge of any "consumer confusion" about Le-Vel's THRIVE SKIN product, which was launched only in *2019*, two years *after* she stopped working for TNC. *See* Dkt. 58-2 ¶ 15. Further, any testimony from her on this issue would likely be improper *expert* opinion. The other appears to have been hired shortly after TNC filed its complaint.[7] Dkt. 58-2 ¶ 14; Woods Decl. at ¶ 2, Ex. 1. TNC's post hoc reliance on the just-hired employee cannot create post-lawsuit filing convenience in this forum. Obviously, it is unclear what, if any, relevant testimony she could provide, given her short tenure at TNC. Dkt. 58-2 ¶ 14.

TNC also identifies a brand designer as a "likely" witness based on "extreme[] knowledge[]" about TNC's brand including "the importance of [TNC's] brand identity in the skincare industry" and "the negative impact of brand infringement." Dkt. 58-1 at 11; Dkt. 58-2 ¶ 16. TNC, however, submitted no evidence showing that the designer has specialized or specific knowledge of the skincare industry or that he could provide any credible *fact* testimony about the negative impact of infringement. The remaining testimony appears duplicative of what TNC's CEO already provides or could provide, and it constitutes improper *expert* testimony. Again, TNC overstates the testimony the designer could provide.

TNC also identified two TNC investors as possible witnesses. Dkt. 58-1 at 11; Dkt. 58-2 ¶¶ 17-19. Again, these investors are identified as providing testimony about alleged "harm caused to [TNC] investors by potential confusion." Dkt. 58-2 ¶¶ 18-19. But harm to investors is not harm to TNC caused by alleged acts of infringement, and it remains unclear how such testimony would pertain to any of the claims at issue in

---

[7] TNC choose not to specify the time period for which its current public relations contractor worked for it, leaving Le-Vel and the Court to rely on public information.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

this case.[8] TNC's other anticipated witnesses, including packing and manufacturing vendors, are likewise deficient. The ultimate importance of their testimony appears tangential to core issues in this case. *Id.* ¶¶ 20-23; *Zimpleman*, 2010 WL 135325, at *2; *see also Pyrocap Int'l Corp. v. Ford Motor Corp.*, 259 F. Supp 92, 97-98 (D.D.C. 2003) (plaintiff's anticipated witness testimony "appears to be tangential to the central issues of this case," and convenience of parties and witnesses weighed in favor of transfer). Further, and as noted above, such testimony is at best cumulative of TNC's CEO's anticipated testimony. In sum, TNC's attempt to manufacture fleeting and tenuous connections with this District through its proffered "witnesses" is grossly inadequate. This factor weighs in favor of transfer.

## VII.   TNC's Choice of Forum Has Little Weight in the Transfer Analysis

Despite the absence of meaningful connections, TNC insists that weight be given to its choice of forum. Dkt. 58-1 at 4-5.[9] But TNC ignores the fundamental exception—as recognized in the *Allstar* case that it cites—that "[a] plaintiff's choice of forum is entitled to less deference, however, when the plaintiff elects to pursue a case *outside its home forum*." *Allstar*, 666 F. Supp. 2d at 1131 (emphasis added).

Because neither TNC nor Le-Vel is a citizen of this forum, deference for TNC's selected forum is greatly diminished, and its choice receives "little weight" in the transfer analysis. *Kiewet*, 2020 WL 5092914, at *3 (when "operative facts have not

---

[8] The relationship of such investors to TNC and its CEO was not disclosed, leaving Le-Vel and this Court to speculate what investments were made and under what conditions and prior awareness/knowledge that they were made, including the existence of the various other alleged third-party infringers TNC is currently suing in this court (e.g., Thrive Causemetics) along with numerous other third-party infringers. *See, e.g. Thrive Natural Care, Inc. v. Thrive Causemetics*, Case No. 2:20-cv-09091 (C.D. Cal. Oct. 2, 2020),

[9] To the extent TNC contends evidence of forum-shopping must be submitted before any deference to its choice of forum is diminished, that is not the case. Dkt. 58-1 at 5. Concerns about forum-shopping are particularly prevalent *whenever* a plaintiff brings suit outside of its home jurisdiction and the defendant's home jurisdiction. *See Mitchell v. Deutsche Bank Nat'l Tr. Co.*, No. SACV 15-01307-CJC (JCGx), 2015 WL 12867746, at *3 (C.D. Cal. Oct. 29, 2015). That neither party here is a citizen of *this forum* is enough to trivialize deference that would otherwise be afforded TNC. *See id.*; *Kiewet*, 2020 WL 5092914, at *3. Further, TNC's selection of this District merely because its counsel resides here is textbook forum-shopping in its own right.

