Stephen McArthur (State Bar No. 277712)
stephen@smcarthurlaw.com
Thomas Dietrich (State Bar No. 254282)
tom@smcarthurlaw.com
THE MCARTHUR LAW FIRM, P.C.
9465 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90212
Telephone: (323) 639-4455

*Attorneys for Plaintiff and Counterclaim
Defendant Thrive Natural Care, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRIVE NATURAL CARE, INC., <br><br> Plaintiff, <br><br> v. <br><br> LE-VEL BRANDS, LLC, <br><br> Defendant. | Case No. 2:21-CV-02022-DOC-KES <br><br> **THRIVE NATURAL CARE, INC.'S MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS COUNTERCLAIM UNDER RULE 12(B)(6)** <br><br> Judge: Hon. David O. Carter <br> **Hearing Date**: June 14, 2021 <br> **Time**: 8:30 a.m. <br> **Courtroom**: 9D |
| LE-VEL BRANDS, LLC, <br><br> Counterclaim Plaintiff, <br><br> v. <br><br> THRIVE NATURAL CARE, INC, <br><br> Counterclaim Defendant. | |

# **TABLE OF CONTENTS**

Introduction ....................................................................................................................... 1

I.      Relevant Facts ....................................................................................................... 3

II.     Thrive's Incontestable Registration Cannot Be Canceled Through a Void *Ab Initio* Challenge or for Abandonment By the Registrant ............................... 5

        A.      A Claim Without a Cognizable Legal Theory Must Be Dismissed ...................... 5

        B.      Thrive's Incontestable Registration is *Conclusive Evidence* of Its Ownership and Not Subject to a Void *Ab Initio* Challenge .................................. 6

                1.      Incontestability provisions are intended to reward long-term, continuous use with "quiet title" to a mark ................................................ 6

                2.      Incontestable marks can only be challenged with defenses enumerated in § 1115(b), and courts lack jurisdiction to cancel an incontestable mark under § 1064 on a void *ab initio* challenge ................ 8

                3.      Thrive's '942 Registration cannot be canceled as void *ab initio* under Le-Vel's Counterclaim 1(a) ........................................................... 10

                4.      The footnote in *Patagonia* was too broadly stated, contradicts binding case law, and does not support Le-Vel ...................................... 13

                5.      Public policy supports dismissing Le-Vel's counterclaim ...................... 15

        C.      As the Original Registrant of the '942 Registration, Thrive Cannot Be Found to Have Abandoned the Mark ................................................................. 16

Conclusion ....................................................................................................................... 19

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*American Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co.*, No. 13-cv-324 (RGA) (D. Del. Aug. 14, 2017) ............................................................................................................... 9, 12, 19

4

*Ariel Invs., LLC v. Ariel Capital Advisors LLC*, 230 F. Supp. 3d 849 (N.D. Ill. 2017) ................ 10

5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................... 5

*Aycock Eng. v. Airflite*, 560 F.3d 1350 n.9 (Fed. Cir. 2009) ....................................................... 8

6

*Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696 (9th Cir. 1990) ............................................... 5

7

*Collectable Promo. Prods. v. Disney Enters.*, No. CIV-06-1187-D (W.D. Okla. June 2, 2009) ... 9, 11, 13

8

*Emerald Cities Collaborative, Inc. v. Roese*, 666 F. App'x 908 (Fed. Cir. 2016) ........................ 10

9

*Exel Oyj v. D'Ascoli*, Opp. No. 91160397, 2008 WL 4354180 (T.T.A.B. Sept. 19, 2008) ..... 11, 15

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 623 F.3d 61 (2d Cir. 2010) ........... 14

10

*interState Net Bank v. Netb@nk, Inc.*, 348 F. Supp. 2d 340 (D.N.J. 2004) ................................. 18

11

*Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, Case No. 20-CV-1765-GPC(BGS) (S.D. Cal. Apr. 19, 2021) ......................................................................................... 5

12

*Kleven v. Hereford*, No. 13-cv-02783-AB-AGRx (C.D. Cal. Aug. 21, 2015) ............................... 18

13

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596 (9th Cir. 2005) ........... 6

14

*Levi Strauss & Co. v. GTFM, Inc.*, 196 F. Supp. 2d 971 (N.D. Cal. 2002) ............................... 7, 17

*M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073 n.1 (9th Cir. 2005) ......................................... 7

15

*Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234 (S.D. Cal. 2018) .. 2, 7, 8, 9, 11, 13, 16

16

*Moss v. U.S. Secret Serv.*, 572 F.3d 962 (9th Cir. 2009) ................................................................ 5

17

*Netjets Inc. v. Intellijet Grp., LLC*, 678 Fed. App'x 343 (6th Cir. Feb. 3, 2017) ...... 8, 9, 11, 13, 16

18

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189 (1985).... 1, 2, 6, 7, 8, 9, 11, 12, 16, 17, 18, 19

19

*Patagonia, Inc. v. Anheuser-Busch, LLC*, No. 2:19-CV-02702-VAP-JEMx (C.D. Cal. Sep. 3, 2019) ................................................................................................................ 2, 13, 14, 15

20

*Pudenz v. Littlefuse, Inc.*, 177 F.3d 1204 (11th Cir. 1999) .................................................... 12, 16

21

*Redbox Automated Retail, LLC v. Buena Vista Home Ent., Inc.*, 399 F. Supp. 3d 1018 (C.D. Cal. 2019) .......................................................................................................................................... 5

22

*Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126 (9th Cir. 2006) ...................................... 6

23

*Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 293 F. Supp. 3d 1334 (M.D. Fla. 2017) ........... 10

*Vacation Rental Partners, LLC v. Vacaystay Connect, LLC*, No. 15 CV 10656 (N.D. Ill. Mar. 28, 2017) ........................................................................................................................................... 11

24

25

**Statutes**

26

15 U.S.C. § 1064(3) ...................................................................................................................... 13

15 U.S.C. § 1115(b) ................................................................................... 6, 7, 12, 14, 15, 16

27

15 U.S.C. § 1115(b)(2) .................................................................................................................... 2

28

15 U.S.C. § 1127 ............................................................................................................... 7, 14, 17

## **Introduction**

Le-Vel Brands, LLC's ("Le-Vel") Counterclaim 1 makes two attacks on Trademark Registration No. 4,467,942 (the "'942 Registration") based on an alleged defect in the chain of title of the application which underlies the '942 Registration. Both attacks are unprecedented—no court has held that the original registrant and holder of an incontestable registration can have its rights stripped away by a purported defect that occurred in the application process. That is exactly the sort of chain-of-title attack that the Supreme Court has held incontestability is intended to prohibit.

