Morgan E. Smith (SBN 293503)
morgan.smith@finnegan.com
Daniel R. Mello Jr. (SBN 327514)
daniel.mello@finnegan.com
**FINNEGAN, HENDERSON,
FARABOW, GARRETT & DUNNER,
LLP**
3300 Hillview Avenue
Palo Alto, California 94304
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

Mark Sommers (*pro hac vice*)
mark.sommers@finnega.com
Patrick J. Rodgers (*pro hac vice*)
patrick.rodgers@finnegan.com
**FINNEGAN, HENDERSON,
FARABOW, GARRETT & DUNNER,
LLP**
901 New York Avenue, NW
Washington, DC 20001-4064

Attorneys for Defendant and
Counterclaim Plaintiff Le-Vel Brands,
LLC

Alan Jay Weil (SBN 63153)
ajweil@kbkfirm.com
Amanda D. Barrow (SBN 313583)
abarrow@kbkfirm.com
**KENDALL BRILL & KELLY LLP**
10100 Santa Monica Blvd., Ste. 1725
Los Angeles, CA 90067
Telephone: (310) 556-2700
Facsimile: (310 556-2705

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

THRIVE NATURAL CARE, INC.,

       Plaintiff and
       Counterclaim
       Defendant,

       v.

LE-VEL BRANDS, LLC,

       Defendant and
       Counterclaim
       Plaintiff.

CASE NO. 2:21-cv-02022-DOC
(KES)

**DEFENDANT AND
COUNTERCLAIM PLAINTIFF
LE-VEL BRANDS' NOTICE OF
PARTIAL OBJECTION AND
PARTIAL OBJECTION TO
ORDER OF SPECIAL MASTER
PURSUANT TO RULE 53(F)**

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...........................................................................................2

II.     BACKGROUND .............................................................................................2

    A.      Case Background .................................................................................2

    B.      The Privilege Dispute..........................................................................2

    C.      The Special Master's Order .................................................................4

III.    LEGAL STANDARD ......................................................................................5

    A.      The Applicable Standard of Review is *De Novo* ...................................5

    B.      Attorney-Client Privilege ....................................................................6

IV.     ARGUMENT ..................................................................................................8

    A.      Concealment of the Last Word of Redaction #11 Is Necessary to Protect an Attorney-Client Privileged Communication..........................8

    B.      Having Shown the Redacted Word Is Privileged, the Word Should Remain Redacted ......................................................................11

V.      CONCLUSION .............................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Admiral Ins. Co. v. United States Dist. Court*,
    881 F.2d 1486 (9th Cir. 1989) ................................................................. 6

*Am. Fed'n of Musicians v. 212 Prods. LLC*,
    No. 20-cv-07255-JAK-KS, 2021 U.S. Dist. LEXIS 252718 (C.D.
    Cal. Sep. 27, 2021) ..................................................................... 7, 9

*Dickson v. Century Park E. Homeowners Ass'n*,
    No. 2:20-CV-05152J-WHM-AAx, 2021 WL 3148878 (C.D. Cal.
    Mar. 9, 2021) .................................................................... *passim*

*Fisons Ltd. v. Capability Brown Ltd.*,
    209 U.S.P.Q. (BNA) 167 (T.T.A.B. Nov. 26, 1980) ........................................ 7, 8

*In re Grand Jury Investigation*,
    974 F.2d 1068 (9th Cir.1992) ................................................... 6, 9, 10

*Munoz v. 7-Eleven, Inc.*,
    No. CV 18-3893-RGK, 2019 U.S. Dist. LEXIS 109781 (C.D. Cal.
    May 1, 2019) .................................................................... 7, 8, 9

*Pac. Packaging Concepts, Inc. v. Nutrisystem, Inc.*,
    No. CV 19-4755-ODW(EX), 2020 WL 6694339 (C.D. Cal. Sept.
    11, 2020) .................................................................... 7, 11

*Performance Credit Corp. v. EMC Mortg. Corp.*,
    No. SACV 07–383 DOC (RNBx), 2009 WL 10675583 (C.D. Cal.
    June 1, 2009) .................................................................... 5

*Real v. Cont'l Grp., Inc.*,
    116 F.R.D. 211 (N.D. Cal. 1986) ................................................... 6, 11, 12

*SPS Techs., LLC v. Briles Aerospace, Inc.*,
    No. CV 18-9536 MWF (ASX), 2020 WL 3050777 (C.D. Cal. Feb.
    18, 2020) .................................................................... 7, 8

