Hon. Andrew J. Guilford (Ret.)
Judicate West
1851 East First Street
Suite 1600
Santa Ana, CA 92705
Phone: (714) 834-1340

Special Master

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

THRIVE NATURAL CARE, INC.

          Plaintiff,

    v.

LE-VEL BRANDS, LLC,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.  2:21-cv-02022-DOC-KES

(Judicate West Reference No. A281487)

**ORDER OF SPECIAL MASTER REGARDING THREE APRIL 20, 2022 MOTIONS: (1) TNC'S MOTION TO COMPEL DEPOSITION; (2) TNC'S MOTION TO COMPEL FURTHER RESPONSES TO RFA NOS. 4–7, 76, AND 111 OR DEEM THEM ADMITTED; AND (3) LE-VEL'S DISCOVERY MOTION**

On October 18, 2021, the Honorable David O. Carter appointed this Special Master "for purposes of resolving the parties' discovery disputes." (Dkt. No. 89 at 2 ¶ 1; *see also id.* at ¶ 2.) The Order Appointing Special Master requires that "[a]ll rulings of the Special Master shall be reduced to a reasoned written order." (*Id.* at 3 ¶ 9.) "The Special Master shall issue rulings by order, except for any contempt findings that shall be issued by report and recommendation." (*id.* (citation omitted).)

"The Special Master shall provide any written order, report, or recommendation to counsel for the parties by email to give them an opportunity to propose redactions before submission to the Court." (*Id.*)

The Scheduling Order in this case set the fact discovery cutoff for April 15, 2022. (Dkt. No. 83 at 1.) That order further states, "[a]ny motion regarding the inadequacy of responses to discovery must be filed and served no later than five (5) days after the discovery cut-off date." (*Id.* at 3.) In keeping with these deadlines, on April 20, 2022 the parties collectively filed three letter brief discovery motions with the Special Master. Three opposition letters were filed on April 27, 2022 and three reply letters were filed on May 4, 2022. The Special Master lists and addresses the motions here in no particular order.

First, Plaintiff Thrive Natural Care, Inc. ("TNC") has filed a letter brief requesting "an order from the Special Master directing that Mr. [Jason] Camper [(Le-Vel's CEO)] must appear for a full-length personal deposition without . . . restrictions." (Camper Mot. at 1.) Defendant Le-Vel Brands, LLC ("Le-Vel") opposed (Camper Opp'n), and TNC has filed a reply (Camper Reply).

Second, TNC has filed a letter brief requesting that "the Special Master order Le-Vel to provide substantive answers to [RFA Nos. 4–7, 76, and 111] or deem them admitted." (RFA Mot. at 1.) Le-Vel filed an opposition to the motion (RFA Opp'n), and TNC replied (RFA Reply).

Third, Le-Vel has filed an omnibus discovery motion seeking the following relief.

(1) [TNC] be compelled to produce a corporate designee for an additional three hours of deposition in light of late-produced documents, (2) Ecomundi be compelled to produce a corporate designee for an additional two hours of deposition in light of late-produced documents, and (3) Adam McIntosh be compelled to sit for the remainder of his 30(b)(1) deposition. Le-Vel further requests the Special Master order: (1) TNC to produce documents responsive to Le-Vel's [RFPs] Nos. 66, 67, and 69; (2) Ecomundi to produce documents responsive to RFP No. 21 in the Subpoena to Produce Documents to Ecomundi; and (3) TNC to provide supplemental responses to Le-Vel's [RFAs] Nos. 360–74.

(Le-Vel Mot. at 1.)

A hearing was held on May 19, 2022 at 9:00am via Zoom. Before the hearing, the parties were provided with a tentative ruling regarding each of their three motions. At the outset of the hearing, both parties orally stipulated that the hearing could proceed without a Court Reporter

present. Around 9:20am, Debra B. Farfan, CSR No. 11648, joined the hearing and reported the remainder of the proceeding, including by reporting the Special Master's summary of the discussion between the parties and Special Master before her arrival.

The Special Master now rules as follows.

- The Special Master **GRANTS** TNC's April 20, 2022 motion to compel the deposition of Jason Camper and **RECOMMENDS** that the scheduling order in this matter be **AMENDED** solely for the purpose of permitting TNC to take its 7-hour, unrestricted Rule 30(b)(1) deposition of Camper, to begin at a date, time, and location mutually agreeable to the parties but no later than June 30, 2022.

- The Special Master **GRANTS-IN-PART** and **DENIES-IN-PART** TNC's April 20, 2022 motion to compel further responses to its RFAs as stated in Section 2.6 of this Order and explained in the other subsections of Section 2.

- The Special Master **GRANTS-IN-PART** and **DENIES-IN-PART** Le-Vel's April 20, 2022 omnibus discovery motion as stated in Section 3.5 of this Order and explained in the other subsections of Section 3.

## 1.    TNC'S MOTION TO COMPEL THE DEPOSITION OF JASON CAMPER

In January 2022, TNC brought a discovery motion about various disputes. The Special Master issued a February 10, 2022 Order regarding that motion. In it, the Special Master observed that, "[f]or the first time in its reply brief, TNC requested that Le-Vel be compelled to identify its CEO Jason Camper as a document custodian and produce him for a deposition." (Feb. 10, 2022 Special Master Order at 5.) The Special Master denied these requests based on TNC's failure to timely raise them in its opening letter brief. (*Id.*) But the Special Master also adopted some of Le-Vel's proposed language for the order, finding that even considering the issue on the merits, Camper would be considered an Apex witness. (*Id.*) The adopted language in the order goes on to state, "TNC has not shown that (1) Mr. Camper has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) it has exhausted other less intrusive discovery methods." (*Id.* at 6.) The Order alternatively denies TNC's late-raised request for a deposition of Camper on that basis.

Some additional factual circumstances have since emerged. On April 14, 2022, "Le-Vel informed TNC that Le-Vel's sole identified witness Drew Hoffman, President and [Chief Legal Officer], was 'transitioning away' to an 'external position'[.]" (Camper Mot. at 1.) Apparently, Hoffman was the only Le-Vel witness listed on Le-Vel's initial disclosures, and in March 2022 Hoffman sat for a full deposition as Le-Vel's Rule 30(b)(6) designee. In the April 14, 2022 email informing TNC's counsel of Hoffman's transition, Le-Vel stated that Hoffman "would remain a fact witness at trial in October." (Camper Opp'n at 1.) Le-Vel also "alerted TNC that, because of the transition, Mr. Camper may be called as a witness at trial." (*Id.* at 1–2.) Le-Vel provided TNC with this news the day before the fact discovery deadline, and indeed after the deadline for commencing depositions had already passed. (Dkt. No. 83 at 2 (Scheduling Order, stating, "[a]ll depositions shall be scheduled to commence at least five (5) working days prior to the discovery cut-off date.").)

