FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Mark Sommers (*pro hac vice*)
  *mark.sommers@finnegan.com*
Patrick Rodgers (*pro hac vice*)
  *patrick.rodgers@finnegan.com*
901 New York Avenue, NW,
Washington, DC 20001-4413
Telephone: (202) 408-4064
Facsimile: (202) 408-4400

Morgan E. Smith (293503)
  *morgan.smith@finnegan.com*
Daniel R. Mello Jr. (325714)
  *daniel.mello@finnegan.com*
3300 Hillview Avenue
Palo Alto, CA 94304
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

KENDALL BRILL & KELLY LLP
Alan Jay Weil (63153)
  *ajweil@kbkfirm.com*
Amanda D. Barrow (313583)
  *abarrow@kbkfirm.com*
10100 Santa Monica, Suite 1725
Los Angeles, California 90067
Telephone:  (310) 556-2700
Facsimile:  (310) 556-2705

*Attorneys for Defendant and Counterclaim*
*Plaintiff Le-Vel Brands, LLC*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| THRIVE NATURAL CARE, INC.,<br><br>        Plaintiff and Counterclaim Defendant,<br><br>   v.<br><br>LE-VEL BRANDS, LLC,<br><br>        Defendant and Counterclaim Plaintiff. | Case No. 2:21-CV-02022-DOC-KES<br><br>**LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY AND TESTIMONY OF ROBERT E. WALLACE**<br><br>Judge:  Hon. David O. Carter<br>Crtrm:  10A<br>Date:    July 25, 2022<br>Time:    8:30 a.m.<br><br>Action Filed:  March 4, 2021 |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

Please take notice that on July 25, 2022 at 8:30 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable David O. Carter, located in the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, California 92701, Defendant and Counterclaim Plaintiff Le-Vel Brands, LLC will and hereby does move this Court for an order excluding the survey, testimony, and opinions of Thrive Natural Care, Inc. ("TNC")'s survey expert Robert E. Wallace.  Specifically, Le-Vel requests an Order finding: (1) Mr. Wallace failed to adequately replicate the marketplace and backfilled the fatally flawed premise of his survey with data obtained months after designing and conducting his survey and filing an early version of his report in this case during TNC's motion for a preliminary injunction; (2) Mr. Wallace's survey employed a biased and leading product-purchase page line-up that was nothing more than an artificial matching game; (3) Mr. Wallace's survey questions were improperly leading; and (4) Mr. Wallace provided opinions on the ultimate legal issues in this case.  For all these reasons, Mr. Wallace's opinions are fatally flawed and unreliable pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993).

This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Proposed Order, the Declaration of Patrick J. Rodgers (and its exhibits) filed in connection therewith, the files and records in this matter, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 17, 2022.  Declaration of Patrick J. Rodgers ¶ 10.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611                                    2                      Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY
AND TESTIMONY OF ROBERT E. WALLACE

1

2 Dated:  June 27, 2022

3                                                    Morgan E. Smith (SBN 293503)

4                                                    morgan.smith@finnegan.com
                                                     Mark Sommers (pro hac vice)
5                                                    mark.sommers@finnegan.com
                                                     Patrick J. Rodgers (pro hac vice)
6                                                    patrick.rodgers@finnegan.com
                                                     Daniel R. Mello Jr. (SBN 325714)
7                                                    daniel.mello@finnegan.com
                                                     FINNEGAN, HENDERSON,
8                                                    FARABOW, GARRETT & DUNNER,
                                                     LLP
9

10

11                                                   Alan Jay Weil (SBN 63153)
                                                     ajweil@kbkfirm.com
12                                                   Amanda D. Barrow (SBN 313583)
                                                     abarrow@kbkfirm.com
13                                                   KENDALL BRILL & KELLY LLP

14

15                                                   *Attorneys for Le-Vel Brands, LLC*

16

17

18

19

20

21

22

23

24

25

26

27

28

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611                                    3                   Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY
AND TESTIMONY OF ROBERT E. WALLACE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **<u>TABLE OF CONTENTS</u>**

I.     INTRODUCTION ................................................................................................1

II.    RELEVANT FACTUAL BACKGROUND ........................................................1

III.   ARGUMENT.......................................................................................................7

   A.   The *Daubert* Standard...................................................................................7

   B.   The Wallace Moving Report Is Fatally Flawed, Unreliable, and Irrelevant ...9

      1.   The Survey Design Used in the Wallace Moving Report Failed to Replicate Marketplace Realities and Was Backfilled with Data Obtained Months After the Survey Was Designed, Conducted, and First Reported to This Court ..............................................................................................................9

      2.   The Wallace Moving Report Employed a Biased and Leading Line-Up that Was Nothing More than an Artificial Matching Game.............................15

      3.   The Wallace Moving Report Asks Impermissibly Leading Questions.....19

      4.   The Court Should Preclude Mr. Wallace's Unsupported Opinions and Improper Testimony on the Ultimate Issues of Likelihood of Confusion ........22

IV.    CONCLUSION..................................................................................................24

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611

i

LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY
AND TESTIMONY OF ROBERT E. WALLACE

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Allstate Ins. Co. v. Kia Motors America, Inc.*,
   No. 16-cv-06108, 2017 WL 10311211 (C.D. Cal. Sept. 20, 2017) ............... 22, 23

*American Footwear Corp. v. General Footwear Co.*,
   609 F.2d 655 (2d Cir. 1979) ...................................................................... 10, 12, 13

*American Luggage Works, Inc. v. U.S. Trunk Co.*,
   158 F. Supp. 50 (D. Mass. 1957) ..................................................................... 10, 12

*AMF, Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979) ................................................................................. 23

*Arche, Inc. v. Azaleia, U.S.A., Inc.*,
   882 F. Supp. 334 (S.D.N.Y. 1995) .......................................................................... 8

*Bayoh v. Afropunk LLC*,
   No. 18-cv-5820, 2020 WL 6269300 (S.D.N.Y. Oct. 26, 2020) .......................... 20

*Bobrick Washroom Equipment, Inc. v. Am. Specialties, Inc.*,
   No. 10-cv-6938, 2012 WL 3217858 (C.D. Cal. Aug. 8, 2012)........................... 18

*Brighton Collectibles, Inc. v. RK Texas Leather Manufacturing*,
   923 F. Supp. 2d 1245 (S.D. Cal. 2013) ...............................................9, 16, 17, 19

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
   251 F.3d 1252 (9th Cir. 2001) ................................................................................. 8

*Daubert v. Merrell Dow Pharmaceuticals*,
   509 U.S. 579 (1993) ................................................................................................. 7

*Durrset Amigos, Ltd. v. Amigos Meat Distributors*,
   Cancellation No. 92060896, 2017 TTAB LEXIS 411 (TTAB Nov.
   3, 2017) .....................................................................................................17, 18, 19

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management,
   Inc.*,
   618 F.3d 1025 (9th Cir. 2010) ................................................................................. 8

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

*Hangarter v. Provident Life & Accident Insurance Co.*,
  373 F.3d 998 (9th Cir. 2004) ................................................................. 22

*Hornady Manufacturing Co. v. Doubletap, Inc.*,
  746 F.3d 995 (10th Cir. 2014) ............................................................... 21

*Jalinski Advisory Group, Inc. v. JBL Financial Services, Inc.*,
  No. 19-cv-1914, 2022 WL 1165793 (E.D. Mo. Apr. 20, 2022) ........................... 24

