KENDALL BRILL & KELLY LLP
Alan Jay Weil (63153)
  *ajweil@kbkfirm.com*
Amanda D. Barrow (313583)
  *abarrow@kbkfirm.com*
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile:  310.556.2705

FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
Mark Sommers (admitted *pro hac vice*)
  *mark.sommers@finnegan.com*
Patrick J. Rodgers (admitted *pro hac vice*)
  *patrick.rodgers@finnegan.com*
901 New York Avenue, NW,
Washington, DC 20001-4413
Telephone:   (202) 408-4064
Facsimile:    (202) 408-4400

Morgan E. Smith (SBN 293503)
  *morgan.smith@finnegan.com*
Daniel R. Mello (SBN 325714)
  *daniel.mello@finnegan.com*
3300 Hillview Avenue
Palo Alto, CA 94304
Telephone:   (650) 849-6600
Facsimile:    (650) 849-6666

Attorneys for Defendant and
Counterclaim Plaintiff Le-Vel Brands, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRIVE NATURAL CARE, INC.,<br><br>              Plaintiff and<br>              Counterclaim<br>              Defendant,<br><br>      v.<br><br>LE-VEL BRANDS, LLC,<br><br>              Defendant and<br>              Counterclaim Plaintiff. | Case No. 2:21-cv-2022-DOC-KES<br><br>**SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**<br><br>Judge:      Hon. David O. Carter |

Defendant and Counterclaim Plaintiff Le-Vel Brands, LLC ("Le-Vel") submits this Second Amended Answer with Affirmative Defenses and Counterclaims ("Second Amended Answer") to Plaintiff and Counterclaim Defendant Thrive Natural Care, Inc.'s ("Plaintiff") Complaint as follows:

1.   Le-Vel admits that the Complaint purports to be an action for the claims and remedies recited in Paragraph 1.  Le-Vel denies the remaining allegations of Paragraph 1.

2.   Le-Vel lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 2 and therefore denies such allegations.

3.   Le-Vel lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 3 and therefore denies such allegations.

4.   Le-Vel admits that it is a premium lifestyle company.  Le-Vel denies that it is a traditional "multi-level marketing company" and denies that its "primary business" is to encourage others to sell its products.  Le-Vel lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 4, including those that purport to quote from undisclosed sources without context, or describe Le-Vel's products without reference to specific products, and therefore denies such allegations.

5.   Le-Vel admits that it offers a premium daily lifestyle plan called "The THRIVE Experience"; uses the mark THRIVE for various products, including supplements, shake powders, and vitamin skin patches; has an A+ rating with the Better Business Bureau; and has made over $2 billion in sales.  Le-Vel denies the remaining allegations of Paragraph 5.

6.   Le-Vel admits that it offers THRIVE SKIN products.  Le-Vel denies the remaining allegations of Paragraph 6.

7.   Plaintiff's allegations in Paragraph 7 regarding the scope of Plaintiff's registrations comprise legal conclusions to which no response is required.  To the extent a response is required, Le-Vel denies those allegations.  Le-Vel lacks

knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 7, including those that purport to quote from undisclosed sources without context, and therefore denies those allegations.

8.  Le-Vel admits that Plaintiff sent a letter to Le-Vel in October 2020.  Le-Vel denies the remaining allegations of Paragraph 8.

9.  Le-Vel denies the allegations of Paragraph 9.

10. Le-Vel admits that the complaint purports to be an action for the claims and remedies recited therein.  Le-Vel denies the remaining allegations of Paragraph 10.

11. Le-Vel admits that Plaintiff's complaint seeks injunctive relief.  Le-Vel denies the remaining allegations of Paragraph 11.

12. Le-Vel lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 12 and therefore denies such allegations.

13. Le-Vel admits the allegations of Paragraph 13.

14. Plaintiff's allegations in Paragraph 14 comprise legal conclusions to which no response is required.  To the extent a response is required, Le-Vel denies those allegations.

15. Plaintiff's allegations in Paragraph 15 comprise legal conclusions to which no response is required.  To the extent a response is required, Le-Vel denies those allegations.

16. Le-Vel admits that it operates the website at www.le-vel.com.  Le-Vel denies the remaining allegations of Paragraph 16.

17. Plaintiff's allegations in Paragraph 17 comprise legal conclusions to which no response is required.  To the extent a response is required, Le-Vel denies those allegations.

18. Le-Vel lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 18, or the heading immediately above them, which claims that "Thrive Was Founded in 2013 to Create Premium Skincare Products Through Regenerative Agricultural Practices" and therefore denies such allegations.

19. Le-Vel lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 19 and therefore denies such allegations.

20. Le-Vel lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 20 and therefore denies such allegations.

21. Le-Vel lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 21 and therefore denies such allegations.

22. Le-Vel lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 22 and therefore denies such allegations.

23. Le-Vel lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 23 and therefore denies such allegations.

24. Le-Vel lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 24 and therefore denies such allegations.

25. Le-Vel lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 25 and therefore denies such allegations.

26. Le-Vel notes that U.S. Patent and Trademark Office records speak for themselves.  Le-Vel lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 26, or the heading immediately above them, which claims that "Thrive Registered THRIVE Trademarks Starting in January 2014" and therefore denies such allegations.

27. Le-Vel denies that the U.S. Patent and Trademark Office "Notice of Acceptance Acknowledgement" dated March 7, 2020 states that U.S. Trademark Reg. No. 4,467,942 is "incontestable."  Le-Vel lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 27 and therefore denies such allegations.

28. Le-Vel notes that U.S. Patent and Trademark Office records speak for themselves. Le-Vel lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 28 and therefore denies such allegations.

29. Le-Vel notes that U.S. Patent and Trademark Office records speak for themselves.  Le-Vel lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 29 and therefore denies such allegations.

30. Le-Vel denies the allegations in Paragraph 30 and in the heading immediately above such allegations, and specifically denies that Le-Vel has a "questionable reputation."

31. Le-Vel denies the allegations of Paragraph 31.

32. Le-Vel denies the allegations of Paragraph 32.

33. Le-Vel notes that the website Truthinadvertising.org speaks for itself.  Le-Vel lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 33 and therefore denies such allegations.

34. Le-Vel denies the allegations in Paragraph 34 regarding the Better Business Bureau's Direct Selling Self-Regulatory Council decision in Case Number: 24-2020 – NGO Inquiry – Le-Vel Brands LLC.  In that decision, the Council did not find that Le-Vel made "inappropriate health claims" or "atypical income claims" but supported "Le-Vel's existing policies" which "prohibit[] disease treatment claims" and found Le-Vel's YouTube video "DFT: Recharge" would not be interpreted by consumers as a claim that Le-Vel's products will cure Covid-19.  Regarding income claims, the Council acknowledged Le-Vel's limited ability to control those who repurpose or disseminate its content and encouraged Le-Vel to reinforce its existing policies.  Le-Vel lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 34 and therefore denies such allegations.

35. Le-Vel lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 35 and therefore denies such allegations.

36. Le-Vel notes that its public legal filings and related judicial decisions speak for themselves.  Le-Vel denies the remaining allegations of Paragraph 36.

37. Le-Vel denies the allegations of Paragraph 37.

38. Le-Vel admits that it offers skincare products under the mark THRIVE SKIN.  Le-Vel denies the remaining allegations of Paragraph 38.

39. Le-Vel admits that it offered skincare products in April 2019 and thereafter. Le-Vel denies that those products are infringing at least because Le-Vel has prior rights in the THRIVE trademark.  The remainder of Plaintiff's allegations in Paragraph 39 comprise legal conclusions to which no response is required.  To the extent a response is required, Le-Vel denies those allegations.

40. Le-Vel denies the allegations in Paragraph 40.

41. Le-Vel admits that the allegations of Paragraph 41 include images of what appear to be Le-Vel's products but denies that those products are infringing.  Le-Vel denies the remaining allegations of Paragraph 41.

42. Le-Vel admits that the allegations of Paragraph 42 include images of what appear to be a Le-Vel product next to Plaintiff's products.  Le-Vel denies the remaining allegations of Paragraph 42.

43. Le-Vel admits that its advertising and marketing strategy for its THRIVE products includes search engine optimization.  Le-Vel denies the remaining allegations of Paragraph 43.

