FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
Mark Sommers (*pro hac vice*)
*mark.sommers@finnegan.com*
Patrick Rodgers (*pro hac vice*)
*patrick.rodgers@finnegan.com*
901 New York Avenue, NW,
Washington, DC 20001-4413
Telephone: (202) 408-4064
Facsimile: (202) 408-4400

Morgan E. Smith (293503)
*morgan.smith@finnegan.com*
Daniel R. Mello Jr. (325714)
*daniel.mello@finnegan.com*
3300 Hillview Avenue
Palo Alto, CA 94304
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

KENDALL BRILL & KELLY LLP
Alan Jay Weil (63153)
*ajweil@kbkfirm.com*
Amanda D. Barrow (313583)
*abarrow@kbkfirm.com*
10100 Santa Monica, Suite 1725
Los Angeles, California 90067
Telephone: (310) 556-2700
Facsimile: (310) 556-2705

*Attorneys for Defendant and Counterclaim Plaintiff Le-Vel Brands, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

THRIVE NATURAL CARE, INC.,

Plaintiff and Counterclaim Defendant,

v.

LE-VEL BRANDS, LLC,

Defendant and Counterclaim Plaintiff.

Case No. 2:21-CV-02022-DOC-KES

**LE-VEL'S REPLY IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE REPORT AND TESTIMONY OF DAVID DREWS**

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Judge: Hon. David O. Carter
Crtrm: 10A
Date: July 25, 2022
Time: 8:30 a.m.

Action Filed: March 4. 2021

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Le-Vel's *Daubert* Motion Is Not an Impermissible "Second Summary Judgment Motion" .......... 1

B. Drews Failed to Account for Alternative Marketplace Reasons for the Alleged Damage to TNC's Brand .......... 3

C. Drews Lacks a Sufficiently Reliable Basis for Disgorgement of Profits .......... 6

D. TNC Lacks a Sufficiently Reliable Basis for Reasonable Royalties .......... 8

III. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*adidas Am., Inc. v. Payless Shoesource, Inc.*, No. CV 01-1655-KI, 2008 WL 4279812 (D. Or. Sept. 12, 2008) .................11-12

*Bauer Bros., LLC v. Nike, Inc.*, 159 F. Supp. 3d 1202 (S.D. Cal. 2016) .................12

*Colibri Heart Valve LLC v. Medtronic CoreValve LLC*, No. SACV2000847DOCJDE, 2021 WL 7285995 (C.D. Cal. Nov. 16, 2021) .................10

*Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) .................1, 3

*Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 410 (2015) .................3, 8

*Finjan, Inc. v. Sophos, Inc.*, No. 14-CV-01197-WHO, 2016 WL 4560071 (N.D. Cal. Aug. 22, 2016) .................2-3

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971) .................8-9

*Gucci Am., Inc. v. Guess?, Inc.*, 858 F. Supp. 2d 250 (S.D.N.Y. 2012) .................12

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) .................1, 3

*Lodestar Anstalt v. Bacardi & Co.*, No. 2:16-cv-06411-CAS, 2019 WL 8105378 (C.D. Cal. July 3, 2019), *aff'd*, 31 F.4th 1228 (9th Cir. 2022) .................9, 10

*M2 Software Inc. v. Viacom, Inc.*, 223 F. App'x 653 (9th Cir. 2007) .................12

*Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117 (9th Cir. 1968) ........ 8

*Marketquest Group, Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234 (S.D. Cal. 2018) ........ 2, 9

*Monster Energy Co. v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928 (C.D. Cal. 2021), *appeal dismissed*, No. 21-55361, 2021 WL 3028034 (9th Cir. June 28, 2021) ........ 7-8

*Playboy Enterprises, Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272 (9th Cir. 1982) ........ 8

*QS Wholesale, Inc. v. World Mktg., Inc.*, No. SA 12-CV-0451 RNBX, 2013 WL 1953719 (C.D. Cal. May 9, 2013) ........ 11

*Quia Corp. v. Mattel, Inc.*, No. C 10-1902 JF (HRL), 2011 WL 2749576 (N.D. Cal. July 14, 2011) ........ 2

*Scat Enterprises, Inc. v. FCA US LLC*, No. CV 14-7995-R, 2017 WL 5896182 (C.D. Cal. June 8, 2017) ........ 4

