FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Mark Sommers (*pro hac vice*)
  mark.sommers@finnegan.com
Patrick Rodgers (*pro hac vice*)
  patrick.rodgers@finnegan.com
901 New York Avenue, NW,
Washington, DC 20001-4413
Telephone: (202) 408-4064
Facsimile: (202) 408-4400

Morgan E. Smith (293503)
  morgan.smith@finnegan.com
Daniel R. Mello Jr. (325714)
  daniel.mello@finnegan.com
3300 Hillview Avenue
Palo Alto, CA 94304
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

KENDALL BRILL & KELLY LLP
Alan Jay Weil (63153)
  ajweil@kbkfirm.com
Amanda D. Barrow (313583)
  abarrow@kbkfirm.com
10100 Santa Monica, Suite 1725
Los Angeles, California 90067
Telephone:  (310) 556-2700
Facsimile:  (310) 556-2705

*Attorneys for Defendant and Counterclaim Plaintiff Le-Vel Brands, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| THRIVE NATURAL CARE, INC., | Case No. 2:21-CV-02022-DOC-KES |
| Plaintiff and Counterclaim Defendant, | **LE-VEL'S REPLY IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE SURVEY AND TESTIMONY OF ROBERT E. WALLACE** |
| v. | |
| LE-VEL BRANDS, LLC, | Judge: Hon. David O. Carter<br>Crtrm: 10A<br>Date: July 25, 2022<br>Time: 8:30 a.m. |
| Defendant and Counterclaim Plaintiff. | |
| | Action Filed: March 4, 2021 |

**Table of Contents**

Page

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .........................................................................................................1

    A. The Absence of Contemporaneous Internet Records for an Online Confusion Survey Is Fatal ..........................................................1

    B. The Stimulus Alleged to Have Been Used by Mr. Wallace Is from a Le-Vel Promoter Link, Not a Le-Vel Link ................................6

    C. TNC's Attempt to Distinguish *Pinnacle* Is Unavailing ........................8

    D. Mr. Wallace's Testimony Regarding Individual *Sleekcraft* Factors Lacks Foundation and Is Impermissible ...................................9

III. CONCLUSION ....................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allstate Ins. Co. v. Kia Motors Am., Inc.*,
  2017 WL 10311211 (C.D. Cal. Sept. 20, 2017) .................................................. 10

*AMF, Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ......................................................................... 9, 10

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*,
  618 F.3d 1037 (9th Cir. 2010) ............................................................................ 1

*Icon Ents. Int'l v. Am. Prods. Co.*,
  No. CV 04-1240 SVW, 2004 U.S. Dist. LEXIS 31080 (C.D. Cal.
  Oct. 7, 2004) ..................................................................................................... 10

*JIPC Mgmt. v. Incredible Pizza Co.*,
  No. CV 08-04310 MMM, 2009 U.S. Dist. LEXIS 133019 (C.D. Cal.
  July 14, 2009) ................................................................................................... 10

*Mattel, Inc. v. MCA Records, Inc.*,
  28 F. Supp. 2d 1120 (C.D. Cal. 1998) ................................................................ 9

*Mukhtar v. Cal. State Univ. Hayword*,
  299 F.3d 1053 (9th Cir. 2002) ............................................................................ 1

*Pinnacle Advert. & Mktg. Grp. Inc. v. Pinnacle Advert. & Mktg. Group*,
  No. 18-CV-81606, 2019 WL 7376782 (S.D. Fla. Sept. 26, 2019) ...................... 8

*Rsa Protective Techs. v. Delta Sci. Corp.*,
  No. LA CV19-06024 JAK (PLAx), 2021 U.S. Dist. LEXIS 209394
  (C.D. Cal. Oct. 20, 2021) ................................................................................... 2

*S.E.C. v. Reyes*,
  No. C 06-04435 CRB, 2007 WL 963422 (N.D. Cal. Mar. 30, 2007) ................. 5