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

occurred within the forum" and/or "the [chosen] forum is not the primary residence of . . . plaintiff or defendant," the plaintiff's choice to bring suit in this forum has little impact on the transfer analysis and deference otherwise owed is reduced).

TNC's selection is also inappropriate because the operative facts have not occurred in this forum, this forum has no particular interest in the parties (other than that this is where TNC's outside litigation counsel resides, which is a non-factor), and the subject matter is not substantially connected to this forum, as discussed above and in Le-Vel's opening motion (Dkt. 46-2). *See Kiewet*, 2020 WL 5092914, at *3.

## VIII.  Local Interests Favor Texas

TNC incorrectly contends that local interests cannot favor Texas because Le-Vel has not counterclaimed for defamation in this case. *See* Dkt. 58-1 at 13. But there is simply no requirement that such counterclaim be filed before any assessment into local interests can be made. Rather, as Le-Vel submitted in its opening brief, TNC's impugning Le-Vel's reputation and business practices calls into question *the work and reputation* of Le-Vel and its employees residing in or near the Eastern District of Texas, and who conduct regular business in the Eastern of District. Dkt. 46-2 at 13-14. Thus, the Eastern District of Texas has a strong local interest in this case. *See, e.g.*, *Callidus Software, Inc. v. Xactly Corp.*, No. SA-CV12-01432 JAK (FFMx), 2013 WL 12136523, at *3 (C.D. Cal. Mar. 11, 2013). This factor also weighs heavily in favor of transfer.

## IX.     The Parties' Relative Sizes Does Not Outweigh the Other Factors

TNC identifies its relatively small size compared to Le-Vel and contends that this size disparity should weigh against transfer. Dkt. 58-1 at 6-7. That is not true. In *Hackwith*, for example, this Court declined to hold that the larger size of the defendant precluded transfer. *Hackwith v. Apple Inc.*, No. CV 09-3482-VBF(VBKx), 2009 WL 10674053, at *2 (C.D. Cal. Aug. 12, 2009). Instead, the Court found that, although the defendant was a larger corporation that could "more easily" absorb costs, its "headquarters are located in the Northern District of California, and accordingly, [the]

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

parties will have easier access to evidence." *Id.* With easier access to evidence, the smaller (individual) plaintiff "will not be overburdened" by a transfer. *Id.* So too is the case here, where Le-Vel seeks transfer to the Eastern District of Texas, where its central hub is located and where relevant events occurred and key witnesses are nearby. *Id.* The parties' relative sizes cannot preclude transfer here.[10] *Mirza v. Cent. Asia Inst.*, No. CV 14-01542 MMP (PJWx), 2014 WL 12663437, at *6 (C.D. Cal. May 27, 2014) (noting it is not enough for a party to allege only the other party "is a large corporation and far better equipped to absorb the expenses and inconvenience outside its home district" (internal quotation marks and citations omitted)).

Finally, it is impossible for this Court to engage in any meaningful comparison of size because TNC has failed to disclose what its past or trending annual sales have been *anywhere* in this case. Without that sales information, no meaningful analysis of the comparative harm TNC has allegedly suffered in this District (or elsewhere) can be made against any national baseline, let alone show any alleged harm that TNC has suffered stemming from Le-Vel's allegedly infringing use of the THRIVE SKIN trademark over the past two years.

## X.  Conclusion

As detailed above and in Le-Vel's opening motion, the relevant factors favor transfer. Le-Vel respectfully requests that the Court transfer this case to the Eastern District of Texas or, in the alternative, to the Northern District of Texas.

---

[10] TNC greatly "overstates the significance of [the] relative-size discussion." *Cf. Mad Dogg Athletics Inc. v. Hart Wood Inc.*, No. CV 09-7027-GAF-FMO, 2009 WL 10673203, at *5 (C.D. Cal. Dec. 30, 2009). Although TNC is smaller relative to Le-Vel, it still has six employees and allegedly earned ▮▮▮▮▮▮▮ in sales in 2020. Even in the case of an individual suing a large corporation, this factor can weigh in favor of defendant corporations and transfer. *See Hackwith*, 2009 WL 10674053, at *2.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1   DATED:  April 19, 2021              KENDALL BRILL & KELLY LLP

2

3                                       By:      /s/ Alan Jay Weil
                                             _____
4                                            Alan Jay Weil
                                             Attorneys for Defendant
5                                            Le-Vel Brands, LLC

6                                        FINNEGAN, HENDERSON,
                                          FARABOW, GARRETT & DUNNER, LLP
7                                        Mark Sommers (admitted *pro hac vice*)
                                         Morgan E. Smith (SBN 293503)
8                                        Patrick J. Rodgers (*pro hac vice* forthcoming)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603293271                              18                   Case No. 2:21-CV-02022-DOC-KES
                    LE-VEL'S MEMORANDUM ISO MOTION TO TRANSFER