Thrive Natural Care, Inc. ("Thrive") is and always has been the registrant of the '942 Registration for the mark THRIVE on lotions, creams, and cleansers. The '942 Registration issued to Thrive and has never been assigned to anyone else. Thrive made the initial use in commerce that formed the basis for the Statement of Use supporting the '942 Registration, which Thrive filed on its own behalf. It is undisputed that the U.S. Patent & Trademark Office ("PTO") awarded incontestable status to the '942 Registration based on Thrive using the THRIVE mark in commerce continuously for more than five years. The Supreme Court has explained that incontestability "provide[s] a means for the registrant to quiet title in the ownership of his mark." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc*., 469 U.S. 189, 198 (1985). As the original registrant of the '942 Registration, Thrive is entitled to the "quiet title" benefits provided by the incontestability provisions.

Le-Vel's Counterclaim 1(a) alleges that the '942 Registration was void *ab initio* due to an improper assignment of the parent intent-to-use application from the original applicant to Thrive. But the Supreme Court has held that an incontestable registration can only be challenged using the defenses expressly enumerated in 15 U.S.C. § 1115(b). That does not include the defense that a mark was void *ab initio*. "Void *ab initio* challenges are conspicuously absent from the list of statutory defenses to an incontestable registration under Section 1115(b)." *Marketquest Grp.,*

THRIVE'S MEMO IN SUPPORT OF RULE
12(B)(6) PARTIAL MOTION TO DISMISS
CASE NO. 2:21-CV-02022-DOC-KES

1   *Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1292 (S.D. Cal. 2018). Void *ab initio*

2   defenses "are also absent from Section 1064, which means **courts lack jurisdiction**

3   **to cancel a registration under Section 1119 based on a void** **ab initio** **challenge**."

4   *Id.* (emphasis added). Many other courts have held the same. No court has canceled

5   an incontestable registration held by the original registrant due to an improper

6   assignment during the application process. The statutory section on which Le-Vel

7   relies, 15 U.S.C. § 1060, was intended to prevent trafficking in inchoate, unused

8   marks. There is no such concern here, where Thrive is the original registrant and

9   was awarded incontestable status based on its own lengthy, continuous use.

10      Le-Vel's Counterclaim 1(b) seeks to cancel the '942 Registration for

11  abandonment by Ecomundi, LLC ("Ecomundi"). That claim must fail because Le-

12  Vel would have to prove that "the mark has been abandoned *by the registrant*." 15

13  U.S.C. § 1115(b)(2) (emphasis added). The allegation that Ecomundi—who is

14  neither the registrant not the current trademark owner—has abandoned the mark

15  does not state a cause of action. Thrive *is* the registrant, and Thrive has *always* been

16  the registrant. As a matter of law, Le-Vel has not alleged and cannot prove that

17  Thrive has abandoned the claimed mark.

18      The case on which Le-Vel primarily relies, *Patagonia, Inc. v. Anheuser-*

19  *Busch, LLC*, No. 2:19-CV-02702-VAP-JEMx (C.D. Cal. Sep. 3, 2019), made a

20  broad statement in a footnote, without any analysis, that "the incontestability of a

21  trademark is irrelevant to Plaintiffs' cancellation claims." *Id.* at *11 n.2. As

22  explained below, that statement is completely at odds with the Supreme Court's

23  holding in *Park N' Fly*, the plain statutory language, the published *Marketquest*

24  opinion, and numerous other opinions holding incontestability is highly relevant to

25  whether and how a registration can be canceled. Further, the Second Circuit case

26  *Patagonia* cited support had nothing to do with a defect in an application's chain of

27  title, but rather involved fraudulent transfers of registrations many years *after* they

28  had been deemed incontestable. Unlike here, where Thrive is the original registrant

THRIVE'S MEMO IN SUPPORT OF RULE
12(B)(6) PARTIAL MOTION TO DISMISS
CASE NO. 2:21-CV-02022-DOC-KES

1 of the '942 Registration, *Patagonia* involved a post-registration assignment

2 combined with abandonment issues that are not present here.

3   Thrive obtained the '942 Registration in its own name. Thrive has made

4 continuous use of the THRIVE mark for over five years and as a result has been

5 awarded incontestable status. Under Supreme Court law, Thrive thus has the right

6 to "quiet title" to this registration. As such, the purported defect in the chain of title

7 of the underlying application alleged by Le-Vel cannot be a basis to cancel Thrive's

8 registration either as void *ab initio* for improper assignment of the application or for

9 abandonment. Le-Vel's Counterclaim 1(a) and (b) are therefore barred as a matter

10 of law. The Court should therefore dismiss Counterclaim 1 in its entirety with

11 prejudice under Rule 12(b)(6), as the claim cannot be remedied by amendment.

12 **I.    Relevant Facts**

13   The following facts are taken from Le-Vel's pleading. On September 11,

14 2012, Ecomundi Ventures, LLC ("Ecomundi") filed the trademark application U.S.