*United States v. Chen*,
    99 F.3d 1495 (9th Cir. 1996) ................................................... 7

1

**Rules**

2

Fed. R. Civ. P. 26 ............................................................................ 6, 11

3

Fed. R. Civ. P. 53 ............................................................................ 1, 5, 12

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# NOTICE OF OBJECTION

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

Pursuant to Fed. R. Civ. P. 53(f), the Local Rules, and the Court's Order Appointing Special Master (Dkt. 89) section D(12), Defendant/Counterclaim Plaintiff Le-Vel Brands, LLC ("Le-Vel") submits this partial objection to the Order of Special Master Regarding Remaining Discovery Disputes Raised by Plaintiff/Counterclaim Defendant Thrive Natural Care, Inc.'s ("TNC") March 23, 2022 Letter Brief (Dkt. 97-1, "the Special Master's Order") which was filed with the Court on May 4, 2022 and which has not yet been entered by the Court.

PLEASE TAKE NOTICE that Le-Vel respectfully requests a hearing on its objection at 8:30 a.m. on Monday, June 27, 2022 or as soon thereafter as this matter may be heard, in Courtroom 10A of the above-entitled Court located at 411 West Fourth Street, Santa Ana, CA 92701.

Le-Vel's partial objection is based on this Notice, the accompanying Objection concurrently filed, the pleadings and papers on file with the Court, all arguments and evidence as may be presented at a hearing on the Objection, if ordered, and all matters of which the Court may take judicial notice.

<u>**OBJECTION**</u>

**I.    INTRODUCTION**

Le-Vel narrowly requests de novo review of the Special Master's Order regarding only Exhibit 4, and specifically, the ruling that "the last word of 'Redaction # 11' must be unredacted" in Exhibit 4. Dkt. 97-1 at 3. Le-Vel does not dispute Judge Guilford's ruling that the remaining portion of Redaction #11 was properly redacted because it "has been properly designated as protected by the attorney client privilege or work product exception." *Id.*

Le-Vel previously demonstrated to the Special Master that the entirety of Redaction #11 was protected by the attorney-client privilege and should therefore remain redacted. However, removing the redaction for the last word of Redaction #11 reveals, in and of itself, the substance of an attorney-client communication. Le-Vel respectfully requests that this portion of the Special Master's Order be reviewed de novo.

**II.    BACKGROUND**

**A.    Case Background**

This case involves a trademark dispute involving Le-Vel's and TNC's competing infringement claims of their respective rights over the trademark THRIVE. The Court has familiarly with this dispute given its earlier denial of TNC's motion for a preliminary injunction. (Dkt. 72).

**B.    The Privilege Dispute**

TNC filed a discovery dispute letter brief regarding privilege issues with Judge Guilford (appointed by this Court as Special Master) on March 23, 2022. *Id.* at Smith Decl. ¶ 6. A true and correct copy of TNC's March 23, 2022 letter brief (with declaration and exhibits) is attached as **Exhibit A**. While various issues were raised, the one relevant to this de novo review involved TNC's request that Judge Guilford review *in camera* six emails that Le-Vel partially redacted on grounds of attorney-client privilege in order to determine whether Le-Vel's redactions were

appropriate.[1] *Id.* at 2.

Each of the six emails was given an exhibit number and each redaction within the exhibits was given a redaction number to aid the Special Master's review. The exhibit that is the subject of this partial objection is "Exhibit 4" and it contains a single redaction: "Redaction #11." Ex. A at Exhibit 4. Le-Vel submitted an opposition letter (with declarations and exhibits) on March 30, 2022, a true and correct copy of which is attached as **Exhibit B**. TNC submitted a reply brief (with an exhibit) on April 6, 2022, a true and correct copy of which is attached as **Exhibit C**.

A hearing was held regarding the parties' dispute on April 11, 2022, during which Judge Guilford ruled that he would review the six emails *in camera*. A true and correct copy of Judge Guilford's April 11 Order is attached hereto as **Exhibit D**. Le-Vel requested the opportunity to provide an ex parte brief regarding the bases for its privilege redactions. *Id*. at 2. Judge Guilford issued an Order the same day ruling that (1) Le-Vel submit unredacted versions of the six subject emails for *in camera* review by April 15, 2022 and (2) Le-Vel file and serve on all parties a letter brief regarding Le-Vel's bases for privilege redactions. *Id.* at 3.  Pursuant to the April 11, 2022 Order, Le-Vel provided unredacted versions of the subject emails for *in camera* review, as well as a letter brief served on all parties. A true and correct copy of Le-Vel's April 15 Supplemental Brief (with declarations) is attached as **Exhibit E**.