During meet and confer efforts between the parties after the April 14, 2022 email but before TNC's motion was filed, Le-Vel stated that it was agreeable to permitting a 2-hour Rule 30(b)(1) deposition of Camper if it was limited to four topics, listed as follows:

> (1) Mr. Camper's past professional experience with isXperia, LifeFX, and POWDRemix; (2) Le-Vel's creation and rollout of its operational structure (e.g., product manufacturers, warehouses, shipping, promoters/customers, databases, and invoicing); (3[)] Le-Vel's three initial THRIVE products (collectively known as the Thrive Experience); and (4) Le-Vel's general natural product expansions over the years and general business direction.

(Camper Opp'n at 2.) Apparently, and notably, "Le-Vel also offered to limit any trial testimony of Mr. Camper to those subjects." (*Id.*) TNC declined this offer, and filed the current motion seeking an unrestricted deposition of Camper for a full 7 hours.

The morning of the scheduled hearing on the parties' April 20 discovery motions, Le-Vel's counsel sent an email to all counsel and the Special Master's Case Manager. The email, which Le-Vel's counsel referenced at the hearing but was not forwarded to the Special Master until after the hearing had concluded, described additional developments. Le-Vel's counsel reported that they had "learned that Le-Vel and Mr. Hoffman have been unable to reach final agreement over Mr. Hoffman serving as an outside consultant for Le-Vel," such that "Mr. Hoffman will not appear as a witness at

1    trial in October." In addition to asserting that Le-Vel would be amending its initial disclosures to

2    delete Hoffman and add two new Le-Vel witnesses, Le-Vel's counsel further stated that "in view of

3    this development, Le-Vel proposes adding a fifth topic for Mr. Camper about the THRIVE SKIN name

4    collection . . . Le-Vel is agreeable to adding an additional half hour so that the time of the deposition

5    would be adjusted . . . to two and a half hours."

6        During the hearing, the Special Master informed TNC's counsel that he would invite further

7    written briefing in response to Le-Vel's email only if the email impacted any of his decisions on

8    disputed issues. But rather than wait for further correspondence from the Special Master, TNC's

9    counsel sent a responsive email to counsel for all parties and the Special Master less than two

10   hours after the hearing concluded. In it, TNC's counsel argued that TNC still intended to call

11   Hoffman as a witness at trial. TNC argued that it will later move *in limine* before the Court to

12   exclude Camper and Le-Vel's other two late-added witnesses from testifying at trial. TNC also

13   asserted that "to the extent Mr. Camper is allowed to testify at trial, his testimony should remain

14   limited to the four items that Le-Vel initially identified." But TNC further argued that "if Mr. Camper

15   is allowed to also testify on Le-Vel's new proposed topic of "the THRIVE SKIN name selection" . . .

16   we request a normal, 7-hour 30(b)(1),[ ]deposition of Camper with no artificial restrictions.

17        In the tentative ruling, it was highly relevant to the Special Master that TNC's reply brief did

18   not place emphasis on the procedural issues caused by the timing of Le-Vel's disclosure of its

19   personnel change. Instead, to support its position that TNC should be permitted a full deposition of

20   Camper, TNC's reply brief relied heavily on arguments about the Apex doctrine and Camper's

21   personal knowledge of disputed facts. For this reason and others, the tentative ruling granted-in-

22   part and denied-in-part TNC's request for a deposition of Camper in a manner consistent with Le-

23   Vel's compromise offer. That is, the tentative ruling would have permitted a 2-hour Rule 30(b)(1)

24   deposition of Camper on the four topics that Le-Vel previously identified, with the further ruling that

25   Camper would be limited to testifying solely regarding those four topics at trial.

26        But the Special Master cannot ignore the apparently ongoing and last-minute adjustments

27   to the witnesses Le-Vel would seek to identify in its initial disclosures, and ultimately call at trial.

28   Circumstances at Le-Vel have changed. As Le-Vel's counsel acknowledged at the hearing, in

circumstances like this, it's important for counsel to collaborate and determine agreeable ways to ameliorate any prejudice that such changes can cause in trial preparation. Le-Vel's proposal of a 2.5-hour deposition on five topics, particularly given the central importance of Le-Vel's newly-proposed topic, is insufficient on the current record. The Special Master finds upon further review and consideration of all arguments presented that Le-Vel's arguments about the Apex doctrine should not be used to preclude an unrestricted 7-hour Rule 30(b)(1) deposition of Camper in these circumstances.

The Special Master **GRANTS** TNC's motion to compel Camper's deposition. The Special Master further **RECOMMENDS** that the scheduling order in this matter be **AMENDED** solely for the purpose of permitting TNC to take its 7-hour, unrestricted Rule 30(b)(1) deposition of Camper, to begin at a date, time, and location mutually agreeable to the parties but no later than June 30, 2022.

## 2.    TNC'S MOTION TO COMPEL FURTHER RESPONSES TO RFA NOS. 4–7, 76, AND 111

TNC's motion initially disputed the sufficiency of Le-Vel's supplemental responses to six of its RFAs, and specifically to RFA Nos. 4–7, 76, and 111. In its opposition, Le-Vel states in a footnote that "now that Le-Vel has TNC's clarification for RFA 76, it will provide a supplemental response by May 4, 2022." (RFA Opp'n at 5 n.5.) TNC does not present further argument regarding RFA No. 76 in its reply, but that reply was also due on May 4, 2022, providing no time for TNC to review Le-Vel's supplemental response before briefing on this motion was complete. The Special Master **DENIES** TNC's motion **AS MOOT** as to RFA No. 76 and does not address it further in this ruling. At the hearing, counsel for Le-Vel confirmed the Special Master's ruling on RFA No. 76, and counsel for TNC did not offer any further comment or argument.

The text of the remaining disputed RFAs and Le-Vel's responses is provided in this Order, for the convenience of the Special Master and parties.

### 2.1    RFA NO. 4

**REQUEST FOR ADMISSION NO. 4:**

4.    Admit that Le-Vel knew of TNC, the '942 Registration, and the application that matured as the '303 Registration, before Le-Vel began selling its Thrive Skin Products.

**RESPONSE TO ADMISSION NO. 4:**

        Le-Vel objects to this request to the extent it seeks information subject to attorney-client privilege and/or attorney-client work product privileges or information containing or reflecting the mental impressions, conclusions, opinions, or legal theories of Le-Vel's attorneys or other representatives.

        Le-Vel objects to this request on the ground that it is compound, asking Le-Vel to admit that it knew of (1) TNC, (2) the '942 Registration, and (3) the application that matured to the '303 Registration before it began selling its Thrive Skin Products.