*Kournikova v. Gen. Media Communications, Inc.*,
  278 F. Supp. 2d 1111 (C.D. Cal. 2003) .................................................... 8

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ......................................................................... 7

*M2 Software, Inc. v. Madacy Entertainment*,
  421 F.3d 1073 (9th Cir. 2005) .............................................................. 8

*Mattel, Inc. v. MCA Records, Inc.*,
  28 F. Supp. 2d 1120 (C.D. Cal. 1998) ..................................................... 19

*Nationwide Transport Finance v. Cass Information Systems, Inc.*,
  523 F.3d 1051 (9th Cir. 2008) ............................................................. 22

*Patsy's Italian Restaraunt, Inc. v. Banas*,
  531 F. Supp. 2d 483 (E.D.N.Y. 2008) ..................................................... 20

*Pinnacle Advertising and Marketing Group, Inc. v. Pinnacle
  Advertising and Marketing Group, LLC*,
  No. 18-cv-81606, 2019 WL 7376782 (S.D. Fla. Sept. 26, 2019) ........ 1, 20, 21, 22

*Procter & Gamble Co. v. Ultreo, Inc.*,
  574 F. Supp. 2d 339 (S.D.N.Y. 2008) ..................................................... 19

*Reinsdorf v. Skechers U.S.A.*,
  922 F. Supp. 2d 866 (C.D. Cal. 2013) .................................................. 8, 18

*Saxon Glass Technologies, Inc. v. Apple Inc.*,
  393 F. Supp. 3d 270 (W.D.N.Y. 2019), *aff'd* 824 F. App'x 75 (2d
  Cir. 2020) .................................................................................. 21

*Scott Fetzer Co. v. House of Vacuums, Inc.*,
  381 F.3d 477 (5th Cir. 2004) ......................................................... 8, 19, 21

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611

iii

*Simon Property Group L.P. v. mySimon, Inc.*,
    104 F. Supp. 2d 1033 (S.D. Ind. 2000) ................................................................ 9

*SquirtCo. v. Seven-Up Co.*,
    628 F.2d 1086 (8th Cir. 1980) .............................................................................. 15

*Sunbeam Corp. v. Equity Industries Corp.*,
    635 F. Supp. 625 (E.D. Va. 1986) ................................................................... 16, 17

*Troublé v. Wet Seal, Inc.*,
    179 F. Supp. 2d 291 (S.D.N.Y. 2001) ................................................................. 10

*Valador, Inc. v. HTC Corp.*,
    242 F. Supp. 3d 448 (E.D. Va. 2017) ............................................................. 19, 21

*Water Pik, Inc. v. Med-Sys, Inc.*,
    726 F.3d 1136 (10th Cir. 2013) ........................................................................... 19

*YKK Corp. v. Jungwoo Zipper Co., Ltd.*,
    213 F. Supp. 2d 1195 (C.D. Cal. 2002).............................................................. 22

**Rules**

FED. R. EVID. 702................................................................................................ 7, 8, 9

**Other Authorities**

5 Louis Altman, *Callmann on Unfair Competition, Trademarks and*
    *Monopolies* § 21:9 (4th ed. 2022)...................................................................... 10

Federal Judicial Center, *Manual For Complex Litigation* § 11.493 (4th
    ed. 2004) ................................................................................................................ 8

J.B. Swann, *Likelihood of Confusion Studies and the Straightened*
    *Scope of Squirt*, 98 Trademark Rptr. 739, 752 (2008) ........................................ 15

4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair*
    *Competition* § 23:2.75(5th ed. 2022)................................................................. 22

6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair*
    *Competition* § 32:163 (5th ed. 2022) ................................................................. 10

6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair*
    *Competition* § 32:172 (5th ed. 2022)................................................................. 15

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611

iv

Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY AND TESTIMONY OF ROBERT E. WALLACE

6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:174.50 (5th ed. 2022)..............................................................15

*Tademark and Deceptive Advertising Survey: Law, Science, and Design*, 1st ed., Diamond, S.S. & Swann, J.B., American Bar Association ....................................................................................................16

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611

v

Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY AND TESTIMONY OF ROBERT E. WALLACE

## I.   INTRODUCTION

To support its trademark infringement claims, Plaintiff and Counterclaim Defendant Thrive Natural Care, Inc. ("TNC") offers the expert report of Robert E. Wallace, which consists of both a likelihood of confusion survey and Mr. Wallace's analysis of the ultimate issue of likelihood of confusion.  Mr. Wallace's survey and opinions are fatally flawed, not in accordance with accepted principles, and should be excluded because (1) Mr. Wallace failed to adequately replicate the marketplace and backfilled the flawed premise of his survey with data obtained months after designing and conducting his survey and filing an early version of his report in this case during TNC's motion for a preliminary injunction; (2) Mr. Wallace's survey employed a biased and leading product-purchase page line-up that was nothing more than an artificial matching game; (3) Mr. Wallace's survey questions were improperly leading; and (4) Mr. Wallace provided opinions on the ultimate legal issues in this case.  Mr. Wallace's survey should be excluded just as a prior survey he designed and conducted with like flaws was excluded in *Pinnacle Advertising and Marketing Group, Inc. v. Pinnacle Advertising and Marketing Group, LLC*, No. 18-cv-81606, 2019 WL 7376782  (S.D. Fla. Sept. 26, 2019).  And Mr. Wallace's opinions on the ultimate issues should be excluded under prevailing Ninth Circuit precedent.

## II.   RELEVANT FACTUAL BACKGROUND

Plaintiff hired Mr. Robert E. Wallace of Best of Breed Branding Consortium to "conduct an empirical study designed to examine whether or not consumers, or potential consumers of skin care products who purchase such items on the Internet would be confused between 'Thrive' branded skin care products manufactured by the Plaintiff and "Thrive Skin" branded skin care products manufactured by the Defendant."  (Declaration of Patrick J. Rodgers, executed June 27, 2022 ("Rodgers Decl."), Ex. 1, Wallace Moving Report ¶ 1, 9.)  Mr. Wallace's current report, including the survey conducted, will be referred to as the "Wallace Moving Report."

To do this, Mr. Wallace designed and conducted a survey of 600 women and

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611                                    1                    Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY
AND TESTIMONY OF ROBERT E. WALLACE

men between the ages of 18 and 65.  (*Id.* at ¶ 37.)  To qualify for the survey, respondents needed to have purchased skin care products online in the past 6 months and planned to do so again in the next 6 months.  (*Id.*)  Once qualified, survey respondents were shown the following webpages for four products:





**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611

2

Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY AND TESTIMONY OF ROBERT E. WALLACE

1
2
3
4
5
6
7
8



9
10
11
12
13
14
15
16
17
18



19  (*Id.* at ¶ 56, Appendix 1.)  Prior to being shown these images, the respondents were

20  told that they were "about to see images of four products, each featured as you would

21  see them when purchasing them" and were told to "view the following images as if

22  you were shopping for these products with the possible intent to purchase them." (*Id.*)

23  According to Mr. Wallace, this lead-in statement, was important to the results of his

24  survey.  (Rodgers Decl., Ex. 2, Wallace Dep. Tr. at 96:10-17.)  Despite this lead-in

25  statement, Mr. Wallace failed to inform respondents how they would have arrived at

26  the images shown in the stimuli if they were shopping.  (*Id.* at 97:3-6, 98:7-13, 108:24-

27  109:7.)  Instead, the stimuli presumes that respondents have already arrived at the

28  particular website images shown, and presumably arrived at such pages after an online

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611                                    3                    Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY
AND TESTIMONY OF ROBERT E. WALLACE

search engine search.  (*Id.*)

Mr. Wallace claims to have chosen this format for his survey to "replicate the consumer experience," and he does not believe he could have designed his survey in a way that better replicated the purchase experience.  (Rodgers Decl., Ex. 1, Wallace Moving Report ¶ 30; Rodgers Decl., Ex. 2, Wallace Dep. Tr. at 34:4-8, 80:8-12, 81:18-23, 83:12-84:1, 108:15-19.)  Although Mr. Wallace believes he could not have replicated the purchase experience any better, he admits that he omitted the URLs from the webpages shown, did not show the entire webpages, and for Le-Vel specifically, that its takes at least "5 to 6" clicks to get from online search results to the image shown to consumers as the stimulus.  (*Id.* at 100:2-9, 102:12-23, 105:13-106:4, 106:16-24; Rodgers Decl., Ex. 3, Butler Rebuttal Report ¶¶ 46-48.)