44. Le-Vel admits that the allegations of Paragraph 44 include images of what appear to be a Le-Vel advertisement using the term "THRIVE tribe!" next to one of Plaintiff's advertisements using the term "Thrive Tribe."  Le-Vel lacks knowledge or information sufficient to admit or deny Plaintiff's allegation that it has used "Thrive Tribe" since 2013 and therefore denies such allegation.  Le-Vel denies the remaining allegations of Paragraph 44.

45. Le-Vel's publicly available social media activity speaks for itself.  Le-Vel lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 45 and therefore denies such allegations.

46. Le-Vel notes that its website at https://thriveunity.le-vel.com/ speaks for itself.  Le-Vel denies the remaining allegations of Paragraph 46.

47. Le-Vel denies the allegations of Paragraph 47.

48. Le-Vel admits that Plaintiff sent a letter to Le-Vel on October 27, 2020. Le-Vel denies the remaining allegations of Paragraph 48, including the heading immediately above, which reads "LBL Refuses to Provide Evidence to Support Allegation of Prior Use."

49. Le-Vel admits that it has senior trademark rights in the THRIVE mark, and that it explained this to Plaintiff through written correspondence. Le-Vel denies the remaining allegations of Paragraph 49.

50. Le-Vel notes that its correspondence with Plaintiff speaks for itself. Le-Vel denies the remaining allegations of Paragraph 50.

51. Le-Vel denies that Plaintiff's trademark registrations are valid. Le-Vel denies that any of its products are infringing. Le-Vel admits the remaining allegations of Paragraph 51.

52. Le-Vel denies the allegations of Paragraph 52.

53. Le-Vel denies that it has harmed Plaintiff. Le-Vel further denies any and all allegations or implications about Le-Vel's reputation or that of its Brand Promoters. Le-Vel lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 53 and therefore denies such allegations.

54. Le-Vel denies the allegations of Paragraph 54.

**COUNT 1**

**Federal Trademark Infringement**

55. Le-Vel responds to the allegations contained in Paragraphs 1-54 as noted above.

56. Le-Vel denies the allegations of Paragraph 56.

57. Le-Vel denies the allegations of Paragraph 57.

58. Le-Vel denies the allegations of Paragraph 58.

59. Le-Vel denies the allegations of Paragraph 59.

60. Le-Vel denies the allegations of Paragraph 60.

61. Le-Vel denies the allegations of Paragraph 61.

## COUNT 2

### Federal Unfair Competition

62. Le-Vel responds to the allegations contained in Paragraphs 1-61 as noted above.

63. Le-Vel denies the allegations of Paragraph 63.

64. Le-Vel denies the allegations of Paragraph 64.

65. Le-Vel denies the allegations of Paragraph 65.

66. Le-Vel denies the allegations of Paragraph 66.

67. Le-Vel denies the allegations of Paragraph 67.

68. Le-Vel denies the allegations of Paragraph 68.

69. Le-Vel denies the allegations of Paragraph 69.

## COUNT 3

### Common Law Trademark Infringement

70. Le-Vel responds to the allegations contained in Paragraphs 1-69 as noted above.

71. Le-Vel denies the allegations of Paragraph 71.

72. Le-Vel denies the allegations of Paragraph 72.

73. Le-Vel denies the allegations of Paragraph 73.

74. Le-Vel denies the allegations of Paragraph 74.

75. Le-Vel denies the allegations of Paragraph 75.

76. Le-Vel denies the allegations of Paragraph 76.

## COUNT 4

### Common Law Unfair Competition

77. Le-Vel responds to the allegations contained in Paragraphs 1-76 as noted above.

78. Le-Vel denies the allegations of Paragraph 78.

79. Le-Vel denies the allegations of Paragraph 79.

80.Le-Vel denies the allegations of Paragraph 80.

81.Le-Vel denies the allegations of Paragraph 81.

## COUNT 5

## Cal. Bus. & Prof. Code § 17200, *et seq.*

82.Le-Vel responds to the allegations contained in Paragraphs 1-81 as noted above.

83.Le-Vel denies the allegations of Paragraph 83.

84.Le-Vel denies the allegations of Paragraph 84.

85.Le-Vel denies the allegations of Paragraph 85.

86.Le-Vel denies the allegations of Paragraph 86.

87.Le-Vel denies the allegations of Paragraph 87.

**WHEREFORE,** Le-Vel demands judgment dismissing Plaintiff's Complaint and any and all claims against it with prejudice, along with costs, attorneys' fees, interest and all other relief deemed just and equitable by the Court.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

## (Priority, 15 U.S.C. § 1057(c)(1))

88.Le-Vel has continuously used the mark THRIVE since before Plaintiff's earliest actual or constructive use of the mark THRIVE, and Le-Vel's THRIVE mark has not been abandoned.

## SECOND AFFIRMATIVE DEFENSE

## (Statute of Limitations)

89.  Plaintiff's claims are barred by the applicable statutes of limitations.

## THIRD AFFIRMATIVE DEFENSE

## (Laches)

90.  Plaintiff's claims are barred and/or limited by the equitable doctrine of laches.

## FOURTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

91. Plaintiff's claims are barred and/or limited by the equitable doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

### (Estoppel)

92. Plaintiff's claims are barred and/or limited by the equitable doctrine of estoppel.

## SIXTH AFFIRMATIVE DEFENSE

### (Acquiescence)

93. Plaintiff's claims are barred and/or limited by the equitable doctrine of acquiescence.

## SEVENTH AFFIRMATIVE DEFENSE

### (Fraud on the U.S. Patent and Trademark Office)

94. Plaintiff obtained trademark registration(s) for the THRIVE mark, as detailed in the Counterclaims below.  Plaintiff brought a trademark infringement lawsuit against Le-Vel (the senior user of the THRIVE mark) premised upon rights fraudulently obtained, which equity demands be dismissed.

## COUNTERCLAIMS

Le-Vel, through its counsel, alleges as follows, upon actual knowledge with respect to itself and upon information and belief as to all other matters.

## NATURE OF THE COUNTERCLAIMS

95.   Le-Vel brings counterclaims against Plaintiff/Counterclaim Defendant Thrive Natural Care, Inc. ("TNC") for cancellation of TNC's two federal trademark registrations for the THRIVE mark and civil fraud under 15 U.S.C. § 1120, as well as for trademark infringement and related claims under the Lanham Act, 15 U.S.C. § 1051, *et seq.*

96.     Pursuant to 15 U.S.C. § 1119, Le-Vel seeks cancellation of TNC's U.S. federal trademark Registration No. 4467942 (the " '942 Registration") because it was void ab initio, abandoned, and fraudulently obtained, and seeks damages for civil fraud, and further seeks cancellation of TNC's U.S. federal trademark Registration No. 6164303 (the " '303 Registration") under 15 U.S.C. § 1052(d) based on a likelihood of confusion with Le-Vel's prior rights in the THRIVE mark through its zone of natural expansion.

97.     Moreover, because the '942 Registration is invalid (and therefore not incontestable), TNC's use of THRIVE for products identified in the '942 Registration infringes Le-Vel's senior rights in the THRIVE trademark, and its use of THRIVE for goods other than those facially covered by the '942 Registration, also infringes Le-Vel's THRIVE trademark rights (because the registered goods fall into Le-Vel's natural zone of expansion), irrespective of the validity of the '942 Registration. Accordingly, Le-Vel brings trademark infringement and related claims against TNC for *inter alia* infringement of Le-Vel's prior rights in the THRIVE Mark and name in a manner likely to confuse, deceive, or mislead consumers to believe TNC's activities are authorized by or affiliated with Le-Vel.

## PARTIES

98.     Defendant/Counterclaim Plaintiff Le-Vel is a Texas limited liability company with an address of 9201 Warren Parkway #200, Frisco, Texas 75035.

99. Plaintiff/Counterclaim Defendant Thrive Natural Care, Inc. ("TNC") is a Delaware corporation with an address of 42 Darrell Place, San Francisco, California 94133.

## JURISDICTION AND VENUE

100.  This claim arises under the federal Trademark Act, 15 U.S.C. §§ 1051, *et seq.*  This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b).