*Sentius Int'l, LLC v. Microsoft Corp.*, No. 5:13-CV-00825, 2015 WL 451950 (N.D. Cal. Jan. 27, 2015) ........ 10

*Thrive Nat. Care, Inc. v. Thrive Causemetics, Inc.*, No. CV 20-9091 PA (ASX), 2021 WL 4813257 (C.D. Cal. Oct. 6, 2021) ........ 9, 10

*Trovan, Ltd. v. Pfizer, Inc.*, No. CV-98-00094 LGB MXC., 2000 WL 709149 (C.D. Cal. May 24, 2000) ........ 2

**Statutes**

15 U.S.C. § 1117(a) ........ 3, 8

**Rules**

Fed. R. Civ. P. 56 ........ 2

Fed. R. Evid. 403 ........ 1

Fed. R. Evid. 702 .......... 1, 2

**Other Authorities**

J. McCarthy on Trademarks and Unfair Competition § 30:59 (5th ed.) .......... 3, 8

# I. INTRODUCTION

Defendant and Counterclaim Plaintiff Le-Vel Brands, LLC submits this reply in support of its *Daubert* motion to exclude the report and testimony of Plaintiff and Counterclaim Defendant Thrive Natural Care, Inc. ("TNC")'s damages expert David Drews. Drews's expert report does not rest on reliable factual foundation, failed to account for alternative market reasons for TNC's alleged damages, and is fatally flawed. TNC's opposition (Dkt. 147-6) merely recites its arguments in opposition to Le-Vel's motion for summary judgment (Dkt. 147-3), completely fails to address the terminal shortcomings of Drews's report and testimony, and raises peripheral arguments keyed to the wrong legal standard.

Drews (1) relies on speculative evidence supporting the harm to TNC caused directly from Le-Vel's infringement, (2) fails to separate the harm to TNC allegedly caused by Le-Vel from the harm caused by third-party Thrive Causemetics (or any other third party), and (3) relies on speculative evidence in assessing the equities that underlie TNC's requests for a disgorgement of profits and reasonable royalties.

For the reasons stated in Le-Vel's opening brief and below, this Court should exclude Drews's report and testimony under Federal Rules of Evidence 702 and 403.

# II. ARGUMENT

## A. Le-Vel's *Daubert* Motion Is Not an Impermissible "Second Summary Judgment Motion"

Le-Vel seeks exclusion of David Drews's expert report and related testimony pursuant to Fed. R. Evid. 702 and 403, *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Le-Vel challenges Drews's report and related testimony as lacking a reliable foundation, and as impermissibly speculative, irrelevant, and unhelpful to a trier of fact. *See* Dkt. 129. Le-Vel contends Drews's opinion is not based on sufficient facts or data, is not the product of reliable principles and methods, and failed to reliably apply reliable principles and methods to the facts of the case. Fed. R. Evid. 702. This

standard is separate and distinct from the summary judgment standard under Fed. R. Civ. P. 56.

That Le-Vel contemporaneously moved for summary judgment on TNC's damages claims is simply a product of TNC's wholesale reliance on Drews to prove such relief. For that reason, the exclusion of Drews will dispose of TNC's monetary claims for purposes of summary judgment.

In response, TNC contends that Le-Vel's citation of summary judgment cases in its *Daubert* motion makes this motion an impermissible second motion for summary judgment. (Dkt. 147-6 ("Opp.") at 4). Those cases, however, are highly relevant for purposes of *Daubert* motions too. Specifically, the courts in *Marketquest Group, Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234 (S.D. Cal. 2018), *Quia Corp. v. Mattel, Inc.*, No. C 10-1902 JF (HRL), 2011 WL 2749576 (N.D. Cal. July 14, 2011), and *Trovan, Ltd. v. Pfizer, Inc.*, No. CV-98-00094 LGB MXC., 2000 WL 709149 (C.D. Cal. May 24, 2000) rejected expert testimony on summary judgment where there was no evidence of licensing or licensing negotiations between the parties, no prior license or negotiations with respect to the plaintiffs respective marks with third parties, no plans or timelines for licensing the marks, and no evidence that the plaintiffs would have licensed its mark. That Drews failed to include those very types of licenses and facts in his analysis renders his report and opinion impermissibly speculative, unreliable, and unhelpful.