*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
  305 F.3d 894 (9th Cir. 2002) .............................................................................. 1

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ............................................................................ 5

## I. INTRODUCTION

Contrary to TNC's admonition to the Court that "excluding Mr. Wallace's survey would create reversible error," a trial court has broad discretion in determining whether an expert's testimony is reliable. *See Mukhtar v. Cal. State Univ. Hayword*, 299 F.3d 1053, 1064 (9th Cir. 2002) ("A trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding *how* to determine the testimony's reliability.") (citing *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000). Nothing in TNC's opposition changes the fact that Mr. Wallace's survey is fatally flawed and unreliable because (1) Mr. Wallace failed to adequately replicate the marketplace and backfilled his moving expert report with foundational data obtained months *after* designing and conducting his survey; (2) Mr. Wallace's survey employed a biased and leading product-purchase page line-up that was nothing more than an artificial matching game; and (3) Mr. Wallace's survey questions were improperly leading. *See generally*, Dkt. 120.

For the reasons set forth below and in its moving papers, Le-Vel respectfully requests that the Court exclude Mr. Wallace's survey and testimony.

## II. ARGUMENT

### A. The Absence of Contemporaneous Internet Records for an Online Confusion Survey Is Fatal

TNC's leading argument is that Mr. Wallace's survey "must be allowed because it is virtually identical to consumer surveys the Ninth Circuit [h]as held were properly conducted," citing *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1037 (9th Cir. 2010) and *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894 (9th Cir. 2002). However, neither of these cases involved testing for confusion in the online marketplace. The survey stimuli in *Fortune* were photos of physical products, and there was evidence regarding how the products and photos were obtained. Likewise, the survey stimuli in *Thane* were physical advertisements of plaintiff's and defendant's products, not products sold online. When products are

sold online and a survey is testing confusion in the online environment (as here), it is axiomatic that an expert must have a record of how the online environment appeared *at the time the survey was conducted*, in order to establish that the web pages shown to survey respondents reflected actual marketplace conditions.

Here, Mr. Wallace's expert report is dated May 6, 2022, and it is undisputed that (1) Mr. Wallace used data he collected more than a year earlier for his March 2, 2021 report;[1] (2) he has no *contemporaneous* website screenshots, Internet search results, or other materials reflecting how the parties' products actually appeared in the online marketplace at the time the survey was conducted in early 2021; and (3) the website stimuli shown in his May 6, 2022 expert report could have been obtained anytime between March 2021 and May 2022.  The absence of contemporaneous marketplace documentation is not a "technical inadequacy" or methodological critique that goes to a survey's weight; it is a foundational failure that requires exclusion.  *Rsa Protective Techs. v. Delta Sci. Corp.*, No. LA CV19-06024 JAK (PLAx), 2021 U.S. Dist. LEXIS 209394, at *7 (C.D. Cal. Oct. 20, 2021) ("In making a reliability determination, courts 'scrutinize not only the principles and methods used by the expert, but also whether those principles and methods have been properly applied to the facts of the case.'") (quoting Fed. R. Evid. 702 advisory committee's note to 2000 Amendment).  Here, it is not even possible to scrutinize the principles and methods used by Mr. Wallace for his survey because he has no contemporaneous records of how the parties' products appeared in the online marketplace at the time the survey was conducted.  As such, there is no basis to evaluate whether the stimuli and the underlying premise of the survey, i.e., that both parties' products were returned by Google searches, reflected actual marketplace conditions at the time the survey was run in early 2021.  In fact, the Google searches relied upon in Wallace's

---

[1] Mr. Wallace conducted the survey between February 8 and 20, 2021.  (Dkt. 120 at 13.)

report were run in August and September 2021, which was at least six to seven months after Wallace ran his survey and prepared his first March 2, 2021 expert report.