15 Serial No. 85/726,058 (the "'058 Application") to register the mark THRIVE in

16 relation to various skincare products. [Doc. 71 ¶ 144] Alex McIntosh signed '058

17 Application as the CEO of Ecomundi. [*Id*. ¶ 145] On May 23, 2013, Ecomundi

18 transferred all rights, title, and interest in the THRIVE mark and the '058

19 Application to Thrive Natural Care, Inc. ("Thrive"). [*Id*. ¶¶ 148-49]

20   Beginning on October 4, 2013, Thrive took over prosecution of the '058

21 Application. [*Id*. ¶¶ 162-64] On that date, Thrive filed a Request to Divide the '058

22 Application into two applications: (a) one covering skincare products on which

23 Thrive alleged it had begun using the THRIVE mark in commerce on September 5,

24 2013, consisting of "[n]on-medicated skin care preparations, namely facial lotions,

25 cleansers and creams, creams and oils for cosmetic use, skin moisturizers; pre-

26 shaving preparations; after shave lotions and creams; and (b) another covering other

27 personal care and skincare products for which Thrive alleged it had an intent to use

28 the mark in commerce but was not yet doing so. [*Id*. ¶¶ 163-64] Also on October 4,

2013, Thrive filed a Statement of Use alleging that Thrive was using the THRIVE mark in commerce in relation to the former set of goods. [*Id.* ¶ 163, Exhibit ("Ex.") 8] Alex McIntosh, as CEO of Thrive, signed the Statement of Use on Thrive's behalf. [*Id.*]

On November 5, 2013, the USPTO divided the '058 Application. [*Id.* ¶ 165] After that date, the '058 Application covered only the personal care and skincare products for which Thrive had an intent to use the THRIVE mark but was not yet making such use. [*Id.*] The '058 Application was eventually abandoned. [*Id.* ¶ 166] The USPTO also created a child application, U.S. Serial No. 85/980,517 (the "'517 Application"). [*Id.* ¶ 167] The '517 Application covered the goods for which Thrive had previously filed the Statement of Use, "[n]on-medicated skin care preparations, namely facial lotions, cleansers and creams, creams and oils for cosmetic use, skin moisturizers; pre-shaving preparations; after shave lotions and creams[.]" [*Id.*] The '517 Application matured into the '942 Registration. [*Id.* ¶ 168]

The '942 Registration registered in Thrive's name, and Thrive is identified as the registrant on the registration certificate. [*See* Declaration of Stephen McArthur filed herewith ("McArthur Decl."), Exhibit ("Ex.") A] On January 13, 2020, Thrive filed with the USPTO a Combined Declaration of Use and Incontestability in connection with the '942 Registration. [*Id.* ¶ 179, Ex. 9] The USPTO accepted the declaration on March 7, 2020, awarding incontestable status to the '942 Registration. [McArthur Decl., Ex. B][1]

Le-Vel alleges that Thrive "offers and sells skincare products under the name and trademark THRIVE through its website available at thrivecare.co . . . ." [Doc. 71 ¶ 182] Le-Vel further alleges that Thrive has offered "face wash," "face balm," and "shave oil" for sale under the THRIVE mark since August or September 2013.

---

[1] The '942 Registration and finding of incontestability are referenced throughout the Counterclaims, and these documents can properly be considered on a motion to dismiss. *See In Re: Stac Elecs. Sec. Lit*, 89 F.3d 1399, 1405 n. 4 (9th Cir. 1996) (courts may consider documents referenced in a complaint whose authenticity is not in question).

1   [*Id.* ¶¶ 170-71]

2   **II.    Thrive's Incontestable Registration Cannot Be Canceled Through a**
    **Void *Ab Initio* Challenge or for Abandonment By the Registrant**

3

4       Le-Vel's void *ab initio* and abandonment challenges to the '942 Registration

5   must fail. An incontestable registration cannot be canceled on the ground Le-Vel

6   alleges in Counterclaim 1(a), because that is not one of the defenses expressly

7   enumerated in 15 U.S.C. §§ 1115(b) or 1064. And Le-Vel itself alleges Thrive has

8   been and is selling THRIVE skincare products in U.S. commerce. Le-Vel thus

9   cannot prove Thrive—the "registrant"—has abandoned the mark, as is required to

10  raise a cognizable challenge under § 1115(b).

11      **A.     A Claim Without a Cognizable Legal Theory Must Be Dismissed**

12      Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is

13  appropriate where the claim lacks a cognizable legal theory. *See Balistreri v.*

14  *Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). "A complaint may

15  survive a motion to dismiss only if, taking all well-pleaded factual allegations as

16  true, it contains enough facts to 'state a claim to relief that is plausible on its face.'"

17  *Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, Case No. 20-CV-

18  1765-GPC(BGS), at *6 (S.D. Cal. Apr. 19, 2021) (quoting *Ashcroft v. Iqbal*, 556

19  U.S. 662, 678 (2009)). In other words, a complaint's "non-conclusory factual

20  content, and reasonable inferences from that content, must be plausibly suggestive

21  of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962,

22  969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for

23  relief is a context-specific task that requires the reviewing court to draw on its

24  judicial experience and common sense." *Redbox Automated Retail, LLC v. Buena*

25  *Vista Home Ent., Inc.*, 399 F. Supp. 3d 1018, 1026 (C.D. Cal. 2019). Taking all

26  facts in Le-Vel's favor, its Counterclaim parts 1(a) and (b) both lack a cognizable

27  legal theory and are barred by law. The counterclaim should therefore be dismissed

28  in its entirety.

**B.    Thrive's Incontestable Registration is *Conclusive Evidence* of Its Ownership and Not Subject to a Void *Ab Initio* Challenge**

In Counterclaim 1(a), Le-Vel contends the '942 Registration is void *ab initio* pursuant to 15 U.S.C. § 1060. [*Id*. ¶¶ 200-211] According to Le-Vel, Ecomundi improperly assigned the '517 Application to Thrive "while it was still an intent-to-use application" and prior to the mark being used in commerce, and thus allegedly prior to any goodwill developing in the mark. [*Id*. ¶¶ 203-05] Le-Vel claims this renders the '942 Registration, which matured from the '517 Application, is void *ab initio* under § 1060. [*Id*. ¶¶ 206-11] However, the undisputed facts show that the incontestable '942 Registration cannot be subject to a void *ab initio* challenge.