In its April 15, 2022 letter brief, Le-Vel explained that it considered various trademarks for what ultimately was launched as the THRIVE SKIN anti-aging skincare product line. *Id.* at 1. As part of that process, Le-Vel worked with its long-

---

[1] Le-Vel is not challenging the *in camera* review of all these emails.  Rather, this de novo review concerns only one such email and redaction, i.e., Exhibit 4, Redaction #11.

standing outside trademark counsel (Finnegan). *Id.* at 1; supporting Declaration of Mark Sommers ("Sommers Decl.") ¶ 2; supporting Declaration of Drew Hoffman ("Hoffman Decl.") ¶ 2. Le-Vel ███████████████████████████████████ ██████████████████████████████████████ during that time. *Id.* ████ ███████████████████████████████████████████ ██████████████████████████████████. *Id.* Mr. Hoffman and, in one instance, Mr. Camper, ██████████████████████████████████████████████ ██████████████. *Id.*; *see* also Hoffman Decl. ¶ 3. This legal advice and the corresponding discussions were redacted as privileged from Exhibits 1-6. *Id.*

Regarding Exhibit 4, Redaction #11, Le-Vel explained that, in January 2019, ███████████████████████████████████████████ ████████████████. *Id.* at 2; Sommers Decl. ¶ 20; Hoffman Decl. ¶ 21. ████ █████████████████████████████████████████████. *Id.* On January 22, 2019, Mr. Camper ████████████████████████████████████ █████████████████████. *Id.*

Le-Vel also explained:

> Exhibit 4 contains an email chain between Messrs. Hoffman, Camper, and Gravette relating to trademark matters protected by attorney-client privilege. Sommers Decl. ¶ 23; Hoffman Decl. ¶ 24. Redaction #11 is a January 22, 2019 communication from Mr. Camper to Mr. Gravette, which includes Mr. Hoffman, ████████████████████████████ ████████████████████████████. Sommers Decl. ¶ 24; Hoffman Decl. ¶ 25. █████████████████████████████████████ ████████████████████████████████████████. *Id.*

Ex. E at 4-5. *See also* Ex. A at Exhibit 4.

## C.   The Special Master's Order

Following *in camera* review of the six unredacted emails, Judge Guilford issued the Special Master's Order on April 28, 2022. Dkt. 97-1. The sole ruling Le-Vel seeks de novo review is the ruling that "the last word of 'Redaction # 11' [Exhibit 4] must be unredacted." *Id.* at 3.

With the exception of three other redactions in two other emails (which Le-Vel did not dispute), the Special Master's Order held that "*[a]ll* other redactions in the six email chains relate to material that has been properly designated as protected by the attorney client privilege or work product exception, and are not ordered unredacted." *Id.* (emphasis added). The Special Master's Order is silent on why the last word of Redaction #11 was "not protected by privilege" when the rest of the redaction was protected by the privilege. *Id.*

The Special Master's Order directed that Le-Vel unredact the pertinent portions of the email chains within three court days of the Special Master's Order. *Id.* at 4. Le-Vel produced the other two emails with the redactions modified/removed as ordered. Declaration of Mark Sommers (5/18 Sommers Decl.) at ¶ 3. Le-Vel requested a stay of the Special Master's Order as it pertains to Exhibit 4 because the deadline to produce unredacted documents would have fallen well before the deadline to lodge objections to the Special Master's Order. *See* Dkt. 89 (a party who wishes to lodge objections has 14 days from the date the order is filed with the Court to do so); 5/18 Sommers Decl. at ¶ 2. Judge Guilford granted that request on May 2, staying his Order as it relates to Exhibit 4 until three days after a final ruling from the Court on any objections to his ruling. *Id.*

## III.   LEGAL STANDARD

### A.    The Applicable Standard of Review is *De Novo*

Under Fed. R. Civ. Pro. 53(f)(3), the Court must decide de novo all objections unless the parties, with the court's approval, stipulate that (a) the findings will be reviewed for clear error or (b) the findings will be final. Fed. R. Civ. Pro. 53(f)(3). "The reviewing court can ultimately 'adopt or affirm, wholly or partly reject or reverse, or resubmit [the report and recommendation] to the master with instructions.'" *Performance Credit Corp. v. EMC Mortg. Corp.*, No. SACV 07–383 DOC (RNBx), 2009 WL 10675583, at *2 (C.D. Cal. June 1, 2009) citing Fed. R. Civ. P. 53(f)(1).