        Le-Vel objects to this request on the ground that "knew of" is vague, ambiguous, and undefined.

        Le-Vel objects to this request on the ground that "began selling" is vague, ambiguous, and undefined.

**SUPPLEMENTAL RESPONSE TO ADMISSION NO. 4:**

        In an April 16, 2022 email from TNC to Le-Vel relating to the parties' April 12, 2022 meet-and-confer, TNC clarified that "knew of" shall mean "actual knowledge" for purposes of this request.

        Le-Vel understands this request, as revised, to seek an admission as to whether Le-Vel had actual knowledge of TNC, the '942 Registration, and the application that matured as the '303 Registration, before Le-Vel began selling its Thrive Skin Products. Le-Vel objects to this request on the ground that, as revised, it calls for the admission of a legal conclusion because "actual knowledge" is a legal question.

        Le-Vel further objects to this request as revised on the ground that it seeks discovery of information that requires complex judgments and nuanced appraisals, which is an improper use of a request for admission. *See Gibson Brands Inc. v. John Hornby Skewes & Co.*, No. CV 14-0609 DDP (SS), 2015 WL 12681376, at *6 (C.D. Cal. July 20, 2015).

        Subject to the above general and specific objections, Le-Vel admits that a trademark search conducted by Le-Vel's counsel in or around August 2017 contained computer-generated listings for certain information related to TNC, a computer generated listing for certain information about the '942 Registration, and a computer generated listing for certain information about the application underlying the '303 Registration along with listings for many hundreds of other third-party trademark registrations, applications, and information. Otherwise, Le-Vel is unable to admit or deny this request.

**SPECIAL MASTER'S RULING REGARDING RFA NO. 4:**

The Special Master **DENIES** TNC's motion to compel a further response to RFA No. 4 because RFA No. 4 is compound. The parties did not present further oral argument on this RFA at the hearing.

### 2.2    RFA NO. 5

**REQUEST FOR ADMISSION NO. 5:**

        5.    Admit that Le-Vel had knowledge of the '942 Registration as of August 2017.

**RESPONSE TO ADMISSION NO. 5:**

        Le-Vel objects to this request to the extent it seeks information subject to attorney-client privilege and/or attorney-client work product privileges or information

containing or reflecting the mental impressions, conclusions, opinions, or legal theories of Le-Vel's attorneys or other representatives.

Le-Vel objects to this request on the ground that "had knowledge" is vague, ambiguous, and undefined.

Subject to the above general objections, and to the extent this request is understood, Le-Vel admits that a trademark search conducted by Le-Vel's counsel in or around August 2017 contained a computer-generated listing for certain information about the '942 Registration along with listings for many hundreds of other third-party trademark registrations, applications, and information. Otherwise, Le-Vel is unable to admit or deny this request.

SUPPLEMENTAL RESPONSE TO ADMISSION NO. 5:

In an April 16, 2022 email from TNC to Le-Vel relating to the parties' April 12, 2022 meet-and-confer, TNC clarified that "knowledge" shall mean "actual knowledge" for purposes of this request.

Le-Vel understands this request, as revised, to seek an admission as to whether Le-Vel had actual knowledge of the '942 Registration as of August 2017. Le-Vel objects to this request on the ground that, as revised, it calls for the admission of a legal conclusion because "actual knowledge" is a legal question.

Le-Vel further objects to this request as revised on the ground that it seeks discovery of information that requires complex judgments and nuanced appraisals, which is an improper use of a request for admission. *See Gibson Brands Inc. v. John Hornby Skewes & Co*., No. CV 14-0609 DDP (SS), 2015 WL 12681376, at *6 (C.D. Cal. July 20, 2015).

Subject to the above general objections, and to the extent this request is understood, Le-Vel admits that a trademark search conducted by Le-Vel's counsel in or around August 2017 contained a computer-generated listing for certain information about the '942 Registration along with listings for many hundreds of other third-party trademark registrations, applications, and information. Otherwise, Le-Vel is unable to admit or deny this request.

SPECIAL MASTER'S RULING REGARDING RFA NO. 5

Le-Vel's objections and argument regarding this RFA are unpersuasive. In particular, Le-Vel's argument that this RFA calls for a legal conclusion must be rejected. This RFA asks Le-Vel to admit or deny a simple fact: whether Le-Vel, not Le-Vel's outside counsel, *had actual knowledge* of the '942 Registration by August 2017. That this fact may be relevant to certain causes of action in this case doesn't change its nature as a basic fact that is properly the subject of fact discovery, including through a request for admission.

At the hearing, Le-Vel's counsel suggested that Le-Vel would agree to supplement its response to this RFA, but only to more explicitly state that Le-Vel's knowledge of the '942 Registration as of August 2017 was "tied to the information" that was included in the trademark search report conducted by Le-Vel's counsel that month.

If Le-Vel had knowledge of the '942 Registration in August 2017, whether as a result of a review of the trademark search report or based on information from another source, the fair and reasonable response to this RFA is an admission. If Le-Vel wants to go on to further explain such an admission, it can do so. The Special Master cannot otherwise provide guidance at this time regarding whether Le-Vel's proposal for how it would seek to supplement would indeed provide a sufficient response to this RFA.

The Special Master finds that Le-Vel's original and supplemental responses to RFA No. 5 fail to fairly and reasonably respond to the request. The Special Master **GRANTS** TNC's motion in that Le-Vel must further supplement its response to this RFA. Le-Vel will be provided with one additional opportunity to appropriately do so, including by stating whether it admits or denies that it had actual knowledge of the '942 Registration as of August 2017.

### 2.3   RFA NO. 6

**REQUEST FOR ADMISSION NO. 6:**

6.     Admit that Le-Vel had knowledge of the application that matured as the '303 Registration as of August 2017.

**RESPONSE TO ADMISSION NO. 6:**

Le-Vel objects to this request to the extent it seeks information subject to attorney-client privilege and/or attorney-client work product privileges or information containing or reflecting the mental impressions, conclusions, opinions, or legal theories of Le-Vel's attorneys or other representatives.

Le-Vel objects to this request on the ground that "had knowledge" is vague, ambiguous, and undefined.

Subject to the above general objections, and to the extent this request is understood, Le-Vel admits that a trademark search conducted by Le-Vel's counsel in or around August 2017 contained a computer-generated listing for certain information about the application underlying the '303 Registration along with listings for many hundreds of other third-party trademark registrations, applications, and information. Otherwise, Le-Vel is unable to admit or deny this request.

**SUPPLEMENTAL RESPONSE TO ADMISSION NO. 6:**

In an April 16, 2022 email from TNC to Le-Vel relating to the parties' April 12, 2022 meet-and-confer, TNC clarified that "knowledge" shall mean "actual knowledge" for purposes of this request

Le-Vel understands this request, as revised, to seek an admission as to whether Le-Vel had actual knowledge of the application that matured as the '303 Registration as of August 2017. Le-Vel objects to this request on the ground that, as revised, it calls for the admission of a legal conclusion because "actual knowledge" is a legal question.