After asking each respondent to confirm the products shown were skin care products, Mr. Wallace then showed respondents the products in pairs (amounting to six different pairings) and asked the following question after each pair:

Do you believe that these two products come from the same company/manufacturer/source?

- Yes, same company/manufacturers/source
- No, different companies/manufacturers/sources
- Not sure/don't know

(Rodgers Decl., Ex. 1, Wallace Moving Report ¶¶ 57-58.)  Respondents were then asked, "Why do you say that?"  (*Id.* at ¶ 59.)  Only if a respondent indicated that they thought the products were from different companies did Mr. Wallace then ask the following follow-up question:

If you said different companies, do you believe that these two companies are affiliated, connected, or associated with each other?

- Yes, companies are affiliated, connected or associated
- No, companies are not affiliated, connected or associated
- Not sure/don't know

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611

4

Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY AND TESTIMONY OF ROBERT E. WALLACE

1   (*Id.* at ¶ 60.)

2   This survey was conducted between February 8 and 20, 2021.  (*Id.* at ¶ 27;

3   Rodgers Decl., Ex. 2, Wallace Dep. Tr. at 57:14-58:12, 72:22-73:7, 146:1-15.)

4   Based on these questions, Mr. Wallace purportedly found that 411 of his total

5   600 respondents thought that TNC's and Le-Vel's product came from the same

6   company (397, or 66.2%) or believe they were from affiliated sources (14 or 2.3%),

7   which Mr. Wallace claimed yielded a total of 68.5% confusion.  (Rodgers Decl., Ex.

8   1, Wallace Moving Report ¶¶ 66, 68, 70.)   Mr. Wallace also averaged the same

9   company/affiliation between TNC and WLDKAT and TNC and Ursa Major to net his

10  confusion estimate.  (*Id.* at ¶ 72.)  Specifically, Mr. Wallace reported that 11% of

11  respondents believed that TNC's product and Ursa Major were from the same source

12  or were affiliated, and 14.8% of respondents believed that TNC's product and

13  WLDKAT's were from the same source or were affiliated, which averaged to 12.9%.

14  (*Id.*)   Mr. Wallace then subtracted the average of 12.9% from the 68.5% to arrive at

15  a net confusion rate of 55.6% percent.  (*Id.* at ¶ 73.)

16  Based on this information, Mr. Wallace concluded that "there is significant

17  actual confusion by consumers confusing the Plaintiff's well-established 'Thrive'

18  brand with the Defendant's 'Thrive Skin' brand," and further concluded "that this

19  level represents significant confusion above the noise level and suggests that, when

20  purchasing, consumers are likely to confuse the Plaintiff's skin care products with the

21  Defendant's skin care products."  (*Id.* at ¶¶ 7, 80.)

22  Mr. Wallace also offers opinions on the ultimate issues of the case.

23  Specifically, Mr. Wallace opines that "the Plaintiff has strongly enforced its THRIVE

24  mark, the products in question are the same or closely related types of goods, there

25  are overlapping marketing channels for the parties' skin care products, and purchasers

26  of the products in question exercise relatively low degree of consumer care."  (*Id.* at

27  ¶¶ 8, 21, 23-26, 81.)

28  The Wallace Moving Report is *not* the first report provided by Mr. Wallace in

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611                                                    5                              Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY
AND TESTIMONY OF ROBERT E. WALLACE

1  this case.  When TNC moved for a preliminary injunction on March 5, 2021 (*see* Dkt.
2  8), it submitted a nearly identical report from Mr. Wallace in support of its motion for
3  preliminary injunction.  (*See* Dkt. 8-4; *see also* Rodgers Decl., Ex. 4, Wallace First
4  Report.)  Mr. Wallace's report and survey submitted in connection with TNC's
5  motion for preliminary injunction will be referred to as the "Wallace First Report."

6      The survey that Mr. Wallace conducted as part of the Wallace First Report is
7  the *identical* survey conducted as part of the Wallace Moving Report.  (*Compare*
8  Rodgers Decl., Ex. 1, Wallace Moving Report *with* Rodgers Decl., Ex. 4, Wallace
9  First Report.)  Mr. Wallace admits he did not re-run his survey in the Wallace Moving
10  Report and simply re-used the data that was submitted in the Wallace First Report.
11  (Rodgers Decl., Ex. 2, Wallace Dep. Tr. at 29:18-22, 57:14-58:12, 72:22-73:7, 146:1-
12  15; *compare* Rodgers Decl., Ex. 1, Wallace Moving Report ¶ 27 *with* Rodgers Decl.,
13  Ex. 4, Wallace First Report ¶ 23.)

14      While Mr. Wallace in fact conducted his survey between February 8 and 20,
15  2021 (Rodgers Decl., Ex. 1, Wallace Moving Report ¶ 27; Rodgers Decl., Ex. 4,
16  Wallace First Report ¶ 23), several significant and damning occurrences happened
17  *after* Mr. Wallace conducted his survey.  First, prior to conducting his February 2021
18  survey and choosing the Le-Vel stimulus, Mr. Wallace had not gone through all the
19  steps consumers must take to arrive at and purchase one of Le-Vel's products.
20  (Rodgers Decl., Ex. 2, Wallace Dep. Tr. at 31:24-33:2, 33:9-19.)  Instead, Mr. Wallace
21  did so for the first time mere days before his June 2022 deposition (on either June 4
22  or 5, 2022), which was well over a year after he designed and conducted his survey.
23  (*Id.*)  Second, the internet searches that Mr. Wallace used to determine his survey
24  would "replicate the consumer experience" *were not performed* until many months
25  *after* he designed, conducted, and reported his survey finding in the March 2, 2021
26  Wallace First Report.  (Rodgers Decl., Ex. 1, Wallace Moving Report ¶¶ 30-32 and
27  n.20; Rodgers Decl., Ex. 2, Wallace Dep. Tr. at 53:14-20, 54:6-55:7, 58:6-12, 58:18-
28  59:6, 59:12-14, 60:16-61:3, 61:22-62:6, 62:10-19, 64:23-65:7, 66:6-22, Dep. Exs. 4-

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611                                        6                    Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY
AND TESTIMONY OF ROBERT E. WALLACE

7.)  Indeed, none of these searches were cited, let alone even mentioned, in the Wallace First Report.  (*See* Rodgers Decl., Ex. 4, Wallace First Report.)  During his deposition, Mr. Wallace admitted, as he must, that the online search results were important to know *prior to designing his survey*.  (Rodgers Decl., Ex. 2, Wallace Dep. Tr. at 73:22-74:4.)