101.  By TNC's Complaint against Le-Vel in this Court for federal trademark infringement, unfair competition, and violation of California Business and Professions Code—all of which Le-Vel denies—TNC has submitted itself to the jurisdiction and venue of this Court.

102.  Le-Vel's counterclaims are without prejudice to its motion to transfer venue to the U.S. District Court for the Eastern District of Texas or, in the alternative, the Northern District of Texas.

## LE-VEL AND ITS THRIVE NAME AND TRADEMARK

103.  Le-Vel is a health and wellness lifestyle company founded in the summer of 2012 that offers a wide array of goods, including vitamins (such as capsules, powders, and gels), vitamin skin patches, vitamins for the skin, snacks, and skincare products under the trademark THRIVE.  Le-Vel formulates all of its THRIVE products with the highest quality and premium ingredients with a single goal in mind: provide its customers with premium products that help them live a happier and healthier life, both mentally and physically, and look and feel better.

104.  Launched in summer 2012, Le-Vel's principal product line is sold under the brand THRIVE and various THRIVE-formative marks, including THRIVE and design, THRIVE EXPERIENCE, THRIVE BY LE-VEL, THRIVE SKIN, THRIVE FORM, and THRIVE PLUS, among others.  *See* Exhibit 1 (showing social media post announcing flagship THRIVE products and its packaging).

105.  Since its business began, Le-Vel has sought to revolutionize the concept of nutrition and a person's skin under the THRIVE brand.  Indeed, one of Le-Vel's founders, Jason Camper, was the former president of IsXperia and LifeCore Global—two supplement companies that naturally expanded into skincare products.  Having driven those companies' decisions to expand from supplements toward skincare, Mr. Camper co-founded Le-Vel with a firm belief in the power of vitamins and skin care products to improve health and wellness, and with an intention to revolutionize skin-based nutritional products offered under Le-Vel's THRIVE brand.

106.  Le-Vel's efforts to revolutionize skin-based nutrition products began with THRIVE Derma Fusion Technology ("DFT") skin vitamin patches (shown below), a product that literally connects a person's "skin" with the "care" that derives from premium vitamins and supplements.



107.  Once applied to the skin, the THRIVE DFT provides a delivery system designed to infuse the derma (skin) with Le-Vel's unique, premium grade THRIVE Lifestyle Formula, which promotes healthy weight management as well as an overall healthy lifestyle.

108.  Le-Vel's THRIVE DFT skin vitamin patches are part of Le-Vel's THRIVE EXPERIENCE—a three-step system of three interconnected products that provide customers with three easy steps to reach their fitness goals, live a healthier life, and look and feel better.  With THRIVE DFT skin vitamin patches as a core component, Le-Vel's three-step THRIVE EXPERIENCE program (which also includes related services) ignited the success of Le-Vel's THRIVE products and brand.  Screen captures explaining Le-Vel's THRIVE EXPERIENCE program and product line appear below.





109. Le-Vel's THRIVE DFT skin vitamin patches—the third step of the THRIVE EXPERIENCE—are bundled within the THRIVE EXPERIENCE with THRIVE vitamins and THRIVE shakes (depicted below):




110.  THRIVE DFT provides a host of nutritional benefits as well as skin benefits.  For example, THRIVE DFT replenishes the skin's moisture barrier. THRIVE DFT also improves skin elasticity, and makes skin appear firm, toned, and visibly younger.  Owing to these nutritional and restorative qualities, THRIVE DFT is classified as a cosmetic in Canada.

111.  Over time, Le-Vel's THRIVE DFT skin vitamin patch offerings have increased, and today, Le-Vel offers a multitude of skin vitamin patches including THRIVE DFT Ultra (shown below), THRIVE DFT Black Label, THRIVE DFT PINK Breast Cancer Awareness, THRIVE DFT Team Hoyt, THRIVE DFT DUO, THRIVE DFT BURN, THRIVE DFT White Label, THRIVE DFT Recharge, and THRIVE AGAINST CANCER DFT.



SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

112.  Le-Vel's health-focused skin care products under the THRIVE brand have also gradually developed as a natural outgrowth of its vitamin, supplements, and nutrition-focused business.  For example, Le-Vel offers THRIVE Form gel vitamin (depicted below), a collagen protein vitamin or "skin vitamin" that supports firm and healthy skin.



113.  Additionally, Le-Vel's initial THRIVE SKIN products leveraged the success of the THRIVE EXPERIENCE vitamins, shakes, and vitamin skin patches by offering a three-step bundle of three skin care products: THRIVE SKIN Peel exfoliating cream (Step 1), the THRIVE SKIN Reduce facial serum (Step 2), and the THRIVE SKIN Restore skin moisturizer (Step 3) with antioxidants and moisturizing properties to support skin cell health.



114.  Le-Vel's skin care offerings under the THRIVE marks have naturally expanded over time as Le-Vel has continually sought to revolutionize the concepts of nutrition through the skin and skincare and skin nutrition in offering skin-based products under the THRIVE brand.

115.  At all times since Le-Vel began using the THRIVE mark, Le-Vel had developed common law trademark rights in the THRIVE mark through use, including with vitamins, supplements, vitamin skin patches, skin vitamins and skin care products, which at all times fell within Le-Vel's zones of natural product expansions.

116.  In the period between August 2012 (when Le-Vel began distributing THRIVE products) and January 14, 2014 (TNC's '942 Registration date), Le-Vel developed substantial common law trademark rights in the THRIVE mark through many millions of dollars of sales of THRIVE vitamins, shakes, and skin vitamin patches.

117.  Le-Vel's THRIVE brand has also expanded in other ways, including with its increasingly broad range of product offerings, including skin vitamins and skincare products.

118.  The THRIVE brand is so indelibly tied with Le-Vel's overall corporate identity, such that Le-Vel is commonly known as "THRIVE" in the marketplace.

119.  Le-Vel owns the following valid and subsisting U.S. trademark registrations for its THRIVE brand:

| Mark | Reg. No./Reg. Date | Goods/First Use in Commerce |
|---|---|---|
| THRIVE (and design) | 5772374 06-11-2019 | Topical patches featuring vitamin, mineral, plant extract, antioxidant, enzyme, probiotic, and amino acid preparations used for general health and wellness in Class 5 First Use in Commerce:  08-00-2012 |

SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

| Mark | Reg. No./Reg. Date | Goods/First Use in Commerce |
| --- | --- | --- |
| THRIVE EXPERIENCE (and design) | 5174403 04-04-2017 | Nutritional supplements, namely, vitamin, mineral, plant extract, antioxidant, enzyme, probiotic, and amino acid preparations and supplements used for general health and wellness in Class 5 First Use in Commerce: 12-00-2012 <br><br> Providing online retail store services using account-based user information in the field of nutritional preparations and supplements; providing an incentive award program for consumers that provides for discounted pricing and free product return of nutritional preparations and supplements with purchase in Class 35 First Use in Commerce: 10-00-2013 <br><br> A nutritional plan for general health and wellness consisting of consulting advice and recommendations on nutritional supplements and nutritional consulting advice and recommendations on nutritional preparations in Class 44 First use in Commerce: 12-00-2012 |
| THRIVE BY LE-VEL | 5169444 03-28-2017 | Nutritional supplements, namely, vitamin, mineral, plant extract, antioxidant, enzyme, probiotic, and amino acid preparations used for general health and wellness in Class 5 First Use in Commerce: 11-00-2012 |

## SALE AND PROMOTION OF LE-VEL'S THRIVE PRODUCTS

120.  Le-Vel's use of THRIVE began in summer 2012.  Since that time, Le-Vel has sold billions of dollars in THRIVE branded goods to millions of customers throughout the United States.

121.  Le-Vel's THRIVE products are sold through its online store directly to consumers, who are introduced to the products through Le-Vel's marketing efforts and a vast network of authorized independent promoters and affiliates.