In support of its contention that Le-Vel's *Daubert* motion is a disguised summary judgment motion, TNC relies on *Finjan, Inc. v. Sophos, Inc.*, No. 14-CV-01197-WHO, 2016 WL 4560071 (N.D. Cal. Aug. 22, 2016). Yet, in *Finjan*, the court rejected the defendant's *later-filed Daubert* motion in limine because the arguments made in that motion had previously been fully briefed and rejected in an *earlier-filed* summary judgement motion. *See Finjan, Inc. v. Sophos, Inc.*, No. 14-CV-01197-WHO (N.D. Cal), ECF Nos. 140 [Defendant's Motion for Summary Judgment], 181 [Defendant's Reply In Support of its Motion for Summary Judgment], 201 [Minutes

from Hearing on Summary Judgment], 205 [Order on Summary Judgment], 217 [Defendant's Motion in Limine]. That is distinctly different from this case, as Le-Vel filed both of its motions contemporaneously, seeking different forms of relief under different standards of proof, and neither motion has been decided, let alone decided with any reasoning that might impact the disposition of one motion over the other.

**B. Drews Failed to Account for Alternative Marketplace Reasons for the Alleged Damage to TNC's Brand**

Drews is required to have a sufficiently reliable basis on which to formulate his opinions such that those opinions are reliable and helpful to a factfinder. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Here, Drews simply assumes infringement (Dkt. 129-1, Ex. 1 ("Drews Rep.") 1), briefly discussed the unsubstantiated sources of alleged harm to TNC's brand (Drews Rep. 6-10), and then assumes these harms existed when calculating a reasonable royalty and disgorgement of profits (*id*. 10-24). But disgorgement of profits and an award of a reasonable royalty do not arise from a trademark infringement *per se*; rather such relief is subject to the equities of a case. As such, Drews was required to provide some *non-speculative, factual basis* for the harm alleged in his report. 15 U.S.C. § 1117(a); *see Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 410 (2015); J. McCarthy on Trademarks and Unfair Competition § 30:59 (5th ed.) ("This means that an accounting of profits is never automatic and never a matter of right."). Drews's analysis of harm in this case rests on impermissible speculation unsubstantiated by the factual record.[1] And Drews failed to seek out the information

---

[1] Throughout his report, Drews uses speculative wording, e.g., [REDACTED] (Drews Rep. 6 (emphasis added)), some of Le-Vel's sales [REDACTED] had Le-Vel's infringing product not been available for sale (*id*. 7 (emphasis added)), [REDACTED] by Le-Vel (*id*. (emphasis

needed on which to base a reliable opinion. These failures of due diligence render his opinions fatally flawed.

TNC claims that Drews adequately accounted for actual harm to TNC sufficient to support TNC's equitable claims. Opp. at 13. Those sources of harm are: (1) consumer confusion, (2) the use of similar keyword advertising, and (3) the "likelihood that Le-Vel's infringement would create an association between TNC and an MLM company that has received negative attention for unsavory tactics." *Id.*; Drews Rep. 6-10 (defining these harms as (1) [redacted] (2) [redacted] (3) Le-Vel's [redacted] and (4) Le-Vel's [redacted]).

First, Drews cites no evidence of actual lost sales to TNC that were directly caused by or attributable to Le-Vel, or any actual sales that were diverted from TNC to Le-Vel. Drews Rep. 7; Dkt. 129-1, Ex. 2 ("Drews Dep.") 58:1-59:11. In fact, Drews knows of no instance of actual consumer confusion in any form, manner, or context. Drews Dep. 58-60. Instead, Drews deduces that evidence of confusion is shown by the 2021 Wallace Survey and then concludes that such survey confusion is evidence of harm. Drews Rep. 7; Drews Dep. at 100:8-12. Drews's conclusion is baseless as a matter of fact and law. Indeed, Drews acknowledged that the Wallace survey was not designed to test lost or diverted sales and was only intended to test customer confusion. Dkt. 129-1, Ex. 5 at 76:7-11; Drews Dep. 99:7-100:4. Moreover, consumer confusion is legally insufficient harm to substantiate an award of monetary damages. *See*, *e.g.*, *Scat Enterprises, Inc. v. FCA US LLC*, No. CV 14-7995-R, 2017 WL 5896182, at *3 (C.D. Cal. June 8, 2017) ("Moreover, even if

---

added)), [redacted] (*id*. 7 (emphasis added)), [redacted] (*id*. 9 (emphasis added)).