Due to the ever-changing nature of the Internet, there is absolutely no guarantee that the stimuli Mr. Wallace says he obtained in step (3) of his chronology, sometime between March 2021 and May 2022 ("Third, I went back and ran the same searches again and visited the same websites again to take screenshots") are the same screenshots that were actually used for the March 2, 2021 survey. Indeed, a comparison of the screenshots in Mr. Wallace's July 1, 2022 declaration and his May 6, 2022 report underscores this very point. In Mr. Wallace's July 1, 2022 declaration (which was signed under penalty of perjury), he says, "Attached to this declaration as Exhibit 1 is *a true and correct copy of a printout of the entire webpage* from the Le-Vel's Thrive Skin point of sale *that I used for my survey*." (Dkt. 144-1, ¶ 9) (emphasis added). Exhibit 1 to his declaration consists of an Internet printout dated *July 1, 2022* and contains the following image of a "Thrive Skin - Infinite CBD Correcting Serum":



However, Mr. Wallace's May 6, 2022 report indicates that the following image of the "Thrive Skin - Infinite CBD Correcting Serum" was used in the survey:

[Screenshot of THRIVE SKIN - Infinite CBD Correcting Serum product page, price $62.00, with View Details, Autoship Program (0), Today's Order (0), Empty Cart and Continue Order buttons.]

As is readily apparent, the two images are not the same. Among other things, Mr. Wallace's July 1, 2022 declaration shows a product with a price of $64.00, while his May 6, 2022 report shows a product with a price of $62.00. Even at this stage, Mr. Wallace appears to be unclear as to exactly what image of Le-Vel's product was used in his survey. With Mr. Wallace acknowledging he retained no contemporaneous records of Internet searches or websites when the survey was conducted in early 2021, the procedure he followed for purposes of his May 6, 2022 report was to run the "same searches" and visit the "same websites" again in 2022 to try and recreate the stimuli he used for the survey more than a year earlier. (Wallace Decl. Dkt. 144-1, ¶ 15.)

Of course, given the organic nature of Internet searches, Mr. Wallace knows full well that running the "same searches" a year later will not yield the same results, and visiting the "same websites" may not bring you to the same exact website content. Indeed, the webpage that Mr. Wallace attached as Exhibit 1 to his July 1, 2022

declaration is *not* a printout of the entire webpage from Le-Vel's Thrive Skin point of sale that was used for Mr. Wallace's survey in early March 2021, as that page was, in fact, recently revised in April 2022 and would not have appeared the same way when Mr. Wallace conducted his survey in early 2021. (Declaration of Carmen Wasserman ("Wasserman Decl.") ¶ 10, Ex. C.)[2]

When conducting a survey testing confusion in the online marketplace, a survey expert's failure to retain the Internet searches and website pages on which the entire survey is based violates the most basic tenet of proper survey research and protocol. As mentioned, conducting the search afterwards is no guarantee that the same results would have been returned. Mr. Wallace's attempt to recreate the marketplace a year later is so unreliable as to be fatal, as an expert must disclose all materials relied upon and recreating search results many months after designing and conducting the search cannot satisfy this steadfast requirement. *See S.E.C. v. Reyes*, No. C 06-04435 CRB, 2007 WL 963422, at *1, n.1 (N.D. Cal. Mar. 30, 2007) ("Since the amendment, courts have overwhelmingly, though not uniformly, imposed a bright-line rule that all materials considered by a testifying expert, including attorney work product, must be disclosed." (internal quotation marks omitted)). Because Mr. Wallace was required to disclose the contemporaneous search results and websites that were used when designing and conducting the survey in 2021, but failed to do so, this Court should not consider such materials, including any attempts to recreate them a year-plus later. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to these requirements by forbidding the use . . . of any information required to be disclosed by Rule 26(a) that is not properly disclosed.").

---

[2] In particular, that page has the current "60-day Challenge Packs" which did not exist at the time Mr. Wallace ran his survey in early 2021, let alone common pricing information.