**1.    Incontestability provisions are intended to reward long-term, continuous use with "quiet title" to a mark**

Congress included incontestability provisions in the Lanham Act to "provide a means for the registrant to quiet title in the ownership of his mark." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc*., 469 U.S. 189, 198 (1985). A registrant obtains incontestable status by fulfilling the requirements of 15 U.S.C. § 1065, which requires: (a) "that the registered mark has been in use for five consecutive years and is still in use in commerce"; and (b) "there has been no decision adverse to the registrant's claim of ownership of the mark, the right to register, or the right to keep it on the register." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc*., 408 F.3d 596, 602 (9th Cir. 2005); 15 U.S.C. § 1065.

Once obtained, an incontestable registration "***shall be conclusive evidence*** of the validity of the registered mark and of the registration of the mark, ***of the registrant's ownership of the mark***, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b) (emphasis added); *see also Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006). Incontestable status provides significant protections for a registration. "Once a mark is deemed 'incontestable,' the trademark-holder is entitled to an exclusive right to

1    use the mark that can be defeated only on specifically enumerated grounds." *M2*
2    *Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1077 n.1 (9th Cir. 2005). A
3    challenger can only cancel an incontestable mark using the defenses expressly
4    enumerated in 15 U.S.C. § 1115(b). *Park 'N Fly*, 469 U.S. at 196 (explaining
5    "registration is conclusive evidence of the registrant's exclusive right to use the
6    mark, subject to the conditions of § [1065] and the seven defenses enumerated in §
7    [1115](b) itself."); *Levi Strauss & Co. v. GTFM, Inc.*, 196 F. Supp. 2d 971, 983
8    (N.D. Cal. 2002) ("[A]n incontestable registration constitutes conclusive evidence
9    of the registrant's right to use the mark, subject to the conditions of § 1064 and the
10   exceptions enumerated in § 1115(b)."); *Marketquest Grp., Inc. v. BIC Corp.*, 316 F.
11   Supp. 3d 1234, 1292 (S.D. Cal. 2018) (holding "[b]ecause these registrations are
12   incontestable, they are statutorily subject to a limited set of challenges" and citing
13   Sections 1065 and 1115(b)). Gaining these protections via incontestable status, the
14   Supreme Court held, "thus encourages producers to cultivate the goodwill
15   associated with a particular mark." *Park 'N Fly*, 469 U.S. at 198.

16          It is undisputed here that the USPTO has granted Thrive's '942 Registration
17   incontestable status. [*See* McArthur Decl. Ex. B] That determination was based on
18   Thrive declaring it had made continuous use of the THRIVE mark on skincare
19   products for over five years. [Doc. 71 ¶ 179, Ex. 9] Neither can there be any dispute
20   that Thrive is the original "registrant" of the '942 Registration, having obtained the
21   registration in its name and held the registration since it issued. [McArthur Decl.,
22   Ex. A]; *see also* 15 U.S.C. § 1127 (noting "applicant" and "registrant" are separate
23   terms). Thrive is thus entitled to the benefits of incontestability, including that
24   Thrive, as the registrant, is conclusively determined to be the owner of the '942
25   Registration and to "quiet" any and all challenges or claims to that title. *See* 15
26   U.S.C. § 1115(b); *Park 'N Fly*, 469 U.S. at 198.

27   / / /

28   / / /

2.      **Incontestable marks can only be challenged with defenses enumerated in § 1115(b), and courts lack jurisdiction to cancel an incontestable mark under § 1064 on a void *ab initio* challenge**

The permissible challenges to Thrive's incontestable registration are enumerated in § 1115(b) and include that the registration was obtained by fraud, abandonment by the registrant,[2] functionality, and several other defenses all of no relevance here. 15 U.S.C. § 1115(b)(1)-(9). Critically, "[v]oid *ab initio* challenges are conspicuously absent from the list of statutory defenses to an incontestable registration under Section 1115(b)." *Marketquest*, 316 F. Supp. 3d at 1292. A void *ab initio* challenge alleges the trademark registration was "null from the beginning." *Aycock Eng. v. Airflite*, 560 F.3d 1350, 1357 n.9 (Fed. Cir. 2009). "A void *ab initio* challenge functions as a means of cancelling a registration in whole or in part even when there has been no showing of fraudulent conduct." *Marketquest*, 316 F. Supp. 3d at 1291. Instead, the challenge is "based on the notion that the application for the registration of the mark did not comply with the statutory requirements to register a mark." *Id*. But because void *ab initio* challenges are not enumerated in § 1115(b), a defendant is "barred" as a matter of law from asserting such a challenge to an incontestable mark. *Id*. at 1292.

Further, a district court's jurisdiction to cancel a trademark registration comes from 15 U.S.C. § 1119. *See id*.; *Netjets Inc. v. Intellijet Grp., LLC*, 678 Fed. App'x 343, 348 (6th Cir. Feb. 3, 2017). However, "[t]he power of federal courts to cancel a mark under the Lanham Act, as provided for under § 1119, is subject to § 1064 and limited to the grounds listed in the statute." *Id*.; (citing *Shakespeare Co. v. Silstar Corp. of Am., Inc*., 9 F.3d 1091, 1099 (4th Cir. 1993); J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 30.32[4] at 30-162 (3d ed. 1992)). The Supreme Court specifically held in *Park 'N Fly* that "the power of the

---

[2] While Le-Vel did allege abandonment, it did not allege abandonment by the *registrant*, Thrive.

courts to cancel registrations and 'to otherwise rectify the register,' § 37, 15 U.S.C. § 1119, must be subject to the specific provisions concerning incontestability." 69 U.S. at 203. "Under § 1064(3), petitions for cancellation of a mark registered for five years may be brought only for a limited set of reasons, including fraudulent registration or if the mark has become generic." *Netjets*, 678 Fed. App'x at 348.