**B.     Attorney-Client Privilege**

Rule 26(b)(1) provides "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense and proportional to the needs of the case…" Fed. R. Civ. P. 26(b)(1)(emphasis added). "Rule 26(b)(1) makes clear that only non-privileged matter is discoverable, even if the matter is wholly relevant to the claims or defenses in the case." *Dickson v. Century Park E. Homeowners Ass'n*, No. 2:20-CV-05152J-WHM-AAx, 2021 WL 3148878, at *15 (C.D. Cal. Mar. 9, 2021); *Real v. Cont'l Grp., Inc.*, 116 F.R.D. 211, 213 (N.D. Cal. 1986) ("even relevant evidence is not discoverable if such evidence is privileged."). "And, it is well established that, absent waiver (not present here) or other exception (also not present here), the attorney-client privilege 'cannot be overcome,' even 'by a showing of need.'" *Dickson*, 2021 WL 3148878 at *15 citing *Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486, 1494–95 (9th Cir. 1989) (declining to create an exception to the privilege where the information sought by the plaintiff was not available through any other source, and finding that such an unavailability exception would render the privilege "so tenuous and uncertain that it would be 'little better than no privilege at all.'").

"The party asserting the attorney-client privilege has the burden of proving that the privilege applies to a given set of documents or communications." *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir.1992) (citation omitted). Typically, an eight-part test determines whether information is covered by the attorney-client privilege:

> "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived."

> *Id.* at 1071 n. 2(citation omitted).

"The attorney-client privilege protects confidential disclosures made by a client to an attorney to obtain legal advice as well as an attorney's advice in response to such disclosures." *SPS Techs., LLC v. Briles Aerospace, Inc.*, No. CV 18-9536 MWF (ASX), 2020 WL 3050777, at *2 (C.D. Cal. Feb. 18, 2020). "The attorney-client privilege applies to communications between corporate employees and counsel, made at the direction of corporate superiors in order to secure legal advice." *Id.* "Communications between a client and its outside counsel are presumed to be made for the purpose of obtaining legal advice." *See Am. Fed'n of Musicians v. 212 Prods. LLC*, No. 20-cv-07255-JAK-KS, 2021 U.S. Dist. LEXIS 252718, at *13-14 (C.D. Cal. Sep. 27, 2021). "If a person hires a lawyer for advice, there is a rebuttable presumption that the lawyer is hired 'as such' to give 'legal advice,' whether the subject of the advice is criminal or civil, business, tort, domestic relations, or anything else." *Munoz v. 7-Eleven, Inc.*, No. CV 18-3893-RGK (AGRx), 2019 U.S. Dist. LEXIS 109781, at *4 (C.D. Cal. May 1, 2019) (citing *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996)); *Dickson*, 2021 WL 3148878 at *8 ("[T]here exists a presumption that when a person hires a law firm, 'the firm [is] engaged for its legal knowledge,' upon which the privilege attaches."). *see also Munoz*, 2019 U.S. Dist. LEXIS 109781, at *5-8 (concluding after in camera review that the emails at issue were "paradigmatic of the attorney client privilege and do not present a close question" where the first email was from outside counsel to in-house counsel and the second email was from in-house counsel to an in-house executive that "forward[ed] outside counsel's email and reference[d] a discussion about it.").

Of particular importance here, an attorney's opinion regarding trademark availability is privileged. *See Pac. Packaging Concepts, Inc. v. Nutrisystem, Inc.*, No. CV 19-4755-ODW(EX), 2020 WL 6694339, at *2 (C.D. Cal. Sept. 11, 2020) (citing *Fisons Ltd. v. Capability Brown Ltd.*, 209 U.S.P.Q. (BNA) 167, at *4 (T.T.A.B. Nov. 26, 1980)) ("While a [trademark] search report itself is not

1  privileged, any opinion by [a trademark] applicant's attorney relevant thereto is

2  protected by the attorney client privilege.").

3  **IV.  ARGUMENT**

4      **A.    Concealment of the Last Word of Redaction #11 Is Necessary**

5             **to Protect an Attorney-Client Privileged Communication**

6      Le-Vel has established a prima facie case that the information redacted as

7  Redaction #11, including the last word of the redaction, was properly withheld as

8  attorney-client privileged. The last word of Redaction #11 should therefore remain

9  redacted.