Le-Vel further objects to this request as revised on the ground that it seeks discovery of information that requires complex judgments and nuanced appraisals, which is an improper use of a request for admission. *See Gibson Brands Inc. v. John*

*Hornby Skewes & Co*., No. CV 14-0609 DDP (SS), 2015 WL 12681376, at *6 (C.D. Cal. July 20, 2015).

Subject to the above general objections, and to the extent this request is understood, Le-Vel admits that a trademark search conducted by Le-Vel's counsel in or around August 2017 contained a computer-generated listing for certain information about the application underlying the '303 Registration along with listings for many hundreds of other third-party trademark registrations, applications, and information. Otherwise, Le-Vel is unable to admit or deny this request.

## SPECIAL MASTER'S RULING REGARDING RFA NO. 6

The same reasoning for RFA No. 5 also applies to the parties' dispute regarding RFA No. 6.

The Special Master finds that Le-Vel's original and supplemental responses to RFA No. 6 fail to fairly and reasonably respond to the request. The Special Master **GRANTS** TNC's motion in that Le-Vel must further supplement its response to this RFA. Le-Vel will be provided with one additional opportunity to appropriately do so, including by stating whether it admits or denies that it had actual knowledge of the application that matured as the '303 Registration as of August 2017.

### 2.4    RFA NO. 7

**REQUEST FOR ADMISSION NO. 7:**

7.    Admit that Le-Vel knew of TNC's use of the THRIVE Mark on Skincare Products before Le-Vel began selling or offering for sale any Thrive Skin Products.

**RESPONSE TO ADMISSION NO. 7:**

Le-Vel objects to this request on the ground that it is compound given that "THRIVE Mark" is defined by TNC as multiple Marks.

Le-Vel objects to this request to the extent it seeks information subject to attorney-client privilege and/or attorney-client work product privileges or information containing or reflecting the mental impressions, conclusions, opinions, or legal theories of Le-Vel's attorneys or other representatives.

Le-Vel objects to this request on the ground that the term "selling" is vague, ambiguous, and undefined. For purposes of its response, Le-Vel understands this request to seek an admission that Le-Vel knew of TNC's use of the THRIVE Mark on Skincare Products (as understood and defined by Le-Vel in the general objections above) before Le-Vel began distributing or offering for sale any Thrive Skin Products.

Le-Vel objects to this request on the ground that "knew of" is vague, ambiguous, and undefined.

Subject to the above general and specific objections, and to the extent this request is understood, Le-Vel denies that it knew of TNC's use of the THRIVE Mark on Skincare Products (as understood and defined by Le-Vel in the general objections above) before Le-Vel began selling or offering for sale its Thrive Skin Products.

**SUPPLEMENTAL RESPONSE TO ADMISSION NO. 7:**

In an April 16, 2022 email from TNC to Le-Vel relating to the parties' April 12, 2022 meet-and-confer, TNC clarified that "knew of" shall mean "actual knowledge" for purposes of this request

Le-Vel understands this request, as revised, to seek an admission as to whether Le-Vel had actual knowledge of TNC's use of the THRIVE Mark on Skincare Products (as understood and defined by Le-Vel in the general objections above) before Le-Vel began distributing or offering for sale any Thrive Skin Products. Le-Vel objects to this request on the ground that, as revised, it calls for the admission of a legal conclusion because "actual knowledge" is a legal question.

Subject to the above general and specific objections, and to the extent this request is understood, Le-Vel denies that it knew of TNC's use of the THRIVE Mark on Skincare Products (as understood and defined by Le-Vel in the general objections above) before Le-Vel began selling or offering for sale its Thrive Skin Products. Otherwise, Le-Vel is unable to admit or deny this request.

## SPECIAL MASTER'S RULING REGARDING RFA NO. 7

The parties present a dispute regarding the term "Skincare Products" as it appears in this RFA. In its general definitions, TNC defined the term to mean "topical preparations for cleansing, moisturizing, or protecting the skin, namely lotions, creams, toners, balms, serums, sunscreen, ointments, gels, cleansers, and moisturizers." In its general objections in response, Le-Vel states that "Le-Vel understands 'Skincare Products' to be those products currently offered under its [*i.e.*, Le-Vel's] THRIVE SKIN brand." Le-Vel defends its decision to redefine the term "Skincare Products" in its opposition to TNC's RFA Motion. But Le-Vel's explanation does not adequately address the fact that its definition wholly undercuts the intent of RFA No. 7. Using Le-Vel's proposed definition would change RFA No. 7 to read: "Admit that Le-Vel knew of *TNC's use* of the THRIVE Mark on [those products currently offered under *Le-Vel's THRIVE SKIN brand*] before Le-Vel began selling or offering for sale any Thrive Skin Products."

For purposes of this RFA, it is clear that the term "Skincare Products" is referring to TNC's own products. And here, the Special Master must note that TNC did not challenge the sufficiency of Le-Vel's responses to any other RFAs that use the term "Skincare Products." Only RFA No. 7 is at issue. Thus, the Special Master does not consider TNC's assertion that "TNC intended the term to have a broad scope and cover all different types of skincare products on the market." (RFA Mot. at 4.)

The Special Master's tentative ruling directed Le-Vel to supplement its response to this RFA, with the understanding that the term "Skincare Products" as used in RFA No. 7 means "products currently or previously offered by *TNC*."

Le-Vel voiced objections to this tentative determination. Among other things, it argued that the Special Master's tentative ruling would essentially require Le-Vel to admit that TNC's previous products have included skincare products. Le-Vel asserted that although TNC has sold products longer than Le-Vel has, TNC did not begin marketing and selling what Le-Vel would characterize as skincare products until after *Le-Vel's* THRIVE Skin brand products came to market. TNC argued that the hearing before the Special Master was the first time Le-Vel had raised this dispute about the nature of TNC's products, and TNC disagreed with Le-Vel's position on the merits.

But during the hearing, Le-Vel also suggested that its concerns with RFA No. 7 could be addressed by an inquiry along the lines of: "did Le-Vel know of TNC's products before Le-Vel launched its THRIVE Skin brand products?" According to Le-Vel, such a question would avoid the disputed issue of whether TNC's earlier products were indeed skincare products. When given the opportunity to respond to Le-Vel's proposal, TNC continued to reiterate its substantive position that it has sold skincare products since before Le-Vel's THRIVE Skin product launch.