For both the Wallace Moving Report and the Wallace First Report, Mr. Wallace testified that his opinions and underlying facts were fully expressed in each report, and that Mr. Wallace was not prevented from expressing any opinions or relying on any facts not otherwise included in either report.  (*Id.* at 21:13-22:14, 23:22-24:18, 28:19-17.)  Mr. Wallace further testified that he did not want to make any corrections to either the Wallace Moving Report or the Wallace First Report.  (*Id.* at 24:19-21, 29:23-30:1.)

Le-Vel's survey expert Sarah Butler submitted a critique of the Wallace First Report on March 22, 2021.  (Rodgers Decl., Ex. 6, Butler First Rebuttal Report.)  Ms. Butler also prepared a rebuttal report on May 27, 2022 to the Wallace Moving Report.  (Rodgers Decl., Ex. 3, Butler Rebuttal Report.)  Mr. Wallace does not remember ever having reviewed either Ms. Butler's March 22, 2021 critique or her May 27, 2022 rebuttal of Mr. Wallace's reports.  (Rodgers Decl., Ex. 2, Wallace Dep. Tr. at 145:12-146:1.)

## III.   ARGUMENT

### A.   The *Daubert* Standard

The admissibility of expert testimony is governed by Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993), which requires the Court to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  Under Rule 702 and the Supreme Court's decisions in *Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), opinion testimony by a qualified expert is admissible if it will assist the trier of fact to understand the evidence or determine a fact in issue, and if (1) the testimony is

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611                                 7                  Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY AND TESTIMONY OF ROBERT E. WALLACE

based on sufficient facts or data, (2) it is the product of reliable principles and methods, and (3) the witness applied the principles and methods reliably to the facts of the case.  FED. R. EVID. 702.

As it relates to confusion surveys, "[t]he first step in the court's analysis of any survey . . . is to determine whether the survey is admissible, relevant, and conducted according to accepted principles." *Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866, 878 (C.D. Cal. 2013) (citing *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001)); *see also Kournikova v. Gen. Media Commc'ns, Inc.*, 278 F. Supp. 2d 1111, 1125 (C.D. Cal. 2003) (finding confusion surveys admissible if "conducted according to the accepted principles"; excluding flawed survey).[1]  "The court must, therefore, determine whether a preponderance of the evidence establishes that the reasoning or methodology underlying expert testimony is scientifically valid." *Reinsdorf*, 922 F. Supp. 2d at 878 (citing *Daubert*, 509 U.S. at 593).  "Unless survey evidence is conducted according to accepted principles, it is not admissible in the first instance." *Id.* (citing *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010)); *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1087 (9th Cir. 2005) (affirming exclusion of survey that was not conducted according to generally accepted principles, among other errors).[2]  "The court need not

---

[1] The Manual for Complex Litigation lists seven factors courts should consider in assessing the adequacy of a survey's foundation and reliability: (1) Was the population properly chosen and defined? (2) Was the sample chosen representative of that population? (3) Was the data gathered accurately reported? (4) Was the data analyzed in accordance with accepted statistical principles? (5) Were the questions asked clear and not leading? (6) Was the survey conducted by qualified persons following proper interview procedures? and (7) Was the process conducted so as to ensure objectivity?  Federal Judicial Center, *Manual For Complex Litigation* § 11.493 (4th ed. 2004).  As detailed in this motion, the Wallace Survey fails to satisfy several of these factors.

[2] *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 488 (5th Cir. 2004) (holding that "serious flaws in a survey will make any reliance on that survey unreasonable"); *Arche, Inc. v. Azaleia, U.S.A., Inc.*, 882 F. Supp. 334, 336 (S.D.N.Y.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY
AND TESTIMONY OF ROBERT E. WALLACE

and should not respond reflexively to every criticism by saying it merely 'goes to the weight' of the survey rather than its admissibility." *Simon Prop. Grp. L.P. v. mySimon, Inc.*, 104 F. Supp. 2d 1033, 1039 (S.D. Ind. 2000) (excluding survey results under Rule 702 because they "have little or no probative value on the questions relevant to the case," and under Rule 403 because "the results are likely to create unfair prejudice, confuse the issues, waste time, and mislead the jury."). Sometimes the "survey's design [is] so blatantly biased that the results are unreliable" and "inadmissible [] on the likelihood of confusion." *Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, 923 F. Supp. 2d 1245, 1257(S.D. Cal. 2013) (excluding flawed survey). That is so here.

### B.   The Wallace Moving Report Is Fatally Flawed, Unreliable, and Irrelevant

#### 1.   The Survey Design Used in the Wallace Moving Report Failed to Replicate Marketplace Realities and Was Backfilled with Data Obtained Months After the Survey Was Designed, Conducted, and First Reported to This Court

To be valid, a survey must come as close as possible to replicating the manner in which people encounter the parties' trademarks in the marketplace. As Professor McCarthy explains:

> [A] survey is designed to prove the state of mind of a prospective purchaser. . . . The closer the survey methods mirror the situation in which the ordinary person would encounter the trademark, the greater the evidentiary weight of the survey results.

1995) ("While methodological defects in surveys usually go to the weight rather than the admissibility of the evidence, there comes a point where the probative value of the survey is exceeded substantially by its prejudicial effect and potential for confusion and waste of time.").

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611                                9                Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY
AND TESTIMONY OF ROBERT E. WALLACE

6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:163 (5th ed. 2022); see 5 Louis Altman, *Callmann on Unfair Competition, Trademarks and Monopolies* § 21:9 (4th ed. 2022) ("To be of probative value on the issue of confusion in the marketplace, the survey's conditions must approximate market conditions."); *Troublé v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 308 (S.D.N.Y. 2001) (explaining that "a survey must use a stimulus that, at a minimum, tests for confusion by roughly simulating marketplace conditions").

Following these fundamental principles, courts have excluded surveys that, like the Wallace Moving Report, do not accurately replicate how the marks are presented to consumers. *See Am. Footwear Corp. v. Gen. Footwear Co.,* 609 F.2d 655, 660 n.4 (2d Cir. 1979) (affirming rejection of survey based on the "critical defect" that it did not replicate "actual marketing conditions" because it showed defendant's allegedly infringing poster outside of its normal environment); *Troublé*, 179 F. Supp. 2d at 308 (excluding survey for improper stimulus, among other things, because "a survey must use a stimulus that, at a minimum, tests for confusion by roughly simulating marketplace conditions . . . such as pictures, advertisements or clothing, that directly expose potential consumers to the products or the marks in question"); *Am. Luggage Works, Inc. v. U.S. Trunk Co.*, 158 F. Supp. 50, 51-53 (D. Mass. 1957).

Mr. Wallace conducted an internet search to support his survey design. Specifically, the Wallace Moving Report provides that the parties' "websites appear near or adjacent to each other in Google search results for relevant terms such as 'thrive skincare,' and their products can be found together on eBay . . ., and on other third party sales sites like Google Shopping." (Rodgers Decl., Ex. 1, Wallace Moving Report ¶ 22.)  In particular, Mr. Wallace reports relying upon four searches that he purportedly conducted on eBay, Google Shopping, and Reviewdermatologists.com in June, August, and/or September 2021 to support the design of his survey (including the chosen stimuli) in order to "replicate the consumer experience." (Rodgers Decl., Ex. 1, Wallace Moving Report ¶¶ 30-32 and n.20; Rodgers Decl., Ex. 2, Wallace Dep.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Tr. at 53:14-20, 54:6-55:7, 58:6-12, 58:18-59:6, 59:12-14, 60:16-61:3, 61:22-62:6, 62:10-19, 64:23-65:7, 66:6-22, Dep. Exs. 4-7.)  Mr. Wallace further admits that these online search results were important to know prior to designing his survey.  (Rodgers Decl., Ex. 2, Wallace Dep. Tr. at 73:22-74:4.)