122.  After its first use of the THRIVE brand, Le-Vel's products enjoyed and have continued to enjoy extreme success.  By September 5, 2013 (the date on which TNC claims to have first used the mark THRIVE), Le-Vel had already sold very far north of a million dollars of THRIVE brand vitamin capsules, shakes, and skin patches nationwide.  (The actual sales number appears in the unredacted Declaration of Drew Hoffman, *see* ECF No. 24-3 ¶ 22.)  By January 14, 2014 (the issuance date of TNC's U.S. trademark Registration No. 4467942 for the THRIVE mark) Le-Vel sales had more than tripled into many millions of THRIVE brand vitamin capsules, shakes, and skin patches nationwide.  (unredacted Declaration of Drew Hoffman, Dkt. No. 46-3, ¶ 11).  By May 2017, Le-Vel had toppled $1 billion in total sales. (*Id*.)  By Fall 2019, Le-Vel had surpassed $2 billion in total sales.  (*Id*. at ¶ 29.)  And as of March 2021, Le-Vel has exceeded $2.4 billion in sales.  (*Id*.)

123.  Since THRIVE products were first introduced in 2012, Le-Vel has promoted and displayed its THRIVE brand in a variety of ways, including as a standalone brand, as part of THRIVE-formative terms or phrases (such as THRIVE PLUS or THRIVE EXPERIENCE), as well as in connection with other Le-Vel THRIVE names and marks through Le-Vel's website, social media, and product packaging, e.g.:











1
2
3
4
5
6
7
8
9
10
11



12
13
14
15
16
17
18



19
20
21
22
23
24
25
26
27
28



124.  Since Le-Vel first used THRIVE in 2012, Le-Vel's THRIVE brand has obtained substantial success and been widely promoted and distributed throughout the United States in connection with Le-Vel's various goods and services.

125.  Le-Vel now has more than ten million independent Brand Promoters and customers around the world.

126.  Le-Vel and its founders have a tremendous online following, including over three million Facebook followers.  Its promotional videos have been viewed on YouTube over nine million times.

127.  Le-Vel has spent tens of millions of dollars in advertising, marketing, and promoting the THRIVE brand in connection with its products through a variety of media, promotional and marketing initiatives, and celebrity endorsements.  Some of the celebrity users of Le-Vel's THRIVE products include: (1) Emmitt Smith, the all-time leading rusher in the history of the NFL; (2) Andy Roddick, one-time #1 ranked tennis player in the world and a tennis Hall-of- Famer; (3) Dick and Rick Hoyt of Team Hoyt, the father and son team who have participated in over 1,000 races to

raise awareness for and instilled confidence in the physically challenged (Rick is a spastic quadriplegic with cerebral palsy, and his late father Dick, pushed, pulled, and carried him through races such as the Ironman triathlon); (4) Kirk Hammett, lead guitarist for the band Metallica; (5) Don Mattingly, Major League Baseball Hall-of-Famer; (6) Amy Purdy, *New York Times* best-selling author, runner-up in *Dancing with the Stars*, and medalist in the 2014 Winter Paralympic Games; (7) Olga Tanon, five-time Grammy-winning artist; (8) Brian Westbrook, former All-Pro NFL player; (9) Drake White, country music performing artist; (10) television and movie actor Kevin Sorbo from shows such as *Hercules*; (11) Missy Robertson from the *Duck Dynasty* series; (12) former All-Pro NFL player, Bernard Pierce; and many others.



128.  In addition, Le-Vel and the THRIVE brand have been featured (1) at Times Square during the New Year's Eve ball drop and throughout the holiday season, including during the Macy's Thanksgiving Day Parade; (2) on billboards

throughout the U.S. during national billboard campaigns; (3) in football stadiums across the U.S. during college and professional football games; (4) in the "Rise and Thrive" marketing campaign, which has been viewed by millions of individuals around the globe; (5) in a nationally distributed magazine, *Thrivin'*, found in thousands of bookstores throughout the U.S.; (6) in hundreds of press releases and blogs circulated throughout the world; and (7) in Facebook and YouTube ads receiving millions of views and interactions, e.g.:



SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22   129.  Further, the THRIVE brand has received notable third-party press,

23   attention, and recognition.  In 2020, Le-Vel's THRIVE products were featured in

24   Rolling Stone magazine as a top holiday gift for 2020.  In 2016, Le-Vel was featured

25   in *USA Today*, along with Uber, Etsy, and two other companies, as the leaders in the

26   "YouEconomy."  In 2019, Le-Vel was again featured in *USA Today* as the nutritional

27   movement taking the country by storm.  In 2015, Le-Vel was featured in the *Houston*

28   *Business Journal* for its substantial and meaningful charitable works and efforts.  In

2016, Le-Vel received the *Direct Selling News* Bravo Growth Award, which recognizes the largest year-over-year growth *in the world* in direct sales.  In 2015 and 2016, Le-Vel was named to the *Direct Selling News* Global 100, an exclusive ranking of the top revenue-generating companies worldwide in the direct selling industry. Le-Vel has also been featured in *Direct Selling News* on multiple occasions and has been the cover story twice.  In 2013-2017, Le-Vel was featured in *Success from Home* magazine, the first time that a company has been featured as the exclusive company in full-length *Success from Home* issues four years in a row, e.g.:

 





  

130.  As a result of extensive use, sales, advertising, promotion, commercial success, and third-party recognition, the THRIVE brand is strong and well-known, and consumers associate THRIVE with Le-Vel.

**THE INVALID AND FRAUDULENTLY PROCURED '942 REGISTRATION**

*Ecomundi Ventures, LLC and Thrive Natural Care, Inc.*

131.  Ecomundi Ventures, LLC ("Ecomundi") is a Connecticut limited liability company with an address of 42 Darrell Place, San Francisco, California 94133.

132.  Alex G. McIntosh is the Chief Executive Officer ("CEO") of Ecomundi.

133.  Upon information and belief, Ecomundi is a venture capital firm that is in the business of investing in companies and projects.

134.  Upon information and belief, Ecomundi does not offer, sell, or transport goods in commerce.

135.  Upon information and belief, Ecomundi, as a venture capital firm, never had any intent to use the THRIVE mark in connection with the sale or transport of grooming (or other) products in U.S. commerce.

136.  Upon information and belief, Ecomundi's sole intent regarding the THRIVE mark was to reserve and transfer the THRIVE mark to TNC for TNC's use and not for Ecomundi's use.

137.  Upon information and belief, Ecomundi never used the THRIVE mark in commerce in connection with any goods.

138.  TNC was incorporated in Delaware on December 19, 2012.

139.  Alex G. McIntosh is the Chief Executive Officer ("CEO") of TNC.

140.  Upon information and belief, at the time TNC was incorporated, TNC did not offer for sale or sell any products under the THRIVE mark or otherwise.

141.  Upon information and belief, after TNC was incorporated on December 19, 2012, in early 2013, Alex McIntosh traveled to Costa Rica to develop TNC's business operations.

142.  In or about March 2013, McIntosh hosted a contest in Costa Rica to find TNC's head of research and development.  *See* Exhibit 2 (discussing TNC's contest to find a Director of Product Research & Development).  In March 2013, Laura Arce Aita won this contest and became TNC's Founding Director of Product R&D.  *See* Exhibit 3 (showing a LinkedIn profile for Laura Arce Aita that lists her employment with TNC as beginning in March 2013).

143.  On information and belief, McIntosh, as CEO of TNC, undertook various business activities between December 2012 through May 2013 to develop a line of THRIVE men's grooming products, including the contest in Costa Rica from which McIntosh found and hired TNC's Director of Product Research & Development.

*The '058 Application and the Improper Assignment to TNC*

144.   On September 11, 2012, Ecomundi filed intent-to-use Application Serial No. 85726058 for the mark THRIVE covering the following goods in Class 3 (the "'058 Application"):

> Personal care products for cosmetic use, namely, hair shampoos and conditioners, hair styling preparations; body and hand washes, soaps and gels; non-medicated skin care preparations, namely facial lotions, cleansers and creams, body lotions, creams and oils for cosmetic use, skin moisturizers; cosmetic sun care preparations and sunscreens; lip creams and balms; antiperspirants and deodorants for personal use; shaving creams and gels; preshaving preparations; after shave lotions and creams; non-medicated baby care products, namely baby lotions, creams, body cleansers, shampoos, gels and washes, diaper rash creams and ointments.