Plaintiff was able to show that actual confusion exists and is likely to exist, it fails to persuade this Court that such a fact, by itself, is sufficient to make the requisite showing of actual harm to its mark."). As such, Drews's reliance on survey confusion as a proxy for actual harm is fatally flawed. Further, Drews failed to analyze, account, or attribute any existing marketplace confusion created from third-party Thrive Causemetics, which was contemporaneously selling its allegedly infringing THRIVE-branded skincare products in the marketplace at the same time when Le-Vel was selling its THRIVE SKIN products. Drews Dep. 104:23-105:11.

Second, harm from the use of similar key words was based on pure speculation. Drews failed to obtain from TNC the underlying financial data needed to properly attribute the actual amount that TNC's AdWords spend increased. Nor did Drews seek to measure any specific increased expenditures incurred by TNC that were directly attributable to Le-Vel's infringement (*id.* 124:3-7) or otherwise limit certain other advertising expenditures solely to the time period that Le-Vel has used its THRIVE SKIN trademark (*id.* 124:24-125:2). Drews also failed to account for alternative causes for TNC's increased expenses, rendering his opinion impermissibly speculative. *Id*. 125:3-9. For example, Drews admits that he failed to separate the noise caused by Thrive Causemetics (and other third parties) that used the THRIVE mark for skincare products and in advertising during the alleged damages period, and admits knowing that advertising expenses could have gone up for purely business reasons. Drews Dep. 115:9-117:25, 119:6-22.

Third, Drews failed to rely upon non-speculative evidence supporting any actual harm to TNC directly attributable to the alleged negative associations with Le-Vel. Nor did Drews endeavor to evaluate or weigh whether such "negative associations" were comprised of unsubstantiated and/or debunked claims.[2] Drews

---

[2] Drews also did not consider the very favorable reputation that Le-Vel enjoys, including as created through Le-Vel's philanthropic and charitable work (for the National Breast Cancer Foundation, Marine Corps, and Toys for Tots, among others

Rep. 7, Drews Dep. 129:20-21. And Drews neglected to determine any causal relationship between Le-Vel's alleged bad reputation and the harm to TNC's reputation, other than through impermissible speculation. Given that many successful brands are subject to consumer gripes and/or agency review, negative associations without evidence of causational harm are simply noise.

Finally, TNC contends that it "need not show quantifiable harm or diverted sales." Opp. at 11. Yet harm stemming from a "loss of the ability to control its reputation for quality" still requires sufficient proof of case equities. Without such proof, monetary damages would be granted as a matter of right, as infringement presumes loss of control over the reputation of the plaintiff's mark. But that is not the law, as damages are subject to the equities of a case. What remains crystal clear is that Drews never analyzed or attributed any harm to TNC's loss of control over its reputation that was directly caused by Thrive Causemetics's contemporaneous infringement separate and apart from the alleged harm that was directly caused by Le-Vel. For that reason alone, harm from the loss of control over TNC's reputation directly caused by Le-Vel remains impermissibly speculative.

### C. Drews Lacks a Sufficiently Reliable Basis for Disgorgement of Profits

TNC urges disgorgement of profits in this action based on preventing unjust enrichment and deterring infringement. Opp. at 4-5.[3] Drews writes in his report that

and that profits can be awarded

(*see* Dkt. 23-2, ¶¶ 35-36); Le Vel's efforts to address real malnutrition through Thrive Nourish (*see id*., ¶¶ 37-38); the effect of Le Vel's products on helping people live happier, healthier lives and look and feel better (*see* Dkt. 138, ¶ 103); and other positive press.

[3] TNC lists diverted sales as a justification for a disgorgement of profits award too, but notes that "TNC is seeking disgorgement of Le-Vel's profits on the basis of unjust enrichment and deterrence, not because of diverted sales." Opp. at 11.