B. **The Stimulus Alleged to Have Been Used by Mr. Wallace Is from a Le-Vel Promoter Link, Not a Le-Vel Link**

Mr. Wallace claims that the stimulus he used came from a publicly accessible site located at https://thrivevitamin.le-vel.com/Shop, and that this URL was "on the front page" of Google search results for "thrive skin". (Dkt. No. 144-1, ¶ 8)  Yet, Mr. Wallace failed to produce any Google search result pages (from 2021 or 2022) supporting this hollow allegation.  The reality is that this particular URL, while publicly *accessible*, is a link for a specific Le-Vel promoter named Elise Lininger.  That link goes directly to the order page, as it assumes that the customer was referred by Ms. Lininger (as is the case for all promoter links) and that such customer is looking to shop and buy Le-Vel's products.  That URL becomes part of a cookie for anyone accessing that promoter link (unless someone clears their browser of all cookies).[3]  Further, that particular promoter link, https://thrivevitamin.le-vel.com/Shop, directs users to a general THRIVE products shopping page (not a THRIVE SKIN specific page), showing all the categories of products Le-Vel sells under its THRIVE mark.  (Wasserman Decl. ¶ 6.)  Not surprisingly, the link https://thrivevitamin.le-vel.com/Shop is not found in any of Google search results for "thrive skin" (or any other "thrive" variant search term) that Wallace disclosed in his expert report.  (Dkt. 120-1, Ex. 1, Ex. 4.)

Mr. Wallace further claims "After I submitted my report [presumably his second report dated May 6, 2022], I later created an account and logged on, and confirmed that it is a generic account creation process similar to most other e-commerce websites." (Dkt. 144-1 ¶ 11.)  This is not true.  Le-Vel's customer account records show that Mr. Wallace established a customer account (Account No. is 9999973; email rob@bestofbreedbranding.com) on January 30, 2021 at 9:19 PM and

---

[3] Mr. Wallace testified about the importance of clearing browsers when conducting Google searches, and is well aware of the need to do so to avoid bias search results. (Dkt. 120-1, Ex. 2; Wallace Dep. Tr. at 55:8-16, 59:7-11.)

was *auto-assigned* Marc van Gordan as his promoter (Promoter No. 1714463). (Wasserman Decl. ¶ 11.) As a new customer of Le-Vel, Mr. Wallace also received an email dated January 31, 2021 (which TNC produced in discovery) welcoming Mr. Wallace to Le-Vel as a new customer.[4] (*Id.*, Ex. D.)

The fact Mr. Wallace was *auto-assigned* a promoter in January 2021 means that he did not arrive at Le-Vel's website through a Google search result from the link https://thrivevitamin.le-vel.com/Shop, as promoter links do not allow referred customers to *auto-assign* a promoter. (*Id.* at ¶ 12.) Instead, customers must confirm that the promoter at that link either referred them, or some other known promoter. (*Id.* at ¶ 7.) And again, the Google search results on which Wallace relied do not show the https://thrivevitamin.le-vel.com/Shop promoter link as a result from searches for "thrive skin" on Google. (Dkt. 120-1, Ex. 1, Ex. 4.) Indeed, to this day, Mr. Wallace (or TNC) has yet to produce a Google search result for "thrive skin" (or other "thrive" wording) that contains a link to Ms. Lininger's promoter site at https://thrivevitamin.le-vel.com/Shop. And to the extent Mr. Wallace claims to have arrived at Ms. Lininger's promoter site https://thrivevitamin.le-vel.com/Shop when Mr. Wallace established his first or second Le-Vel customer account, that is untrue, as Mr. Wallace selected the *auto-assign* promotor options both times, which is a feature not available through Le-Vel promoter links. (Wasserman Decl. ¶¶ 12-13.)