As with § 1115(b), void *ab initio* defenses "are also absent from Section 1064, which means courts lack jurisdiction to cancel a registration under Section 1119 based on a void *ab initio* challenge." *Marketquest*, 316 F. Supp. 3d at 1292 (citing *NetJets*, 678 Fed. App'x at 350). The *Marketquest* court thus held the defendant's void *ab initio* cancellation counterclaim failed for lack of jurisdiction. *Id*. Likewise, the Sixth Circuit in *NetJets* reversed the district court's holding that an incontestable registration was void *ab initio* because the mark was not in use in commerce at time of registration, because that "determination is incompatible with § 1064." 678 Fed. App'x at 350. According to the Sixth Circuit:

> Under § 1064(3), petitions for cancellation of a mark registered for five years may be brought only for a limited set of reasons, including fraudulent registration or if the mark has become generic. Void *ab initio*, the basis of [defendant's] claims, is not one of these reasons and § 1064 bars its counterclaim for cancellation of the mark.

678 Fed. App'x at 348.

Numerous other courts have followed the same analysis as *Marketquest* and *Netjets* and arrived at the same conclusion that §§ 1115(b) and 1064 do not allow void *ab initio* challenges to incontestable marks. In *Collectable Promo. Prods. v. Disney Enters.*, No. CIV-06-1187-D (W.D. Okla. June 2, 2009), the court denied an attempt to cancel an incontestable mark as void *ab initio*, noting "Defendants offer no authority to support the contention that cancellation of the trademark as void *ab initio* may be asserted, after the mark has become uncontestable, for reasons other than the specific defenses enumerated in § 1115(b). Nor has the Court located such authority." *Id*. at *14. Similarly, in *American Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co.*, No. 13-cv-324 (RGA) (D. Del. Aug. 14, 2017), the court rejected a

defendant's attempt to cancel an incontestable registration as void *ab initio* for an alleged defect in the chain of title of the mark that occurred during the application process, prior to registration. *Id*. at *35. That court explained "[a] void *ab initio* challenge, claiming a defect in the chain of title, is notably missing from that list [in §§ 1064 and 1065]." *Id*. Thus, a defect in the chain of title prior to registration "is not a ground for cancellation of an incontestable mark." *Id*. Other courts have held similarly. *See, e.g.*, *Ariel Invs., LLC v. Ariel Capital Advisors LLC*, 230 F. Supp. 3d 849, 865 (N.D. Ill. 2017) (rejecting argument that void *ab initio* defense could be applied to incontestable mark and finding "unpersuasive" the *NetJets* opinion from district court that held otherwise, which was reversed by the Sixth Circuit); *Spiral Direct, Inc. v. Basic Sports Apparel, Inc*., 293 F. Supp. 3d 1334, 1372 (M.D. Fla. 2017) (citing *Netjets* and holding "defense of void *ab initio* fails" because challenged mark was incontestable). The Court here should follow that substantial body of persuasive authority and the binding authority of *Park 'N Fly*.

### 3.   Thrive's '942 Registration cannot be canceled as void *ab initio* under Le-Vel's Counterclaim 1(a)

Le-Vel's counterclaim alleges that the '942 Registration should be canceled because it was purportedly void *ab initio* for a violation of 15 U.S.C. § 1060(a)(1). That section is an "anti-trafficking rule" which "prohibits the assignment of an intent-to-use application prior to the filing of a [statement of use], unless a statutory exception is met, viz., that the intent-to-use application is transferred with at least part of the applicant's 'ongoing and existing' business to which the mark pertains." *Emerald Cities Collaborative, Inc. v. Roese*, 666 F. App'x 908, 8 (Fed. Cir. 2016). Under § 1060(a)(1), an intent-to-use application that is transferred prior to use of the mark may be void *ab initio* unless the transfer is "accompanied by that portion of the transferor's business to which the mark pertained, i.e., that portion of the business that would have used the mark had there been no transfer." *Exel Oyj v. D'Ascoli*, Opp. No. 91160397, 2008 WL 4354180, at *20-21 (T.T.A.B. Sept. 19,

2008) (non-precedential); *see also Vacation Rental Partners, LLC v. Vacaystay Connect, LLC*, No. 15 CV 10656, at *15 (N.D. Ill. Mar. 28, 2017). "The purpose of this limitation on assignment of an application is to prohibit 'trafficking' in marks: the buying and selling of 'inchoate' marks which as yet have no real existence." *Exel Oyj*, Opp. No. 91160397, 2008 WL 4354180, at *18 (quoting McCarthy, J. Thomas, 3 McCarthy on Trademarks and Unfair Competition § 18:13 (4th ed. 2008)). Thus, like the other application-related requirements in the same Lanham Act subchapter (titled "Principal Register," 15 U.S.C. §§ 1051-1072)—such as having a bona fide intent to use a mark upon application and use in commerce prior to registration—§ 1060 creates a void *ab initio* defense that does not require fraud. Instead, as with other void *ab initio* defenses, the § 1060 defense is "based on the notion that the application for the registration of the mark did not comply with the statutory requirements to register a mark." *Marketquest*, 316 F. Supp. 3d at 1292.