10     As previously articulated in Le-Vel's April 15, 2022 letter, Redaction #11

11 contains an email chain between Messrs. Hoffman (an attorney and Le-Vel's then-

12 CLO), Mr. Camper (Le-Vel's co-founder and co-CEO), and Mr. Gravette (Le-Vel's

13 co-founder and co-CEO) relating to ████████████████████████████████

14 ████████ Ex. E at 1, 2, 4-5. Specifically, Redaction #11 is a January 22, 2019

15 communication from Mr. Camper to Mr. Gravette, which includes Mr. Hoffman,

16 █████████████████████████████████████████████████. *Id.* at

17 4-5; Sommers Decl. ¶ 24; Hoffman Decl. ¶ 25. ████████████████████

18 ████████████████████████████████████████████████████.[2]

19     As a preliminary matter, the communication withheld in Redaction #11 is the

20 quintessential type of communication covered by the attorney-client privilege. *See*

21 *e.g. SPS Techs., LLC*, 2020 WL 3050777, at *2 ("The attorney-client privilege

22 protects confidential disclosures made by a client to an attorney to obtain legal

23 advice as well as an attorney's advice in response to such disclosures."); *Munoz*,

24 2019 U.S. Dist. LEXIS 109781, at *5-8 (concluding after in camera review that the

25 emails at issue were "paradigmatic of the attorney client privilege and do not present

26

27 [2] Le-Vel has concurrently filed an application for leave for *in camera* review of

28 Exhibit 4, Redaction #11, pursuant to Local Rule 79-6.2.

1  a close question" where the first email was from outside counsel to in-house counsel

2  and the second email was from in-house counsel to an in-house executive that

3  "forward[ed] outside counsel's email and reference[d] a discussion about it.").

4  There is no "close question" here because, like the communications in *Munoz*, Mr.

5  Camper ███████████████████████████████████████████████████████

6  ███████████████████████████████████████████. As

7  communications with outside legal counsel are presumed to be for the purpose of

8  obtaining legal advice upon which privilege attaches, relaying that advice to other

9  corporate executives is privileged as well. *See Am. Fed'n of Musicians*, 2021 U.S.

10  Dist. LEXIS 252718, at *13-14; *Munoz*, 2019 U.S. Dist. LEXIS 109781, at *4;

11  *Dickson*, 2021 WL 3148878 at *8.

12      Second, the entirety of Redaction #11 meets the eight-part standard for

13  attorney-client privilege as follows (*see In re Grand Jury Investigation*, 974 F.2d

14  1068, 1071 n. 2 (9th Cir. 1992)).

15      (1) "Where legal advice of any kind is sought": this requirement is met as the

16  communication reflects ███████████████████████████████████████

17  ███████████████████████████████████████████████████████

18  ███████████████████. Ex. E at 2, 4-5.

19      (2) "from a professional legal adviser in his capacity as such": this

20  requirement is met because the ███████████████████████████████████

21  ███████████████████████████. *Id.*

22      (3) "the communications relating to that purpose": the purpose of the redacted

23  communication was to ███████████████████████████████████████

24  ██████. *Id.*

25      (4) "made in confidence": both the underlying communication between

26  Messrs. Hoffman and Camper and Finnegan, and Mr. Hoffman and Messrs. Camper

27  and Gravette were made in confidence. *Id.*

28      (5) "by the client": ███████████████████████████████████████████

1    ██████████████████. *Id.*

2        (6) "are at his instance permanently protected"; (7) "from disclosure by

3    himself or by the legal adviser" and (8) "unless the protection be waived." Nothing

4    exists indicating that any party to the redacted communication, including both

5    Finnegan and Le-Vel employees, disclosed or intended to waive the privilege

6    attached to the subject communication. Indeed, Mr. Hoffman submitted a

7    declaration stating that "at no time did I waive or intend to waive privilege in the

8    redacted portions of this email chain." Ex. E, Hoffman Decl. ¶ 24.

9        Judge Guilford agreed that Redaction #11, with the exception of a single last

10   word, is privileged. Dkt. 97-1 at 3, (stating "[a]ll other redactions in the six email

11   chains relate to material that has been properly designated as protected by the

12   attorney client privilege or work product exception, and are not ordered

13   unredacted."). But ordering the disclosure of that single word in an otherwise

14   determined privileged communication would contextually reveal the very subject of

15   the privileged communication between outside counsel (Finnegan) to Le-Vel. While

16   the reasoning of Le-Vel's letter brief applies to the entirety of Redaction #11, it

17   applies with no less weight to the last word of the very same sentence Judge

18   Guilford otherwise found privileged.

19       Further still, the disclosure of that single word will create a substantial risk of

20   misuse and prejudice for Le-Vel. For instance, TNC could probe Le-Vel's witnesses

21   regarding the "to-be-unredacted" word as appearing within the context of Exhibit 4.