On the current record, the Special Master won't decide the parties' substantive dispute about whether TNC's products are skincare products. Nor will the Special Master decide whether this issue has been timely raised. The Special Master finds Le-Vel's proposal at the hearing to be reasonable. The Special Master **GRANTS** TNC's motion in that Le-Vel must further supplement its response to RFA No. 7, with that RFA restated to say: "7. Admit that Le-Vel knew of TNC's use of the THRIVE Mark on ~~Skincare~~ Products before Le-Vel began selling or offering for sale any Thrive Skin Products." Le-Vel's response to this RFA will not be considered a concession as to the nature or categorization of TNC's products as skincare products or otherwise.

### 2.5    RFA NO. 111

**REQUEST FOR ADMISSION NO. 111:**

111.    Admit that the Thrive Frozen Registration is owned by a third party

**RESPONSE TO ADMISSION NO. 111:**

Le-Vel objects to this request to the extent it seeks information unavailable to Le-Vel, within the public domain, equally available to TNC or its counsel, and/or already within TNC's or its counsel's knowledge, possession, custody, or control.

Le-Vel objects to this request to the extent that it seeks information not within its possession, custody or control, and purports to require Le-Vel to conduct discovery of or to investigate third parties, or reply on behalf of persons over whom Le-Vel exercises no control or on whose behalf Le-Vel has no authority to respond.

Le-Vel objects to this request on the ground that "owned by a third party" is vague, ambiguous, and undefined.

Subject to the above general and specific objections, and to the extent this request is understood, Le-Vel admits that the Thrive Frozen Registration is owned by Thrive Frozen Nutrition, Inc.

### SPECIAL MASTER'S RULING REGARDING RFA NO. 111

Le-Vel's opposition brief provided an explanation for its response to RFA No. 111. Following a meet and confer between the parties, TNC proposed that the term "third party" in this RFA be defined as "not a related company, parent, subsidiary, or controlled by Le-Vel." (RFA Opp'n at 5.) Le-Vel's opposition states,

> [t]he introduction of 'controlled by Le-Vel' added vagueness and ambiguity because, as TNC knows, Le-Vel is a party to an agreement with Thrive Frozen Nutrition that required amendments to the Thrive Frozen Registration. [Citation Omitted.] Whether this constitutes "control by Le-Vel" is unclear, and Le-Vel is thus not in a position to further supplement its response, nor should it need to as it [h]as already admitted who owns the registration.

(*Id.*)

Le-Vel's arguments are persuasive, and TNC does not clarify its position regarding "control" in its reply brief in response to these opposition arguments. At the hearing, TNC urged that RFA No. 111 includes no reference to the concept of "control" and calls for a simple answer. TNC also asserted that it simply wanted to know if the owner of the Thrive Frozen Registration is a third party or is related in some way to Le-Vel. But TNC did not adequately explain the updated definition of "third party" that it provided to Le-Vel during the parties' meet and confer efforts.

The Special Master **DENIES** TNC's motion to compel a further response to RFA No. 111.

### 2.6    CONCLUSION AS TO TNC'S MOTION TO COMPEL FURTHER RFA RESPONSES

The Special Master **GRANTS** TNC's motion as to RFA Nos. 5–7 in that Le-Vel is **ORDERED** to further supplement its responses to these RFAs in the manners described in Sections 2.2 through 2.4 of this Order.

Le-Vel's further supplemental responses must be served no later than seven days after this dispute is finally resolved by Judge Carter or, if objections to any of the particular RFAs at issue by this motion are not filed, seven days after the deadline to file objections has passed.

The Special Master **DENIES** TNC's motion as to RFA Nos. 4 and 111 on the merits, and **DENIES** TNC's motion as to RFA No. 76 **AS MOOT**.

**3.     LE-VEL'S DISCOVERY MOTION**

**3.1     DISPUTES INVOLVING ECOMUNDI**

Preliminarily, the parties dispute whether the Special Master has the authority to resolve discovery disputes involving a company called "Ecomundi Ventures, LLC." There is barely any information provided about Ecomundi in general, let alone information regarding the Special Master's authority over Ecomundi.

The Special Master gleans that Ecomundi is "a pass-through entity" somehow related to TNC. (Le-Vel Reply at 3 n.6.) TNC has identified the same individual – Adam McIntosh – as the corporate designee for both TNC and Ecomundi. Ecomundi also apparently previously owned TNC's THRIVE mark and "allegedly assigned" the mark to TNC in 2013. (Le-Vel Mot. at 5.) In addition, there is no dispute that same counsel represents both Ecomundi and TNC. (Le-Vel Mot. at 1 n.1.)

In presenting arguments about whether the Special Master has authority over discovery disputes involving Ecomundi, the parties' briefs provide no real explanation or reference to caselaw. TNC's opposition states that Ecomundi "is not a party to any agreement with the Special Master, so Le-Vel has improperly brought this discovery letter against it here." (Le-Vel Opp'n at 1; *see also id.* at 3, 4.) Le-Vel's reply responds in a footnote by stating, "Ecomundi already complied-in-part with this Court's deposition and document subpoenas, thereby submitting to the jurisdiction of the Special Master." (Le-Vel Reply at 1 n.1.) At the hearing, Le-Vel made additional substantive arguments about why more time was needed for a Rule 30(b)(6) deposition of Ecomundi. But neither party presented any further argument about the threshold question of the Special Master's authority to rule on discovery disputes involving a third party.

The parties have not provided enough information for the Special Master to resolve the important issue of the scope of his authority to resolve discovery disputes involving third parties. In the absence of a basis for authority, the Special Master must **DENY** Le-Vel's motion on the issues related to Ecomundi.

### 3.2   LE-VEL'S REQUESTS TO COMPEL FURTHER DEPOSITIONS

As part of Le-Vel's motion, Le-Vel requests that TNC be compelled to produce (1) a corporate designee for TNC for an additional three hours, (2) a corporate designee for Ecomundi for two additional hours, and (3) Adam McIntosh as a Rule 30(b)(1) for "the remainder" of his deposition (*i.e.*, six hours).

TNC previously designated the same person – Adam McIntosh – as TNC's corporate designee, Ecomundi's corporate designee, and as a Rule 30(b)(1) witness. The parties ran into some difficulties scheduling three days of deposition for McIntosh. All parties delayed in scheduling certain fact depositions before the Scheduling Order deadline, and additional issues ultimately led the parties to schedule just two days for McIntosh's three depositions.

The deposition of McIntosh as a Rule 30(b)(6) designee for TNC occurred on April 5 and started at 10:00am. During the course of the deposition, "TNC's counsel discovered that an internal error in a prior document production had led to 28 documents [totaling 72 pages] not being produced." (Le-Vel Opp'n at 2.) TNC immediately made the files available during the deposition itself – including by batch emailing some smaller subset of the documents directly to Le-Vel's counsel and later sending a link to access all 28 – but "Le-Vel's counsel was unable to access the production [of the full 28 documents] before Ecomundi's deposition began, as it was flagged by IT systems as potentially malicious." (Le-Vel Mot. at 2.)