But Mr. Wallace could not have relied on these searches in designing his survey and selecting his stimuli.  By the time Mr. Wallace had conducted his internet searches in June, August, and/or September 2021, Mr. Wallace had *already designed his survey, selected his stimuli, and completed* his survey in February 2021, and reported the findings of that survey to this Court in the Wallace First Report in early March 2021.  (Rodgers Decl., Ex. 1, Wallace Moving Report ¶ 27.)  In fact, none of these searches cited in the Wallace Moving Report are cited, let alone even mentioned, in the Wallace First Report because Mr. Wallace's alleged internet searches for "relevant terms"[3] were done *afterwards* in the effort to hide the fatally flawed nature of his earlier survey and earlier report.  (*See* Rodgers Decl., Ex. 4, Wallace First Report.) After Mr. Wallace completed the survey in February 2021 and the Wallace First Report was executed and filed with this Court in March 2021 (and even assuming Mr. Wallace did not review Ms. Butler's March 22, 2021 critique of his first report as he testified), Mr. Wallace obviously detected the fatal flaw of his pre-supposed efforts to realistically replicate the marketplace in his survey.  As an *ex post facto* attempt to hide the inherently flawed survey design and tested stimuli, Mr. Wallace backfilled the gaping hole of his survey with *postdated* searches that he later testified were the foundational basis for his survey design.  (Rodgers Decl., Ex. 2, Wallace Dep. Tr. at 73:22-74:4.)  That, of course, is untrue, as Mr. Wallace's searches were done *after* he designed, conducted, and first reported to this Court his survey in March 2021.

---

[3] While Mr. Wallace's report says his searches were of "relevant terms such as 'thrive skincare,'" the searches that Mr. Wallace actually relied upon were limited to the words "thrive skin" and no other terms, including "thrive skincare."  (*See* Rodgers Decl., Ex. 2, Wallace Dep. Exs. 4-7.)

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611

11

Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY AND TESTIMONY OF ROBERT E. WALLACE

As for the cherry-picked stimulus Mr. Wallace selected for Le-Vel's product-purchase page, the decision in *American Footwear* is particularly instructive.  There, respondents in a confusion survey were shown one of defendant's promotional posters for the allegedly infringing "Bionic Boot" mark, and the respondents were asked, "With whom or what do you associate the term Bionic Boot?"  *Am. Footwear*, 609 F.2d at 660, n.4.  Over 74% of the respondents answered that they associated the mark with the plaintiff.  *Id.*  Despite that, the district court excluded the survey as having a "critical defect" because it did not replicate "actual marketing conditions."  *Id.* Specifically, whenever the defendant displayed the advertising poster that was shown as a stimulus, it was always "shown in an environment replete with references to [defendant] as the seller of the boot."  *Id.*  "However, once removed from this environment, the poster differed from [the defendant's] other "Bionic Boot" advertisements in that the poster itself did not contain any references to American."  *Id.*  Based on this failure to adequately replicate the marketplace in the consumer survey, the district court excluded the survey and the Second Circuit affirmed that decision.  *Id.*

Further, the decision in *American Luggage* is often cited by courts and commentators for the principle that a survey must replicate marketplace conditions. In that case, the survey was conducted by showing respondents photographs of the parties' suitcases to determine both the level of recognition of the plaintiff's bag design and the likelihood of confusion with the defendant's design.  *Am. Luggage*, 158 F. Supp. at 51-52.  The court found that the photographs "were not true representations of the bags" because "[t]wo of them entirely failed and one of them partially failed to show the manufacturer's name tags which [were] prominent in several places on the bags themselves."  *Id.* at 52-53.  The Court found these distortions "fatal" to the survey's results on the issue of confusion because the fact that the relevant purchasers (in that case, retail dealers) do not recognize (or confuse) unlabeled bags is not an indication that they would not recognize (or confuse) labeled

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611                                     12                    Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY
AND TESTIMONY OF ROBERT E. WALLACE

1    bags.  *Id.* at 53.

2        Here, as explained by Ms. Butler in detail in her rebuttal report to the Wallace
3    Moving Report, the Wallace Moving Report irreparably failed to replicate the actual
4    marketplace conditions in which a consumer would encounter the tested Le-Vel
5    stimulus.  (*See* Rodgers Decl., Ex. 3, Butler Rebuttal Report ¶¶ 46-50.)  First, Mr.
6    Wallace does not show Le-Vel's THRIVE SKIN webpage in its entirety, instead
7    including a snippet of the website omitting all the many different source identifiers
8    identifying Le-Vel as the producer of the product.  (*Compare* Rodgers Decl., Ex. 1,
9    Wallace Moving Report ¶ 56 at Image 2 *with* Rodgers Decl., Ex. 5, LE-
10   VEL_00021351-21353.)  Aside from this truncated and misrepresentative snippet
11   from Le-Vel's website, Mr. Wallace also misrepresents the actual market conditions
12   and manner in which potential purchasers might encounter Le-Vel's products.
13   Critically, as Ms. Butler explains and Mr. Wallace failed to explain, the image chosen
14   as the Le-Vel stimulus was not public facing.  For a consumer to get to that page, they
15   first needed to click through numerous different pages on Le-Vel's website to
16   navigate from the public-facing THRIVE SKIN product page (attached as Exhibit 7
17   to the Rodgers Decl.) to the image Mr. Wallace used as a stimulus for Le-Vel.  (*See*
18   Rodgers Decl., Ex. 3, Butler Rebuttal Report ¶ 48.)  During this click-through process
19   on Le-Vel's website, consumers would be exposed to numerous Le-Vel source
20   identifiers, including Le-Vel's LE-VEL maker's mark and Le-Vel's other THRIVE-
21   branded products—all of which Mr. Wallace *admitted*.  (Rodgers Decl., Ex. 2,
22   Wallace Dep. Tr. at 102:12-13, 105:13-106:4; Rodgers Decl., Ex. 3, Butler Rebuttal
23   Report ¶¶ 48-49.)  It is thus of no surprise that Mr. Wallace was completely unaware
24   of the path to purchase through Le-Vel's website and that he failed to accurately
25   replicate it in the survey he conducted in February 2021.  As Mr. Wallace testified,
26   he never actually purchased Le-Vel's products and he never once went through the
27   entire Le-Vel purchase process until June 4 or 5, 2022—*well over a year after he*
28   *designed and conducted his survey*.  (Rodgers Decl., Ex. 2, Wallace Dep. Tr. at 31:24-

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY
AND TESTIMONY OF ROBERT E. WALLACE

33:2, 33:9-19.)

Those critical omissions[4] on how one actually encounters Le-Vel's THRIVE SKIN product-purchase page in the actual marketplace make the tested stimulus a contextually misleading comparison to the other three products—purchase page stimuli (TNC, WLDKAT, and Ursa Major), where potential purchasers can arrive at those pages directly from an internet search engine result. This is no different than in *American Footwear* and *American Luggage*, where the survey expert misrepresented the actual marketplace by removing crucial source-identifying information from the tested stimulus. Had Mr. Wallace properly replicated the marketplace, respondents would have been exposed to scores of different source identifiers (as they would have been in the *American Footwear* case) that would have replicated a realistic and accurate shopping experience for potential purchasers in the actual marketplace, which Mr. Wallace admits was his goal. (Rodgers Decl., Ex. 1, Wallace Moving Report ¶ 30; Rodgers Decl., Ex. 2, Wallace Dep. Tr. at 34:4-8, 80:8-12, 81:18-23, 83:12-84:1, 108:15-19.)