145.   Alex G. McIntosh signed the '058 Application as the Chief Executive Officer of Ecomundi.

146.   The Notice of Allowance issued for the '058 Application on April 9, 2013.

147.   McIntosh claimed, under penalty of perjury, that TNC first used the THRIVE mark between late August and early September 2013.  *See* Supplemental Declaration of Alex McIntosh ("McIntosh Decl."), March 29, 2021, ECF. No. 28-4 ¶ 2.  McIntosh claimed TNC's "first use of its THRIVE mark" happened when three THRIVE product samples were sent to Whole Foods (and allegedly Pharmaca) in late August 2013 as a Round 1 product review submission (but not as a sale) and an alleged "telephonic" sale of three THRIVE products to an undisclosed person on September 5, 2013.[1]  (*Id.*)

---

[1] Without the benefit of discovery, Le-Vel reserves its right to challenge the veracity of such telephonic sale as token use and/or not constituting a sale within the ordinary course of business for products of these types.

SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

148.  Before TNC allegedly first used the THRIVE mark in August/September 2013, Ecomundi purportedly assigned all rights, title, and interest in the THRIVE mark, including, in relevant part, the '058 Application, to TNC through a "TECHNOLOGY ASSIGNMENT AGREEMENT" dated May 23, 2013 (the "Technology Assignment").  The Technology Assignment is referenced in a nunc pro tunc Assignment filed at the USPTO.  A true and correct copy of the nunc pro tunc Assignment filed at the USPTO at Reel/Frame 005123/0443-0446, executed by Alex McIntosh (as CEO of Ecomundi) on September 27, 2013 (the "Nunc Pro Tunc Assignment") and recorded at the USPTO on October 10, 2013 is attached as Exhibit 4.  Upon information and belief, another agreement exists between TNC, Ecomundi, and McIntosh that contains or references the Technology Assignment and Nunc Pro Tunc Assignment but is not directed at any licensing or exercise of quality control over the THRIVE trademark or '058 Application.

149.  The Nunc Pro Tunc Assignment states that Ecomundi assigned to TNC "the Trademark and the Applications, together with the good will associated therewith, that portion of the Assignor's ongoing and existing business to which the Trademarks pertain," and that TNC "is the successor to the business of the Assignor" based on the Technology Assignment, which is "incorporated herein by reference and made part of this agreement."

150.  On information and belief, the Technology Assignment does not purport to assign to TNC the '058 Application or any specific ongoing and existing business assets, technologies, or intellectual property.  Rather, on information and belief, it only specified the assignment to TNC of an unidentified Thrive trademark (which was not then in use, *see supra*, Paragraph 147), and two parked THRIVE domain names: Thrivenaturalcare.com and Thrive-natural.com.  On further information and belief, the Technology Assignment contains a generic description of all forms of technology allegedly transferred and listed the Thrive trademark and the domain names listed above.

151.  The domain name thrive-natural.com purportedly transferred from Ecomundi to TNC by the Technology Assignment is still registered to "Ecomundi Ventures, LLC," which demonstrates that this domain name was never officially transferred from Ecomundi to TNC.  *See* Exhibit 5 (showing WHOIS information for Thrive-natural.com, including "Registrant Org" as "Ecomundi Ventures, LLC").

152.  Similarly, the domain name Thrivenaturalcare.com purportedly transferred from Ecomundi to TNC by the Technology Assignment has WHOIS info that does not reflect a transfer of ownership from the original registrant (on information and belief, Ecomundi).  *See* Exhibit 6 (showing WHOIS information for Thrivenaturalcare.com, which reflects no change in registrar or privacy service).

153.  Upon information and belief, the Technology Assignment never transferred and/or improperly failed to transfer the '058 Application, or any other intellectual property, technology, or business asset, to TNC.

154.  Accordingly, the '058 Application was still owned by Ecomundi following the Technology Assignment.

155.  The Technology Assignment and Nunc Pro Tunc Assignment were purportedly effective when the '058 Application was still an intent-to-use application and before any statement or allegation of use had been filed.

156.  Because the THRIVE mark had not been used in commerce until after May 2013 (i.e., after the Technology Assignment), and because no goodwill had yet developed in the applied-for THRIVE mark at the time the Technology Assignment was purportedly effective (May 23, 2013), such assignment was improper and invalid.  *See* McIntosh Decl. at ¶ 2 (claiming first use between August and September 2013).

157.  Because no allegation of use or declaration of use was filed in support of the '058 Application until after the effective dates of the Technology Assignment and Nunc Pro Tunc Assignment, both assignments violated 15 U.S.C. § 1060, and neither constituted a valid assignment of the '058 Application to TNC.

158.  TNC was not a successor to any ongoing and existing business owned by Ecomundi related to the THRIVE mark and, to the extent that any business related to the THRIVE mark existed as of the Technology Assignment, it was owned and operated by TNC and could not be assigned by Ecomundi to TNC.  Specifically, McIntosh's pre-assignment activities as CEO of TNC, including the hosting of a contest to find TNC's head of research and development, and hiring TNC's Director of Product R&D in March 2013, demonstrate that any ongoing and existing THRIVE business was owned by TNC *before* the Technology Assignment.  *See supra* Paragraphs 142–143.

159.  Ecomundi's assignment to TNC was improper given McIntosh's alleged first use date of the THRIVE mark occurred after the May 23, 2013 effective date of the Technology Assignment and Nunc Pro Tunc Assignment, and TNC was not a successor to any ongoing and existing Ecomundi business related to the THRIVE trademark.

160.  The '942 Registration went abandoned because Ecomundi never used the THRIVE trademark and improperly transferred it to TNC.  Specifically, Ecomundi transferred an intent-to-use trademark application that it had previously filed for purposes of reserving and subsequently trafficking such application to a then-unknown company and did so without any ongoing and existing Ecomundi business specifically related to such mark.

161.  On information and belief, there is no license agreement or other agreement, nor has there ever been, in place between Ecomundi and TNC in which Ecomundi controls the quality of the products offered and sold by TNC under the THRIVE trademark.

*Ecomundi's Request to Divide the '058 Application and the Birth of the '517 Application*

162.  Before the Nunc Pro Tunc Assignment was recorded with USPTO (which was on October 10, 2013), Ecomundi filed a Request for Extension of Time to

file a Statement of Use for the '058 Application on October 4, 2013.  In this filing, Ecomundi proposed that Thrive Natural Care, Inc., of 42 Darrell Place, San Francisco, California 94133 be the new owner of the '058 Application.

163.  On October 4, 2013, TNC filed a Request to Divide the '058 Application. Alex G. McIntosh signed the request and alleged that the following goods were in use as of September 5, 2013:

> Non-medicated skin care preparations, namely facial lotions, cleansers and creams, creams and oils for cosmetic use, skin moisturizers; pre-shaving preparations; after shave lotions and creams.

164.  In the October 4, 2013 Request to Divide, McIntosh also alleged that the following goods remained under the Section 1(b) intent-to-use basis:

> Personal care products for cosmetic use, namely, hair shampoos and conditioners, hair styling preparations; body and hand washes, soaps and gels; non-medicated skin care preparations, namely body lotions; cosmetic sun care preparations and sunscreens; lip creams and balms; antiperspirants and deodorants for personal use; shaving creams and gels; non-medicated baby care products, namely baby lotions, creams, body cleansers, shampoos, gels and washes, diaper rash creams and ointments

165.  On November 5, 2013, the USPTO processed TNC's request to divide the '058 Application, after which time the '058 Application covered only the following goods:

> Personal care products for cosmetic use, namely, hair shampoos and conditioners, hair styling preparations; body and hand washes, soaps and gels; non-medicated skin care preparations, namely, body lotions; cosmetic sun care preparations and sunscreens; lip creams and balms; antiperspirants and deodorants for personal use; shaving

SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

creams and gels; non-medicated baby care products, namely, baby lotions, creams, body cleansers, shampoos, gels and washes, diaper rash creams and ointments

166.  After five extensions of time to file a Statement of Use were filed, the '058 Application covering the personal care products listed in Paragraph 165 was abandoned on May 16, 2016, for failure to file a Statement of Use.