[REDACTED] Drews Rep. 10. Drews then conjectures that Le-Vel's profits [REDACTED] [REDACTED] and [REDACTED] Drews Rep. 10-11. But Drews lacks any sufficiently reliable basis on which to draw such conclusions.

First, Drews's opinion that Le-Vel's profits [REDACTED] [REDACTED] lacks any factual foundation for the unjust enrichment alleged to have occurred, let alone how Le-Vel's profits serve as an adequate measure for such enrichment. Drews Rep. 10. Drews asserts unjust enrichment is appropriate because Le-Vel was "aware of TNC's trademark and brand prior to offering their own skincare products." Drews Dep. 60:4-20. From that awareness, Drews reaches the speculative conclusion that Le-Vel intended to trade off TNC's mark and goodwill. *Id*. Yet even Drews himself admits that he was unaware of any evidence that "Le-Vel was not seeking to trade off the goodwill associated with its own Thrive brand for its skincare products." Drews Dep. 59:23-60:2. In sum, Drews speculatively deduces that Le-Vel was unjustly enriched when it used its long-standing and successful THRIVE house mark with its skincare products. As detailed in Le Vel's opening brief, Drews never determined what part of Le-Vel's profits were directly attributable to Le-Vel's use of the THRIVE mark for its skincare products. Dkt. 129 at 10-11. Further still, Drew never assessed what portion of Le-Vel's profits from April 2019 to present were attributable to Le-Vel's *own* goodwill enjoyed by its *own* THRIVE mark, as opposed to what portion was or might have been attributable to any alleged unjust enrichment. Instead, Drews rests on the single conclusory remark that Le Vel's profits were an adequate measurement.

Second, Drews expresses no opinion in his report or otherwise that Le-Vel acted to willfully infringe TNC's THRIVE mark, such that a disgorgement award might serve as a deterrent. That is important, as the cases TNC's cites all found willfulness before assessing damages as *deterrent*. *Monster Energy Co. v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928, 933, 935-936 (C.D. Cal. 2021), *appeal*

*dismissed*, No. 21-55361, 2021 WL 3028034 (9th Cir. June 28, 2021) (finding "clear and convincing evidence that Defendant acted with malice, fraud, or oppression"); *Playboy Enterprises, Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1276 (9th Cir. 1982) (allowing for a disgorgement of profits to serve as a deterrent where "the defendants deliberately arranged to obtain counterfeit goods and to sell such goods as genuine [Playboy] products" and where a failure to disgorge profits would "encourage a counterfeiter to merely switch from one infringing scheme to another as soon as the infringed owner became aware of the fabrication. Such a method of enforcement would fail to serve as a convincing deterrent to the profit maximizing entrepreneur who engages in trademark piracy."); *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 124 (9th Cir. 1968) (holding that the district court "reached the correct and proper conclusion [in granting an accounting of profits], upon finding that the appellants 'knowingly, wilfully [sic] and deliberately infringed the said trade-mark.'"). Again, Drews did not endeavor to determine if Le-Vel was benefiting from its own goodwill or trading off TNC's. Absent such proof, Drews has no reliable basis for substantiating an award of profits as an "effective deterrent."

Finally, TNC claims Drews was only required to do a calculation. Opp. At 6. That, however, jettisons the underlying principle that a disgorgement of profits is "subject to the principles of equity" and, thus, requires justification of the equities entitling such equitable relief. 15 U.S.C. § 1117(a); *see Fifty-Six Hope Road Music, Ltd. V. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 410 (2015); J. McCarthy on Trademarks and Unfair Competition § 30:59 (5th ed.) ("This means that an accounting of profits is never automatic and never a matter of right.").

### D. TNC Lacks a Sufficiently Reliable Basis for Reasonable Royalties

Drews seemingly based his royalties analysis on the factors set forth in *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y.

1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971). Drews Rep. 23. Yet, Mr. Drews's reliance on *Georgia-Pacifc* is impermissibly speculative given the factual record in this case.