Assuming for the moment that Mr. Wallace's tall-tale is true, Mr. Wallace would have grossly limited the survey universe for his stimulus to only those

---

[4] Nearly a year and half later on June 5, 2022, Mr. Wallace established a second Le-Vel customer account under Rob Wallace Jr. (email rob@robwallaceexpert.com) from the same IP address. (Wasserman Decl. ¶ 13.) That second account is Customer Account No. 10747674. (*Id.*) Mr. Wallace tried to sign up with his earlier email (rob@bestofbreedbranding.com) but it was not accepted because there was already an existing account under that email. (*Id.*) Mr. Wallace again selected the *auto-assign* promoter option when establishing his second account. (*Id.*)

1 encountering that particular promoter link. Using a stimulus encountered by such a narrow universe of people (those only referred by Le-Vel promoter Ms. Lininger) and not a stimulus available to those searching for "thrive skin" (as Wallace states in his report) and selecting a link for Le-Vel's general website, obviously excluded the vast majority of customers who would be required to go through the multi-step process of getting from https://le-vel.com/products/thrive/skin to the point-of-purchase page Mr. Wallace used in his survey. Further, that point-of-purchase page starts with all of Le-Vel's categories of products in gray bars (e.g., THRIVE EXPERIENCE supplements, THRIVE PLUS supplements, THRIVE SKIN skincare products), which Mr. Wallace tellingly omitted in his July 1, 2022 declaration, and which need to be clicked and opened before encountering the actual pages where products from a given product category can be purchased.[5] (*See id.* at ¶ 9, Ex. C.) In sum, Mr. Wallace's "promoter" stimulus resulted in a grossly under-inclusive survey universe.

### C. TNC's Attempt to Distinguish *Pinnacle* Is Unavailing

TNC attempts to distinguish this case from *Pinnacle Advert. & Mktg. Grp. Inc. v. Pinnacle Advert. & Mktg. Group*, No. 18-CV-81606, 2019 WL 7376782 (S.D. Fla. Sept. 26, 2019) by arguing that Mr. Wallace's leading questions in *Pinnacle* were found impermissible because that case involved *services* rather than *goods*. However, *Pinnacle* makes no distinction along these lines. In *Pinnacle*, the court took issue with the survey showing the stimuli side-by-side and asking if the companies were affiliated, because this format improperly led survey respondents to answer that there was an affiliation. See *Pinnacle*, 2019 WL 7376782 at * 5 ("In that regard, one of the survey's only other questions stated that it would present screenshots from both Parties' websites, presented those screenshots, and then asked whether, based upon the screenshots, those companies were affiliated? This question is likewise

---

[5] Mr. Wallace admits that it takes at least "5 to 6" clicks to get from online search results to the image shown to consumers as the stimulus. (*See* Dkt. 120 at 12.)

improperly suggestive for the same reasons as the first one. In addition, the question improperly leads the survey respondent to believe that the companies are affiliated since it introduces the screenshots with the initial question, i.e., whether the survey respondent believes the Parties' companies are affiliated, and adds that the screenshots come from the Parties' websites.") That same general side-by-side stimuli format was again used by Mr. Wallace here, but even more egregiously as part of a biased matching card exercise. (Dkt. 120 at 15-19.) *See also Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1135 (C.D. Cal. 1998) ("A survey question which begs its answer cannot be a true indicator of the likelihood of consumer confusion.") (citation omitted).

### D. Mr. Wallace's Testimony Regarding Individual *Sleekcraft* Factors Lacks Foundation and Is Impermissible

While TNC says it "does not dispute that Mr. Wallace is not permitted to, and will not, testify concerning the ultimate issue of whether or not there is a likelihood of confusion in this case," TNC argues that Mr. Wallace should still be allowed to testify on ultimate issues as they pertain to individual *Sleekcraft* factors.[6] (Dkt. 144 at 12-14.) Specifically, Mr. Wallace's May 6, 2022 report contains opinions regarding the strength of TNC's THRIVE mark, the relatedness of the parties' products, the parties' target customers, and the level of care typically exercised by purchasers of the products at issue. (*Id.* at 13-14.) However, the opinions Mr. Wallace offers on these issues are all conclusory and not supported by any research, methodology, or analysis. For instance, with respect to the level of purchaser care, Mr. Wallace states in the summary of his report that "it is my opinion that . . . purchasers of the products in question exercise a relatively low degree of consumer care" (Paragraph 8), and then states again in the conclusion of his report that "it is my