While Le-Vel may seek to cancel the '942 Registration for fraud because that is a defense enumerated in § 1115(b) (and indeed is doing so in other counterclaims not at issue here), the law does not allow Le-Vel to cancel the registration on the ground that it was void *ab initio* under § 1060. *See, e.g.*, *Collectable Promo. Prods.*, No. CIV-06-1187-D, at *14. The Supreme Court in *Park 'N Fly* made clear that an incontestable mark cannot be attacked using any defense that is not expressly enumerated in § 1115(b). 469 U.S. at 205 (holding incontestable mark could not be canceled for descriptiveness, as that defense was not enumerated in the statute). And, as the court in *Marketquest* found, the list of statutory defenses in § 1115(b) does not include void *ab initio* challenges of any sort. 316 F. Supp. 3d at 1292; *see also Collectable Promo. Prods.*, No. CIV-06-1187-D, at *14. Further, as also held in *Marketquest* and *NetJets*, this Court lacks jurisdiction under § 1119 to cancel the incontestable '942 Registration as void *ab initio*, because that is not an enumerated basis for cancellation in § 1064(3). *Marketquest*, 316 F. Supp. 3d at 1292; *NetJets*, 678 Fed. App'x at 348-50. Rather, cancellation on that ground "is incompatible

1    with § 1064." *NetJets*, 678 Fed. App'x at 350. Following the same logic, the court

2    in *American Cruise Lines* specifically held that a "void *ab initio* challenge,

3    claiming a defect in the chain of title . . . is not a ground for cancellation of an

4    incontestable mark." No. 13-cv-324 (RGA), at *35. Le-Vel's counterclaim is no

5    different. It alleges that Ecomundi's transfer of the intent-to-use parent application

6    to Thrive created a defect in the chain of title during the application process. But

7    after the standards of incontestability are met, that is no longer a valid defense or

8    ground for cancellation.

9            That § 1060 sets out a void *ab initio* defense which was omitted from §§

10   1115(b) and 1064 is strong evidence Congress did not intend for that defense to be

11   "read into" the statute and assertable against incontestable marks. *See Pudenz v.*

12   *Littlefuse, Inc.*, 177 F.3d 1204, 1210 (11th Cir. 1999). The court in *Pudenz* noted

13   that the doctrine of "*expressio unius est exclusio alterius*" ("that the mention of one

14   thing implies the exclusion of the other") supported the decision in *Park 'N Fly*,

15   where "mere descriptiveness was explicitly listed elsewhere in the Lanham Act as a

16   defense and a ground for cancellation, but it was absent from the list of defenses in

17   § 1115(b)." 177 F.3d at 1210. The § 1060 defense is no different. Indeed, where

18   Congress has desired to clarify that other challenges could be brought against

19   incontestable marks, it has amended § 1115(b) to add those defenses to the

20   enumerated list. *See id*. at 1208, 1210 n.4 (noting that Congress amended § 1115(b)

21   in 1998 to include functionality and in 1988 to include "equitable principles,

22   including laches, estoppel, and acquiescence" after the *Park 'N Fly* opinion

23   expressed uncertainty as to whether those defenses were applicable); 15 U.S.C. §

24   1115(b) (Nov. 16, 1988, and Oct. 30, 1998 amendments). Notably, Congress has

25   only ever amended § 1115(b) to add defenses of functionality and equity which

26   existed *before* the passage of the Lanham Act. *See Pudenz*, 177 F.3d at 1210 n.4,

27   1211. Never has Congress amended §§ 1115(b) or 1064 to add defenses set out

28   elsewhere in the Lanham Act, and Congress has never made any effort to amend

1   those statutes to enable void *ab initio* challenges to incontestable marks. As such, a

2   defense of void *ab initio* for improper assignment under § 1060 cannot be a basis to

3   challenge an incontestable registration.

4           Courts agree. No court has *ever* cancelled an incontestable mark on the sole

5   ground that the mark matured from an intent-to-use application which was

6   improperly assigned in violation of § 1060(a)(1). Nor, to Thrive's knowledge, has

7   any court canceled an incontestable mark solely because of a void *ab initio* defense,

8   rather than for fraud or other issues. *See, e.g.*, *Collectable Promo. Prods*. at *14

9   (noting lack of authority for this proposition). Rather than be the first to take such

10  an untenable position, this Court should follow *Park 'N Fly*, *NetJets*, *Marketquest*,

11  and *Collectable Promotional Products* and hold Le-Vel is barred from challenging

12  the '942 Registration on the ground that it was void *ab initio* under § 1060. Such a

13  defense is clearly not permitted under § 1115(b). In addition, because the defense

14  Le-Vel raises is "also absent from Section 1064," the Court lacks jurisdiction under

15  § 1119 to cancel the '942 Registration based on that challenge. *Marketquest*, 316 F.

16  Supp. 3d at 1292; *see also* 15 U.S.C. § 1064(3); *NetJets*, 678 Fed. App'x at 348-50.

17                    **4.    The footnote in *Patagonia* was too broadly stated,**
                               **contradicts binding case law, and does not support Le-Vel**
18

19          Thrive expects Le-Vel to rely heavily on *Patagonia* and its footnote that

20  incontestability is irrelevant to cancellation claims. *See* No. 2:19-cv-02702-VAP-

21  JEM, at *11 n.2. That would be an error for several reasons. *First*, *Patagonia*'s

22  broad statement is completely at odds with Supreme Court law in *Park N' Fly*, as

23  well as a published opinion in this Circuit, *Marketquest*, and the many other cases

24  referenced above, all of which hold that incontestability strictly limits the bases for

25  cancellation and jurisdiction over such a claim. *Patagonia* offered zero analysis on

26  this issue, is not published, and need not be followed.

27          *Second*, the Second Circuit case that *Patagonia* cited for support of its

28  footnote, *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 623 F.3d 61

(2d Cir. 2010), had nothing to do with a purported defect in the chain of title of an application prior to registration. Rather, *Federal Treasury* involved fraudulent transfers of STOLICHNAYA vodka registrations following the breakup of the Soviet Union, many years *after* those registrations had become incontestable. *Id*. at 69. There, "all parties agree that the trademarks became incontestable in 1974, but the disputed assignment comes from a series of transactions that occurred many years later." *Id*. Thus, when the Second Circuit stated that the "question of the validity of the assignment is antecedent to the question of incontestability," the court clearly meant the validity of a *post-registration* assignment. *Id*. Specifically, that court was assessing whether the plaintiff could be considered an "assignee" of the original registrant such that it could step into the registrant's shoes under 15 U.S.C. § 1127. *See id*. at 68-69; 15 U.S.C. § 1127. The *Federal Treasury* case did not hold incontestability is irrelevant to cancellation, did not involve any void *ab initio* defense at all, and did not analyze assignment of an intent-to-use application under § 1060. The *Patagonia* court's reliance on that case to support its broad statement about the relevance of incontestability is misplaced.