22   Yet Le-Vel's witnesses would be placed in the untenable position of not answering

23   such questions without risking inadvertent disclosure of the privileged

24   communication. That inability would lead to rank speculation and guesswork about

25   what legal advice was given. This very type of harm cuts against the core purpose of

26   the attorney-client privilege doctrine of full and candid exchanges between client

27   and counsel. *See Dickson*, 2021 WL 3148878, at *8 (purpose of the attorney-client

28   privilege is to "encourage full and frank communication between attorneys and their

clients and thereby promote broader public interests in the observance of law and administration of justice.")(citation omitted); *Id.*("Clients must be able to consult their lawyers candidly, and the lawyers in turn must be able to provide candid legal advice.") (citation omitted).

Finally, as noted in Le-Vel's April 15, 2022 letter brief, Redaction #11 relates to ████████████████████. *See* Ex. E at 4-5; Sommers Decl. ¶ 24; Hoffman Decl. ¶ 25. If the last word of this privileged communication is unredacted, it will improperly reveal a portion of that privileged ████████ ████████████ *See Pac. Packaging Concepts, Inc.,* 2020 WL 6694339, at *2 ("While a [trademark] search report itself is not privileged, any opinion by [a trademark] applicant's attorney relevant thereto is protected by the attorney client privilege.").

As Judge Guilford did not find any waiver or exception to the attorney-client privilege protection regarding the last word of Redaction #11, Judge Guilford's order to redact the last word of Exhibit 4 Redaction # 11 should be rejected. *See* Dkt. 97-1.

**B.     Having Shown the Redacted Word Is Privileged, the Word Should Remain Redacted**

Le-Vel has met its burden of showing that the attorney-client privilege applies to the redacted material.

First, that communication should remain redacted in its entirety as privileged regardless of whether the withheld information is relevant to any party's claim or defense.  Specially, Rule 26(b)(1) describes the scope of discovery as "any *nonprivileged* matter that is relevant to any party's claim or defense and proportional to the needs of the case…" Fed. R. Civ. P. 26(b)(1)(emphasis added). Courts have been explicit that privileged matter is not discoverable, even if the matter is wholly relevant to the claims or defenses in the case." *Dickson*, 2021 WL 3148878, at *15; *Real*, 116 F.R.D. at 213 ("even relevant evidence is not

1  discoverable if such evidence is privileged.").

2      Second, Judge Guilford did not find any waiver or other exception to the

3  attorney-client privilege. Therefore, the entire Redaction #11 should remain

4  withheld on this basis too. *See Dickson*, 2021 WL 3148878 at *15 ("And, it is well

5  established that, absent waiver (not present here) or other exception (also not present

6  here), the attorney-client privilege 'cannot be overcome,' even 'by a showing of

7  need.'").

8      Third and finally, Judge Guilford gave no reasoning for his ruling that

9  "Exhibit 4: the last word of 'Redaction # 11' must be unredacted." As such, Le-Vel

10  was left to speculate the basis for the Special Master's reasoning.

11  **V.    CONCLUSION**

12      For the foregoing reasons, Le-Vel's partial objection to the ruling in the

13  Special Master's Order should be granted, and the entirety of Redaction #11 should

14  remain redacted.

15

16

17  Dated: May 18, 2022                    FINNEGAN, HENDERSON, FARABOW,
                                            GARRETT & DUNNER, LLP
18

19                              By: _____

20                                      Morgan E. Smith (SBN 293503)
                                        morgan.smith@finnegan.com
21                                      Mark Sommers (*pro hac vice*)
                                        mark.sommers@finnegan.com
22                                      Patrick J. Rodgers (*pro hac vice*)
                                        patrick.rodgers@finnegan.com
23                                      Daniel R. Mello Jr. (SBN 325714)
24                                      daniel.mello@finnegan.com
                                        FINNEGAN, HENDERSON,
25                                          FARABOW, GARRETT & DUNNER,
                                            LLP
26

27                                      Alan Jay Weil (SBN 63153)
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ajweil@kbkfirm.com
Amanda D. Barrow (SBN 313583)
abarrow@kbkfirm.com
KENDALL BRILL & KELLY LLP

*Attorneys for Le-Vel Brands, LLC*

Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S PARTIAL OBJECTION TO ORDER OF SPECIAL MASTER