The next day, again beginning at 10:00am, Le-Vel took McIntosh's deposition as a Rule 30(b)(6) designee for Ecomundi for about four hours. TNC's counsel made native versions of "a few other documents" available during this second deposition. (Le-Vel argues that this was because the document had previously "been produced with an incorrect date" creating an "error" that TNC was seeking to correct, while TNC argues that it provided the additional documents in native form as a courtesy and was under no obligation to do so.) Le-Vel then switched gears that afternoon and began taking McIntosh's deposition as a Rule 30(b)(1) witness around 4:00pm. Even though McIntosh was apparently willing and able to continue being examined, because Le-Vel's counsel had a sick child at home, the Rule 30(b)(1) deposition was concluded after one hour.

As noted, the Special Master does not have sufficient information to assert authority over Le-Vel's disputes involving Ecomundi, and will not further address the dispute involving Le-Vel's Rule 30(b)(6) deposition of Ecomundi.

As to Le-Vel's Rule 30(b)(6) deposition of TNC, noticeably absent from Le-Vel's letter briefs is a description of any information contained in the 28 documents that requires investigation through a further deposition. At the hearing, Le-Vel explained that during the deposition itself, TNC's counsel referred to the missing documents as "key" and important to TNC's case. The missing documents apparently included documents to support TNC's claims of first use in commerce. TNC did not refute these characterizations or attempt to downplay the importance of these materials. Instead, TNC urged again that Le-Vel could have reviewed the documents "on the fly" and asked questions about them either the same day or during the depositions the following day.

Considering the arguments presented, the Special Master **GRANTS-IN-PART** and **DENIES-IN-PART** Le-Vel's motion to compel on this issue and finds that a one-hour additional Rule 30(b)(6) deposition of TNC is warranted, solely to explore topics related to the late-produced documents. Given the undisputed critical nature of the documents at issue, Le-Vel should be able to explore their contents after adequate time for review and preparation. But Le-Vel has not shown that more than one hour of additional deposition time is warranted, particularly after it otherwise conducted a 6.5-hour deposition of TNC, including asking questions about TNC's responses to certain interrogatories that referenced the non-produced documents.

As to a deposition of McIntosh as a Rule 30(b)(1) witness, the parties primarily raise disagreements about what transpired when they were attempting to schedule fact witness depositions. They also disagree about whether another attorney could have either stepped in to examine or examined-in-full for McIntosh's Rule 30(b)(1) deposition when it became apparent that the examining attorney needed to return home to a sick infant. Again absent in the briefs were any arguments about the substance of what additional information would be sought through the remainder of McIntosh's Rule 30(b)(1) deposition.

At the hearing, Le-Vel argued that McIntosh, as TNC founder and CEO, is a critical witness in this case. But Le-Vel did not meaningfully explain how the Rule 30(b)(6) testimony it obtained from

McIntosh, who testified on behalf of both TNC and Ecomundi, was insufficient and necessitated more time with McIntosh in his individual capacity.

Nor did Le-Vel provide a satisfactory explanation for why more time could not have been spent examining this witness on the two days he was made available. The Special Master will not get into the particulars of the parties' scheduling disputes except to say that both parties rushed to schedule many depositions just ahead of the applicable deadline, and both appeared to make reasonable efforts to schedule many depositions to occur over the span of one to two weeks. In these circumstances, TNC's proposal to take the depositions of the same person operating under three different "hats" in two days rather than three days is not unreasonable. The Special Master also questions why another attorney could not have stepped in to take the Rule 30(b)(1) deposition and why the depositions scheduled for that day could not have started earlier. Le-Vel's explanations on these two points, both in briefs and at the hearing, were not particularly persuasive.

Despite these various concerns, the Special Master finds that fundamental fairness supports permitting two additional hours of Rule 30(b)(1) deposition time with McIntosh. The Special Master accordingly **GRANTS-IN-PART** and **DENIES-IN-PART** Le-Vel's motion to compel further time for McIntosh's Rule 30(b)(1) deposition.

### 3.3   LE-VEL'S REQUESTS TO COMPEL FURTHER RESPONSES TO RFPs

Le-Vel asks the Special Master to compel TNC and Ecomundi to provide further responses to certain of Le-Vel's requests for production. For the reasons previously stated regarding the scope of his authority, the Special Master **DENIES** Le-Vel's motion to compel further responses to RFPs as it relates to Ecomundi.

Le-Vel requests that TNC produce documents responsive to Le-Vel's RFPs Nos. 66, 67, and 69. Those RFPs request the following.

REQUEST FOR PRODUCTION NO. 66:

All documents referring or relating to TNC's alleged September 5, 2013 first sale of TNC's Products in commerce, including but not limited to documents referring or relating to the Products sold, the identity and location of the Person(s) who purchased the Products, how the Products were delivered to the Person(s) who purchased the Products, the amount paid for the Products, the bank account into which the proceeds from the sale were deposited, the Person(s) who own(s) that bank account, the sales

taxes collected and paid for the first sale of TNC's Products, and how such sale was reported on any 2013 federal or state tax filings.

**REQUEST FOR PRODUCTION NO. 67:**

All documents referring or relating to TNC's alleged second sale of TNC's Products in commerce, including but not limited to documents referring or relating to the Products sold, the identity and location of the Person(s) who purchased the Products, how the products were delivered to the Person(s) who purchased the Products, the amount paid for the Products, the bank account into which the proceeds from the sale were deposited, the Person(s) who own(s) that bank account, the sales taxes collected and paid for the second sale of TNC's Products, and how the second sale was reported on any federal or state tax filings for the year in which such sale was made.

**REQUEST FOR PRODUCTION NO. 69**

All documents referring or relating to TNC's accounting for the assignment of TNC's Marks, including but not limited to financial statements, ledgers, and federal and state tax returns sufficient to show how the consideration tendered for the Nunc Pro Tunc Assignment and/or Technology Assignment was recorded, whether the transactions were recorded as an asset acquisition/purchase, and how such transactions were reported on all state and federal tax filings.

Le-Vel argues the following.

[e]ach of these requests relates to tax returns in 2013—the year that TNC's THRIVE mark was allegedly assigned from Ecomundi to TNC—and the years that TNC's first and second sales in commerce allegedly occurred (presumably 2013 and 2014) . . . . Le-Vel requires TNC's 2013 and 2014 tax returns to determine whether any sales were reported in those years and how the alleged acquired goodwill from Ecomundi was reported (e.g., as an asset purchase).

(Le-Vel Mot. at 5.)