Mr. Wallace backfilled the Wallace Moving Report with foundational data that did not exist at the time he designed his survey. Further, Mr. Wallace used a product-purchase page for Le-Vel that was contextually divorced from the realities of the real-world marketplace. As such, Wallace's survey is fatally flawed and warrants exclusion.

---

[4] Omitting the process that a consumer must engage in to get to the THRIVE SKIN point of purchase is particularly egregious considering that the respondents were given a lead-in question telling them that the products were featured "as you would see them when purchasing them" (a question Mr. Wallace believes to be "very important") and that respondents would assume from the lead-in question and stimuli that such product purchase pages could be reached from a search engine query—an assumption that is fundamentally false for Le-Vel. (Rodgers Decl. Ex. 1, Wallace Moving Report ¶ 56; Rodgers Decl., Ex. 2, Wallace Dep. Tr. at 96:10-17, 97:3-6, 98:7-13, 108:24-109:7.)

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611

14

Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY AND TESTIMONY OF ROBERT E. WALLACE

**2.     The Wallace Moving Report Employed a Biased and Leading Line-Up that Was Nothing More than an Artificial Matching Game**

Mr. Wallace claims that his survey is based on an accepted methodology—the *Squirt* methodology initially adopted by the Eighth Circuit in *SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086, 1089 (8th Cir. 1980).  The inherent and leading biases that come with a *Squirt* survey have been well-documented.  *See* J.B. Swann, *Likelihood of Confusion Studies and the Straightened Scope of Squirt*, 98 Trademark Rptr. 739, 752 (2008) ("Historically, . . . Squirt studies have been rejected because they utilize closed-ended questions, and opprobrium is likely to continue with respect to such questions that have a clearly 'leading' effect or to a Squirt test without a control cell."); 6 *McCarthy* § 32:174.50 ("A continuing challenge raised against the Squirt method is that is [sic] inherently and improperly leading because it tells the survey respondents about a senior user's trademark they are unfamiliar with.") (collecting cases).  Rather than guard against these inherent biases, the Wallace Moving Report exacerbated them by using a suggestive and leading product line-up that forced respondents to compare pairs of products and question potential relationships between these pairs one at a time, which made the survey a "matching game" and not probative of consumer confusion (the issue allegedly tested).

As Ms. Butler explains in her critique of the Wallace Moving Report, "a poorly designed *Squirt* survey [like the one employed by Mr. Wallace here] . . . generates inflated estimates biased by demand effects[5]" by "lead[ing] respondents to look for associations between products that they otherwise might not."  (Rodgers Decl., Ex. 3, Butler Rebuttal Report ¶ 39.)  By showing the respondents products in pairs followed

---

[5] "'Demand Effects' in a survey are produced when respondents use cues from the survey procedures and questions to infer the purpose of the survey and identify the 'correct' answers."  6 *McCarthy* § 32:172 (citation omitted).

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY
AND TESTIMONY OF ROBERT E. WALLACE

by a question asking about whether the two products are related, the Wallace Moving Report "demands" that respondents look for similarities between those two products, suggesting that the respondent should look for some likely relationship, resulting in respondents searching for any similarity as a justification.  (*Id.* at ¶ 40.)

That is precisely what the Wallace Moving Report does here.  In a series of paired comparisons where a respondent only sees two products at a time before being asked if those products are related, Le-Vel's THRIVE SKIN product "stood out like a bearded man in a line-up with four clean-shaven men" as the only other product (in addition to TNC's) bearing THRIVE in the name.  *See Sunbeam Corp. v. Equity Indus. Corp.*, 635 F. Supp. 625, 634 (E.D. Va. 1986).  Whether consumers actually believed Le-Vel's THRIVE SKIN product was related to TNC's or not, the Wallace Moving Report begged consumers to say they were related because Le-Vel and TNC's products were the most obvious match, not because consumers actually believed they were related.

As Ms. Butler explains, the paired format that the Wallace Moving Report uses is known to be biased.  (Rodgers Decl. Ex. 2, ¶ 41 n.53 (citing Swann, J.B. (2012) "Likelihood of Confusion," in *Tademark and Deceptive Advertising Survey: Law, Science, and Design*, 1st ed., Diamond, S.S. & Swann, J.B., American Bar Association, p. 54) ("As to Squirt, the traditional format, with only two stimuli, often triggers unacceptable demand effects.")).  And courts regularly exclude surveys that use a matching game that suggests the correct answer, like the Wallace Moving Report here.

For example, in *Brighton*, the court found that the expert's likelihood of confusion survey using the *Squirt* methodology was "inadmissible . . . on the likelihood of confusion" and "so blatantly biased that the results are unreliable." 923 F. Supp. 2d at 1257.  In that survey, the expert showed participants four of plaintiff's handbags, two of which were black and red and all of which had large heart ornaments. *Id.* "Next, [the expert] showed participants four similar handbags made

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611                                                          Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY AND TESTIMONY OF ROBERT E. WALLACE

by other manufacturers.  Yet, only the [d]efendant's handbag was two-color (black and brownish-red) with heart decorations." *Id.*  "Particpants were then asked which, if any, item was 'made, sponsored, or endorsed' by the same company that made the first set of handbags." *Id.*  The court concluded that a "line-up in which only one handbag shares the most prominent and eye-catching features—two colors and silver hearts—improperly suggested to the participants that Defendant's bag was the 'correct' answer." *Id.*  Excluding the survey, the court held that the "high number of participants who selected" the defendant's handbag "show[ed] that it stood out as the best match, regardless of whether participants were actually confused by features in Brighton's trade dress." *Id.*  (citing *Sunbeam*, 635 F. Supp. at 634 (rejecting survey where defendant's product "stood out like a bearded man in a lineup with four clean-shaven men" and holding "[w]hen a survey question begs its answer it is not a true indicator of the likelihood of consumer confusion").

Similarly, in *Durrset Amigos, Ltd. v. Amigos Meat Distributors*, the plaintiff conducted a survey where the respondents were shown the following company names, their URLs, and a brief description of the company as follows:

(1) Amigos Foods: www.amigosfoods.com

(2) Glazier - Food Company: www.glazierfoods.com

(3) Labatt Food Service: www.labattfood.com

(4) Del Norte Foods: www.delnortefoods.com

(5) Amigos Foods: amigosfood.biz

Cancellation No. 92060896, 2017 TTAB LEXIS 411, at *30 (TTAB Nov. 3, 2017). The respondents were also given the following additional information:

Assume you are doing a search on the Internet for "food distribution companies" and the results of your search are displayed in the next screen.  The image on the screen contains a listing of food distribution companies including the plaintiff's and the defendant's companies as they are typically shown on the search page.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611

17

Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY AND TESTIMONY OF ROBERT E. WALLACE