167.  The October 4, 2013 Request to Divide also created the child Application Serial No. 85980517 covering the following goods (the "'517 Application"):

Non-medicated skin care preparations, namely, facial lotions, cleansers and creams, creams and oils for cosmetic use, skin moisturizers; pre-shaving preparations; after shave lotions and creams

168.  The '517 Application matured into Registration No. 4467942 (the "'942 Registration") on January 14, 2014.

*TNC's Fraudulent Identification of and Lack of "Non-Medicated Skin Care Preparations"*

169.  As explained above in Paragraph 167, the '517 Application (which matured into the '942 Registration) covered the following goods:

Non-medicated skin care preparations, namely, facial lotions, cleansers and creams, creams and oils for cosmetic use, skin moisturizers; pre-shaving preparations; after shave lotions and creams

170.  TNC proffered the signed declaration of its Chief Executive Officer, Alex McIntosh, which states under penalty of perjury that TNC's "first use of its THRIVE mark in commerce in relation to skincare products" was in "August 2013, [when] Thrive's THRIVE-branded products were shipped in commerce via postal mail to both Whole Foods in California and Pharmaca in Colorado."  *See* McIntosh Decl. ¶ 2.

171.   Such allegations of first use reveal that TNC's initial product offering in August 2013 was limited solely to "face wash," "face balm," and "shave oil," and did not include "[n]on-medicated skin care preparations, namely, facial lotions, cleansers and creams, creams and oils for cosmetic use, skin moisturizers." *See id.*, Ex. A at 7.

172.  Notably, none of these products allegedly introduced by TNC in August/September 2013 were facial lotions, facial creams, creams for cosmetic use, or skin moisturizers. Rather, they were men's grooming products. *See* Exhibit 7 (showing TNC website screen capture featuring only three men's grooming products).

173.  TNC knew that its initial three-product offering was limited exclusively to men's grooming products, namely "pre-shaving preparations" and "after shave lotions and creams," as TNC then publicly advertised its products as men's grooming and shaving products. *See id.*

174.  For example, TNC used the tagline A BETTER WAY TO GROOM together with its first three products and described its company as one specifically aimed at providing high-quality men's grooming products, not non-medicated skincare preparations. As stated by TNC itself on its website at least as on November 18, 2014 (which is the earliest date a page from TNC's website is archived on web.archive.org):

> We think guys can do better than the stuff that dominates the market for men's grooming. Something without synthetics that restores skin naturally. Something with real personality.
>
> So we traveled to an amazing place—the rainforests and family farms of Costa Rica—to source the highest quality, sustainably-harvested botanical ingredients for superior face care. After more than fifteen months of research and refining, we're proud to present to you Thrive Natural Care.
>
> **Welcome to a better way to groom.**

*See id.*

175.  Other than these three products ("face wash," "face balm," and "shave oil") allegedly sent to Whole Foods and Pharmaca in August 2013 (*see* McIntosh Decl. ¶ 2), and shown publicly on TNC's website on November 18, 2014 (the post-shave Face Balm, pre-shave Face Wash, and pre-shave Shave Oil, *see* Exhibit 7), upon information and belief, TNC did not offer, and had not before offered, any other products in connection with the mark THRIVE.

176.  Despite offering no other products other than the three products—comprised entirely of "pre-shaving preparations" and "after shave lotions and creams"—with the THRIVE mark as of and before November 18, 2014, Alex McIntosh, as Co-Founder and CEO of TNC, still signed a sworn declaration in the October 4, 2013 Statement of Use, attesting to TNC's use of the THRIVE mark for all of the goods identified in what became the '517 Application, including "[n]on-medicated skin care preparations, namely, facial lotions, cleansers and creams, creams and oils for cosmetic use, skin moisturizers," which TNC did not offer at least as of November 18, 2014, and not as of October 4, 2013 when TNC signed the declaration.[2]  A true and correct copy of the October 4, 2013 Statement of Use submitted for the '058 Application, which became the '517 Application after division, is attached as Exhibit 8.

177.  Upon information and belief, TNC knew such attestation in its October 4, 2013 Statement of Use was false when it was signed.

*Fraud in Connection with TNC's Combined Declaration of Use and Incontestability under Sections 8 & 15 for Registration No. 4467942*

---

[2] At the time the Statement of Use was filed on October 4, 2013, the '517 Application had not formally been created by the USPTO (as the request to divide had also been filed on October 4, 2013). The USPTO later accepted and formalized the request to divide, which created the '517 Application. The Statement of Use submitted for the '058 Application appears in the prosecution history in the TSDR database for the '517 Application.

178.  On January 13, 2020, Alex McIntosh, as Co-Founder and CEO of TNC, filed and signed the Combined Declaration of Use and Incontestability under Sections 8 & 15 with the USPTO in connection with Registration No. 4467942.

179.  In this Declaration, McIntosh declared that:

> For International Class 003, the mark is in use in commerce on or in connection with **all** of the goods/**all** of the services, or to indicate membership in the collective membership organization, listed in the existing registration for this specific class: Non-medicated skin care preparations, namely, facial lotions, cleansers and creams, creams and oils for cosmetic use, skin moisturizers; preshaving preparations; after shave lotions and creams; **and** the mark has been continuously used in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with **all** goods/**all** services.

(emphases in original).  A true and correct copy of TNC's January 13, 2020 Combined Declaration of Use and Incontestability under Sections 8 & 15 is attached as Exhibit 9.

180.  At the time that TNC filed the Combined Declaration of Use and Incontestability, on information and belief, TNC had not offered and/or had not used for five consecutive years (i.e., beginning on January 13, 2015), at least the following goods in commerce in connection with the THRIVE mark: (1) Non-medicated skin care preparations, namely, facial lotions . . . and (2) creams, (3) creams . . . for cosmetic use.

181.  The June 30, 2019 Wayback Machine capture of TNC's website shows all of the products TNC was offering at the time. A true and correct capture of the June 30, 2019 Wayback Capture of TNC's website is attached as Exhibit 10. None of the products offered on TNC's website as of June 30, 2019 were "Non-medicated skin care preparations, namely, facial lotions;" "Non-medicated skin care preparations, namely, . . . creams;" or "creams for cosmetic use."

## TNC AND ITS USE OF THRIVE

### *TNC's Allegedly Incontestable THRIVE Registration*

182.  TNC offers and sells skincare products under the name and trademark THRIVE through its website available at thrivecare.co, as shown below:




183.  TNC markets itself as selling THRIVE skincare products on its website, including some products that fall within the scope of its allegedly incontestable '942 Registration.

184.  Under 15 U.S.C. § 1115(b), an incontestable registration is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce."

185.  To the extent that TNC's '942 Registration is invalid, abandoned, procured through fraud, and/or otherwise subject to cancellation, that registration would be no defense to Le-Vel's infringement claims.

186.  Having raised a defense to incontestability of TNC's '942 Registration under 15 U.S.C. § 1115(b)(1), Le-Vel is not precluded by 15 U.S.C. § 1115(b) from pleading infringement claims against TNC contingent in the alternative based on the disposition of Le-Vel's cancellation claims against TNC's '942 Registration. *See* Counts 1 and 2, *infra*.

187.  Similarly, Le-Vel, having otherwise challenged the validity of TNC's allegedly incontestable '942 Registration is not precluded by 15 U.S.C. § 1115(b) from pleading infringement claims against TNC contingent on the success of Le-Vel's cancellation claims against TNC's '942 Registration.  *See* Counts 1 and 2, *infra*.

188.  Because the '942 Registration is invalid, abandoned, and/or was fraudulently obtained, it cannot serve as "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce," and the '942 Registration is no defense to Le-Vel's claims of infringement against TNC.  *See* 15 U.S.C. § 1115(b)(1).

*TNC's Infringing Use of THRIVE for Goods Outside the Allegedly Incontestable Registration*

189.  TNC also sells skincare products outside the scope of its allegedly incontestable '942 Registration.  *See* ECF No. 1 at ¶ 29 (discussing a 2020 THRIVE application for goods "that [TNC] already sells").  For example, TNC has no claim of incontestable rights in THRIVE for "bar soap" as part of its skincare product offerings:



190.  Le-Vel's infringement claims (based on its zone of natural expansion) against TNC extend to skincare goods that are not covered by TNC's allegedly

incontestable registration, irrespective of the validity of the '942 Registration, because an incontestable registration is no defense to infringement claims based on prior common law rights against uses beyond the scope of such incontestable registration.

*TNC's Use of THRIVE*

191. Le-Vel has prior common law rights in THRIVE for vitamins, shakes, and vitamin skin patches, as well as goods and services falling within Le-Vel's natural zone of expansion.