In *Thrive Nat. Care, Inc. v. Thrive Causemetics, Inc.*, No. CV 20-9091 PA (ASX), 2021 WL 4813257, at *6 (C.D. Cal. Oct. 6, 2021), a court in this District (Judge Anderson) held that Drews's reliance on the *Georgia-Pacific* factors was "'impermissibly speculative' where there is 'the absence of a prior licensing agreement, evidence of licensing negotiations between the parties, or evidence otherwise showing either side's intent to license.'"[4] Similarly, in *Marketquest Group, Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1301 n.34 (S.D. Cal. 2018), another court found that Drews's reliance on *Georgia–Pacific* to calculate a reasonable royalty was "impermissibly speculative in this case given the absence of a prior licensing agreement, evidence of licensing negotiations between the parties, or evidence otherwise showing either side's intent to license." *See also Lodestar Anstalt v. Bacardi & Co.*, No. 2:16-cv-06411-CAS (FFMx), 2019 WL 8105378, at *13 (C.D. Cal. July 3, 2019) *aff'd*, 31 F.4th 1228 (9th Cir. 2022).

Drews and TNC agree that this case does not involve a holdover license between Le-Vel and TNC, that the parties have no prior licensing history, and that the parties have never negotiated or entered into a license with each other concerning the THRIVE mark. Drews Rep. 13-14, Drews Dep. 163:22-25. Instead, an "intent to license" is alleged given two prior litigation/legal-threat compromises, i.e., a February 4, 2022 agreement with Bōdee Organics and [REDACTED] Opp. at 7-8; Drews Rep. 13;

---

[4] TNC's asserts that facts have changed since the decision in *Thrive Nat. Care, Inc. v. Thrive Causemetics, Inc.*, No. CV 20-9091 PA (ASX), 2021 WL 4813257 (C.D. Cal. Oct. 6, 2021). Opp. at 7. But the two new litigation/legal-threat settlement compromises that TNC concluded during the intervening time [REDACTED] fail to "cure" the material shortcomings identified by Judge Anderson in the *Thrive Causemetics* decision.

Dkt. 129-1, Ex. 6 [REDACTED]), Dkt. 129-1, Ex. 7 ("Bōdee Settlement"). As further explained in Le-Vel's opening brief, neither agreement is a true license and neither provides a sufficiently reliable basis on which to base a royalty. Dkt. 129 at 13-14.

The Bōdee Settlement contains a sell-off period dressed up as a license—no doubt drafted in that manner given Judge Anderson's decision in *Thrive Causemetics*. That agreement is no more than a lump-sum settlement payment to have occurred on May 11, 2022. Bōdee Settlement ¶ 2. And despite TNC's claim that "[t]here was no litigation against Bōdee, nor did the parties come close to litigation" (Opp. at 7), Drews understood that the agreement was reached after a cease-and-desist letter was sent. Drews Dep. 162:19-22. The [REDACTED] and does not once mention the words "license" or "royalty." [REDACTED] ¶ 5; Drews Dep. 147:3-9 ("I do not see the word 'license' in here. . . I do not see the word 'royalty.'").

These are not arms-length negotiations, but party compromises to avoid costly and inherently unpredictable litigation and legal costs. *See Thrive Nat. Care, Inc. v. Thrive Causemetics, Inc.*, No. CV 20-9091 PA (ASX), 2021 WL 4813257, at *6 (C.D. Cal. Oct. 6, 2021). TNC's *Colibri Heart Valve LLC v. Medtronic CoreValve LLC*, No. SACV2000847DOCJDE, 2021 WL 7285995 (C.D. Cal. Nov. 16, 2021) and *Sentius Int'l, LLC v. Microsoft Corp.*, No. 5:13-CV-00825, 2015 WL 451950, at (N.D. Cal. Jan. 27, 2015) citations are inapposite, as both cases involved settlements where actual royalty negotiations occurred and actual licenses resulted. Tellingly, Drews nor TNC addresses the fact that the two litigation/legal-threat agreements were executed *after* TNC filed the present lawsuit. Nor does Drews or TNC deny that a hypothetical negotiation would have occurred in April 2019. *See Lodestar Anstalt v. Bacardi & Co.*, No. 16-cv-06411-CAS (FFMx), 2019 WL 8105378, at *14 (C.D. Cal. July 3, 2019), *aff'd*, 31 F.4th 1228 (9th Cir. 2022) ("This royalty rate cannot serve as a legitimate basis for calculating a reasonable royalty rate in this case because it did

not exist prior to the commencement of this lawsuit.”).