---

[6] In determining the ultimate issue of likelihood of confusion, the factfinder will be tasked with weighing the likelihood of confusion factors set out in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

Case 2:21-cv-02022-DOC-KES   Document 171   Filed 07/11/22   Page 13 of 14   Page ID
#:14390

opinion that . . . there is a relatively low degree of consumer care in choosing between the skin care products at issue" (Paragraph 81).  Apart from these two conclusory statements, his report contains no research, studies, methodology, or analysis of the level of care that would typically be exercised by purchasers of the products at issue, other than to blanketly state he has years of experience in the skincare product field.

Under these circumstances, courts routinely exclude such opinions for various reasons.  *See, e.g.*, *Icon Ents. Int'l v. Am. Prods. Co.*, No. CV 04-1240 SVW (PLAx), 2004 U.S. Dist. LEXIS 31080, at *15 (C.D. Cal. Oct. 7, 2004) ("Moreover, given 'the aura of authority experts often exude,' an expert's conclusion that a mark is weak or strong has the potential to unduly influence the jury.  Thus, the Court grants Plaintiff's motion to exclude the expert testimony of Richard Wallen.") (quoting *Mukhtar*, 299 F.3d at 1063-64); *JIPC Mgmt. v. Incredible Pizza Co.*, No. CV 08-04310 MMM (PLAx), 2009 U.S. Dist. LEXIS 133019, at *7-10 (C.D. Cal. July 14, 2009) ("Isaacson offers opinions regarding application of several of the *Sleekcraft* factors relevant in assessing likelihood of confusion: 'My analysis has focused on items such as the proximity or relatedness of the brands and their offerings; the marks' similarity in appearance, sound, and meaning; the strength of the JIPC and IPC brands among the relevant set of customers; the marketing and advertising channels used to promote the brands; and the degree of care likely exercised by consumers.'  As this statement indicates, his testimony consists largely of personal observations and conclusions respecting factual issues within the province of the lay jury.  . . . To the extent that Isaacson's testimony constitutes his personal opinion regarding application of the *Sleekcraft* factors, the court concludes that it will not assist the trier of fact and that it is therefore properly excluded.") (citations omitted); *see also Allstate Ins. Co. v. Kia Motors Am., Inc.*, 2017 WL 10311211, at *6 (C.D. Cal. Sept. 20, 2017) (excluding opinion that plaintiff owned a strong and valuable brand, among other opinions, on the ground it was an opinion on an ultimate issue of law).

LE-VEL'S REPLY IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE
SURVEY AND TESTIMONY OF ROBERT E. WALLACE

III. CONCLUSION

For the reasons set forth below and in its moving papers, Le-Vel respectfully requests that the Court exclude Mr. Wallace's survey and testimony.

Dated: July 11, 2022

/s/ Morgan Smith
Morgan E. Smith (SBN 293503)
morgan.smith@finnegan.com
Mark Sommers (pro hac vice)
mark.sommers@finnegan.com
Patrick J. Rodgers (pro hac vice)
patrick.rodgers@finnegan.com
Daniel R. Mello Jr. (SBN 325714)
daniel.mello@finnegan.com
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP

Alan Jay Weil (SBN 63153)
ajweil@kbkfirm.com
Amanda D. Barrow (SBN 313583)
abarrow@kbkfirm.com
KENDALL BRILL & KELLY LLP

*Attorneys for Le-Vel Brands, LLC*

603347474

11

Case No. 2:21-CV-02022-DOC-KES
LE-VEL'S REPLY IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE
SURVEY AND TESTIMONY OF ROBERT E. WALLACE