*Third*, the facts of *Patagonia* differ in significant ways. There, Patagonia counterclaimed to cancel a registration held by Anheuser-Busch ("AB") on the combined grounds that the registration violated § 1060 and had been abandoned by AB. *Patagonia*, No. 2:19-cv-02702-VAP-JEM, at *11-12. Unlike the instant case, the disputed registration had been transferred from the original registrant, Warsteiner, to AB after the registration had issued. *Id*. at *4-5. Because AB was not the original registrant, it was not plainly entitled to the protection of § 1115(b) that an incontestable registration "shall be conclusive evidence . . . of the *registrant's* ownership of the mark . . . ." 15 U.S.C. § 1115(b) (emphasis added). Rather, AB had to prove that it stepped into Warsteiner's shoes via a valid assignment. *See* 15 U.S.C. § 1127. In its cancellation claim, Patagonia asserted that assignment from Warsteiner to AB had actually occurred prior to registration and was invalid

THRIVE'S MEMO IN SUPPORT OF RULE 12(B)(6) PARTIAL MOTION TO DISMISS
CASE NO. 2:21-CV-02022-DOC-KES

because AB had falsely stated the assignment date and the assignment violated §
1060. No. 2:19-cv-02702-VAP-JEM, at *12-14. Patagonia combined that allegation
with the assertion that AB had abandoned the disputed mark after AB had received
the assignment by failing use the mark in commerce for more than six years. *Id*. at
*14. On those facts, the court denied AB's motion to dismiss *Patagonia*'s
cancellation counterclaim. *Id*.

By contrast, here Thrive is the original registrant of the '942 Registration,
which is thus "conclusive evidence" of Thrive's ownership of the mark. [*See*
McArthur Decl. Ex. A]; 15 U.S.C. § 1115(b). Thrive obtained the registration in its
own name; there was no post-registration assignment and no need for Thrive to step
into any other entity's shoes to become the registrant under § 1127. And it is not
disputed that Thrive has used the THRIVE mark in commerce since the date of
registration in 2014. [Doc. 71 ¶¶170-71, 182] Unlike AB in *Patagonia*, Thrive is
entitled as the registrant to receive and rely upon the benefits of incontestability,
particularly "quieting title" concerning any pre-registration issues. *See Park N' Fly*,
469 U.S. at 198. *Patagonia* is therefore inapplicable under the circumstances, and it
misstates the law regarding defenses against an incontestable mark. The Court
should decline to follow that case's footnote and instead follow the Supreme Court,
*Marketquest*, and the substantial other authority holding a void *ab initio* challenge
cannot be a basis to cancel an incontestable mark such as Thrive's.

### 5. Public policy supports dismissing Le-Vel's counterclaim

As a final point, public policy supports Thrive's position. As noted, §
1060(a)(1) is an "anti-trafficking rule" intended to eliminate a market for
"inchoate" and unused marks. *Exel Oyj*, Opp. No. 91160397, 2008 WL 4354180, at
*18. But when a mark has been deemed incontestable, it means the registrant has
used the mark in commerce continuously for over five years, and no one has
challenged the registrant's claim of ownership or right to register during that time.
*See* 15 U.S.C. § 1065. At that point, there is no more concern about trafficking of

an inchoate mark—the registrant has made long-term use of the mark in commerce and continues to do so. Indeed, the registrant has done exactly what the Lanham Act intended to promote via the incontestability provisions: "cultivate[d] the goodwill associated with a particular mark." *Park 'N Fly*, 469 U.S. at 198. And because the registrant has made such long-term, continuous, and uncontested use, it is entitled to the protections of incontestability—"quiet title in the ownership of his mark," consisting of a conclusive determination of ownership, validity, and the exclusive right to use the mark. *Id*.; 15 U.S.C. § 1115(b). Potential issues with the original application—the void *ab initio* challenges, which may arise from paperwork errors or other errors not rising to the level of fraud—are no longer assertable in the face of the registrant's long and continuous use. *See Marketquest*, 316 F. Supp. 3d at 1292.

As the Supreme Court explained, the incontestability provisions' goals "would be utterly frustrated if the holder of an incontestable mark could not enjoin infringement by others so long as they established that the mark would not be registrable but for its incontestable status." *Park 'N Fly*, 469 U.S. at 198. That is why only the specifically enumerated defenses in § 1115(b) can be brought against an incontestable mark. *See id*. That is also why § 1064 significantly restricts what claims can be made to cancel an incontestable mark. *Netjets*, 678 Fed. App'x at 348; *Park 'N Fly*, 469 U.S. at 203. And Congress's intent not to allow void *ab initio* challenges to incontestable marks is clear. *See Pudenz*, 177 F.3d at 1210. Because a defense of void *ab initio* for improper assignment under § 1060 is not among the enumerated permissible defenses, Le-Vel cannot raise that challenge against Thrive's '942 Registration. The Court should therefore dismiss Le-Vel's Counterclaim 1(a) with prejudice.

### C.    As the Original Registrant of the '942 Registration, Thrive Cannot Be Found to Have Abandoned the Mark

In Counterclaim 1(b), Le-Vel alleges the '942 Registration is invalid for

abandonment. [*Id*. ¶¶ 213-21] According to Le-Vel, Ecomundi did not properly transfer the '058 Application to Thrive in May 2013, causing that application to purportedly still be owned by Ecomundi. [*Id*. ¶ 213] Le-Vel contends the '517 Application, which matured into the '942 Registration, is owned by Ecomundi for the same reason (despite that application not existing until after the assignment, when Thrive filed the Request to Divide and Statement of Use). [*Id*. ¶ 214] Le-Vel claims that the '942 Registration has been abandoned since Ecomundi has not used the THRIVE mark in commerce. [*Id*. ¶¶ 215-21] However, Le-Vel's abandonment claim is another attack based on a pre-registration defect in the chain of title, and it must be dismissed because Le-Vel has failed to allege or show that Thrive, the original registrant, has abandoned the THRIVE mark.