In opposition, TNC describes its two transactions from 2013 that it is using to allege first use in commerce (one that was "not for money" and the other involving $35 cash), and argues that "Le-Vel does not need access to TNC's entire 2013 tax return just to see whether or not it accounted for a single $35 cash sale." (Le-Vel Opp'n at 4.) TNC otherwise argues that it is "unduly burdensome" for it to produce its tax returns because they involve "extremely sensitive information that has no bearing on the issues of [the] case." (*Id.*) TNC refers to other evidence that it has already produced to support its sales during the relevant periods, including in 2014. (*Id.*)

Le-Vel's reply argues that "the tax returns go to the core issues of whether TNC's trademark registration is invalid due to an improper assignment from Ecomundi absent accompanying goodwill and whether TNC's reported first sale occurred when alleged." (Le-Vel Reply at 3.) Le-Vel also questions the burden involved in TNC's production of its tax returns. (*Id.*)

But Le-Vel doesn't explain why discovery of TNC's *full* tax returns are necessary in this case given the other discovery TNC has produced. As TNC notes, tax returns are highly sensitive and in the circumstances of this case, would include much additional information that is irrelevant to the parties' claims. Le-Vel has failed to sufficiently show why the discovery it already has obtained or can obtain by less intrusive means is insufficient. The Special Master thus **DENIES** Le-Vel's motion to compel further responses to RFPs Nos. 66, 67, and 69 from TNC.

### 3.4    LE-VEL'S REQUESTS TO COMPEL SUPPLEMENTAL RESPONSES TO RFAS

Finally, Le-Vel asks the Special Master to compel TNC to supplement its responses to RFAs Nos. 360–74. Le-Vel devotes only two sentences to this request in its opening letter brief (Le-Vel Mot. at 5) and one sentence to this request (plus a footnote) in its reply brief (Le-Vel Reply at 3). TNC primarily opposes Le-Vel's request on the basis that Le-Vel failed to adequately meet and confer regarding deficiencies in these RFA responses. Le-Vel disputes this point, but the fact remains that the Special Master is provided with no real argument on the substance for these RFAs, and any meet and confer that allegedly did take place happened only the day before this motion was filed. (Nor must it have been very extensive given that the parties cannot agree about whether it even happened.)

At the hearing, Le-Vel argued that during meet and confer, Le-Vel inquired regarding whether TNC would agree to supplement RFAs Nos. 360–74. Responding to these RFAs, TNC stated (along with some other objections for certain RFAs) that "TNC objects that this Request seeks tax information from more than eight years ago, and such documentation is no longer in TNC's possession, custody, or control." As Le-Vel noted in its briefs and at the hearing, it is unclear whether TNC has conducted its "due diligence" in attempting to obtain the applicable tax information implicated by the RFAs. In responding to Le-Vel's RFPs requesting production of tax returns, TNC has not similarly asserted that the returns are outside of TNC's possession, custody, or control. Instead, TNC objects to the request to actually produce the tax returns on relevance and burden grounds.

The Special Master has reviewed Le-Vel's RFA Nos. 360–74 and they seek information relevant to matters in dispute in this case that TNC has acknowledged could be learned from a

review of TNC's tax information. Supplemental responses to these RFAs that fairly respond to the questions asked would provide a less burdensome way of permitting Le-Vel to obtain relevant information from TNC's tax returns without requiring TNC to produce these highly-sensitive documents in their entirety. Although meet and confer, as well as argument, on this dispute was incredibly sparse, the Special Master finds that supplementation of RFA Nos. 360–74 is warranted.

On this record, the Special Master **GRANTS** Le-Vel's request to compel further responses to these RFAs.

### 3.5    CONCLUSION AS TO LE-VEL'S OMNIBUS DISCOVERY MOTION

The Special Master **DENIES** Le-Vel's motion on the issues related to Ecomundi. Le-Vel's motion to compel TNC's further responses to its RFP Nos. 66, 67, and 69 is also **DENIED**.

The Special Master **GRANTS-IN-PART** and **DENIES-IN-PART** Le-Vel's motion to compel an additional Rule 30(b)(6) deposition of TNC. Le-Vel is permitted one hour of additional Rule 30(b)(6) deposition time with TNC, solely to ask questions concerning the 28 late-produced documents sent by TNC's counsel to Le-Vel on the day of the original Rule 30(b)(6) deposition of TNC in this case. The Special Master also **GRANTS-IN-PART** and **DENIES-IN-PART** Le-Vel's motion to compel additional Rule 30(b)(1) deposition time with McIntosh. Le-Vel is permitted two additional hours to examine him. The Special Master directs that these additional depositions shall begin at a date, time, and location mutually agreeable to the parties, but no later than June 30, 2022.

The Special Master **GRANTS** Le-Vel's motion to compel supplemental responses to RFA Nos. 360–74. TNC's supplemental responses must be served no later than seven days after this dispute is finally resolved by Judge Carter or, if objections to any of the particular RFAs at issue by this motion are not filed, seven days after the deadline to file objections has passed.

### 4.    CONCLUSION

The Special Master now rules as follows.

- The Special Master **GRANTS** TNC's April 20, 2022 motion to compel the deposition of Jason Camper and **RECOMMENDS** that the scheduling order in this matter be **AMENDED** solely for the purpose of permitting TNC to take its 7-hour, unrestricted

Rule 30(b)(1) deposition of Camper, to begin at a date, time, and location mutually agreeable to the parties but no later than June 30, 2022.

- The Special Master **GRANTS-IN-PART** and **DENIES-IN-PART** TNC's April 20, 2022 motion to compel further responses to RFAs as stated in Section 2.6 of this Order and explained in the other subsections of Section 2.

- The Special Master **GRANTS-IN-PART** and **DENIES-IN-PART** Le-Vel's April 20, 2022 omnibus discovery motion as stated in Section 3.5 of this Order and explained in the other subsections of Section 3.

Any redactions to this Order must be submitted to the Special Master's Case Manager within three Court days of this Order. If none are submitted by that time, Le-Vel is directed to file a copy of this Order with the Court.

THUS IT IS ORDERED.

Dated:  June 2, 2022

_____
Hon. Andrew J. Guilford (Ret.)
Special Master

**JUDICATE WEST**
Alternative Dispute Resolution

1851 E. First Street
Suite 1600
Santa Ana, CA 92705
Phone: (714) 834-1340
Fax: (714) 834-1344

*Results Beyond Dispute*℠

*www.judicatewest.com*

## PROOF OF SERVICE

I, the undersigned, an employee of Judicate West, located at 1851 E. First Street, Suite 1600, Santa Ana, CA 92705 declare under penalty of perjury that I am over the age of eighteen (18) and not a party to this matter or proceeding.