*Id.*  The respondents were then asked to select the search results that they thought were affiliated, associated, or connected.  *Id.*  The Trademark Trial and Appeal Board found this confusion survey severely flawed and entitled to no weight because the survey "virtually demand[ed] a confusion response given the wholly unrelated names of the three additional options."  *Id.* at *31.  According to the Board, "it is hardly surprising that when confronted with the Google search engine results, respondents chose Petitioner and Respondent (both using Amigos Foods) as affiliated or connected entities, but not Labatt Food Service, Del Norte Foods or Glazier Food Company."  *Id.*

And in *Bobrick Washroom Equipment, Inc. v. Am. Specialties, Inc.*, No. 10-cv-6938, this court again excluded a survey that "effectively predetermined its result." 2012 WL 3217858, at *18 (C.D. Cal. Aug. 8, 2012).  In *Bobrick*, the survey attempted to test levels of confusion between the parties advertising, but the "advertisements used in [plaintiff's] survey . . . were extremely leading."  *Id.* at *17.  Specifically, "[t]he advertisements for [p]laintiff's product and [d]efendant's product were nearly identical [and] [t]he advertisements for the other three products—the purported 'control group'—were substantially different."  *Id.*  In excluding the survey as "neither admissible nor entitled to any probative weight," the court held that the "format [of the survey] effectively predetermined its result—participants inevitably would conclude there was a relationship between the substantially-similar advertisements for [p]laintiff's and [d]efendant's products, as opposed to the substantially different advertisements for the remaining three manufacturers."  *Id.* at *18.  *See also Reinsdorf*, 922 F. Supp. 2d at 877-79 (excluding survey that suggested the "correct" answer by displaying defendant's "fashion-focused ads … alongside obviously distinctive sportswear" third-party ads).

So too here with the Wallace Moving Report.  By presenting respondents with side-by-side comparisons of products where TNC and Le-Vel's products were the only products that contained the word THRIVE among two other products with

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611

Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY AND TESTIMONY OF ROBERT E. WALLACE

wholly unrelated names, the Wallace Moving Report "virtually demand[ed] a confusion response given the wholly unrelated names of the three additional options." *Durrset Amigos*, 2017 TTAB LEXIS 411, at *31.  Far from testing whether the respondents were actually confused, the Wallace Moving Report simply "show[ed] that [Le-Vel's THRIVE SKIN product] stood out as the best match, regardless of whether participants were actually confused" by Le-Vel's THRIVE SKIN mark. *Brighton*, 923 F. Supp. 2d at 1257.  This is not confusion, but a mere test to see if consumers can "match" TNC's and Le-Vel's products based on the name.  (*See* Rodgers Decl. Ex. 2 at ¶ 9(b).)  As in the above cases, this flaw on its own is enough to exclude the Wallace Moving Report.

### 3. The Wallace Moving Report Asks Impermissibly Leading Questions

The Wallace survey matching pairs lineup is not the only fatal flaw that artificially led respondents to give desired confusion responses.  In addition to the improper lineup, the Wallace Moving Report asked improperly leading questions, serving to further inflate responses indicating confusion.

"A survey is not credible if it relies on leading questions which are inherently suggestive and invite guessing by those who did not get any clear message at all." *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 352 (S.D.N.Y. 2008) (citation omitted); *Valador, Inc. v. HTC Corp.*, 242 F. Supp. 3d 448, 448 (E.D. Va. 2017) ("Suggestive questions render a survey unreliable by creating 'demand effects' or 'cues' from which a respondent can 'infer the purpose of the survey and identify the 'correct' answers.") (citation omitted).  In other words, "[a] survey question which begs its answer cannot be a true indicator of the likelihood of consumer confusion." *Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1135 (C.D. Cal. 1998) (citation omitted); *see also Scott Fetzer*, 381 F.3d at 488 ("A survey question that begs its answer by suggesting a link between plaintiff and defendant cannot be a true indicator of the likelihood of consumer confusion.") (citation omitted); *Water Pik,*

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611

19

Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY AND TESTIMONY OF ROBERT E. WALLACE

1    *Inc. v. Med-Sys, Inc.*, 726 F.3d 1136, 1148 (10th Cir. 2013) (same).

2            Not surprisingly, Mr. Wallace has previously been excluded for using the same

3    types of leading questions used here.  In *Pinnacle Advertising*, after asking qualifying

4    questions intending to ensure a proper universe, Mr. Wallace asked the following

5    primary question:

6            There is an advertising and marketing consultancy named Pinnacle

7            Advertising and Marketing Group, Inc.  There is an advertising and

8            marketing consultancy named Pinnacle Advertising and Marketing

9            Group, LLC.  Do you believe that they are the same or affiliated

10           consultancies?

11   2019 WL 7376782, at *5.  Participants could then answer with "yes, same or affiliated

12   consultancies," "no, different consultancies," or "don't know/not sure."  *Id.*  In

13   excluding Mr. Wallace's survey, the court found that "[t]his is the exact type of

14   suggestive close-ended question that significantly diminishes the reliability of the

15   direct Squirt test."  *Id.*  While Mr. Wallace labeled the question as "non-leading," the

16   court found that it "undoubtedly implicitly suggest[ed] that the [p]arties are

17   affiliated," and that was especially problematic because the "[p]arties' operate[d]

18   under identical names."  *Id.*  The only other question in Mr. Wallace's *Pinnacle* survey

19   asked "whether, based upon the screenshots, those companies were affiliated?"  *Id.*

20   This question was "likewise improperly suggestive for the same reasons as the first

21   one."  *Id.*  For these, and other reasons, the court found that Mr. Wallace's *Pinnacle*

22   survey was "so unreliable that it must be excluded."  *Id.* at *7.[6]  Courts regularly

23

24   [6] In addition to *Pinnacle*, Mr. Wallace's reports have been excluded on other

25   occasions.  *See Patsy's Italian Rest., Inc. v. Banas*, 531 F. Supp. 2d 483, 486
     (E.D.N.Y. 2008) (excluding Mr. Wallace "from testifying at trial about the issues of

26   likelihood of confusion and the overall commercial impact of the parties' marks.");
     *Bayoh v. Afropunk LLC*,  No. 18-cv-5820, 2020 WL 6269300, at *4-5 (S.D.N.Y. Oct.

27   26, 2020) (excluding Mr. Wallace's survey as unreliable and flawed).  *Notably, Mr.*

28   *Wallace was unaware that his surveys had previously been excluded* (Rodgers Decl.,

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY
AND TESTIMONY OF ROBERT E. WALLACE

1   exclude surveys for asking similarly leading questions.[7]

2         The questions asked in the Wallace Moving Report are virtually identical to the

3   questions that were rejected as leading in *Pinnacle*.   Here, the Wallace Moving

4   Report's primary confusion question read as follows:

5         Do you believe that these two products come from the same

6         company/manufacturer/source?

7            • Yes, same company/manufacturers/source

8            • No, different companies/manufacturers/sources

9            • Not sure/don't know

10  (Rodgers Decl., Ex. 1, Wallace Moving Report ¶ 58.)   If the respondent answered

11  "different companies/manufactures/sources," the respondent was then asked a follow-

12  up confusion question that read as follows:

13        If you said different companies, do you believe that these two companies

14  _____

15  Ex. 2, Wallace Dep. Tr. at 20:17-21:4), indicating that Mr. Wallace does not monitor
16  whether his surveys are indeed consistent with the accepted principles of surveys
17  applied by federal courts.