192. TNC's use of THRIVE for a skincare product line infringes Le-Vel's prior common law rights in the THRIVE mark because such skincare goods fall within Le-Vel's natural zone of expansion from vitamins, shakes, and vitamin skin patches.

193. That skincare products are within the natural zone of expansion of companies that (like Le-Vel) focus on vitamins, supplements, and nutritional products is demonstrated by the many companies that have taken that well-worn path of natural expansion, e.g., Herbalife, Amway, Shaklee, GNC, IsXperia, LifeCore, and Vitamin Shoppe.

194. Moreover, vitamins and supplements are often found in the same trade channels as skincare products are found.  In fact, TNC's CEO attested that its very first potential customers were Whole Foods and Pharmaca.  *See* McIntosh Decl. at ¶ 2.  On information and belief, each of those companies sell both vitamins and supplements, on the one hand, and skincare products, on the other, including in that same common areas of such stores and/or websites.

195. Accordingly, TNC was on notice of likely expansions from vitamins and supplements, on one hand, and skincare products, on the other hand (and vice versa), including from a company like Le-Vel, *even before its first use of THRIVE*.  *See id*.

196. TNC alleges that Le-Vel's use of THRIVE TRIBE in a welcome-email depicting vitamins copied TNC's prior use of THRIVE TRIBE which it uses for

skincare products.  *See* ECF No. 1 at ¶ 44; ECF No. 8-1 at 7:6-19; Declaration of Stephen McArthur, March 5, 2021, ECF. No. 8-3 ¶ 22, Ex. 18.  As such, TNC admits that skincare products fall within the zone of natural product expansion of vitamins where the same mark is use for these two respective products.

### INJURY TO THE PUBLIC AND LE-VEL

197.  Because TNC has committed fraud on the USPTO in obtaining the '942 Registration and filing a Declaration of Incontestability for the '942 Registration, and because the assignment of the underlying application that resulted in '942 Registration was void ab initio and/or the '942 Registration has been abandoned by Ecomundi, Le-Vel is unduly prejudiced by the continued registration of the fraudulent '942 Registration, which is now being offensively asserted against Le-Vel in this proceeding.

198.  TNC's use of the THRIVE mark is likely to cause confusion, mistake, and deception as to the source or origin of TNC's goods and services, and is likely to falsely suggest a sponsorship, connection, or association between TNC, its products and services, and/or its commercial activities and Le-Vel and its THRIVE brand.

### FIRST CLAIM FOR RELIEF

### Cancellation of Federal Trademark Registration No. 4467942

### Sections 10, 14, 37 and 45 of the Lanham Act, 15 U.S.C. §§ 1060, 1064, 1119, 1127

199.  Le-Vel repeats and realleges each and every allegation set forth above.

*Count 1(a): The '942 Registration is Void Ab Initio (15 U.S.C. §§ 1060, 1119)*

*(Count 1(a) was dismissed on June 4, 2021, Dkt. 76)*

200.  Upon information and belief, Ecomundi is a venture capital firm that is in the business of investing in companies and projects.

201.  Upon information and belief, Ecomundi's sole intent relating to the THRIVE mark was to reserve and traffic the THRIVE mark to TNC for TNC's use, and not its own use.

202.  Ecomundi executed a nunc pro tunc assignment purporting to assign the THRIVE mark, attendant goodwill, and any portion of the business to which the THRIVE mark pertained, to TNC on September 27, 2013, purportedly effective May 23, 2013.

203.  Ecomundi assigned the '517 Application to TNC while it was still an intent-to-use application (i.e., before the THRIVE mark had ever been used). Ecomundi did not file an allegation of use (either an Amendment to Allege Use under 5 U.S.C. §1051(c) or a Statement of Use under 15 U.S.C. §1051(d)) before the purported effective date of the assignment of that intent-to-use application.

204.  Upon information and belief, Ecomundi did not use the THRIVE mark in commerce in connection with the applied-for goods before the purported effective date of Ecomundi's assignment of the '517 Application to TNC.

205.  Upon information and belief, on May 23, 2013 (the purported effective date of the assignment), Ecomundi did not use, and had not used the THRIVE mark in commerce in connection with any of the goods identified in the '517 Application, nor did Ecomundi ever intend to do so.  Consequently, as of the purported effective date of the assignment (May 23, 2013), Ecomundi had not generated or amassed goodwill in the THRIVE mark capable of assignment.

206.  Without any use of the mark by Ecomundi, and Ecomundi having no bona fide intent to use the THRIVE mark in connection with the sale or transport of the applied-for goods in U.S. commerce, no goodwill developed in the THRIVE mark. When Ecomundi (lacking the intent to use the THRIVE mark in commerce) transferred the THRIVE mark as of the purported effective date to TNC before use of the mark had begun, the transfer was void ab initio.

207.  Even if Ecomundi intended to use the THRIVE mark in commerce, such intent does not constitute bona fide use of the mark such that goodwill could be created in the mark. In the absence of any goodwill to transfer, the transfer of the THRIVE mark was void ab initio.

208.  Upon information and belief, Ecomundi and TNC knew that Ecomundi did not intend to use the THRIVE mark in connection with the identified goods and that Ecomundi had not generated any goodwill in the THRIVE mark prior to the purported effective date of the Assignment.

209.  Upon information and belief, Ecomundi and TNC knew that Ecomundi had not generated any goodwill in the THRIVE mark prior to the purported effective date of the Assignment.

210.  Upon information and belief, TNC was not, in fact, a successor to Ecomundi's business or the portion of the business to which the THRIVE mark pertained, because Ecomundi lacked a business to which the THRIVE mark pertained.

211.  Accordingly, the '942 Registration is void ab initio pursuant to Section 10 of the Trademark Act, 15 U.S.C. §1060 and should be cancelled in its entirety.

*Count 1(b): Abandonment of the '942 Registration (15 U.S.C. §§ 1064, 1127)*

212.  Le-Vel repeats and realleges each and every allegation set forth above.

213.  On information and belief, Ecomundi failed to assign the intent-to-use '058 Application to TNC at least because such assignment was attempted without any transfer of ongoing or existing Ecomundi business related to the underlying mark.  As such, Ecomundi's purported assignment of the '058 Application to TNC violated Section 10 of the Trademark Act, 15 U.S.C. § 1060, and failed to transfer the '058 Application to TNC, causing the '058 Application to remain owned by Ecomundi.

214.  The '517 Application, which issued from the October 4, 2013 Request to Divide the '058 Application, and which matured into the '942 Registration on January 14, 2014, remained owned by Ecomundi, not TNC.

215.  On information and belief, Ecomundi has never used, nor did it have a bona fide intent to use, the THRIVE trademark in connection with any of the goods covered by the '942 Registration.

216.  On information and belief, Ecomundi has not used, nor did it have a bona fide intent to use, the THRIVE trademark in connection with any of the goods covered by the '942 Registration for a consecutive three-year period after the issuance of the '942 Registration.

217.  On information and belief, Ecomundi is not currently using the THRIVE trademark in connection with any of the goods covered by the '942 Registration and never intended such use after the issuance of the '942 Registration.

218.  On information and belief, there is no license agreement or other agreement in place between Ecomundi and TNC in which Ecomundi controls the quality of the products offered and sold by TNC under the THRIVE trademark.

219.  On information and belief, there has never been any license agreement or other agreement in place between Ecomundi and TNC through which Ecomundi had a contractual right to control the quality of the products offered and sold by TNC under the THRIVE trademark.

220.  On information and belief, Ecomundi never controlled or attempted to control the quality of the products offered and sold by TNC under the THRIVE trademark.

221.  Accordingly, the '942 Registration is abandoned within the meaning of Section 45 of the Trademark Act, 15 U.S.C. §1127 and should be cancelled in its entirety.

## SECOND CLAIM FOR RELIEF

### Cancellation of Federal Trademark Registration No. 4467942

### Sections 37 and 38 of the Lanham Act, 15 U.S.C. §§ 1119, 1120

222.  Le-Vel repeats and realleges each and every allegation set forth above.

*Count 2(a): Fraud in Obtaining Registration No. 4467942 (15 U.S.C. § 1120)*

223.  TNC signed a sworn declaration in the October 4, 2013 Statement of Use, attesting to TNC's first use of the THRIVE mark in commerce as of September 5, 2013 for all the goods identified in Application No. 85980517, including "[n]on-

medicated skin care preparations, namely, facial lotions, cleansers and creams, creams and oils for cosmetic use, skin moisturizers."