TNC points out that [REDACTED] Opp. at 8. But Drews knew that Le-Vel never paid any royalties to or otherwise obtained a license from another party in licensing a third party's THRIVE (or similar) mark. Drews Rep. 13 ([REDACTED]); Drews Dep. 167:16-168:6 (stating that *Georgia-Pacific* Factor 2 is concerned with "royalties paid by the licensee for the asset in – at issue or similar assets at issue"). In his report, Drews cites to a merchandising agreement between Le-Vel and [REDACTED] Drews Rep. 13-14; Drews Dep. 169:10-170:8; Mello Decl., Ex. 8, LE-VEL00000003 ("Merchandising Agreement"). TNC ignored the arguments Le-Vel raised in its opening brief, and cited no authority justifying Drews's reliance on the Merchandising Agreement where Le-Vel as the hypothetical *licensee* was paid *by a third party*, despite *Georgia-Pacific* Factor 2 requiring the converse. TNC likewise does not contest that a negotiation with a merchandising partner relating to royalties on merchandise sales is wholly different from the hypothetical negotiation at issue.

Instead, TNC notes that "Drews also based is [sic] analysis on licenses with third parties, which also provides a reliable basis for determining a reasonable royalty." Opp. at 8. However, Drews's hypothetical negotiation in *Georgia-Pacific* Factor 15 fails to account for any of these third-party licenses at all, instead leaning on Factors 1 and 2 (the two TNC settlement agreements and the Le-Vel merchandising agreement) as [REDACTED] Drews Rep. 22. Further still, the cases that TNC cites do not support Drews's peripheral reliance on third-party agreements. In *QS Wholesale*, the *parties themselves* had participated in actual negotiations over the defendant's offer to purchase the plaintiff's mark. *QS Wholesale, Inc. v. World Mktg., Inc.*, No. SA 12-CV-0451 RNBX, 2013 WL 1953719,

at *4 (C.D. Cal. May 9, 2013) (Carter, J.). The courts in *adidas Am., Inc. v. Payless Shoesource, Inc.*, No. CV 01-1655-KI, 2008 WL 4279812, at *12 (D. Or. Sept. 12, 2008) and *Gucci Am., Inc. v. Guess?, Inc.*, 858 F. Supp. 2d 250, 256 (S.D.N.Y. 2012) relied on evidence from *actual license agreements* between *the parties* and third-parties to form a sufficiently reliable basis to calculate a royalty.[5]

In the absence of any evidence of meaningful prior licensing activity by either party (whether with each other or with third parties), any "reasonable royalty" award would be impermissibly speculative and unsupportable as a matter of law. *M2 Software Inc. v. Viacom, Inc.*, 223 F. App'x 653, 655 (9th Cir. 2007) ("In the absence of a legitimate proposed basis on which to calculate a royalty, awarding a reasonable royalty . . . would be impermissibly speculative."). This Court should strike Drews's report and opinions as impermissibly speculative and lacking reliable factual foundation adequate to calculate a reasonable royalty.

## III. CONCLUSION

For the reasons and authorities above, and those in Le-Vel's opening brief, Le-Vel respectfully requests that the Court exclude Drews's report and testimony.

Dated: July 11, 2022

/s/ [signature]

Morgan E. Smith (SBN 293503)
morgan.smith@finnegan.com
Mark Sommers (pro hac vice)
mark.sommers@finnegan.com
Patrick J. Rodgers (pro hac vice)
patrick.rodgers@finnegan.com
Daniel R. Mello Jr. (SBN 325714)
daniel.mello@finnegan.com

[5] TNC also relies on *Bauer Bros., LLC* for this point, but the court in that case merely stated that "[b]ased on the record in this case, the Court cannot conclude that Bauer is not entitled to damages as a matter of law." *Bauer Bros., LLC v. Nike, Inc.*, 159 F. Supp. 3d 1202, 1214 (S.D. Cal. 2016). Since the expert reports and relevant licenses are sealed, neither Le-Vel nor TNC can adequately assess the factual record in that case to compare it to this one.

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP

Alan Jay Weil (SBN 63153)
ajweil@kbkfirm.com
Amanda D. Barrow (SBN 313583)
abarrow@kbkfirm.com
KENDALL BRILL & KELLY LLP

*Attorneys for Le-Vel Brands, LLC*