Section 1064(3) permits cancellation of a registration that has been registered for more than five years "if the registered mark . . . has been abandoned . . . ." 15 U.S.C. § 1064(3). However, § 1115(b) clarifies that an incontestable mark can be challenged only on the ground "[t]hat the mark has been abandoned *by the registrant*[.]" 15 U.S.C. § 1115(b)(2) (emphasis added); *Park 'N Fly*, 469 U.S. at 196 (incontestable marks can only be challenged using defenses enumerated in § 1115(b)); *Levi Strauss*, 196 F. Supp. 2d at 974. A mark can be deemed abandoned if "its use has been discontinued with intent not to resume such use" or it becomes generic. 15 U.S.C. § 1127.

Here, Thrive *is* the original registrant of the '942 Registration. [McArthur Decl., Ex. A] The registration issued to Thrive, and Le-Vel admits the registration has never changed hands after issuance. But Le-Vel has failed to allege that Thrive has abandoned the mark, alleging instead only abandonment by Ecomundi. [Doc. 71 ¶¶ 215-17] That is irrelevant, since Ecomundi is not the registrant. Under § 1115(b), Le-Vel can only assert an abandonment claim based on *Thrive* abandoning the mark, and Le-Vel has not done so. Permitting amendment on that issue would be futile, as Thrive is obviously using the THRIVE mark on skincare products as

1  even Le-Vel alleges. [Doc. 71 ¶¶170-71, 182] Therefore, as a matter of law, Le-Vel

2  has not shown that the '942 Registration "has been abandoned by the registrant" as

3  required by § 1115(b). Le-Vel's claim thus cannot constitute a cognizable challenge

4  to the incontestable registration and should be dismissed.

5        What Le-Vel is seeking to do is strip away incontestable trademark rights

6  from the original registrant due to a purported chain of title defect during the

7  application process. That is exactly the sort of challenge to ownership that a "quiet

8  title" proceeding would address, and it is thus exactly the type of attack that is not

9  allowed against an incontestable mark. *See Park 'N Fly*, 469 U.S. at 198. In other

10 cases where an invalid assignment has caused an incontestable mark to be deemed

11 abandoned, the assignment occurred *after* registration, between the original

12 registrant and a successor. *See, e.g.*, *interState Net Bank v. Netb@nk, Inc*., 348 F.

13 Supp. 2d 340 (D.N.J. 2004). For example, in *interState* the plaintiff alleged

14 defendant Net.B@nk's registration had been abandoned because it had been

15 improperly assigned from the original registrant, Software Agents, to Net.B@nk

16 several years after the registration issued, and then the mark had not been used in

17 commerce by the original registrant. *Id*. at 344-46. The court found the assignment

18 of the registration had been an "assignment in gross" and was thus invalid. *Id*. at

19 351. Thus, the court stated, "the effect of the invalid assignment of the trademark

20 registration from Software Agents to Net.B@nk is that the rights revert to Software

21 Agents, *the original registrant*." *Id*. at 352 (emphasis added). Because Software

22 Agents had not used the mark for many years, cancellation was appropriate because

23 it was shown that the mark had been abandoned "by the registrant." *Id*.; *see also*

24 *Kleven v. Hereford*, No. 13-cv-02783-AB-AGRx, at *41-42 (C.D. Cal. Aug. 21,

25 2015) (citing *interState* and holding the registration at issue was "deemed reverted

26 to [the original registrant] Hereford, and the ultimate issue of abandonment turns on

27 whether Hereford (not [assignee] Belleair) has abandoned the registered mark").

28       Unlike those cases, Thrive *is* the original registrant. There was no post-

THRIVE'S MEMO IN SUPPORT OF RULE
12(B)(6) PARTIAL MOTION TO DISMISS
CASE NO. 2:21-CV-02022-DOC-KES

1   registration assignment that could put the chain of title of the '942 Registration into

2   question. And Thrive—by using the THRIVE mark continuously for more than five

3   years and meeting the requirements for incontestability—has quieted title to that

4   mark and must be deemed its conclusive owner. *See Park 'N Fly*, 469 U.S. at 198.

5   That is true regardless of any defect in the chain of title that may (or may not) have

6   occurred during the application process. *See, e.g.*, *Am. Cruise Lines*, No. 13-cv-324

7   (RGA), at *35 ("defect in the chain of title [during application process] . . . is not a

8   ground for cancellation of an incontestable mark."). Allowing Le-Vel to seek to

9   strip Thrive, the original registrant of the '942 Registration, of Thrive's trademark

10  rights would run directly contrary to *Park N' Fly* and § 1115(b). That statute was

11  intended to provide registrants like Thrive the benefit of "quiet title" from such pre-

12  registration-based challenges after making long-term, continuous, unchallenged use

13  of a mark. Le-Vel's Counterclaim 1(b) is not permitted as a matter of law, because

14  Le-Vel cannot prove the registrant, Thrive, has abandoned its mark. The

15  counterclaim should therefore be dismissed with prejudice.

16                          <u>**Conclusion**</u>

17          For the reasons stated above, Le-Vel's Counterclaim 1(a) and (b) are barred

18  as a matter of law. Because Le-Vel cannot state a cognizable legal basis for that

19  claim, dismissal with prejudice is appropriate.

20
21   DATED:  May 12, 2021                    Respectfully submitted,

22                                           THE MCARTHUR LAW FIRM, PC

23                                           By: */s/ Stephen McArthur*
                                                 Stephen McArthur
24                                               Thomas Dietrich

25                                           *Attorneys for Plaintiff and Counterclaim*
26                                           *Defendant Thrive Natural Care, Inc.*

27
28