On June 2, 2022, I served the foregoing documents, described as:

**ORDER OF SPECIAL MASTER REGARDING THREE APRIL 20, 2022 MOTIONS: (1) TNC'S MOTION TO COMPEL DEPOSITION; (2) TNC'S MOTION TO COMPEL FURTHER RESPONSES TO RFA NOS. 4–7, 76, AND 111 OR DEEM THEM ADMITTED; AND (3) LE-VEL'S DISCOVERY MOTION**

to the following parties:

### SEE ATTACHED MAILING LIST

**(X) BY E-MAIL** I caused the above-referenced document to be transmitted via electronic mail (e-mail) to the parties as listed on this Proof of Service

**( ) BY ELECTRONIC FILING** I caused such document to be sent via electronic service by submitting an electronic version of the document(s) to One Legal, LLC, through the user interface at www.onelegal.com.

**( ) BY FASCIMILE** I caused the above-referenced document to be transmitted via facsimile to the parties as listed on this Proof of Service. The document was transmitted by facsimile transmission and the transmission was reported as complete and without error.

**( ) BY PERSONAL SERVICE** I personally delivered the documents to the persons at the address (es): by leaving the documents at the person (s) office, in an envelope or package clearly labeled to identify the person(s) being served, with a receptionist or an individual in charge of the office.

**( ) BY UNITED STATES PARCEL SERVICE** I am readily familiar with the business' practice for collection and processing of correspondence and mailing with the United States Postal Service; such correspondence would be deposited with the United States Postal Service the same day of deposit with postage thereon fully prepaid at Santa Ana, California in the ordinary course of business

**( ) STATE** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**( ) FEDERAL** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **June 2, 2022,** at Santa Ana, California

Heidi Adams
Judicate West

Downtown Los Angeles Office • 601 S. Figueroa St., Suite 3400 • Los  Angeles, CA 90017 • (213) 223-1 113 • Fax (213) 223-1 114
Sacramento Office • 980 9ᵀᴴ Street, Suite 2200 • Sacramento, CA  95814 • (916) 394-8490 • Fax (916) 394-8495
San Diego Office • 402 West Broadway, Suite 2400 • San Diego, CA  92101 • (619) 814-1966 • Fax (619) 814-1967
San Francisco Office • 100 Pine St., Suite 1950 • San Francisco, CA  94111 • (415) 266-1242 • Fax (415) 266-1243
West Los Angeles Office • 11601 Wilshire Blvd., Suite 2040 • Los  Angeles, CA 90025 • (310) 442-2100 • Fax (310) 442-2125



**Santa Ana Office**
1851 East First Street
Suite 1600
Santa Ana, CA 92705
Phone: (714) 834-1340
Fax: (714) 834-1344

**www.judicatewest.com**

# Case Contact List

as of Thursday, June 2, 2022

**JW Case #: A281487**

## *Case Caption: Thrive Natural Care, Inc., et al. vs. Le-Vel Brands, LLC, et al.*

Thomas E. Dietrich, Esq.
The McArthur Law Firm, P.C.
9465 Wilshire Blvd.
Suite 300
Los Angeles, CA 90064
Phone: (323) 639-4455   Fax:
Email: tom@smcarthurlaw.com
Representing Thrive Natural Care, Inc.


Stephen C. McArthur, Esq.
The McArthur Law Firm, P.C.
9465 Wilshire Blvd.
Suite 300
Los Angeles, CA 90064
Phone: (323) 639-4455   Fax:
Email: stephen@smcarthurlaw.com
Representing Thrive Natural Care, Inc.


Daniel R. Mello, Esq.
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
3300 Hillview Avenue
Palo Alto, CA 94304
Phone: (650) 849-6600   Fax: (650) 849-6666
Email: Daniel.mello@finnegan.com
Representing Le-Vel Brands, LLC


Patrick Rodgers, Esq.
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, Nw
Washington, DC 20001-4413
Phone: (202) 408-4148   Fax: (202) 408-4400
Email: Patrick.Rodgers@finnegan.com
Representing Le-Vel Brands, LLC


Morgan E. Smith, Esq.
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
3300 Hillview Avenue
Palo Alto, CA 94304
Phone: (650) 849-6600   Fax: (650) 849-6666
Email: morgan.smith@finnegan.com
Representing Le-Vel Brands, LLC

Downtown Los Angeles Office ● 601 S. Figueroa Street Suite 4000 ● Los Angeles, CA 90017 ● (213) 223-1113 ● Fax (213) 223-1114
San Diego Office ● 402 W. Broadway Suite 2400 ● San Diego, CA 92101 ● (619) 814-1966 ● Fax (619) 814-1967
San Francisco Office ● 100 Pine Street Suite 1950 ● San Francisco, CA 94111 ● (415) 266-1242 ● Fax (415) 266-1243
West Los Angeles Office ● 11601 Wilshire Blvd Suite 2040 ● Los Angeles, CA 90025 ● (310) 442-2100 ● Fax (310) 442-2125
Sacramento Office ● 980 9th Street Suite 2200 ● Sacramento, CA 95814 ● (916) 394-8490 ● Fax (916) 394-8495



**Santa Ana Office**

1851 East First Street
Suite 1600
Santa Ana, CA 92705
Phone: (714) 834-1340
Fax: (714) 834-1344

**www.judicatewest.com**

Mark S. Sommers, Esq.
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, Nw
Washington, DC 20001-4413
Phone: (202) 408-4148   Fax: (202) 408-4400
Email: mark.sommers@finnegan.com
Representing Le-Vel Brands, LLC


Amanda D. Barrow, Esq.
Kendall Brill & Kelly, LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067
Phone: (310) 556-2700   Fax: (310) 556-2705
Email: abarrow@kbkfirm.com
Representing Le-Vel Brands, LLC


Alan J. Weil, Esq.
Kendall Brill & Kelly, LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067
Phone: (310) 556-2700   Fax: (310) 556-2705
Email: aweil@kbkfirm.com
Representing Le-Vel Brands, LLC

Downtown Los Angeles Office ● 601 S. Figueroa Street Suite 4000 ● Los Angeles, CA 90017 ● (213) 223-1113 ● Fax (213) 223-1114
San Diego Office ● 402 W. Broadway Suite 2400 ● San Diego, CA 92101 ● (619) 814-1966 ● Fax (619) 814-1967
San Francisco Office ● 100 Pine Street Suite 1950 ● San Francisco, CA 94111 ● (415) 266-1242 ● Fax (415) 266-1243
West Los Angeles Office ● 11601 Wilshire Blvd Suite 2040 ● Los Angeles, CA 90025 ● (310) 442-2100 ● Fax (310) 442-2125
Sacramento Office ● 980 9th Street Suite 2200 ● Sacramento, CA 95814 ● (916) 394-8490 ● Fax (916) 394-8495