18  [7] *See also Scott Fetzer*, 381 F.3d at 488 (rejecting a survey that asked, "looking at this
    ad, would you say that this company is in any way affiliated with, connected with,
19  sponsored by, associated with or authorized by the Kirby Company."); *Hornady Mfg.
    Co. v. Doubletap, Inc.*, 746 F.3d 995, 1005 (10th Cir. 2014) (holding that plaintiff's
20  survey was improperly leading when it asked if the three packages shown individually
    were of the same, affiliated or unaffiliated sources); *Saxon Glass Techs., Inc. v. Apple
21  Inc.*, 393 F. Supp. 3d 270, 287-89 (W.D.N.Y. 2019), *aff'd* 824 F. App'x 75 (2d Cir.
    2020) (excluding survey, in part, because it asked the following improperly leading
22  question:  "Do you believe that Brand X [IONEX] and Brand Y [ION-X] are likely to
23  produce confusion in the marketplace for chemically strengthened glass and/or glass
    treatment services?"; finding "[t]hese are the precise types of questions that courts
24  have found improperly suggestive in evaluating the admissibility of survey
    evidence."); *Valador*, 242 F. Supp. 3d at 465-66 (excluding survey as unreliable
25  where it asked, "[h]ow likely do you think it is that there will be confusion between"
26  the two products or the two product names "if they are used by different companies
    selling similar products").

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611                              21              Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY
AND TESTIMONY OF ROBERT E. WALLACE

are affiliated, connected, or associated with each other?

- Yes, companies are affiliated, connected or associated
- No, companies are not affiliated, connected or associated
- Not sure/don't know

(*Id.* at ¶ 60.)  Just as in *Pinnacle*—where Mr. Wallace's survey was excluded for having leading questions—the Wallace Moving Report's questions here implicitly suggest that respondents got the first question wrong when indicating that the parties were not from the same company/manufacturer/source, but must be "affiliated" when asked a closed-ended question implying that the parties are affiliated.  *Pinnacle*, 2019 WL 7376782, at *5.  The result here should be the same as in *Pinnacle*:  the Wallace Moving Report should be excluded as unreliable and not in accordance with accepted principles based on improperly leading questions.

### 4. The Court Should Preclude Mr. Wallace's Unsupported Opinions and Improper Testimony on the Ultimate Issues of Likelihood of Confusion

"Most courts will not allow expert testimony of a witness who opines on the ultimate question of whether there is or is not a likelihood of confusion." 4 *McCarthy* § 23:2.75. And in the Ninth Circuit, it is well-established that an expert cannot give an opinion as to his legal conclusion, that is, an opinion on an ultimate issue of law. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) ("[A]n expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law.") (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)); *Allstate Ins. Co. v. Kia Motors Am., Inc.*, No. 16-cv-06108, 2017 WL 10311211, at *6 (C.D. Cal. Sept. 20, 2017) ("It is well-established in the Ninth Circuit, that an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.") (citing *Nationwide Transport*, 523 F.3d at 1058).   "The expert's legal conclusions are unhelpful because they 'suppl[y] the jury with no information other than the witness's view on how the verdict should read.'" *YKK Corp. v. Jungwoo Zipper Co., Ltd.*, 213

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611

22

Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY AND TESTIMONY OF ROBERT E. WALLACE

F. Supp. 2d 1195, 1203 (C.D. Cal. 2002) (citation omitted).

For example, in *Allstate Insurance*, which was a trademark infringement case, the plaintiff's expert provided three opinions: "(1) For Allstate, Drivewise is a valuable brand, built through careful management and the investment of substantial resources; (2) As a sub-brand, the Drivewise brand enhances the value of the Allstate brand, affecting the entire portfolio of products and services sold under the Allstate brand; and (2) The use by Kia of Drive Wise will reduce the distinctiveness of Drivewise, the effectiveness of Drivewise to serve as a unique identifier, and the value of the Drivewise brand." 2017 WL 10311211, at *6. The court struck each of these opinions because they were opinions on the ultimate issues of law, and the opinions thus could not be offered.

The Wallace Moving Report offers precisely these types of opinions on ultimate issues in this case. First, Mr. Wallace opines that "there is significant actual confusion by consumers confusing the Plaintiff's well-established 'Thrive' brand with the Defendant's 'Thrive Skin' brand," and further concludes that his survey results "suggest that, when purchasing, consumers are likely to confuse the Plaintiff's skin care products with the Defendant's skin care products." (Rodgers Decl., Ex. 1, Wallace Moving Report ¶¶ 7, 80.) These are opinions as to the ultimate issue of likelihood of confusion that the Court will be tasked to decide and should be excluded.

Mr. Wallace also offers further opinions on the ultimate issues of the case under *Sleekcraft*.[8] Specifically, Mr. Wallace opines that "the Plaintiff has strongly enforced its THRIVE mark, the products in question are the same or closely related types of goods, there are overlapping marketing channels for the parties' skin care products, and purchasers of the products in question exercise relatively low degree of consumer

---

[8] In determining the ultimate issue of likelihood of confusion, the factfinder will be tasked with weighing the likelihood of confusion factors set out in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611

23

Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY
AND TESTIMONY OF ROBERT E. WALLACE

1   care." (*Id.* at ¶¶ 8, 21, 23-26, 81.)  These are exactly the types of opinions that the

2   court in *Allstate* excluded as opinions on the ultimate issue, and they should be

3   excluded here as well.

4        And again, Mr. Wallace has previously been excluded for these very same

5   reasons when rendering opinions on the ultimate issue.  In *Jalinski Advisory Grp.,*

6   *Inc. v. JBL Financial Services, Inc.*, Mr. Wallace testified to the existence of actual

7   confusion based on a survey he conducted and that those survey results led him to

8   opine that there was a likelihood of confusion between the parties' marks, just as Mr.

9   Wallace has done here.  No. 19-cv-1914, 2022 WL 1165793, at *4 (E.D. Mo. Apr.

10  20, 2022).  While the court found Mr. Wallace's survey permissible in that case, the

11  court precluded Mr. Wallace from "opin[ing on] any legal matters, including whether

12  the results of the survey meet the legal standards for likelihood of confusion." *Id.* at

13  *5.  The result should be no different here in excluding Mr. Wallace from offering

14  opinions of the ultimate issues in this case.

15  **IV.   CONCLUSION**

16       For the reasons and authorities above, Le-Vel respectfully requests that the

17  Court exclude Mr. Wallace's survey and testimony.

18

19

20

21

22

23

24

25

26

27

28

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611                                                    24                          Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY
AND TESTIMONY OF ROBERT E. WALLACE

1

2    Dated:  June 27, 2022

3                                          Morgan E. Smith (SBN 293503)
                                           morgan.smith@finnegan.com
4                                          Mark Sommers (pro hac vice)
                                           mark.sommers@finnegan.com
5                                          Patrick J. Rodgers (pro hac vice)
                                           patrick.rodgers@finnegan.com
6                                          Daniel R. Mello Jr. (SBN 325714)
                                           daniel.mello@finnegan.com
7                                          FINNEGAN, HENDERSON,
8                                          FARABOW, GARRETT & DUNNER,
                                           LLP
9

10

11                                         Alan Jay Weil (SBN 63153)
                                           ajweil@kbkfirm.com
12                                         Amanda D. Barrow (SBN 313583)
                                           abarrow@kbkfirm.com
13                                         KENDALL BRILL & KELLY LLP

14

15                                         *Attorneys for Le-Vel Brands, LLC*

16

17

18

19

20

21

22

23

24

25

26

27

28

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603345611                                   25                    Case No. 2:21-CV-02022-DOC-KES

LE-VEL'S NOTICE OF AND MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE SURVEY
AND TESTIMONY OF ROBERT E. WALLACE