224.  TNC's sworn declaration was false because TNC had not used the THRIVE mark for "[n]on-medicated skin care preparations, namely, facial lotions, cleansers and creams, creams and oils for cosmetic use, skin moisturizers" as of September 5, 2013 or as of October 4, 2013.

225.  TNC's false material statements were made knowingly and with the intent to deceive the PTO.

226.  The PTO relied upon TNC's fraudulent and material misstatement in its decision to register the '942 Registration.

227.  Upon information and belief, but for TNC's fraudulent statement, the PTO would not have registered the '942 Registration.

228.  TNC obtained the '942 Registration because of its fraudulent Statement of Use to the PTO with the purpose and intention of procuring a registration to which it was not entitled, and thus committed fraud on the PTO.

229.  Accordingly, TNC's Registration No. 4467942 was obtained fraudulently and is, as a result, invalid and unenforceable.  Registration No. 4467942 should be cancelled in its entirety.

*Count 2(b): Fraud in Connection with TNC's Combined Declaration of Use and Incontestability under Sections 8 & 15 for Registration No. 4467942 (15 U.S.C. § 1120)*

230.  Le-Vel repeats and realleges each and every allegation set forth above.

231.  On January 13, 2020, Alex McIntosh, as Co-Founder and CEO of TNC, filed and signed the Combined Declaration of Use and Incontestability under Sections 8 & 15 with the USPTO in connection with Registration No. 4467942 and declared that:

> "For International Class 003, the mark is in use in commerce on or in connection with **all** of the goods/**all** of the services, or to indicate membership in the collective membership

> organization, listed in the existing registration for this specific class: Non-medicated skin care preparations, namely, facial lotions, cleansers and creams, creams and oils for cosmetic use, skin moisturizers; preshaving preparations; after shave lotions and creams; **and** the mark has been continuously used in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with **all** goods/**all** services

(emphases in original).

232.  At the time that TNC filed the Combined Declaration of Use and Incontestability, TNC had never used or at least not used for five consecutive years the THRIVE mark in commerce in connection with at least the following goods identified in its registration: (1) Non-medicated skin care preparations, namely, facial lotions . . . and (2) creams, (3) creams . . . for cosmetic use.

233.  TNC knew that it had never used or at least not used for five consecutive years the THRIVE mark in connection with at least the goods identified in Paragraph 181 when it signed the Combined Declaration of Use and Incontestability.

234.  TNC made the false material statements, identified above, with the intent to maintain a registration to which TNC was not entitled.

235.  TNC's false material statements were made knowingly and with the intent to deceive the PTO.

236.  The PTO relied on such knowingly false statements of material fact in approving the Combined Declaration of Use and Incontestability.

237.  Accordingly, TNC's Registration No. 4467942 was maintained fraudulently and is, as a result, invalid and unenforceable.  Registration No. 4467942 should be cancelled in its entirety.

# THIRD CLAIM FOR RELIEF

## Cancellation of Federal Trademark Registration No. 6164303

### Sections 37 and 2(d) of the Lanham Act, 15 U.S.C. §§ 1119, 1052(d)

238.  Le-Vel repeats and realleges each and every allegation set forth above.

239.  Le-Vel has extensively used the THRIVE mark in commerce nationwide prior to TNC's May 2, 2016 filing date for Registration No. 6164303 and TNC's alleged first-use/first use-in-commerce date of September 5, 2013.

240.  Le-Vel's rights in its THRIVE mark start in August 2012, when Le-Vel first used the THRIVE mark in interstate commerce.

241.  Le-Vel has prior nationwide common law rights in the THRIVE mark given that Le-Vel has used the THRIVE mark in commerce throughout the United States prior to TNC's constructive first-use date (May 2, 2016), alleged first-use date (September 5, 2013), and issuance date of Registration No. 6164303 (September 29, 2020).  Le-Vel also has priority by virtue of the fact that its federal registrations in Paragraph 119 all issued prior to the issuance date of TNC's Registration No. 6164303.

242.  TNC's THRIVE mark is identical to Le-Vel's THRIVE mark.

243.  The goods covered by TNC's THRIVE mark are within the natural zone of expansion of the goods that have long been distributed and sold by Le-Vel under its THRIVE brand, including Le-Vel's THRIVE vitamins, shakes, vitamin skin patches, and other goods falling within Le-Vel's zone of natural expansion, such that consumers are likely to be confused, mistaken, or deceived as to the source, relationship, licensing, approval, authorization, or affiliation between the parties' respective marks under Section 2(d) of the Lanham Act, as amended, 15 U.S.C. § 1052(d).

**FOURTH CLAIM FOR RELIEF**

**Trademark Infringement Under**

**Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)**

244.  Le-Vel repeats and realleges each and every allegation set forth above.

245.  Without Le-Vel's consent, TNC used and continues to use in commerce reproductions, copies, and colorable imitations of Le-Vel's THRIVE brand, including the registered THRIVE marks covered by Le-Vel's federal Registration Nos. 5772374, 5174403, and 5169444, in connection with its line of skincare products, which are products falling squarely within Le-Vel's zone of natural product expansions and having naturally expanded to skincare products, the same general types of skincare products as Le-Vel's skincare products, which is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

**FIFTH CLAIM FOR RELIEF**

**Trademark Infringement, False Designation**

**of Origin, Passing Off, and Unfair Competition**

**Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)**

246.  Le-Vel repeats and realleges each and every allegation set forth above.

247.  Le-Vel has prior common law rights in the THRIVE mark based on its use of the mark since at least August 2012.

248.  TNC's use of THRIVE, as described above, is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of Le-Vel, its services/products, and/or its commercial activities by or with TNC, and thus constitutes trademark infringement, false designation of origin, passing off, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Le-Vel requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including the following:

A.     An Order certified by this Court directing the Director of the U.S. Patent and Trademark Office, pursuant to 15 U.S.C. § 1119, to: (1) cancel trademark Registration No. 4467942 on the grounds that it was fraudulently procured and/or is invalid, abandoned, and unenforceable; (2) cancel trademark Registration No. 6164303 on the grounds that the registered mark THRIVE is likely to be confused with Le-Vel's prior rights in the mark THRIVE and, as such, is subject to cancellation pursuant to 15 U.S.C. 1052(d); (3) cancel all other registrations and refuse all other applications for trademarks or service marks consisting of or containing the mark THRIVE.

B.     An order declaring that TNC's use of THRIVE infringes Le-Vel's rights in THRIVE and constitutes trademark infringement and unfair competition under federal law.

C.     A permanent injunction enjoining TNC and its employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, and all persons in active concert or participation with any of them:

1.     From using or registering the mark THRIVE and/or any other names or trademarks that are confusingly similar or likely to dilute the mark THRIVE;

2.     From representing by any means whatsoever, directly or indirectly, that any products or services offered by TNC, or any activities undertaken by TNC, are associated or connected in any way with Le-Vel or sponsored or authorized by or affiliated with Le-Vel.

**48**

D.   An order directing TNC to, within thirty (30) days after the entry of any injunction against it, file with this Court and serve on Le-Vel's attorneys a report in writing and under oath setting forth in detail the manner and form in which TNC has complied with the injunction.

E.   An order requiring TNC to pay Le-Vel its costs and attorneys' fees in this action pursuant to 15 U.S.C. § 1117 and other applicable laws; and

F.   All other relief as the Court may deem appropriate.


DATED:  June 28, 2022                KENDALL BRILL & KELLY LLP


By:   _____/s/ Alan Jay Weil_____
        Alan Jay Weil
        Attorneys for Defendant and
        Counterclaim Plaintiff
        Le-Vel Brands, LLC

        FINNEGAN, HENDERSON,
        FARABOW, GARRETT & DUNNER, LLP
        Mark Sommers (*pro hac vice*)
        Morgan E. Smith (SBN 293503)
        Patrick J. Rodgers (*pro hac vice*)
        Daniel R. Mello (SBN 325714)